ORIGINAL

# In the United States Court of Federal Claims
## Bid Protest

FILED
NOV 1 - 2006
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED, | ) | |
| Plaintiff, | ) | 06-742 C |
| v. | ) | No. 06- |
| | ) | Judge |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

POST-AWARD PROCUREMENT PROTEST COMPLAINT

Plaintiff, Emerald Coast Finest Produce Company, Incorporated, 257 Amber Street, Pensacola, Florida 32503-2208 (Emerald Coast), a Florida corporation and a small business fresh produce distributor serving military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi for over 20 years, as and for its Post-Award Procurement Protest Complaint against the Defendant, the United States, alleges as follows:

## INTRODUCTION

1. This is a Post-award Procurement Protest, a Civil Action alleging clear and prejudicial violations of Regulation and Statute in connection with a Federal Agency Acquisition, Request for Proposal Number HDEC02-06-R-0005, a Solicitation for Competitive Proposals which promises an Award, a single indefinite-delivery, requirements-type Contract for a base period of 24 months with 2 twelve-month option periods, a Federal Agency Acquisition over which this Court has jurisdiction under 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1491(b)(1).

The Solicitation is issued by Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia (DeCA). The proposed Contract requires daily deliveries of fresh fruits and vegetables to 19 military commissary stores in Alabama, Arkansas, Florida, Louisiana, Mississippi and Tennessee (Area 5, Group 1) and to 17 military commissary stores in Florida, Georgia, and Puerto Rico (Area 5, Group 2) of DeCA's East Region.

This Civil Action is brought to obtain a Declaration that the Award of the Contract proposed by the Solicitation to Military Produce Group LLC, Norfolk, Virginia (Military Produce Group) lacks a rational basis and is unreasonable or irra-

tional, and thus arbitrary and capricious because: (1) prior to issuing the Solicitation, DeCA did not identify or evaluate potential organizational conflicts of interests, this in violation of Federal Acquisition Regulation 9.504(a); and (2) Military Produce Group, the Awardee of predecessor Contracts under which the performance requirements of the Solicitation were developed, is under Federal Acquisition Regulation 9.505-2(b) ineligible for Award of the Contract. This Civil Action seeks also a Declaration that Military Produce Group is ineligible for Award of any Contract proposed by the Solicitation.

This Civil Action seeks further a Permanent Injunction ordering: (a) that the Contract awarded to Military Produce Group be terminated; and (b) that the Solicitation be re-opened, Offerors be given an opportunity to submit revised Competitive Proposals, and thereafter a proper Award is to be made from these revised Competitive Proposals. As well, this Civil Action seeks money damages and equitable relief for Defendant's breach of the implied-in-fact Contract to consider Emerald Coast's Competitive Proposal fairly, honestly, and in good faith.

## NATURE OF THE ACTION

2. Emerald Coast here challenges the Award of Contract Number HDEC02-06-D-0014 to Military Produce Group on August 25th, 2006. This Award was made on the basis of supposed "best value" because Military Produce Group offered neither the highest percentage of patron savings (Military Produce Group offered only 41 percent while Emerald Coast offered 43 percent) nor the lowest overall evaluated price (Military Produce Group's evaluated price was $56,050,935; Emerald Coast's evaluated price was $34,706,336).

Emerald Coast seeks a Declaration that the Award lacks a rational basis and is arbitrary and capricious in violation of applicable procurement Regulations and Statutes and a Declaration that Military Produce Group is ineligible to compete for any Contract proposed by the Solicitation. Emerald Coast seeks a Permanent Injunction ordering that Contract Number HDEC02-06-D-0014 be terminated. Emerald Coast seeks also a Permanent Injunction ordering that the Solicitation be re-opened, that Offerors be given an opportunity to submit revised Competitive Proposals, and that thereafter a proper Award is to be made from these revised Competitive Proposals.

3. Emerald Coast seeks a proper review of this Acquisition on the contemporaneous record, 5 U.S.C. § 706(2)(A), and meaningful relief for clear and prejudicial procurement process errors and clear errors of judgment.

Such a review will demonstrate that this Award violates Federal Acquisition Regulation 9.504(a) because prior to issuing the Solicitation, DeCA did not identify or evaluate potential organizational conflicts of interests; that this Award violates Federal Acquisition Regulation 9.505-2(b) because Military Produce Group, the Awardee of predecessor Contracts under which the performance requirements of the Solicitation were developed, is ineligible for Award of any Contract proposed by the Solicitation; and that this Award violates 10 U.S.C. § 2305(b)(4)(C) because this Award is not made to a "responsible contractor" just as that term is defined in 10 U.S.C. § 2302(3)(E) and 41 U.S.C. § 403(7)(g).

This Award lacks a rational basis because this Award is not made to a responsible contractor, and so this Award is made in violation of Regulation and Statute. There is no reasoned judgment that can support this Award which is made on a "best value" basis to an ineligible Contractor. DeCA has thus breached the implied-in-fact Contract to treat Emerald Coast's Competitive Proposal fairly.

4. Emerald Coast, a responsible contractor and a small business and an actual Offeror whose Competitive Proposal is in a position to receive Award of the proposed Contract, is an appropriate "interested party" under 28 U.S.C. § 1491(b)(1), and Emerald Coast has a direct economic interest in the outcome of this Post-Award Procurement Protest. *Impreza Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001). Emerald Coast is a proper party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B)(ii), i.e., Emerald Coast is a private party and a corporation which at the time this Post-Award Procurement Protest is filed has not more than 500 employees and whose net worth does not exceed $7,000,000.

This Post-Award Procurement Protest is timely filed. Emerald Coast received on August 25th, 2006 written notice of this Award to Military Produce Group. At the same time Emerald Coast received a written debriefing provided in accordance with 10 U.S.C. § 2305(b)(5)(A). This written debriefing remains today incomplete: the August 25th, 2006 notice of this Award to Military Produce Group promised that electronic copies of the Contract awarded to Military Produce Group would be made available by August 29th, 2006 but these electronic copies have yet to be provided.

On October 6th, 2006 Emerald Coast was notified that DeCA had elected to terminate a Contract awarded on August 22nd, 2006 for Area 3 of DeCA's East Region, this after a Post-Award Procurement Protest had revealed that a former Federal employee with knowledge of source selection information had, in apparent violation of Federal Acquisition Regulation 3.104-4(a) and 41 U.S.C. § 423(a)(1) a consulting contract with the Awardee of this Contract for Area 3 of DeCA's East Region. After a conference telephone call on October 11th, 2006 among some 12 fresh produce distributors, Emerald Coast decided to proceed with this Post-Award Procurement Protest.

DeCA is a Department of Defense Agency established under 10 U.S.C. § 136-(b) that operates military commissary stores formerly operated by the Military Components. 32 C.F.R. § 383a.4. DeCA has the authority to enter into and administer Contracts, but this only "in accordance with applicable laws, DoD [Department of Defense] regulations, [and] the FAR [Federal Acquisition Regulation] and the DFARS [Defense Federal Acquisition Regulation Supplement]. . . ." 32 C.F.R. § 383a.7. DeCA is an "agency" just as that term is defined in 28 U.S.C. § 451, and thus

DeCA is also a "Federal agency" as is required by 28 U.S.C. § 1491(b)(1). *Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99, 103 (1998).

DeCA's violations of procurement Regulation and Statute have had a direct and prejudicial effect on Emerald Coast. Emerald Coast has been denied a proper evaluation of its Competitive Proposal, Emerald Coast has been denied a proper "best value" determination, and Emerald Coast has not received a reasoned judgment that can support this Award to Military Produce Group. As a result of DeCA's breach of the implied-in-fact Contract of good faith, fair dealing, and honest consideration, Emerald Coast is wasting proposal preparation costs. Ultimately, Emerald Coast is being unfairly denied the opportunity to compete for the Award of the proposed Contract.

## FACTUAL ALLEGATIONS

### MILITARY COMMISSARY STORES

5. Military commissary stores are operated on Defense of Defense installations for the economic benefit of military personnel, their families, and some few other persons granted access to these military commissary stores. Military commissary stores stock and sell grocery food products (e.g., baby foods, canned goods, and soft

drinks); nonfood products (e.g., tobacco products, health and beauty aids, and magazines); meat, poultry, and seafood; and fresh produce. 10 U.S.C. § 2484(b). Military commissary stores are operated similar to commercial supermarkets. 10 U.S.C. § 2484(a). Military commissary stores sell food and other merchandise at reduced prices, i.e., items are sold at cost plus a standard surcharge. 10 U.S.C. § 2484(d), (e). Congress allows military commissary store sales at reduced prices, 10 U.S.C. § 2481(a), in order to "enhance the quality of life of members of the uniformed services, retired members, and dependents of such members" and to "support military readiness, recruitment, and retention," 10 U.S.C. § 2481(b).

HISTORICAL SUPPORT FOR FRESH FRUITS AND VEGETABLES

6. Supply of fresh fruits and vegetables to military commissary stores was formerly the responsibility of Defense Supply Center Philadelphia, Philadelphia, Pennsylvania. Defense Supply Center Philadelphia supplied fresh fruits and vegetables to military commissary stores through a system of 4 Defense Subsistence Offices, 10 Produce Buying Offices, and Field Produce Buyers. Enclosure 1, at 2-3. Since at least 2002 Defense Subsistence Office—Tidewater has been operated in Hampton Roads by Norfolk Banana Distributors, Incorporated from premises at 1106 Ingleside

Road, Norfolk, Virginia 23502-5609 (Norfolk Banana). Norfolk Banana is a Virginia stock corporation operated, and owned and controlled, by Jerry F. McDonnell. Enclosure 2.

7. In 2002 Gerald German was an employee of Defense Supply Center Philadelphia and Gerald German was operating a Produce Buying Office for Defense Supply Center Philadelphia in the Middle Neck at Wicomico, Virginia. Gerald German was there operating for Defense Supply Center Philadelphia the North Carolina Direct Vendor Delivery Program. Under the North Carolina Direct Vendor Delivery Program, Defense Supply Center Philadelphia was purchasing fresh fruits and vegetables for the account of the Commodity Food Program, State of North Carolina. Gerald German retired from Defense Supply Center Philadelphia in late October 2002.

8. On May 26th, 2004 Jerry F. McDonnell obtained from the Commonwealth of Virginia a charter for Military Produce Group, a limited liability corporation. Military Produce Group was then, and is now, operating from 1106 Ingleside Road, Norfolk, Virginia 23502-5609, the same premises from which Norfolk Banana is operating Defense Subsistence Office—Tidewater. Tim German is the primary contact for

electronic business at Military Produce Group. Enclosure 3. Tim German is the son of Gerald German. Military Produce Group was established in 2004 to make sales of fresh fruits and vegetables only to DeCA. Military Produce Group made no sales in 2004.

DEVELOPMENT OF DECA SUPPORT FOR FRESH FRUITS AND VEGETABLES

9. On December 21st, 2004 DeCA's Resale Contracting Division awarded to Norfolk Banana an indefinite-delivery, requirements-type Contract, Contract Number HDEC02-05-D-0003, this for a period of 6 months from January 18th, 2005 to July 16th, 2005. This Contract was Awarded to Norfolk Banana without obtaining full and open competition through the use of competitive procedures as is otherwise required by 10 U.S.C. § 2304(a)(1). This Award to Norfolk Banana provided for daily deliveries of fresh fruits and vegetables to 20 military commissary stores in Tidewater Virginia, in North Carolina, in South Carolina, and at Fort Gordon, Georgia. These 20 military commissary stores in DeCA's East Region were formerly supported by Defense Supply Center Philadelphia's Defense Subsistence Office—Tidewater. This Contract that was Awarded to Norfolk Banana was "to test the capability of industry to support [DeCA] requirements . . . ." Enclosure 1, at 2.

10. On March 23rd, 2005 DeCA issued a Request for Information seeking information from commercial sources about their interest and ability to support the fresh fruit and vegetable requirements of 180 military commissary stores located in the continental United States, Alaska, and Hawaii. DeCA sought information, among other things, about measuring the percentage of patron savings when compared to commercial supermarkets, about ability to interface with DeCA automated ordering systems, and about store deliveries. Responses were due on April 29th, 2005.

11. In April 2005 Gerald German was employed by Military Produce Group.

12. DeCA deemed that the 6-month Contract awarded to Norfolk Banana was a success. Based on this result, and on input from the Request for Information that had been issued on March 23rd, 2005 DeCA in June 2005 issued a Solicitation for a successor to the Norfolk Banana Contract, this a Contract for the 20 military commissary stores in Tidewater Virginia, in North Carolina, in South Carolina, and at Fort Gordon, Georgia and, as well, in Keflavik, Iceland and in Guantanamo Bay, Cuba. This is Area 1 of DeCA's East Region. In September 2005 Military Produce Group was awarded Contract Number HDEC02-05-D-0013 for a base period of 24 months and 2 one-year options. Enclosure 1, at 6-8.

13. Military Produce Group now had sales.

14. On October 7th, 2005 the Department of Defense authorized the transfer from Defense Supply Center Philadelphia to the Resale Contracting Division, DeCA of responsibility for the supply of fresh fruits and vegetables to military commissary stores worldwide. Transfer was to occur over a period of 12 months, commencing with military commissary stores located in the continental United States, Alaska, and Hawaii, and then continuing to DeCA's Far East and Europe Regions.

REQUEST FOR PROPOSAL NUMBER HDEC02-06-R-0005

15. Request for Proposal Number HDEC02-06-R-0005 was issued on March 20th, 2006 and this Acquisition seeks Competitive Proposals for the daily supply of fresh fruits and vegetables to 36 military commissary stores (Area 5, Groups 1 and 2) in DeCA's East Region. The Acquisition is being conducted as a total small business set-aside.

Offerors are required to offer a minimum percentage of patron savings of at least 38 percent when comparing DeCA's selling price (including a maximum resale markup of 7 percent) to the selling price of the same or similar items from compara-

ble commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store.

Offerors are to set out the length of time needed from date of award to the start of contract performance. The Solicitation suggests only a 30-day start-up period; Offerors are permitted to propose an alternative timeframe.

16. Stated evaluation factors are technical capability, past performance, and price. Technical capability and past performance are scored. Technical capability is significantly more important than past performance; technical capability and past performance combined are significantly more important than price.

Each Offeror's proposed minimum percentage of patron savings is to be evaluated in addition to each Offeror's total evaluated price. A trade-off analysis is to be made; DeCA may select other than the lowest-priced Competitive Proposal, or DeCA may select other than the highest-scored Competitive Proposal.

17. The due date for initial Competitive Proposals was May 2nd, 2006. DeCA issued discussion questions on May 26th, 2006; responses were due by June 2nd, 2006. On July 19th, 2006 DeCA modified the Solicitation to include requirements that all products be graded and certified by the United States Department of Agriculture. On July

28th, 2006 the Solicitation was again amended by DeCA. Final Competitive Proposals were due on August 2nd, 2006.

EMERALD COAST'S DEBRIEFING

18. At $34,706,336 Emerald Coast's total evaluated price was significantly lower than Military Produce Group's total evaluated price of $56,050,935. Emerald Coast offered a minimum percentage of patron savings of 43 percent, while Military Produce Group offered a minimum percentage of patron savings of only 41 percent.

19. Because DeCA deemed that Emerald Coast had failed to provide sufficient information about alternate sources of supply in the event of food safety issues, and because DeCA deemed that Emerald Coast had failed to provide sufficient information regarding temperatures used in storage areas, or inspection procedures, or shelf-life dating and buying procedures used to ensure that produce delivered meets grade and quality standards, Emerald Coast's technical capability scores were lower than Military Produce Group's technical capability scores.

DeCA assessed a significant *Weakness* in Emerald Coast's final Competitive Proposal, this because Emerald Coast's alternative timeframe for Contract start-up "is not conducive with the accelerated start-up plan required by DeCA." But the So-

licitation does not say that the suggested 30-day start-up period is *required*, or that proposed alternative timeframes will be in any way considered a weakness, or disadvantageous.

20. DeCA rated Emerald Coast's past performances as a *Strength*: "Customer Satisfaction Survey results reflect a high level of customer service, quality of product, and the ability to respond to emergency situations." DeCA had no other assessments on Emerald Coast's past performances. Given this assessment of Emerald Coast's past performances, there is no explanation just why Military Produce Group, with less than 2 years of past performances supplying fresh fruits and vegetables, can have a higher score on past performance than Emerald Coast which, by contrast, has over 20 years of past performances supplying fresh fruits and vegetables.

21. The trade-off analysis is quite short, and the trade-off analysis lacks any detail or explanation:

> The higher rated (Technical Capability and Past Performance) and lower minimum percentage of patron savings (Price) proposal submitted by Military Produce Group LLC (MPG) was determined to be the best value to the Government.

FIRST CLAIM FOR RELIEF

22. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

23. Federal Acquisition Regulation 9.504(a) provides:

> Using the general rules, procedures, and examples in this subpart, contracting officers shall analyze proposed acquisitions in order to—
> (1) *Identify and evaluate potential conflicts of interest as early in the acquisition process as possible*; and
> (2) Avoid, neutralize, or mitigate significant potential conflicts before award.

Emphasis added.

24. At no time has DeCA evaluated the organizational conflicts of interest inherent in the performance of Contract Number HDEC02-05-D-0003 by Norfolk Banana, or the organizational conflicts of interest inherent in the performance of the successor contract, Contract Number HDEC02-05-D-0013, by Military Produce Group. There has been no recognition of any conflict, and this lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because it is in violation of Federal Acquisition Regulation 9.504(a). *Filtration Development Co., LLC v. United States*, 60 Fed. Cl. 371, 377-78 (2004).

SECOND CLAIM FOR RELIEF

25. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

26. Federal Acquisition Regulation 9.505-2(b)(1) provides:

> *If a contractor* prepares, or assists in preparing, a work statement to be used in competitively acquiring a system or services—*or provides material leading directly, predictably, and without delay to such a work statement—that contractor may not supply* the system, major components of the system, or *the services* unless—
>
> (i) It is the sole source;
>
> (ii) It has participated in the development and design work; or
>
> (iii) More than one contractor has been involved in preparing the work statement.

Emphasis added.

27. This is Example (f) under Federal Acquisition Regulation 9.508:

> Company A receives a contract to define the detailed performance characteristics an agency will require for purchasing rocket fuels. Company A has not developed the particular fuels. When the definition contract is awarded, it is clear to both parties that the agency will use performance characteristics arrived at to choose competitively a contractor to develop or produce the fuels. Company A may not be awarded this follow-on contract.

28. Norfolk Banana and Military Produce Group are both owned and controlled by the same person, and they occupy adjacent premises on Ingleside Road, Norfolk,

Virginia. Military Produce Group was formed explicitly to deliver services to DeCA. Military Produce Group had no sales until it was awarded the successor Contract, Contract Number HDEC02-05-D-0013, to the Contract, Contract Number HDEC-02-05-D-0003, awarded to Norfolk Banana "to test the capability of industry to support [DeCA] requirements . . . ." For purposes of organizational conflict of interest analysis, Norfolk Banana and Military Produce Group are the same entity.

29.The work statements in Contract Number HDEC02-05-D-0003 and in Contract Number HDEC02-05-D-0013 have led "directly, predictably, and without delay" to the work statement in Request for Proposal Number HDEC02-06-R-0005. Neither Norfolk Banana nor Military Produce Group are the sole source for the services to be delivered under Request for Proposal Number HDEC02-06-R-0005. The services to be delivered under Request for Proposal Number HDEC02-06-R-0005 have not been developed or designed by Norfolk Banana or by Military Produce Group. Instead, these services have been developed or designed by Defense Supply Center Philadelphia, at Defense Subsistence Office—Tidewater, and at the Produce Buying Office in the Middle Neck.

Only Norfolk Banana and Military Produce Group, the same entity, have been involved in preparing the work statement for the services to be competitively acquired under Request for Proposal Number HDEC02-06-R-0005. Just as in Example (f) under Federal Acquisition Regulation 9.508 a single entity, Norfolk Banana/Military Produce Group, has provided material leading directly, predictably and without delay to the work statement for the services to be competitively acquired under Request for Proposal Number HDEC02-06-R-0005.

30. Contract Number HDEC02-06-D-0014, the Award on August 25th, 2006 to Military Produce Group, is made in violation of Federal Acquisition Regulation 9.505-2(b)(1), lacks a rational basis and is unreasonable or irrational, and is thus arbitrary and capricious.

THIRD CLAIM FOR RELIEF

31. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

32. Military Produce Group is under Federal Acquisition Regulation 9.505-2(b) ineligible for any Award of the Contract proposed by the Solicitation, Request for Proposal Number HDEC02-06-R-0005.

33. Contract Number HDEC02-06-D-0014, the Award on August 25th, 2006 to Military Produce Group, violates 10 U.S.C. § 2305(b)(4)(C) because the Award is not made to a "responsible contractor" just as that term is defined in 10 U.S.C. § 2302-(3)(E) and 41 U.S.C. § 403(7)(g).

FOURTH CLAIM FOR RELIEF

34. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

35. The Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because it is based on a significant *Weakness* assessed against Emerald Coast's final Competitive Proposal, this that Emerald Coast's alternative timeframe for Contract start-up "is not conducive with the accelerated start-up plan required by DeCA," even though the Solicitation does not say that the suggested 30-day start-up period is *required*, or that proposed alternative timeframes will be in any way considered a weakness, or disadvantageous.

36. Because the Award of Contract Number HDEC02-06-D-0014 to Military Produce Group is based on an evaluation factor not specified in the Solicitation, the

Award violates 10 U.S.C. § 2305(b)(1). This Award lacks a rational basis and is unreasonable or irrational, and is thus arbitrary and capricious.

FIFTH CLAIM FOR RELIEF

37. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

38. DeCA did not equally assess and score the past performances of Military Produce Group in comparison with DeCA's scoring of the past performances of Emerald Coast. DeCA rated Emerald Coast's past performances as a *Strength*, and DeCA had no other assessments of Emerald Coast's past performances. Given this assessment of Emerald Coast's past performances, the higher score on past performance given to Military Produce Group, a concern with less than 2 years of past performances supplying fresh fruits and vegetables, can only be regarded as arbitrary and capricious when, by contrast, Emerald Coast has over 20 years of past performances supplying fresh fruits and vegetables.

39. A fundamental precept of Federal Agency procurement is that Offers must be evaluated equally; an Agency may not unreasonably reach conclusions about one Competitive Proposal while, at the same time, the Agency fails to thoroughly

and critically evaluate a competing Competitive Proposal; and an Agency may not apply a double standard, reading one Competitive Proposal expansively and resolving doubt in favor of that Offeror, while, at the same time, reading another Competitive Proposal on an exacting standard, requiring an affirmative representation within the four corners of each section of that Competitive Proposal. *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 207 (2004), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004) ("[U]neven treatment goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of discretion.").

SIXTH CLAIM FOR RELIEF

40. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

41. The Award of Contract Number HDEC02-06-D-0014 to Military Produce Group violates 10 U.S.C. § 2305(b)(4)(C) because the trade-off analysis, which lacks any detail or explanation, cannot properly have assessed which of the Competitive Proposals was "most advantageous to the United States." Such a trade-off analysis

must be a "coherent and reasonable explanation for [DeCA's] exercise of discretion." *Impreza*, 238 F.3d at 1332-33.

SEVENTH CLAIM FOR RELIEF

42. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 21. hereinabove as if fully set forth herein.

43. DeCA has breached the implied-in-fact Contract of good faith, fair dealing, and honest consideration that DeCA entered into with Emerald Coast when the Competition under Request for Proposal Number HDEC02-06-R-0005 commenced.

PRAYER FOR RELIEF

WHEREFORE, premises considered, Emerald Coast respectfully requests the Court to grant Judgment for Emerald Coast in this Civil Action, and to Order the following relief:

1. a Declaration that the Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious; and

2. a Declaration that Military Produce Group is ineligible for any Award of the Contract proposed by Request for Proposal Number HDEC02-06-R-0005; and

3. a Permanent Injunction ordering: (a) that the Contract awarded to Military Produce Group be terminated; and (b) that the Solicitation be re-opened, Offerors be given an opportunity to submit revised Competitive Proposals, and thereafter a proper Award is to be made from these revised Competitive Proposals; and

4. a Declaration that Emerald Coast is entitled to equitable relief, and money damages, for DeCA's breach of the implied-in-fact Contract of good faith, fair dealing, and honest consideration that DeCA's Resale Contracting Division entered into with Emerald Coast when the Competition under Request for Proposal Number HDEC02-06-R-0005 commenced; and

5. such further and other relief as the Court may deem just and proper.

Respectfully submitted,

Cyrus E. Phillips, IV
District of Columbia Bar Number 456500,
Virginia State Bar Number 03135

November 1st, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

# ENCLOSURE 1

# NCMA Update

## Fresh Fruits & Vegetable (FF&V)
## for the
## Defense Commissary Agency

January 2006

Larry Hahn
Chief, Resale Contracting Division

# NCMA Update

## January 2006

## HISTORY

- Responsible for the operation of 268 DoD commissaries worldwide
- FF&V support historically provided by Defense Supply Center-Philadelphia (DSC-P).
- The DSC-P business model involved field personnel (DSO/PBO) acquiring directly from suppliers (terminal markets & direct vendor delivery agreements).
- In September of 2004, DSC-P & DeCA met at Fort Lee to discuss the future relationship for FF&V support.
- In December 2004, DeCA awarded a contract to Norfolk Banana Distributors (NBD) to test the capability of industry to support our requirements for 20 stores previously supported by the Tidewater DSO.


DSC-P Produce Coverage - 2005
Defense Subsistence Office (4)
Produce Buying Office (10)
Field / Produce Buyers (11+)
DSO - Seattle
DSO - San Francisco
DSO - Tidewater
DSO - Jacksonville
PBO - Los Angeles
PBO - San Diego
PBO - Denver
PBO - Ft. Worth
PBO - Kansas City
PBO - Birmingham
PBO - Nashville
PBO - Jessup
PBO - Philadelphia
PBO - New England
Field Buyers
Produce Buyer
ICELAND
PUERTO RICO
ALASKA
HAWAII
MARYLAND
VIRGINIA
WASHINGTON DC

3.

# NCMA Update
## January 2006

## HISTORY

- Original 20 store locations (test contract)

| | |
|---|---|
| Fort Gordon, GA | Camp Lejuene MCB, NC |
| Cherry Point MCAS, NC | Fort Bragg North, NC |
| Fort Bragg South, NC | New River MCAS, NC |
| Seymour-Johnson, NC | Charleston AFB, SC |
| Charleston NWS, SC | Fort Jackson, SC |
| Parris Island, SC | Shaw AFB, SC |
| Fort Eustis, VA | Fort Lee, VA |
| Langley AFB, VA | Little Creek NAB, VA |
| Norfolk NB, VA | Oceana NAS, VA |
| Portsmouth NNSY, VA | Sugar Grove, WV (supported through Fort Lee) |

# NCMA Update

## January 2006

### HISTORY

- DeCA stated objectives were to identify an FF&V-support business model that would:
  - Adopt the best practices of industry
  - Increase automation of processes
  - Ensure quality product
  - Achieve patron savings through lower costs
  - Increase customer satisfaction
  - Increase tonnage & sales
  - Continued support of small-business
- The test contract results confirmed that an alternative business model existed which could facilitate these objectives.
- DeCA was looking for the best solution to our FF&V requirements.

# NCMA Update

## January 2006

## HISTORY

- DeCA hosted an Industry Roundtable at Fort Lee in January 2005. Approximately 40 members of industry attended.
- DeCA issued a Request for Information (RFI) to Industry in March 2005. Responses were received from eleven (11) companies.
- Based on positive results of the test contract, as well as input from industry, DeCA elected to pursue contracted coverage for the 20 test stores; plus 2 more (Keflavik, Iceland & Guantanamo Bay, Cuba).
- Formal solicitation was issued in June of 2005 to thirty (30) firms.

# NCMA Update
## January 2006

## HISTORY

- Benefits of the new business model approach:
  - Produce quality equal to or better
  - Increased patron savings
  - Increased tonnage and sales
  - Increased customer satisfaction
  - Increased automation
    - ✓ Streamlined web-based ordering/receiving system
    - ✓ Significant reduction in ordering time
    - ✓ Significant reduction in paperwork (e.g., invoices)
    - ✓ Quicker payment to suppliers
  - Less individual contractual instruments
  - Support of small-business

# NCMA Update
## January 2006

## HISTORY

- In September of 2005, a competitive award resulted:

| | |
|---|---|
| Contractor: | Military Produce Group (MPG) |
| Contract #: | HDEC02-05-D-0013 |
| Coverage: | Base period = 24 months + two 1-year options |

- Discussions continued with DSC-P for all other locations.
- In October of 2005, the DoD decision was made that DeCA would assume DeCA-related FF&V support, worldwide.
- DeCA & DSC-P are coordinating the transition schedule, with a target completion of **September 30, 2006**. DSC-P has pledged their continued support during the transition period.

# NCMA Update
## January 2006

## FUTURE

- DeCA continuing objectives / goals:
  - Adopt the best practices of industry
  - Increase automation of processes
  - Ensure quality product
  - Achieve patron savings through lower costs
  - Increase customer satisfaction
  - Increase tonnage & sales
  - Continued support of small-business

# NCMA Update

## January 2006

## FUTURE

- Under DSC-P, support areas have been defined by the DSO/PBO network. DeCA sought input from industry concerning what should be the groupings of the future.
- DeCA hosted an Industry Roundtable on 16 Nov 05 in Atlanta, GA – attended by 170+ members of industry.
- Input received from 40+ firms.
- At this time, the plans are to pursue contracted support for the CONUS locations, then OCONUS. Industry input or agency events may alter that plan.
- Notice to the Trade (NTT) 06-14 provided a map of existing DeCA facilities. Additional agency and store-related details are available the DeCA website at www.commissaries.com




## Conversion Sequence

1. Mid Atlantic Area (completed)
2. Midwest (# 2 on map)
3. Northeast (# 3) + DC stores
4. Northwest + Alaska (# 4)
5. Southeast (# 5)
6. Southwest + Hawaii (# 6)
7. Far East
8. Europe

# Produce Conversion Plan

11.

# Defense Commissary Agency OCONUS Stores




*Map accurate/effective as of September 30, 2005*

12.

# NCMA Update
## January 2006

## FUTURE

- Acquisition Strategy:
  - Allow industry input to plan – publicize the plan – execute the plan
  - Small-business set-aside (current SBA size standard is 500 employees)
  - Evaluation Criteria (from previous solicitation):
    1. **Technical Capability** (Experience, Production Operations / Distribution Plan, Quality Program, Additional Support / Promotion Plan)
    2. **Past Performance** (Product Delivery, Quality History / Customer Satisfaction, Business Relations)
    3. **Price** (guaranteed % of patron savings)
  - Award to the responsible offeror whose offer, conforming to the requirements of the solicitation, is determined to be the <u>best value</u> to the Government

# NCMA Update
## January 2006

## FUTURE

- Contract Term: Base Period of 24 months + 2 one-year options (NTE 48 months)
- Joint ventures / teaming arrangements / prime contractor & subcontractor arrangements are authorized – provided they comply with the requirements of the solicitation
- CONUS contracts may differ from OCONUS contracts. Each successive solicitation may incorporate new requirements.
- The solicitation will specify all requirements for PACA License / Approved Sources / force protection / automation interfaces
- The solicitation will provide historical sales figures for all stores covered by that solicitation

# NCMA Update
January 2006

# Question
# & Answer Period

# ENCLOSURE 2

Commonwealth of Virginia

State Corporation Commission

Enter

Signoff

Help

Print

WEB#853 CIS 10/27/06
TCP00001 CISM0180 CORPORATE DATA INQUIRY 07:17:57

CORP ID: 0125085 - 1 STATUS: 00 ACTIVE STATUS DATE: 05/13/92
CORP NAME: NORFOLK BANANA DISTRIBUTORS, INC.

DATE OF CERTIFICATE: 02/20/1970 PERIOD OF DURATION: INDUSTRY CODE: 00
STATE OF INCORPORATION: VA VIRGINIA STOCK INDICATOR: S STOCK
MERGER IND: CONVERSION/DOMESTICATION IND:
GOOD STANDING IND: Y MONITOR INDICATOR:
CHARTER FEE: CASE NO: CASE STATUS: HEARING DTE:
R/A NAME: JERRY F. MCDONNELL

STREET: 1193 STARR WAY AR RTN MAIL:

CITY: VIRGINIA BEACH STATE : VA ZIP: 23454
R/A STATUS: P PRESIDENT EFF. DATE: 08/26/92 LOC.: 228
ACCEPTED AR#: 206 06 0332 DATE: 01/10/06 VIRGINIA BEACH
CURRENT AR#: 206 06 0332 DATE: 01/10/06 STATUS: A ASSESSMENT INDICATOR: 0

| YEAR | FEES | PENALTY | INTEREST | TAXES | BALANCE | TOTAL SHARES |
|---|---|---|---|---|---|---|
| 06 | 370.00 | | | | | 50,000 |

COMMAND: ..........................................................................

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.

# ENCLOSURE 3

CCR Central Contractor Registration

## Advanced Search Information

Search Again | Print Record

**FOR OFFICIAL USE ONLY**

### General Information

Current Registration Status: **Active in CCR; Registration valid until 01/04/2007.**

| | |
|---|---|
| DUNS: | **161010215** |
| DUNS PLUS4: | |
| CAGE/NCAGE Code: | **348U9** |
| Legal Business Name: | **MILITARY PRODUCE GROUP LLC** |
| Doing Business As (DBA): | |
| Division Name: | |
| Division Number | |
| Company URL: | |
| | |
| Physical Street Address 1: | **1106 INGLESIDE ROAD** |
| Physical Street Address 2: | |
| Physical City: | **NORFOLK** |
| Physical State: | **VA** |
| Physical Zip/Postal Code: | **23502-5609** |
| Physical Country: | **USA** |
| | |
| Mailing Name: | **MILITARY PRODUCE GROUP LLC** |
| Mailing Address: | **200 GOLDEN OAK CT. #250** |
| Mailing Address 2: | |
| Mailing City: | **VIRGINIA BEACH** |
| Mailing State: | **VA** |
| Mailing Zip/Postal Code: | **23452-6756** |
| Mailing Country: | **USA** |
| | |
| Business Start Date: | **05/26/2004** |

### Corporate Information

Type of Organization

**Other**

Business Types/Grants

**A5** - **Veteran Owned Business**
**LJ** - **Limited Liability Company**
**VN** - **Contracts**

### Goods / Services

North American Industry Classification System (NAICS)

**424480 FRESH FRUIT AND VEGETABLE MERCHANT WHOLESALERS**

Standard Industrial Classification (SIC)

**7389 BUSINESS SERVICES, NEC**

Product Service Codes (PSC)

-

Federal Supply Classification (FSC)

-

## Small Business Types

**SDB, 8A, and HubZone certifications come from the Small Business Administration and are not editable by CCR vendors.**

| Business Types | Expiration Date |
|---|---|
| **21 - Small Business** | -- |

North American Industry Classification System (NAICS)

**The small business size status is derived from the revenues and/or number of employees entered by the vendor during the registration process.**

| NAICS Code | Description | Small Business | Emerging Small Business |
|---|---|---|---|
| **424480** | **FRESH FRUIT AND VEGETABLE MERCHANT WHOLESALERS** | **Yes** | **No** |

## Points of Contact

Government Business POC Primary

Name: **JERRY F. MCDONNELL**
Address Line 1: **200 GOLDEN OAK COURT**
Address Line 2:
City: **VIRGINIA BEACH**
State: **VA**
Zip/Postal Code: **234526756**
Country: **USA**
U.S. Phone: **(757) 498-4809** Ext:
Non-U.S. Phone:
Fax: **(757) 463-2848**

Government Business POC Alternate

Name: **JERRY F. MCDONNELL**
Address Line 1: **200 GOLDEN OAK COURT**
Address Line 2:
City: **VIRGINIA BEACH**
State: **VA**
Zip/Postal Code: **234526756**
Country: **USA**
U.S. Phone: **(757) 498-4809** Ext:
Non-U.S. Phone:
Fax: **(757) 463-2848**

Past Performance POC Primary

Name:
Address Line 1:
Address Line 2:
City:
State:
Zip/Postal Code:
Country:
U.S. Phone: Ext:
Non-U.S. Phone:
Fax:

Past Performance POC Alternate

Name:
Address Line 1:
Address Line 2:
City:
State:
Zip/Postal Code:
Country:
U.S. Phone: Ext:
Non-U.S. Phone:
Fax:

Electronic Business POC Primary

Name: **TIM GERMAN**
Address Line 1: **200 GOLDEN OAK COURT**
Address Line 2:
City: **VIRGINIA BEACH**
State: **VA**
Zip/Postal Code: **234526756**
Country: **USA**
U.S. Phone: **(757) 498-4809** Ext:

Electronic Business POC Alternate

Name: **TIM GERMAN**
Address Line 1: **200 GOLDEN OAK COURT**
Address Line 2:
City: **VIRGINIA BEACH**
State: **VA**
Zip/Postal Code: **234526756**
Country: **USA**
U.S. Phone: **(757) 498-4809** Ext: