# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**Bid Protest**
**Number 06-742C**
**Judge Emily C. Hewitt**

**EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**MILITARY PRODUCE GROUP, LLC,**

**Defendant-Intervenor.**

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**Cyrus E. Phillips, IV**
**1828 L Street, N.W., Suite 660**
**Washington, D.C. 20036-5112**
**Attorney of record for Plaintiff,**
**Emerald Coast Finest Produce Company, Incorporated.**

AGREED-UPON REDACTED COPY —
MAY BE MADE PUBLIC

**November 24th, 2006**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii-iv

QUESTIONS INVOLVED ........ 1

I. WAS THE CONTRACTING OFFICER'S EVALUATION OF THE COMPETITIVE PROPOSALS CONSISTENT, AND IS THE CONTRACTING OFFICER'S BEST VALUE, TRADE-OFF SELECTION DECISION A COHERENT AND REASONABLE EXPLANATION FOR THIS CONTRACTING OFFICER'S EXERCISE OF DISCRETION? ........ 1

II. HAS EMERALD COAST'S COMPETITIVE PROPOSAL BEEN FAIRLY RATED ON THE PRODUCTION CAPABILITY/DISTRIBUTION PLAN SUB-FACTOR? ........ 1

III. CAN THE CONTRACTING OFFICER'S BEST VALUE, TRADE-OFF SELECTION DECISION BE SUSTAINED ON THIS ADMINISTRATIVE RECORD? ........ 1

STATEMENT OF THE CASE ........ 1-23

ARGUMENT ........ 23-30

I. THE CONTRACTING OFFICER'S EVALUATION OF THE COMPETITIVE PROPOSALS IS INCONSISTENT, AND THIS CONTRACTING OFFICER'S EXERCISE OF DISCRETION LACKS A COHERENT AND REASONABLE EXPLANATION. ........ 23-26

II. EMERALD COAST'S RATING ON THE PRODUCTION CAPABILITY/DISTRIBUTION PLAN SUB-FACTOR IS WRONGLY PREMISED ON AN UNDISCLOSED EVALUATION FACTOR. ........ 26-28

III. THE CONTRACTING OFFICER HAS NOT PROPERLY DECIDED WHICH OF THE COMPETITIVE PROPOSALS IS MOST ADVANTAGEOUS OR THE BEST VALUE. ........ 28- 30

CONCLUSION ........ 30-31

CERTIFICATE OF SERVICE........................................................................................32

## TABLE OF AUTHORITIES

**STATUTES**

10 U.S.C. § 136(b). . . . . 2

10 U.S.C. § 2305(b)(4)(C). . . . . 30

10 U.S.C. § 2305(b)(5). . . . . 21

10 U.S.C. § 2481(a). . . . . 3

10 U.S.C. § 2481(b). . . . . 3

10 U.S.C. § 2484(a). . . . . 3

10 U.S.C. § 2484(b). . . . . 3

10 U.S.C. § 2484(d), (e). . . . . 3

**REGULATIONS**

32 C.F.R. § 383a.4. . . . . 2

32 C.F.R. § 383a.7. . . . . 2

Federal Acquisition Regulation 15.303(b)(6). . . . . 30

**CASES**

*Gulf Group, Inc. v. United States, et al.*,
56 Fed. Cl. 391 (2003). . . . . 27

*Impreza Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001). . . . . 25

*Information Sciences Corp. v. United States, et al.*,
Fed. Cl. No. 05-1342C, September 19th, 2006,
2006 U.S. Claims LEXIS 274. . . . . 23-24

*Marsh v. Oregon Natural Resources Council*,
490 U.S. 360 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Motor Vehicle Manufacturers Association of the United States v. State Farm Insurance Co.*,
463 U.S. 29 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25-26

*Seattle Security Services, Inc. v. United States*,
45 Fed. Cl. 560 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

# PLAINTIFF'S BRIEF IN SUPPORT OF
# PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## QUESTIONS INVOLVED

I. Was the Contracting Officer's evaluation of the Competitive Proposals consistent, and is the Contracting Officer's Best Value, Trade-off Selection Decision a coherent and reasonable explanation for this Contracting Officer's exercise of discretion?

II. Has Emerald Coast's Competitive Proposal Been Fairly Rated on the Production Capability/Distribution Plan Sub-Factor?

III. Can the Contracting Officer's Best Value, Trade-off Selection Decision be Sustained on this Administrative Record?

## STATEMENT OF THE CASE

### PARTIES

Emerald Coast is a Florida corporation and a small business fresh produce distributor that has for over 20 years served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi. Statement of Facts, Number 1.

Defendant is Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia (DeCA). DeCA is a Department of Defense Agency established under 10 U.S.C. § 136(b) that operates military commissary stores formerly run by the Military Components. 32 C.F.R. § 383a.4. DeCA has the authority to enter into and administer Contracts, but this only "in accordance with applicable laws, DoD [Department of Defense] regulations, [and] the FAR [Federal Acquisition Regulation] and the DFARS [Defense Federal Acquisition Regulation Supplement]. . . ." 32 C.F.R. § 383a.7. Statement of Facts, Number 2.

Military Produce Group, LLC, 1106 Ingleside Road, Norfolk, Virginia 23502-5609 (Military Produce Group) is a Virginia limited liability corporation chartered on May 26th, 2004. Military Produce Group was established in 2004 to make sales of fresh fruits and vegetables only to DeCA. Military Produce Group made no such sales in 2004.

On September 20th, 2005 Military Produce Group was awarded Contract Number HDEC02-05-D-0013 to supply fresh fruits and vegetables to 20 military commissary stores in Tidewater Virginia, in North Carolina, in South Carolina, at Fort Gordon, Georgia and, as well, at Keflavik, Iceland and at Guantanamo Bay, Cuba. This is Area 1 of DeCA's East Region. Contract Number HDEC02-05-D-0013 is effective for a Base Term of 24 months and 2 12-month Option Periods. Statement of Facts, Number 3.

## BACKGROUND

MILITARY COMMISSARY STORES

Military commissary stores are operated on Department of Defense installations for the economic benefit of military personnel, their families, and some few other persons granted access to these military commissary stores. Military commissary stores stock and sell grocery food products (e.g., baby foods, canned goods, and soft drinks); nonfood products (e.g., tobacco products, health and beauty aids, and magazines); meat, poultry, and seafood; and fresh produce. 10 U.S.C. § 2484(b). Military commissary stores are operated similar to commercial supermarkets. 10 U.S.C. § 2484(a). Military commissary stores sell food and other merchandise at reduced prices, i.e., items are sold at cost plus a standard surcharge. 10 U.S.C. § 2484(d), (e). Congress allows military commissary store sales at reduced prices, 10 U.S.C. § 2481(a), in order to "enhance the quality of life of members of the uniformed services, retired members, and dependents of such members" and to "support military readiness, recruitment, and retention," 10 U.S.C. § 2481(b). Statement of Facts, Number 4.

A CHANGE IN SUPPORT FOR FRESH FRUITS AND VEGETABLES

Supply of fresh fruits and vegetables to military commissary stores was formerly the responsibility of Defense Supply Center Philadelphia, Philadelphia, Pennsylvania. Defense Supply Center Philadelphia supplied fresh fruits and vegetables to military commissary stores through a system of 4 Defense Subsistence Offices, 10 Produce Buying Offices, and Field Produce Buyers. In a video teleconference on March 15th, 2005 between DeCA and Defense Supply Center Philadelphia, Defense

Supply Center Philadelphia explained its plan to reduce the costs and level of direct labor required to acquire fresh fruits and vegetables through this system of Defense Subsistence Offices, Produce Buying Offices, and Field Produce Buyers. DeCA explained its interest in “adopting the best commercial practices, achieving patron savings through lower costs, increasing customer satisfaction, and increasing tonnage and sales.” Statement of Facts, Number 5.

On October 7th, 2005 the Department of Defense authorized the transfer of responsibility for the supply of fresh fruits and vegetables to military commissary stores worldwide from Defense Supply Center Philadelphia to the Resale Contracting Division, DeCA. Transfer was to occur over a period of 12 months, commencing with military commissary stores located in the continental United States, Alaska, and Hawai`i, and then continuing to DeCA’s Far East and Europe Regions. Statement of Facts, Number 6.

THE ACQUISITION

Request for Proposal Number HDEC02-06-R-0005 was issued on March 20th, 2006 and this Acquisition seeks Competitive Proposals for the daily supply of fresh fruits and vegetables to 77 military commissary stores located in the Northeast (Area 3, Groups 1 and 2) and the Southeast (Area 5, Groups 1 and 2) in DeCA’s East Region.

Area 5, Group 1 includes 19 military commissary stores located in the Mid-South (from Little Rock and Barksdale Air Force Bases east through Mississippi and Alabama to western Florida—through Pensacola Naval Air Station to Eglin and Tyndall Air Force Bases). Area 5, Group 2 includes

17 military commissary stores located in the Southeast (from Key West Naval Air Station up through eastern Florida and the State of Georgia—excluding Fort Gordon, Georgia).

The period of performance for the Contract or Contracts proposed by the Acquisition is a Base Term of 24 months and 2 12-month Option Periods. The Acquisition is being conducted as a total small business set-aside. Statement of Facts, Number 7.

DETAILED REQUIREMENTS

In Section 4 of their Business Proposals Offerors are required to offer a Minimum Percentage of Patron Savings of at least 38 percent when comparing DeCA's selling price (including a maximum resale markup of 7 percent) to the selling price of the same or similar items from comparable commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store. This is called "Market Basket Pricing."

The Acquisition requires pricing on 34 high volume core items currently in season for the pricing week of April 10th, 2006. This pricing is to be applied to the estimated annual quantities set out in the Acquisition at an Attachment. Prices are to be F.O.B. Destination. Offerors are to set out both Minimum Percentage of Patron Savings and unit pricing for these estimated annual quantities. Statement of Facts, Number 8.

The offered Minimum Percentage of Patron Savings is required to be maintained "throughout the life of the contract." The proposed Contract includes periodic surveillance requirements in order

to ensure that the promised Minimum Percentage of Patron Savings is both achieved and maintained:

> The contractor shall conduct Market Basket Surveys to compare the commissary's selling price to the selling price from at least 2 comparable commercial operations. The surveys shall be conducted at least once a month at random locations (rotated throughout the group with each location surveyed at least once in a 6-month period) and contain at least 12 core items that are in season and considered main staple items. The surveys shall be at no additional cost to the Government. Multiple surveys may be required in the various geographical areas within the group in order to determine the average percentage of savings within the group. The contractor will provide the results of the pricing surveys, identifying the date when the surveys were conducted, the items surveyed, the comparable store locations checked, and all comparative prices found to the Region Produce Specialist and the Contracting Officer not later than two days from the date of the survey. The Government reserves the right to perform an independent survey to monitor contractor performance or validate contractor surveys.

Statement of Facts, Number 9.

If the promised Minimum Percentage of Patron Savings is not achieved and maintained the proposed Contract requires that military commissary prices for fresh fruits and vegetables are to be reduced, else the Contract may be terminated:

> If it is determined that the minimum percentage of patron savings is not maintained on average for all core items for the entire group during a weekly pricing period, or demonstrates a trend of or inconsistent failure to achieve the minimum percentage of patron savings, the Contracting Officer may increase the frequency of the contractor-conducted pricing surveys until further notice with no additional cost to the Government. *Failure to achieve or maintain the minimum percentage of patron savings* may result in negative input into the contractor past performance history that may affect future contract awards, may be a part of the determination to exercise an option period, and/or *may lead to termination of the contract.*

Statement of Facts, Number 10.

**Protected Information Has Been Redacted**

Offerors are required to submit separate Technical Proposals, these in 4 Sections, each Section corresponding to an announced Sub-Factor under the Technical Capability Evaluation Factor: Section 1—Experience, Section 2—Quality Program, Section 3—Production Capability/Distribution Plan, and Section 4—Additional Support/Promotion Plan. Statement of Facts, Number 11.

Under the Experience Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Describe, in detail**, your firm's experience with work of similar nature, scope, complexity, and difficulty that must be performed under the resulting contract of this solicitation. Include your firm's experience in buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables to the commercial sector and/or government agencies. Also include in your narrative how many years in this business and describe whether your firm is a producer, distributor or broker.

Statement of Facts, Number 12.

Under the Production Capability/Distribution Plan Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Provide** the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer; *however, the offeror may propose an alternative time frame for consideration.*

Statement of Facts, Number 13.

**Protected Information Has Been Redacted**

In advance of the submission of Business and Technical Proposals, Offerors are to submit a list of at least 6 business references (commercial and/or Government agencies other than DeCA) with which the Offeror has done business, or is doing business with, during the last 3 years that is "similar" to the requirements of the Acquisition and that "demonstrates your firm's ability to perform the proposed effort." Offerors that have provided produce to DeCA commissaries are to provide the contract/agreement number and a list of these military commissary stores.

"Teaming Agreements" are defined as those business arrangements where an Offeror will depend "on the products, capital contributions, or expertise [in whole, or in part] of another company (or companies)." Teaming Agreements are to be specifically disclosed in the Competitive Proposals. Statement of Facts, Number 14.

THE PROMISED EVALUATION

The announced Basis of Award is Best Value, Trade-off. Awards are to be determined by each geographical Grouping, i.e., by the specific Groups for Area 3 and for Area 5, and only one Award is to be made for each Group. Proposals will be considered for Award only where all 34 high volume core items for the proposed Group are priced.

There are 3 Evaluation Factors: Technical Capability, Past Performance, and Price. Announced Sub-Factors under the Past Performance Evaluation Factor are: Product Delivery, Quality History/Customer Satisfaction, and Business Relations. Statement of Facts, Number 15.

The Technical Capability Evaluation Factor is announced to be significantly more important than the Past Performance Evaluation Factor; and the Technical Capability and Past Performance Evaluation Factors, when combined, are announced to be significantly more important than the Price Evaluation Factor. Within the Past Performance Evaluation Factor, the Product Delivery and Quality History/Customer Satisfaction Sub-Factors are equally important, while the Business Relations Sub-Factor is slightly less important. Statement of Facts, Number 16.

This is the announced evaluation of Price for the Base Term of 2 years:

> The Government will evaluate each offeror's proposed minimum percentage of patron savings, in addition to evaluating the proposed unit prices for price reasonableness in relation to the total requirements of the solicitation. The proposed unit prices should reflect the application of the minimum percentage of patron savings for the specified week and will indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism assessment.
>
> The Government will calculate a total evaluated price for all high volume core items for the base period and all option years combined for each group as described under the paragraph below entitled "Evaluation of Options." . . . .

Statement of Facts, Number 17.

This is the announced evaluation of Price for the 2 12-month Option Periods:

> The total evaluated price by group for each offeror's proposal will be calculated by multiplying the total annual estimated price for each proposed group by four (represents the two-year base period and two one-year option periods). Evaluation of options will not obligate the Government to exercise the option(s).

Statement of Facts, Number 18.

The Acquisition announces that the Source Selection Authority is the Contracting Officer and that the Contracting Officer "will use best value, trade-off procedures to make the final source selec-

tion." A separate Selection Decision is to be made by the Contracting Officer for each Group. Awards are to "be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated." Statement of Facts, Number 19.

THE SOURCE EVALUATION PLAN

The Contracting Officer, the Source Selection Authority, has determined that "[m]arginal differences in technical capability and past performance, *as compared to price between offers*, will be weighed in determining the best value for the Government." Statement of Facts, Number 20.

As to the Price Evaluation Factor the Source Evaluation Plan provides:

> The Government will evaluate each offeror's proposed percentage of patron savings. The proposed unit prices should reflect the application of the proposed minimum percentage of savings for the specified week and will indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism assessment.
>
> Each offeror must submit a unit price for each high volume core item. If an offeror does not price a high volume core item, an alternate item is not permitted. Proposing an alternate item or not pricing a high volume core item will result in removal from any further consideration for award. . . Pricing must be FOB Destination for all stores within a group; this is the delivered price to the commissary store absent of any anticipated markup by the commissary for resale. The unit price multiplied by DeCA's estimated annual quantity will equal the extended dollar amount for each high volume core item. The sum of the extended dollar amounts of the high volume core items will represent the total annual estimated price by group for each offeror. The total estimated price by group for each offeror's proposal will be calculated by multiplying the total annual estimated price for each group by four (represents the two-year base period and two one-year option periods). . . The total estimated price will be used as the estimated award amount. The Contracting Officer will conduct price analysis to determine price reasonableness.

Statement of Facts, Number 21.

This is what the Source Evaluation Plan says about the Selection Decision:

> The Government will award one or more contract(s) resulting from this solicitation. Award(s) will be determined by each geographical group. It is possible that one award may be made for all four groups. The Contracting Officer will use best value, trade-off procedures to make the final source selection. The process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal or other than the highest technically rated offer. Award will be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated above.
>
> The face value of the contract will reflect the estimated total price during the base period of performance. . . .

Statement of Facts, Number 22.

EMERALD COAST'S COMPETITIVE PROPOSAL

Emerald Coast has submitted a Competitive Proposal only on Area 5, Group 1. In its Technical Proposal Emerald Coast explains that it is a fresh produce distributor that has for over 20 years served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi.

Emerald Coast operates from a 126,000 square foot multi-temperature distribution center in Pensacola, Florida. The distribution center is augmented by a 15,000 square foot refrigerated fruit and vegetable further-processing facility capable of producing 60,000 pounds of packaged goods per day in two shifts. This distribution center services more than 750 food service, retail, military and

industrial customers, and deliveries are made with a fleet of 45 refrigerated trucks, these ranging from 16-foot box trucks to 48-foot multi-temperature trailers. Statement of Facts, Number 23.

In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Emerald Coast explains that it will need 60 calendar days from the notification of award to the start of Contract performance. The Acquisition announces that performance will commence approximately 30 calendar days after notification and that Offerors *may* "propose an additional timeframe for consideration."

Emerald Coast explains that its daily receiving capacity is 20,000 cases per day and that its daily shipping capacity is 18,000 cases per day. Emerald Coast says that it is operating at about 45 percent of capacity, and that the projected volume of fresh fruits and vegetables for Area 5, Group 1 will take Emerald Coast's capacity utilization up to 80 percent of capacity. Emerald Coast says that it will "need to hire an additional 45 employees to receive, warehouse, select, load and ship that incremental capacity." Statement of Facts, Number 24.

On May 26th, 2006 Emerald Coast received this discussion question: "Aside from hiring 45 additional employees, provide a timeline that fully explains why Emerald Coast needs 60 days from notification of award to start of contract performance."

Emerald Coast responded as follows:

> It will take at least eight new trailers with multi-temperature capabilities and custom side doors with ramps to execute the bid. Lead time for delivery on this equipment is forty-five days and it is not normally available for month, day or trip lease. This is why we need sixty days for start-up. If Emerald Coast is successful in the award of contract,

> we are fortunate because 12 of the 19 stores are located in the Central Gulf Coast region with 67% of the dollar sales within 180 miles or three hours of our warehouse. This gives us great turn-around and utilization of our trucks with a one-drive driver/helper situation. We will need additional equipment to service these stores.
>
> The turn-around times to service Arnold[,] Barksdale, Ft. Polk, Little Rock and Memphis are in the 18 to 24-hour range and all but Arnold have at least five successive delivery days which dictates two trucks to serve these stores with one coming and one going at all times. This means we will have to purchase eight to ten additional tractors and trailers.

Statement of Facts, Number 25.

On August 4th, 2006 Emerald Coast received a request for a Final Proposal Revision. Emerald Coast responded on August 7th, 2006 by raising its promised Minimum Percentage of Patron Savings to 43 percent. Emerald Coast explains:

> 1. We conducted our fourth market basket price survey in area retail stores this weekend and continue to find that we were conservative in our original estimate for this contract proposal. These findings are also substantiated by our dealings with Wal-Mart where our account specialist keeps close tabs on their pricing at the 27 stores he sells specialty, seasonal and fill-in items.
>
> 2. We were very concerned in our original proposal about how rising fuel and energy cost would affect our operational cost in the execution of this contract. As we continue to study the distribution logistics related to the contract, we find our cost estimates in this area were also conservative. The fact that 67% of the Area 5, Group [1] commissary stores are within 3 hours of our warehouse and 45% are within an hour and thirty minutes has helped us revise our distribution cost estimates.

Statement of Facts, Number 26.

As for its evaluation on the Past Performance Factor Emerald Coast explains that it has no teaming partners. Emerald Coast provides the names of 2 food services companies and 5 restaurants as past performance business references. In addition Emerald Coast provides as a past per-

formance reference a subsistence Blanket Purchase Agreement that it holds with Defense Supply Center Philadelphia for fresh fruit and vegetable support to DeCA at Keesler Air Force Base in Mississippi, at Fort Rucker and Maxwell Air Force Base in Alabama, and at Pensacola Naval Air Station and Hurlburt Field and Eglin Air Force Base in Florida. Statement of Facts, Number 27.

### Military Produce Group's Competitive Proposal

In connection with teaming partners Military Produce Group has submitted a Competitive Proposal on Area 3, Group 1, and on Area 3, Group 2.

In connection with a teaming partner Military Produce Group has submitted a Competitive Proposal on Area 5, Group 2. Military Produce Group has no teaming partner for the Competitive Proposal that Military Produce Group has submitted on Area 5, Group 1. Statement of Facts, Number 28.

Military Produce Group will support Area 5, Group 1 from a 64,000 square foot multi-temperature distribution center in Birmingham, Alabama. This distribution center is operated by an affiliate of Military Produce Group that is claimed to have supported military commissaries in Area 5, Groups 1 and 2 since 1998. Statement of Facts, Number 29.

In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Military Produce Group explains that it will need 30 calendar days from the notification of award to the start of Contract performance. The Acquisition had announced that performance would commence *approximately* 30 cal-

endar days after notification of award and that Offerors might "propose an additional timeframe for consideration." Military Produce Group received no discussion questions on this response. Statement of Facts, Number 30.

On August 4th, 2006 Military Produce Group received a request for a Final Proposal Revision. Military Produce Group responded on August 7th, 2006 that its promised Minimum Percentage of Patron Savings remained as initially proposed, 41 percent for the Base Term of 24 months and 42 percent for each of the 2 12-month Option Periods. Statement of Facts, Number 31.

Military Produce Group serves only DeCA and neither Military Produce Group nor its affiliate in Birmingham, Alabama has commercial customers. As of the date of submission of initial Competitive Proposals under Request for Proposal Number HDEC02-06-R-0005 Military Produce Group had been supplying fresh fruits and vegetables to DeCA's Area 1 for little more than 1 year. Military Produce Group has no commercial business. Thus Military Produce Group furnished past performance references from business from which Military Produce Group purchases supplies and services. Military Produce Group provided no past performance references for its affiliate in Birmingham, Alabama. As for any dealings with DeCA, Military Produce Group provided no contract/agreement numbers for its affiliate in Birmingham, Alabama and no list of military commissary stores to which its affiliate in Birmingham, Alabama has provided produce. Statement of Facts, Number 32.

## THE AWARD TO MILITARY PRODUCE GROUP

### THE SOURCE SELECTION DECISION SUMMARY

The Contracting Officer has prepared a single "Decision Summary" for the purposes of selecting Offerors for the Awards of the Contract or Contracts proposed by Request for Proposal Number HDEC02-06-R-0005 for the Northeast (Area 3, Groups 1 and 2) and the Southeast (Area 5, Groups 1 and 2).

Competitive Proposals for Area 3 were submitted by 12 Offerors. Competitive Proposals for Area 5 were submitted by 8 Offerors. Statement of Facts, Number 33.

Area 3, Groups 1 and 2 is awarded by the Contracting Officer to Four Seasons Produce, Incorporated, Ephrata, Pennsylvania (Four Seasons). Four Seasons does not offer the highest Minimum Percentage of Patron Savings for Area 3; the Contracting Officer's Award to Four Seasons for Area 3 is based instead on Four Seasons' higher scores on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor. Statement of Facts, Number 34.

Area 5, Group 2 is awarded by the Contracting Officer to Military Produce Group. Military Produce Group does not offer the highest Minimum Percentage of Patron Savings for Area 5, Group 2; the Contracting Officer's Award to Military Produce Group for Area 5, Group 2 is based instead on Military Produce Group's higher scores on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor. Statement of Facts, Number 35.

PRODUCTION CAPABILITY/DISTRIBUTION PLAN SUB-FACTOR

The greatest difference in the ratings between the Competitive Proposals of Emerald Coast and of Military Produce Group on the Technical Capability Evaluation Factor occurs on the Production Capability/Distribution Plan Sub-Factor. There are [ ] points available for this Sub-Factor. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board but Emerald Coast is given only [ ] points on this Sub-Factor by the Technical Evaluation Board. Statement of Facts, Number 36.

The Technical Evaluation Board makes specific comments about the time that Emerald Coast has said that Emerald Coast will need to commence Contract performance:

> Offeror states increase in inventory would take his warehouse to 80% capacity but would need to increase staff by 45 people. A personnel increase of this magnitude could negatively impact the viability of this offer.
>
> 60 days start up needed—indicates it will take this amount of time to acquire additional personnel, trucks and equipment to meet requirements of solicitation.

Statement of Facts, Number 37.

EXPERIENCE SUB-FACTOR

On the Experience Sub-Factor under the Technical Capability Evaluation Factor the Competitive Proposals of Emerald Coast and of Military Produce Group are rated much the same by the Technical Evaluation Board. There are [ ] points available for this Sub-Factor. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board and Emerald Coast is given [ ] points on this Sub-Factor by the Technical Evaluation Board. Statement of Facts, Number 38.

**Protected Information Has Been Redacted**

It is reported in the Technical Evaluation Board's rating of the Experience Sub-Factor for Area 5, Group 1 that "MPG and its teaming partners have a number of years of combined experience and are well established as a retail distributor dedicated to servicing the military." Statement of Facts, Number 39.

But the Technical Evaluation Board confabulates the experiences of Military Produce Group's teaming partners for Area 3, Groups 1 and 2 and for Area 5, Group 2 with Military Produce Group's experience for Area 5, Group 1. Military Produce Group *alone has little more than 1 year's experience* in "buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables," and this only with DeCA. Military Produce Group has no business other than Government business, and Military Produce Group has no teaming partner(s) for Area 5, Group 1. Statement of Facts, Number 40.

PAST PERFORMANCE EVALUATION FACTOR

On the Past Performance Evaluation Factor the Competitive Proposals of Emerald Coast and of Military Produce Group are again rated much the same by the Technical Evaluation Board. There are [ ] points available for this Factor. Military Produce Group is given [ ] points on this Factor by the Technical Evaluation Board and Emerald Coast is given [ ] points on this Factor by the Technical Evaluation Board. Statement of Facts, Number 41.

Emerald Coast is rated on the Past Performance Evaluation Factor by the Technical Evaluation Board only on Emerald Coast's past performances, and this is as it should be since Emerald Coast has no teaming partners, Statement of Facts, Number 42.

Military Produce Group, on the other hand, is again rated by the Technical Evaluation Board on the past performances of Military Produce Group's teaming partners, *and* not on the past performances of Military Produce Group alone: "MPG and its teaming partners were rated very good to exceptional for each sub-factor by their commercial references and military accounts." Statement of Facts, Number 43.

Again, Military Produce Group has no teaming partner(s) for Area 5, Group 1. Neither Military Produce Group nor its affiliate in Birmingham, Alabama has "commercial references." Contract/agreement numbers and a list of military commissary stores are provided only for Military Produce Group; none are provided for Military Produce Group's affiliate in Birmingham, Alabama. Statement of Facts, Number 44.

PRICE REALISM

Emerald Coast's Competitive Proposal is higher-priced than Military Produce Group's Competitive Proposal. Emerald Coast's Competitive Proposal is priced at $34,706,336 and Military Produce Group's Competitive Proposals is priced at $28,025,468. Yet Emerald Coast's Overall Combined Technical Capability and Past Performance Score (142 points) is less than Military Produce Group's

Overall Combined Technical Capability and Past Performance Score (172 points). Statement of Facts, Number 45.

Per the Contracting Officer's price realism determination set out in her single Decision Summary this cannot be. Lower Overall Combined Technical Capability and Past Performance Scores equate to lower-priced Competitive Proposals, *not* to higher-priced Competitive Proposals:

> For the purpose of a *price realism assessment*, the high volume core items were priced to determine that all offerors applied the percentage of patron savings to each line item accurately and were offering prices on the same or similar line items.
>
> As a matter of price reasonableness, it was noted that proposals that were lower priced also rated a significantly lower technical score for Technical Capability and Past Performance. Conversely, proposals that were higher priced also rated a significantly higher technical score for Technical Capability and Past Performance. The *correlation* must be considered that as the score(s) for Technical Capability (that was more important than Past Performance) or Technical Capability and Past Performance (when combined is more important than price) increased, the result would be top quality products and increased prices also. *This was evident in the review of these proposals for price realism and price reasonableness* . . . .

Statement of Facts, Number 46.

Thus it must be "evident" from this "correlation" observed by the Contracting Officer in her price realism determination that either: (a) Emerald Coast's Overall Combined Technical Capability and Past Performance Scores are too low, or else (b) Military Produce Group's Overall Combined Technical Capability and Past Performance Scores are too high.

But the total available numeric score on the Technical Capability Factor and on the Past Performance Evaluation Factor is [ ] points, and Military Produce Group's Overall Combined Tech-

**Protected Information Has Been Redacted**

nical Capability and Past Performance Score is 172 points. So from this correlation observed by the Contracting Officer in her price realism determination it is evident that Emerald Coast's Overall Combined Technical Capability and Past Performance Scores are indeed too low. Statement of Facts, Number 47.

THE BEST VALUE, TRADE-OFF SELECTION DECISION

The Contracting Officer's Best Value, Trade-off Selection Decision does not make the comparison of price promised by the Source Evaluation Plan, this a comparison of the Minimum Percentages of Patron Savings proposed by Emerald Coast and by Military Produce Group. Neither does the Contracting Officer's Best Value, Trade-off Selection Decision recognize price as a significant factor:

> **Military Produce Group** submitted a proposal that was evaluated as the highest technically rated proposal and slightly lower minimum percentage of patron savings for the base period and both option years. Therefore, in considering the solicitation's evaluation criteria that Technical Capability is significantly more important than Past Performance and when these two evaluation factors are combined they are significantly more important than Price, it is determined that the higher technically rated proposal, slightly lower minimum percentage of patron savings proposal submitted by **Military Produce Group** is the better value to the Government than the lower technically rated, slightly higher minimum percentage of patron savings proposal submitted by **Emerald Coast Finest Produce**.

Statement of Facts, Number 48.

Contract Number HDEC02-06-D-0014, the Award promised by Request for Proposal Number HDEC02-06-R-0005, is given by the Contracting Officer to Military Produce Group on August 22nd, 2006. The face value of the Award for Area 5, Group 1 is $56,050,935, and this is the estimated total price during the Base Term of 24 months. Statement of Facts, Number 49.

**Protected Information Has Been Redacted**

## THE DEBRIEFINGS

The Contracting Officer conducted the debriefings required by 10 U.S.C. § 2305(b)(5) both for Emerald Coast, and for Military Produce Group, Statement of Facts, Number 50.

### EMERALD COAST

The Contracting Officer reports in her debriefing for Emerald Coast that Emerald Coast is assessed a significant *Weakness* because:

> The alternate start-up time offered by Emerald Coast to increase their staff and obtain additional equipment is not conducive with the accelerated start-up plan required by DeCA.

Statement of Facts, Number 51.

But Request for Proposal Number HDEC02-06-R-0005 does not say that the suggested 30-day start-up period is *required*, or that proposing alternate timeframes will in any way be considered a weakness, or disadvantageous. Statement of Facts, Number 52.

The account in the debriefing of the Contracting Officer's Best Value, Trade-off analysis for her Selection Decision is quite short, and her trade-off analysis lacks any detail or explanation:

> The higher rated (Technical Capability and Past Performance) and lower minimum percentage of patron savings (Price) proposal submitted by Military Produce Group LLC (MPG) was determined to be the best value to the Government.

Statement of Facts, Number 53.

MILITARY PRODUCE GROUP

The account in the debriefing of the Contracting Officer's Best Value, Trade-off analysis for her Selection Decision is again quite short, and her trade-off analysis again lacks any detail or explanation:

> The higher rated (Technical Capability and Past Performance) and lower minimum percentage of patron savings (Price) proposal submitted by Military Produce Group LLC, was determined to be the best value to the Government.

Statement of Facts, Number 54.

---

ARGUMENT

---

**I. The Contracting Officer's Evaluation of the Competitive Proposals is Inconsistent, and this Contracting Officer's Exercise of Discretion Lacks A Coherent and Reasonable Explanation.**

The single Decision Summary is an account of scorings by a Technical Evaluation Board and an account of the Award selections by the Contracting Officer among 20 Competitive Proposals for the daily supply of fresh fruits and vegetables to 4 Groups of military commissary stores in 2 Areas (Area 3 and Area 5) of DeCA's East Region. The single Decision Summary is a review of the 12 Competitive Proposals submitted on Area 3, and a review of the 8 Competitive Proposals submitted on Area 5.

A price realism analysis was performed by this Contracting Officer. The single Decision Summary sets out and explains this Contracting Officer's price realism analysis. The objective of a price realism analysis such as the price realism analysis performed by this Contracting Officer is to: (a) as-

sess an Offeror's understanding of the work, (b) to assess the degree of performance risk posed by the offered Price; and (c) to determine whether an Offeror is a responsible contractor. *Information Sciences Corp. v. United States, et al.*, Fed. Cl. No. 05-1342C, September 19th, 2006, *2006 U.S. Claims LEXIS 274, *99.*

The problem here is that while this Contracting Officer's price realism analysis finds a correlation between lower-priced Competitive Proposals and lower Overall Combined Technical Capability and Past Performance Scores, this correlation does not explain how the pricing of the Competitive Proposals submitted by Emerald Coast and by Military Produce Group can be connected with the Technical Evaluation Board's scoring of these Competitive Proposals.

Emerald Coast's Competitive Proposal is priced at $34,706,336 and Military Produce Group's Competitive Proposals is priced at $28,025,468. Per the Contracting Officer's price realism analysis, the correlation that this Contracting Officer has observed in her reviews of the 20 Competitive Proposals submitted in response to this Acquisition is that Emerald Coast should have the higher Overall Combined Technical Capability and Past Performance Score.

Yet Emerald Coast's Overall Combined Technical Capability and Past Performance Score (142 points) is less than Military Produce Group's Overall Combined Technical Capability and Past Performance Score (172 points). This is the only instance in the single Decision Summary where the correlation that this Contracting Officer has observed does not hold true.

*Seattle Security Services, Inc. v. United States*, 45 Fed. Cl. 560, 569-70 (1999) teaches that Agencies must evaluate proposals consistently, and that this Court may not presume that an evaluation was reasonable where there is substantial evidence of an inconsistent evaluation. The disconnect here between: (a) this Contracting Officer's price realism analysis, and (b) the Technical Evaluation Board's scorings of the Competitive Proposals submitted by Emerald Coast and by Military Produce is substantial evidence of an inconsistent evaluation which demonstrates that the Award to Military Produce Group of the Contract for the daily supply of fresh fruits and vegetables to Area 5, Group 1 is unlawful.

Given this obvious lack of a relationship between the pricing of the Emerald Coast and Military Produce Group Competitive Proposals for the daily supply of fresh fruits and vegetables to Area 5, Group 1 and the Technical Evaluation Board's scorings of these two Competitive Proposals, there cannot be a "coherent and reasonable explanation for [the Contracting Officer's] exercise of discretion." *Impreza Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001). The Contracting Officer's failure to reconcile the Offerors' pricing of these 2 Competitive Proposals with the Technical Evaluation Board's scorings of these 2 Competitive Proposals is a "clear error of judgment." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989).

As for the Award to Military Produce Group of the Contract for the daily supply of fresh fruits and vegetables to Area 5, Group 1, the single Decision Summary is facially ludicrous. *Motor Vehicle Manufacturers Association of the United States v. State Farm Insurance Co.*, 463 U.S. 29, 43

**Protected Information Has Been Redacted**

(1983). (Agency explanation for a decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.").

## II. Emerald Coast's Rating on the Production Capability/Distribution Plan Sub-Factor is Wrongly Premised on an Undisclosed Evaluation Factor.

Emerald Coast has been in the commercial fresh produce distribution business over 20 years; Military Produce Group has been operating only since September 20th, 2005 and Military Produce Group's business is limited only to DeCA. Yet Military Produce Group's Overall Combined Technical Capability and Past Performance Score is 172 points while Emerald Coast's Overall Combined Technical Capability and Past Performance score is only 142 points.

Of this 30-point difference, [ ] points results from the difference in the scores on the Production Capability/Distribution Plan Sub-Factor given by the Technical Evaluation Board to Military Produce Group [ ] points and to Emerald Coast [ ] points. The reason for Emerald Coast's low score on this Sub-Factor is clearly explained in the account of the scorings by the Technical Evaluation Board and in the Debriefing given to Emerald Coast—Emerald Coast has said that it needs 60 calendar days from notification of award to the start of Contract performance, and this because Emerald Coast will need to buy 8 to 10 new diesel truck tractors and truck trailers.

At least a 60-day Contract start-up period is allowed by this Acquisition, an Acquisition which announces that Offerors "may propose an alternative time frame for consideration." Nowhere does this Acquisition say that requests for more than a 30-day Contract start-up period will be penalized.

**Protected Information Has Been Redacted**

But the Technical Evaluation Board did just this when it rated Emerald Coast's Competitive Proposal on the Production Capability/Distribution Plan Sub-Factor.

In doing so, the Technical Evaluation Board has wrongly applied an undisclosed Evaluation Factor:

> It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation. This requirement is firmly rooted in the *Competition in Contracting Act* (CICA) and the FAR, both of which indicate that an agency shall evaluate competitive proposals and assess their qualities solely on the factors and subfactors specified in the solicitation. *See* 10 U.S.C. §§ 2305(a)(2)(A), 2305(a)(3)(A) (2000); FAR § 15.305(a). It thus is beyond peradventure that the government may not rely upon undisclosed evaluation criteria when evaluating proposals, *Acra, Inc. v. United States,* 44 Fed. Cl. 288, 293 (1999), and must even disclose the factors' relative importance, *Isratex, Inc. v. United States,* 25 Cl. Ct. 223, 230 (1992). *See also Cube Corp. v. United States,* 46 Fed. Cl. 368, 377 (2000); *Dubinsky v. United States,* 43 Fed. Cl. 243, 266 (1999). . . .

*Gulf Group, Inc. v. United States, et al.*, 56 Fed. Cl. 391, 397 (2003).

This Contracting Officer's Award to Military Produce Group of the Contract for supply of fresh fruits and vegetables to Area 5, Group 1 is premised only on the higher scores on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor given by the Technical Evaluation Board to Military Produce Group. And much of the difference between Military Produce Group and Emerald Coast in the Overall Combined Technical Capability and Past Performance Scores is unlawfully based on an undisclosed evaluation factor.

Next we will see that the remainder of the difference in point scores between Emerald Coast and Military Produce Group is due to the Technical Evaluation Board's overstatement of the point scores

given to Military Produce Group on the Experience Sub-Factor under the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor.

**III. The Contracting Officer Has Not Properly Decided Which of the Competitive Proposals is Most Advantageous or the Best Value.**

The Technical Evaluation Board has confused Military Produce Group's Competitive Proposal for Area 5, Group 2 with Military Produce Group's Competitive Proposal for Area 5, Group 1. Military Produce Group has a Teaming Agreement on Military Produce Group's Competitive Proposal for Area 5, Group 2 and this Teaming Agreement is specifically disclosed in Military Produce Group's Competitive Proposal for Area 5, Group 2 as is required by the Acquisition. Military Produce Group has no Teaming Agreement on its Competitive Proposal for Area 5, Group 1—no Teaming Agreement is disclosed in Military Produce Group's Competitive Proposal for Area 5, Group 1.

Yet in its rating for Military Produce Group on the Experience Sub-Factor under the Technical Capability Evaluation Factor and in its rating for Military Produce Group on the Past Performance Evaluation Factor, the Technical Evaluation Board has supposed that Military Produce Group has a Teaming Agreement for Area 5, Group 1: (a) for its rating of Military Produce Group on the Experience Sub-Factor the Technical Evaluation Board supposes that "MPG and its teaming partners have a number of years of combined experience and are well established as a retail distributor dedicated to servicing the military," and (b) for its rating of Military Produce Group on the Past Performance

Evaluation Factor the Technical Evaluation Board supposes that "MPG and its teaming partners were rated very good to exceptional for each sub-factor by their commercial references and military accounts."

The fact, of course, is that Military Produce Group has no commercial accounts or retail business and that Military Produce Group has been delivering produce to DeCA only since shortly after September 20th, 2005. Thus the point scores given to Military Produce Group on the Experience Sub-Factor under the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor are grossly overstated.

While Emerald Coast has been successfully delivering fresh fruits and vegetables commercially for over 20 years, Military Produce Group is given [ ] points on the Experience Sub-Factor and Emerald Coast is given [ ] points on the Experience Sub-Factor. Just as wrong-headed is the Technical Evaluation Board's giving Military Produce Group [ ] points on the Past Performance Evaluation Factor while at the same time giving Emerald Coast only [ ] points on the Past Performance Evaluation Factor.

DeCA started this exercise on March 15th, 2005 by announcing DeCA's intent to adopt best commercial practices. It is not best commercial practice to give an Offeror with no commercial experience, an Offeror with little more than 1-year's experience—this dealing with only a single Federal entity, better scores on Experience and on Past Performance than an Offeror with over 20 years of successful commercial experience delivering fresh fruits and vegetables.

**Protected Information Has Been Redacted**

The Contracting Officer's Selection Decision violates 10 U.S.C. § 2305(b)(4)(C) because this Selection Decision, based as it is on woefully improper scores for Technical Capability and for Past Performance, cannot properly have assessed which of the Competitive Proposals was "most advantageous to the United States." And the Contracting Officer's Selection Decision violates Federal Acquisition Regulation 15.303(b)(6) because, without reasoned and reasonable scores for Technical Capability and for Past Performance, there is no basis for the required conclusion by the Contracting Officer that Military Produce Group's Competitive Proposal for Area 5, Group 1 is "the best value to the Government."

---

## CONCLUSION

---

For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record, Emerald Coast respectfully requests that the Court enter Judgment for Emerald Coast on this Administrative Record, RCFC 56(a), together with: (1) a Declaration that this Award of a Contract to Military Produce Group for the supply of fresh fruits and vegetables to DeCA's Area 5, Group 1 lacks a rational basis, (2) a Declaration that the Contracting Officer's Selection Decision is arbitrary and capricious, unlawful, and in violation of applicable procurement Statutes and Regulations, (3) a Permanent Injunction allowing Defendant's Technical Evaluation Board to conduct a proper re-scoring of the Competitive Proposals on DeCA's Area 5, Group 1 submitted by Military Produce Group and by Emerald Coast, this

followed by a proper Contracting Officer's Best Value, Trade-off Selection Decision, and (4) such further and other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
November 24th, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, November 24th, 2006 a true and complete copy of this Plaintiff's Brief in Support of Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Leslie Cayer Ohta, Esq.

Electronic Mail: Leslie.Ohta@usdoj.gov

Attorney of record for Defendant,
Defense Commissary Agency.

I also certify, under penalty of perjury, that on Friday, November 24th, 2006 a true and complete copy of this Plaintiff's Brief in Support of Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Daniel R. Weckstein, Esq.

Electronic Mail: dweckstein@vanblk.com

Attorney of record for Defendant-Intervenor,
Military Produce Group, LLC.

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV