# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Bid Protest
Number 06-742C
Judge Emily C. Hewitt

**EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**MILITARY PRODUCE GROUP, LLC,**

**Defendant-Intervenor.**

PLAINTIFF'S BRIEF IN RESPONSE TO CROSS-MOTIONS AND IN REPLY TO
RESPONSES TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

December 29th, 2006

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

ARGUMENT .......... 1-8

I. STANDING, FOR THE PURPOSE OF A POST-AWARD PROCUREMENT PROTEST, REQUIRES ONLY THAT A DISAPPOINTED OFFEROR HAVE HAD A SUBSTANTIAL CHANCE TO HAVE RECEIVED THE AWARD, NOT THAT THE DISAPPOINTED OFFEROR BE NEXT IN LINE FOR AWARD. .......... 1-3

II. THIS CONTRACTING OFFICER'S BLIND RELIANCE ON THE TECHNICAL EVALUATION BOARD'S POINT SCORING IS UNLAWFUL. .......... 3-6

III. THE TECHNICAL EVALUATION BOARD'S SCORING OF MILITARY PRODUCE GROUP'S COMPETITIVE PROPOSAL ON AREA 5, GROUP 1 VIOLATES THE ANNOUNCED EVALUATION CRITERIA. .......... 6-8

CONCLUSION .......... 8-9

CERTIFICATE OF SERVICE .......... 10

# TABLE OF AUTHORITIES

***STATUTES***

10 U.S.C. § 2305(b)(1) .......... 8

***REGULATIONS***

Federal Acquisition Regulation 15.308 .......... 3, 6

***CASES***

*Impreza Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001) .......... 1, 3

*Impreza Construzioni Geom. Domenico Garufi v. United States*,
52 Fed. Cl. 421 (2002) .......... 3

*Information Sciences Corp. v. United States, et al.*,
Fed. Cl. No. 05-1342C, September 19th, 2006,
2006 U.S. Claims LEXIS 274 .......... 3-4

*Information Technology & Applications Corp. v. United States*,,
316 F.3d 1312 (Fed. Cir. 2003) .......... 2

*United States v. International Business Machines Corp.*,
892 F.2d 1006 (Fed. Cir. 1989) .......... 1

PLAINTIFF'S BRIEF IN RESPONSE TO CROSS-MOTIONS AND IN REPLY TO
RESPONSES TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## ARGUMENT

### I. Standing, for the Purpose of a Post-Award Procurement Protest, Requires Only That A Disappointed Offeror Have Had A Substantial Chance To Have Received The Award, Not That The Disappointed Offeror Be Next In Line For Award.

Defendant-Intervenor cites to *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001) and from the citation in that Case to *United States v. International Business Machines Corp.*, 892 F.2d 1006, 1010-12 (Fed. Cir. 1989) to argue that an Offeror second in line for Award lacks the requisite "direct economic interest" necessary for standing to file and pursue a Post-Award Procurement Protest.

In this Case a third Offeror, Pro*Act, has total Technical Capability and Past Performance scores higher than Emerald Coast, and Pro*Act and Emerald Coast both have offered Minimum Percentages of Patron Savings higher than has Military Produce Group.

But it does not follow from this that only Pro*Act, not Emerald Coast, is next in line for Award.

This Selection Decision is to be made based on an explicit Trade-Off between evaluated Technical Capability and Past Performance and Price, and there has been no Trade-Off between the Competitive Proposal submitted by Pro*Act and the Competitive Proposal submitted by Emerald Coast. Indeed, the only Trade-Offs that have been made are those between Military Produce Group, which

had the highest total Technical Capability and Past Performance scores, but did not offer the highest Minimum Percentages of Patron Savings, and each of the other three Offerors for Area 5, Group 1. In short, the only determination that has been made is the Trade-Off between Military Produce Group and each of the other three Offerors—there has been no determination of just which Offeror is next in line for Award after Military Produce Group.

Nor does the question just who is next in line for Award control standing to challenge an Award based on Competitive Proposals. Rather, the requisite standing to challenge an Award based on Competitive Proposals is possessed by all of the Offerors in such Competitions who, but for procurement process errors, had a "substantial chance" to receive an Award, i.e., those Offerors whose chance of securing the Award would "not have been insubstantial." *Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

Beyond the obvious here, that there has been no Trade-Off between the Pro*Act and Emerald Coast Competitive Proposals, and that Emerald Coast is an actual Offeror, there is other ground on which Emerald Coast's standing firmly rests: the [12] point gap between Pro*Act's combined Technical Capability and Past Performance scores, [154] points, and Emerald Coast's combined Technical Capability and Past Performance scores, [142] points, is more than bridged by the [15] point difference in scores on the Production Capability/Distribution Plan Sub-Factor given by the Technical Evaluation Board to Military Produce Group [26] points and to Emerald Coast [11] points.

Had not the Technical Evaluation Board wrongly applied an undisclosed Evaluation Factor when it rated Emerald Coast's Competitive Proposal on the Production Capability/Distribution Plan Sub-Factor, then Emerald Coast would have combined Technical Capability and Past Performance scores higher than Pro*Act's combined Technical Capability and Past Performance scores.

Had not Emerald Coast, which has a fleet of 45 refrigerated trucks as compared to the 11 refrigerated tractor-trailers owned by Military Produce Group, not asked for an additional 30 days after notification of Contract Award in order to buy 8 to 10 new diesel truck tractors and truck trailers to service the commissaries in Area 5, Group 1, then Emerald Coast would have combined Technical Capability and Past Performance scores higher than Pro*Act's combined Technical Capability and Past Performance scores.

Surely this must be the "not insubstantial" chance at Contract Award that is demanded for standing to file and pursue this Post-Award Procurement Protest.

**II. This Contracting Officer's Blind Reliance on the Technical Evaluation Board's Point Scoring Is Unlawful.**

As the Source Selection Authority here, this Contracting Officer's discretion is not unfettered. Federal Acquisition Regulation 15.308 requires that the Source Selection Decision reflect her "independent judgment." This Court has held that this requirement for independent judgment requires determinations that are both *informed* and *reasonable*. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed. Cl. 421, 427 (2002), *on remand from Impresa*, 238 F.3d 1324. And a determination which simply adopts the reasoning of Agency evaluators cannot be reasonable unless it is sup-

ported by an independent rationale. *Information Sciences Corp. v. United States, et al.*, Fed. Cl. No. 05-1342C, September 19th, 2006, *2006 U.S. Claims LEXIS 274, *165* ("the SSA simply can agree with the reasoning of the CO or Minority Report, but only if the SSA provides an independent *rationale* for that agreement") (Emphasis as in original).

We have previously explained that of the 30-point difference in combined Technical Capability and Past Performance scores between Military Produce Group, 172 points, and Emerald Coast, 142 points, [15] points results from the difference in the scores on the Production Capability/Distribution Plan Sub-Factor given by the Technical Evaluation Board to Military Produce Group [26] points and to Emerald Coast [11] points.

The reason for Emerald Coast's low score on this Sub-Factor is clearly explained in the Technical Evaluation Board's account of its scorings—Emerald Coast has said that it needs 60 calendar days from notification of Award to the start of Contract performance, 30 days more than is suggested by the Solicitation, and this because Emerald Coast says that it will need to buy 8 to 10 new diesel truck tractors and truck trailers.

The Technical Evaluation Board's scoring on this Sub-Factor reflects nothing other than the Technical Evaluation Board's disagreement with Emerald Coast's judgment of that which is necessary to support the commissaries in Area 5, Group 1—ability to support the commissaries in Area 5, Group 1 within 30 days after notification of Award is neither a DeCA requirement nor an announced Evaluation Factor.

**Protected Information is Enclosed in Square Brackets**

In its Competitive Proposal Emerald Coast explains that from its multi-temperature distribution center in Pensacola, Florida Emerald Coast will support the commissaries in Area 5, Group 1 with a fleet of 45 refrigerated trucks, these ranging from 16-foot box trucks to 48-foot multi-temperature truck-trailers. And Emerald Coast has explained also that it will need to acquire 8 to 10 new truck-trailers after notification of Award in order to start Contract performance. Emerald Coast explains that normal lead time for new truck trailers is 45 days and that multi-temperature truck-trailers are "not normally available for month, day, or trip lease." Plaintiff's Proposed Additional Facts, at ¶ 9.

On the other hand, Military Produce Group explains in its Competitive Proposal that from a facility in Birmingham, Alabama Military Produce Group will support the commissaries in Area 5, Group 1 with a fleet of 11 refrigerated tractor-trailers. Plaintiff's Proposed Additional Facts, at ¶ 10.

But there has been no analysis by the Technical Evaluation Board, and there is no independent rationale by the Contracting Officer as Source Selection Authority, that explains just how it is that the commissaries in Area 5, Group 1 can be supported as is required by the Solicitation by 11 refrigerated tractor-trailers operating from Birmingham, Alabama while these same commissaries, at least in the judgment of Emerald Coast, will require not less than 53 truck-trailers operating from Pensacola, Florida.

The Technical Evaluation Board's scoring is irrational on its face. And there is no independent rationale by the Contracting Officer as Source Selection Authority that can support this irrational scoring. Because the underlying scoring is unreasonable and the Contracting Officer as Source Selec-

tion Authority has not provided an independent rationale, the Source Selection Decision violates Federal Acquisition Regulation 15.308 and the Award is thus unlawful.

**III. The Technical Evaluation Board's Scoring of Military Produce Group's Competitive Proposal on Area 5, Group 1 Violates the Announced Evaluation Criteria.**

The Evaluation Plan for the Solicitation explicitly provides:

> Award(s) will *be determined by each geographical group*.

The Evaluation Plan for the Solicitation does not provide that Awards, or the evaluations for Awards, will be by Area, i.e., for Area 3, or for Area 5. Plaintiff's Proposed Additional Facts, at ¶ 3.

The synopsis for the Solicitation provides:

> A single solicitation containing the four geographical groupings will be issued. *Each group will be independently evaluated* and awarded on an "all or none basis."

And as promised, the Solicitation provides that "[t]he *source selection decision for contract award will be made for each individual group* . . . ." (Emphasis added). Plaintiff's Proposed Additional Facts, at ¶ 4.

In its scoring the Technical Evaluation Board has confused Military Produce Group's Competitive Proposal for Area 5, Group 2 with Military Produce Group's Competitive Proposal for Area 5, Group 1.

Military Produce Group had a Teaming Agreement on Military Produce Group's Competitive Proposal for Area 5, Group 2, this for deliveries of fresh fruits and vegetables at Fort Buchanan, Puerto Rico and this Teaming Agreement was specifically disclosed in Military Produce Group's Compe-

titive Proposal for Area 5, Group 2 as is required by the Solicitation—however, the requirement for Fort Buchanan, Puerto Rico was entirely eliminated by Amendment 0004, an Amendment that was issued after the Technical Evaluation Board had completed its deliberations.

Military Produce Group has no Teaming Agreement on its Competitive Proposal for Area 5, Group 1—no Teaming Agreement is disclosed in Military Produce Group's Competitive Proposal for Area 5, Group 1.

Yet in its scoring for Military Produce Group on the Experience Sub-Factor under the Technical Capability Evaluation Factor and in its scoring for Military Produce Group on the Past Performance Evaluation Factor, the Technical Evaluation Board has supposed that Military Produce Group has a Teaming Agreement for Area 5, Group 1.

The Technical Evaluation Board: (a) for its scoring of Military Produce Group on the Experience Sub-Factor supposes that "MPG and its teaming partners have a number of years of combined experience and are well established as a retail distributor dedicated to servicing the military;" and (b) for its scoring of Military Produce Group on the Past Performance Evaluation Factor supposes that "MPG and its teaming partners were rated very good to exceptional for each sub-factor by their commercial references and military accounts."

Defendant wishes the Court to believe "[t]here is no mention in the source selection plan for separate evaluations for Groups within an Area." Defendant's Opposition and Cross-Motion, at 11. Just the opposite, of course, is true—while Offerors may well have been permitted to submit Competitive

Proposals on one, or both, Areas (3 and 5) without distinction as to the Group within that Area (1 or 2), the Evaluation Plan, the synopsis, and the Solicitation all expressly promise that the Technical Evaluation Board's scoring, and the Source Selection Decision, is going to be made by Group, not just by Area.

Defendant has flouted the rules that Defendant set for itself. Doing so, Defendant has clearly and obviously violated 10 U.S.C. § 2305(b)(1) (Agencies "shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation"). The Award of a Contract to Military Produce Group for Area 5, Group 1 is unlawful because this Award is in violation of the applicable procurement Statute.

## CONCLUSION

For all of the reasons set forth in the foregoing Brief in Response to Cross-Motions and in Reply to Responses to Plaintiff's Motion for Judgment on the Administrative Record, Emerald Coast once again respectfully requests that the Court enter Judgment for Emerald Coast on this Administrative Record, RCFC 56(a), together with: (1) a Declaration that this Award of a Contract to Military Produce Group for the supply of fresh fruits and vegetables to DeCA's Area 5, Group 1 lacks a rational basis, (2) a Declaration that the Contracting Officer's Selection Decision is arbitrary and capricious, unlawful, and in violation of applicable procurement Statutes and Regulations, (3) a Permanent Injunction allowing Defendant's Technical Evaluation Board to

conduct a proper re-scoring of the Competitive Proposals on DeCA's Area 5, Group 1 submitted by Military Produce Group and by Emerald Coast, this followed by a proper Contracting Officer's Best Value, Trade-Off Selection Decision, and (4) such further and other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
December 29th, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, December 29th, 2006 a true and complete copy of this Plaintiff's Brief in Response to Cross-Motions and in Reply to Responses to Plaintiff's Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Leslie Cayer Ohta, Esq.

Electronic Mail: Leslie.Ohta@usdoj.gov

Attorney of record for Defendant,
Defense Commissary Agency.

I also certify, under penalty of perjury, that on Friday, November 24th, 2006 a true and complete copy of this Plaintiff's Brief in Response to Cross-Motions and in Reply to Responses to Plaintiff's Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Daniel R. Weckstein, Esq.

Electronic Mail: dweckstein@vanblk.com

Attorney of record for Defendant-Intervenor,
Military Produce Group, LLC.

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV