# In the United States Court of Federal Claims

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED, | ) | |
| Plaintiff, | ) | |
| v. | ) | BID PROTEST<br>No. 06-742C<br>Judge Hewitt |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| MILITARY PRODUCE GROUP, LLC, | ) | |
| Defendant-Intervenor. | ) | |

## COUNTER-STATEMENT OF FACTS IN RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

Plaintiff, Emerald Coast Finest Produce Company, Incorporated, 257 Amber Street, Pensacola, Florida 32503-2208 (Emerald Coast), in compliance with RCFC 56.1(b)(2), sets out the following Counter-Statement of Facts in response to Defendant's Statement of Facts.

**Protected Information to be Disclosed Only in Accordance With U.S. Court of Federal Claims Protective Order**

1. The Defense Commissary Agency ("DeCA") operates the United States military's grocery stores worldwide. DeCA was created on October 1, 1991, as a new defense agency by merging the existing commissary systems of the Army, Air Force, Navy and Marine Corps into one entity. Military commissaries "mirror" commercial grocery stores, and may sell merchandise similar to that sold in commercial grocery stores. 10 U.S.C. § 2484(a). The military commissaries provide a benefit to military members, their families, retirees, and reservists, by selling grocery items at reduced price (at cost, plus a surcharge). 10 U.S.C. § 2484(d). The low cost of these items is considered part of the compensation package that they receive for their service to our country. The savings provided to members of the military by the commissary is an important element of the military compensation package. 10 U.S.C. § 2481(b).

Response:

*Admitted.*

2. Produce is considered to be a destination category for commissary shoppers, meaning that shoppers will come to the store specifically to acquire produce and

related items. Administrative Record ("AR") 00096. The primary concern of customers in regard to fresh fruit and vegetables ("FF&V") is the quality of the produce they purchase. FF&V have become increasingly important to commissary shoppers in recent years because of the military's increased emphasis on healthy lifestyles and physical fitness. *Id*.

Response:

*Admitted* that produce is considered to be a destination category for commissary patrons. *Denied* as to the remaining averments. None of these other averments are set out in the Administrative Record.

3. DeCA has historically secured its FF&V through the Defense Supply Center-Philadelphia ("DSC-P"). AR 3. DSC-P is a sub-agency of the Defense Logistics Agency ("DLA"), an agency of the Department of Defense. DSC-P's infrastructure/network facilitated the acquisition and delivery of FF&V to DeCA facilities worldwide, at a fee to DeCA. DSC-P purchased produce through blanket purchase agreements ("BPA") that each vendor supplying produce executed with DSC-P. AR 00095.

Response:

*Admitted.*

4. Because commissary shoppers demand high quality, low price produce, DeCA has always been a demanding customer for DSC-P. AR 00095-00102. Because the FF&V supplied by DSC-P to military commissaries were equivalent to those supplied to institutional buyers such as dining facilities, prisons, and aircraft carriers, the FF&V acquired for DeCA by DSC-P did not always meet the requirements of its patrons. *Id.* Additionally, because DSC-P's business model had multiple organizational layers between the FF&V in the field and the produce getting to the shopper's kitchen, each layer added costs and handling charges to the end product. *Id.* Consequently, military service members were not able to enjoy the same degree of savings for FF&V as they did for other commissary items procured through direct competition, negotiation and contracting. *Id.*

Response:

*Admit* that DeCA has always been a demanding customer for DSC-P. *Admit* that DSC-P's support of DeCA "added costs and handling charges to the end product."

*Deny* that the fresh fruits and vegetables acquired by DSC-P for DeCA were equivalent to the produce supplied to institutional buyers. *Deny* that commissary patrons were not able to enjoy the same degree of savings for produce as they did for other commissary items. *Deny* that commissary items other than bagged salads were not procured through direct competition, negotiation, and contracting.

5. Accordingly, as early as 2004, DeCA began researching alternatives to securing FF&V through DSC-P. As a result of this planning process, DeCA elected to conduct a test of what they considered to be some of the best commercial practices, and awarded a formal contract in December 2004 to a small business concern in Tidewater, Virginia, to provide FF&V to 20 commissary locations. AR 00082. The primary purpose of this contract was to test whether the produce industry could use commercial methods to provide FF&V at reduced costs to military commissaries. AR 00095-00102. During this test contract period, DeCA also sought input from other members of the FF&V industry, including recommendations about how DeCA should consider conducting its FF&V program in the future. AR 00004-000-

05. The results of the test contract were very favorable. AR 00003-00005; 00085-00-086; 00095-00102.

Response:

*Admitted* save for the last averment. As to the last averment, *admit* that DeCA viewed the results of the test contract as favorable.

6. In late 2005, after reviewing the proposed business plans from both DeCA and DSC-P, the Department of Defense determined that DeCA should pursue a course that would allow DeCA to contract directly for its FF&V requirements in the future. Plaintiff's Statement of Facts, 6. On November 2, 2005, DeCA attended a meeting at DSC-P to discuss a joint transition plan. The agreed upon target date by which to have completed the transition from DSC-P support to DeCA support was September 30, 2006. AR 00005. Consequently, DeCA began an aggressive transition schedule that would allow for DeCA assumption of coverage before the September 30, 2006 deadline. Id. As a result of the switchover, DSC-P downsized and reduced personnel as DeCA implemented its strategic plan for assuming the contracting responsibility for the FF&V mission by geographic area. AR 00003-00005.

<u>Response</u>:

*Admitted.*

7. To date, all six areas (12 groups) have been solicited and awarded to small business concerns by the October 2006 deadline. AR 00003-00005. Subsequently, GAO and Agency level protests were received for several similar issues for the contract awards for Areas 3, 4, and 6. GAO has denied the protests for one of the protests for Area 3 and the protest in Area 4, leaving the remaining contract awards for Areas 3 and 6 pending GAO's final determination to post award bid protests. An Agency level protest that requested an independent review with similar issues to the GAO protests was also denied. The remaining protest in area 3 was denied by the GAO on December 8, 2006, B-298751, Philadelphia Produce Market Wholesalers, LLC.

<u>Response</u>:

*Admit* only all six Areas have been solicited and awarded. *Admit* that Government Accountability Office and Agency-Level protests have been resolved for Areas 3 and 4.

8. Solicitation HDEC02-06-R-0005, to provide fresh fruits and vegetable products to 77 commissary store locations located in the geographical Areas 3 and 5, belonging to DeCA's East Region, was issued on March 20, 2006, as a 100 per cent set-aside for small business participation. AR 00574-00897. Each geographical Area had two groups. AR 00567. The solicitation provided that the Government expected to award one or more contracts resulting from this single solicitation, however there would be only one award per geographical grouping. Addendum to 52.212-2 Evaluation—Commercial Items, paragraph 1, entitled "Basis of Award" states in part:

> The Government will award one or more contracts(s) resulting from this solicitation. Award(s) will be determined by each geographical grouping. Only one award will be made per group. It is possible that one award will be made for all groups. The source selection methodology is Best Value, Trade-off. Award will be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated below.

AR 00703.

Response:

*Admitted.*

**Protected Information is Enclosed in Square Brackets**

9. Addendum to FAR 52.212-2, entitled Evaluation—Commercial Items, paragraph 2, entitled, "Relative Importance of Evaluation Factors" states:

> Technical Capability evaluation factor is significantly more important than Past Performance evaluation factor. Technical Capability and Past Performance when combined are significantly more important than price, as this provides the contracting officer with the broadest discretion in determining the best value for the Government. Within the Technical Capability evaluation factor, Experience, Quality Program, Production Capability/Distribution Plan sub-factors are all of equal importance to each other while the Additional Support/Promotion Plan sub-factor is slightly less important. Within the Past Performance evaluation factor, Product Delivery and Quality History/ Customer Satisfaction are all of equal importance to each other while the Business Relations sub-factor is slightly less important.

AR 00703.

Response:

*Admitted.*

10. Addendum to FAR 52.212-2, entitled "Evaluation—Commercial Items", item # 5, "Source Selection Decision" states:

> The Source Selection Authority, the Contracting Officer, will use best value, trade-off procedures to make the final source selection. The process permits trade-offs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal or other than the highest technically rated offer. The source selection decision for contract award will be made for each individual group and award will be made to the

> responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated.

AR 00705.

<u>Response</u>:

*Admitted.*

11. A total of twenty offerors responded to the solicitation. Twelve offerors for Area 3: BAC Enterprises, Coastal Sunbelt Produce, Elite Food Company, Four Seasons Produce, Keany Produce Company, L & M Companies, Military Produce Group LLC ("MPG") (incumbent Area 1), Overseas Services Corporation, Philadelphia Produce Market Wholesalers, Pro*Act LLC, Reilly's Wholesale Produce Inc., and Sbrocco, AR 01967; and eight offerors for Area 5: Burris Logistics, Emerald Coast Finest Produce ("Emerald"), Military Produce Group ("MPG"), Nickey Gregory, Phoenix Wholesale Foodservice, Pro*Act LLC, M & S Foods, and Produce Distribution Center. AR 01968. There were only seven offerors for Area 5, five for Group 1, and six for Group 2. *Id*. Of the seven offerors, four bid both Groups, and three, including Emerald Coast, bid only one of the two Groups. *Id*.

Response:

*Admitted.*

12. The Evaluation Plan, paragraph I, entitled "General," states in part:

> Each offeror's technical capabilities and past performance will be evaluated. A demonstrated capability will result in a rating in these areas that will provide a realistic viewpoint of the offeror's potential.

AR 00558.

Response:

*Admitted.*

13. The Evaluation Plan, paragraph II, entitled "Evaluation Criteria," provides in part that:

> Offers will be evaluated independently using the factors and assigned points as set forth below. The technical capability evaluation will be based on the narratives submitted by the offeror that demonstrates their technical capabilities. The past performance evaluation will be based on the responses to the past performance information available to the Contracting Officers, such as but not limited to performance history under DeCA or similar contracts. The price evaluation will be based on the offerors proposed minimum percentage of patron savings.

AR 00558.

Response:

*Admitted.*

14. The Evaluation Plan sets forth the evaluation criteria and points as follows:

| A. Technical Capability | Points |
|---|---|
| Experience | 30 |
| Quality Program | 30 |
| Production Capability/Distribution Plan | 30 |
| Additional Support/Promotion Plan | 20 |
| | 110 |

| B. Past Performance | Points |
|---|---|
| Product Delivery | 30 |
| Quality History/Customer Satisfaction | 30 |
| Business Relations | 20 |
| | 80 |

C. Price (Percentage of Patron Savings)

Total Maximum Points 190

NOTE: The points shown above reflect the maximum point value that can be attributed to an offeror for each individual sub-factor, and the overall sub-total attributable to each of the stated Evaluation Factors (Technical Capability and Past Performance). The maximum attainable combined technical score is 190 points.

AR 00558.

<u>Response</u>:

*Admitted.*

**Protected Information is Enclosed in Square Brackets**

15. The Evaluation Plan, paragraph III, entitled "Evaluation Methodology," provides in part that:

> Technical Capability: Technical capability will be an assessment of the offeror's experience, quality program, production capability/distribution plan, and additional capabilities to include merchandising support and product promotion plan. The Government will use the offerors' written narratives and any associated documents submitted in response to this request for proposal to evaluate technical capability. It is not based on an absolute standard, but a subjective assessment of each offeror's overall technical capability. The Government is seeking to determine whether each offeror possesses the capability to implement their proposed plans and has established a viable plan of action.
>
> Past Performance: The evaluation of past performance will be an assessment based on the offeror's performance history as it relates to the probability of successful accomplishment of work required by this solicitation including proposed teaming arrangement(s) or major subcontractor(s) as an offeror's past performance is one indicator of their ability to perform the contract successfully. The evaluation of past performance will be an assessment based on a consideration of all relevant facts and circumstances. It will not be based on absolute standards, but a subjective assessment of each offerors overall past performance history. The Government is seeking to determine whether the offeror has consistently demonstrated a genuine concern for customer satisfaction by delivering complete orders of quality products, in a timely manner while establishing and maintaining a professional business relationship.
>
> Price: The Government will evaluate offeror's proposed minimum percentage of patron savings. The proposed unit prices should reflect the application of the proposed minimum percentage of patron savings overall on the

> high volume core items for the specified week and will indicate an understanding of the application of the percentage of patron savings application, in addition to providing the Government with the opportunity to perform a price realism assessment.

AR 00559.

Response:

*Admitted.*

16. The Evaluator Rating Sheets in the Evaluation Plan set forth narrative descriptions for each of the five "ranges" of points, per sub-factor. An adjectival equivalent is assigned to each of these five ranges, as follows: "Excellent," "Very Good," "Satisfactory," "Marginal", and "Unsatisfactory." "AR 01950.

Response:

*Admitted.*

17. DeCA convened a Technical Evaluation Board ("TEB") of operational personnel who were familiar with the technical requirements of the agency, and familiar with evaluating Request for Proposals ("RFP"). AR 01962-02100. The initial technical evaluation conducted from May 4, 2006 through May 19, 2006, was accomplished shortly after the closing date for receipt of offers. *Id*. One subsequent

technical review was accomplished during the course of the acquisition process, as additional information became available. *Id*. Numerical technical scores for each evaluation factor and sub-factor were assigned to each offeror's proposal and were annotated in the Final Technical Consensus document. *Id*.

Response:

*Deny* expressly that members of the Technical Evaluation Board were familiar with the evaluation of Competitive Proposals. *Deny* expressly that any subsequent technical review(s) considered additional information that became available after June 6th, 2006, Administrative Record, at AR02004, including, but not limited to, the fact of Amendment 0004 that was issued on July 21st, 2006 and eliminated entirely the requirement to deliver fresh fruits and vegetables to the commissary at Fort Buchanan, Puerto Rico. *Admit* the remainder of the averments.

18. The TEB evaluated each proposal in accordance with the Evaluation Plan. The proposed percentages of patron savings are included in the chart with the final technical consensus document. AR 02076-02091.

Response:

*Deny* that the evaluation by the Technical Evaluation Board was in accordance with the Evaluation Plan. *Admit* the remainder of the averments.

19. As set forth in the Decision Summary, the source selection comparative analysis for Area 5, Groups 1 and 2 demonstrates that Military Produce Group's ("MPG") higher technically rated and slightly higher priced proposal is the best value to the Government for Area 5, Groups 1 and 2. AR, 02076-02091. MPG demonstrated its strengths and capabilities to achieve and maintain successful performance in providing fresh fruit and vegetables to the commissaries in Area 5, Groups 1 and 2. *Id*. The price was considered fair and reasonable based on the competitive pricing received with this solicitation and in comparison with the Government estimate. *Id*.

<u>Response</u>:

*Deny* expressly that the Contracting Officer's analysis demonstrates that Military Produce Group's Competitive Proposal is the best value to the Government for Area 5, Group 1. *Deny* expressly that Military Produce Group's Competitive Proposal

demonstrated Military Produce Group's ability to "achieve and maintain successful performance" for Area 5, Group 1. *Admit* the remainder of the averments.

20. The contracting officer ("CO") made the following determination regarding price and price realism:

> The proposed percentage of patron savings is the minimum overall average percentage of patron savings for all core items for each commissary location within a group during each weekly pricing period. The actual savings that the commissary patrons could receive may be higher than the proposed minimum percentage as the offeror may vary prices by line items weekly due to season, availability, or promotional event. For the purpose of a price realism assessment, the high volume core items were priced to determine that all offerors applied the percentage of patron savings to each line item accurately and were offering prices on the same or similar line items.
>
> As a matter of price reasonableness, it was noted that proposals that were lower priced also rated a significantly lower technical score for Technical Capability and Past Performance. Conversely, proposals that were higher priced also rated a significantly higher technical score for Technical Capability and Past Performance. The correlation must be considered that as the score(s) for Technical Capability (that was more important than Past Performance) or Technical Capability and Past Performance (when combined is more important than price) increased, the result would be top quality products and increased prices also. This was evident in the review of these proposals for price realism and price reasonableness. As stated in the solicitation, for evaluation purposes, Technical Capability is considered significantly more important than Past Performance; Technical Capability and Past Performance when combined is significantly more important than

> Price. The best quality may cost more than the lowest-priced and lower quality products.

AR 02091.

Response:

*Admitted.*

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
December 29th, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, December 29th, 2006 a true and complete copy of this Counter-Statement of Facts in Response to Defendant's Statement of Facts was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Leslie Cayer Ohta, Esq.

Electronic Mail: Leslie.Ohta@usdoj.gov

Attorney of record for Defendant,
Defense Commissary Agency.

I also certify, under penalty of perjury, that on Friday, December 29th, 2006 a true and complete copy of this Counter-Statement of Facts in Response to Defendant's Statement of Facts was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Daniel R. Weckstein, Esq.

Electronic Mail: dweckstein@vanblk.com

Attorney of record for Defendant-Intervenor,
Military Produce Group, LLC.