# In the United States Court of Federal Claims

| | |
|---|---|
| EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED, | |
| Plaintiff, | BID PROTEST |
| v. | No. 06-742C |
| THE UNITED STATES, | Judge Hewitt |
| Defendant, | |
| and | |
| MILITARY PRODUCE GROUP, LLC, | |
| Defendant-Intervenor. | |

## COUNTER-STATEMENT OF FACTS IN RESPONSE TO DEFENDANT-INTERVENOR'S STATEMENT OF FACTS

Plaintiff, Emerald Coast Finest Produce Company, Incorporated, 257 Amber Street, Pensacola, Florida 32503-2208 (Emerald Coast), in compliance with RCFC 56.1(b)(2), sets out the following Counter-Statement of Facts in response to Defendant-Intervenor's Statement of Facts.

**Protected Information to be Disclosed Only in Accordance With U.S. Court of Federal Claims Protective Order**

1. Military Produce Group LLC ("MPG"), 1106 Ingleside Road, Norfolk, Virginia 23502, is a Virginia limited liability company specifically created to make sales of fresh fruits and vegetables to military commissaries and to make DeCA's produce acquisition more efficient and commercial based. AR00008. MPG's principal operators have more than 8 years of experience supplying fresh produce to military commissaries and nearly 50 years of combined experience in the commercial produce business. AR01690-01709.

Response:

*Admit* that MPG is a Virginia Limited Liability Company registered by the State Corporation Commission of the Commonwealth of Virginia on May 26th, 2004 and that MPG was specifically created to make sales of fresh fruits and vegetables to military commissaries. *Deny* that MPG was specifically created "to make DeCA's produce acquisition more efficient and commercial based." The best evidence of MPG's purpose is MPG's Articles of Organization. VIRGINIA CODE § 13.1-1008. *Deny* that MPG's principal operators have more than 8 years of experience supplying fresh produce to military commissaries and nearly 50 years of combined experience in the commercial

produce business. The cited references to the Administrative Record include information concerning personnel of Rexville Produce, Toa Alta, Puerto Rico. Rexville Produce is proposed by MPG as a teaming partner only for fresh fruits and vegetables to be supplied to Fort Buchanan, San Juan, Puerto Rico. AR01681, AR01686, AR01709. The requirement to deliver fresh fruits and vegetables to the commissary at Fort Buchanan was eliminated entirely by Amendment 0004 to Solicitation Number HDEC02-06-R-0005. Amendment 0004 was issued on July 21st, 2006. AR00723.

2. MPG was awarded the test contract for DeCA's new commercial based produce system after submitting a proposal developing the new system. After performing test Contract Number HDEC02-05-D-0003 from mid-January to mid-September of 2005 (AR00082-00102), MPG was awarded competitive Contract Number HDEC02-05-D-0013 to supply 20 military commissary stores located in Area 1 of DeCA's East Region, including the Tidewater Region of Virginia; North Carolina, South Carolina, Georgia; Cuba; and Keflavik, Iceland (AR00186-00213). MPG is currently performing that contract.

Response:

*Deny* that MPG was awarded Contract Number HDEC02-05-D-0003. Contract Number HDEC02-05-D-0003 was awarded to Norfolk Banana Distributors, Incorporated, a Virginia Corporation chartered on February 20th, 1970 (Norfolk Banana). AR00082. DeCA expressly declined to contract directly with MPG. AR00080. Norfolk Banana "acknowledged and accepted" that Norfolk Banana was "directly accountable for the performance, negotiations, and correspondence" for Contract Number HDEC02-05-D-0003. AR00081. *Admit* that MPG is currently performing Contract Number HDEC02-05-D-0013.

3. The Agency Defendant is Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia ("DeCA"). DeCA was established as a Department of Defense Agency to operate military commissary stores. Military commissary stores are grocery stores, 10 U.S.C. § 2484(a), and sell similar items at a significantly reduced price to military members, 10 U.S.C. § 2484(d). The commissary stores are an important part of the compensation package offered to military members. 10 U.S.C. § 2481(b).

<u>Response</u>:

*Admitted.*

4. The Plaintiff, Emerald Coast Finest Produce Co., Inc. ("Emerald") is a Florida corporation and fresh produce distributor. Emerald Coast was an unsuccessful offeror for Solicitation HDEC02-06-R-0005 and was rated third in line for award for this Contract. AR01949-01962; AR01968; AR02042.

Response:

*Admit* that Emerald Coast is a Florida Corporation and a commercial distributor of fresh produce. *Admit* that Emerald Coast was an unsuccessful offeror for Solicitation Number HDEC02-06-R-0005 (Area 5, Group 1) just as MPG was an unsuccessful offeror for Solicitation Number HDEC02-06-R-0005 (Area 3, Groups 1 and 2). AR01989-990; AR02092. *Deny* that Emerald Coast was "rated third in line" for award of Contract for Area 5, Group 1. There was never a trade-off between Emerald Coast and any offerors for Area 5, Group 1 other than MPG. AR02076-082.

5. Until recently, DeCA and military commissary stores have acquired produce through the support of Defense Supply Center Philadelphia ("DSC-P"). DSC-P used a multi-layered acquisition system of 4 Defense Subsistence Offices, 10 Produce Buying

Offices, and Field Produce Buyers to acquire most of its produce from "terminal markets." Terminal markets are basically wholesale markets where farmers bring produce to sell, but the terminal market method of produce acquisition is generally no longer used in the commercial grocery business. Over time, most commercial commissaries have begun produce directly from farmers, cutting out the middle man and reducing costs. Terminal markets, however, still supply institutional food that is not the same high quality as produce sold directly to consumers in retail markets. Consequently, DSCP's use of terminal markets to acquire produce for DeCA military commissaries was becoming problematic. AR00095-00102.

Response:

*Denied*. None of these averments are set out in the Administrative Record. Rather, the Administrative Record, a written "Justification for Other Than Full and Open Competition" dated December 17th, 2004 reflects only that DeCA supposed that the cost of fresh fruits and vegetables to the patrons of its military commissary stores might be reduced if DSC-P "mark-ups built into the pricing structure [DeCA reimbursement of $7 million charged by DSC-P to DeCA for DSC-P services in obtaining

**Protected Information is Enclosed in Square Brackets**

yearly for the account of DeCA $375 million in produce]" could be eliminated by DeCA contracting directly in the commercial marketplace for fresh fruits and vegetables. AR00096.

6. In May of 2004, Military Produce Group submitted a proposal to DeCA proposing a new, commercial based method for DeCA's fresh fruits and vegetables business. AR00008. MPG proposed a business plan modeled after the commercial sector and eliminating the need for DSCP's involvement and a layer of cost. AR00008. MPG's proposed business model consolidated produce ordering and data and system management, providing DeCA with a dedicated order processing center customized for DeCA's needs. AR00008. MPG's business model also offered DeCA the opportunity to increase savings through volume, long term contract like those used in the commercial sector. AR00009.

Response:

*Admit* only that MPG submitted a proprietary unsolicited proposal, Federal Acquisition Regulation, Subpart 15.6, and that MPG claimed that its unsolicited proposal was "modeled after the commercial sector." AR00008. *Admit* only that MPG propo-

sed a privately-developed computerized ordering system "comparable to those in the top private commercial sector." AR00011. *Admit* only that MPR proposed to "establish annual long term contracts/programs on all high volume items (i.e. bananas, lettuce, tomatoes, grapes, apples, potatoes, onions, etc.)." AR00009.

7. On December 16, 2004, DeCA awarded a test contract to MPG to provide produce to 20 store locations in Georgia, North Carolina, South Carolina, Virginia, and West Virginia. The purpose of the test contract was to test the capabilities of MPG's commercial based business model to provide produce to military commissaries. AR00003. The test was successful and on September 22, 2005, DeCA awarded competitive contract number HDEC02-05-D-0013 to MPG for 22 stores in Area 1. AR00004. MPG is currently performing this contract.

Response:

*Deny* that DeCA ever awarded a test contract to MPG. *Admit* that Contract Number HDEC02-05-D-0013 was awarded to MPG on September 22nd, 2005 and that MPG is currently performing this Contract.

8. On March 20, 2006, DeCA issued solicitation number HDEC02-06-R-0005 for 77 military commissary locations in Areas 3 and 5, in the Eastern portion of the United States. Area 5 (Groups 1 and 2 encompassed the Southeast portion of the United States.[1]

[1] By Amendment 0002, dated April 21, 2006, the agency changed the designation for Area 5, Groups 3 and 4 to Area 5, Groups 1 and 2. While MPG's proposal refers to Area 5, Groups 3 and 4m we refer to them per the agency's amendment at Area 5, Groups 1 and 2.

Response:

*Admitted.*

9. The source selection methodology for the solicitation was to be Best Value, Trade-Off. AR00601. "The process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest price proposal or other than the highest technically rated offer." AR00601. Under the terms of the solicitation, "Technical Capability is significantly more important than Past Performance. Technical Capability and Past Performance when combined are significantly more important than Price, as this provides the contracting officer with the broadest discretion in determining the best value for the Government." AR00558.

Response:

*Admitted.*

10. The Evaluation Plan called for a Technical Evaluation Board to assess the technical capabilities and past performance of each offeror in accordance with the solicitation requirements and evaluation criteria in a "written technical consensus document." AR00560. The TEB consisted of a Chairperson and two Commissary Management Specialists who are experts in their fields with regard to the requirements in the solicitation. AR00560. The TEB members also possessed the necessary "institutional knowledge in commissary produce department operations." AR00560.

Response:

*Admit* only that the Evaluation Plan called for a Technical Evaluation Board consisting of a Chairperson and two Commissary Management Specialists. *Admit* only that the Evaluation Plan *required* that the members of the Technical Evaluation Board possess certain necessary institutional knowledge. *Deny* specifically that the members of the Technical Evaluation Board *in fact possessed* the necessary institutional knowledge.

**Protected Information is Enclosed in Square Brackets**

11. The offerors were required to submit technical proposals covering: (1) Experience; (2) Quality Program; (3) Production Capability/Distribution Plan: and (4) Additional Support/Promotion Plan. AR00598—00600. Under the Evaluation Plan, within the Technical Capability factor, the offeror's Experience, Quality Program, and Production Capability/Distribution Plan sub-factors were to be of equal importance, while the Additional Support/Promotion Plan sub-factor was slightly less important. AR00558-00559.

Response:

*Admitted.*

12. Under the Experience sub-factor, the solicitation asked for a description of past experience with work of a similar nature, scope and complexity, including experience buying, selecting product assortment, pricing, order processing, inventory management, and delivery. AR00598. The solicitation asked for a company profile with "related experience of individuals who will be involved with all aspects of performance. . . ." AR00598. The solicitation also required a description of experience

with online or web-based pricing and ordering systems and a description of the system that would be used to provide efficient operations. AR00598.

Response:

*Admit* only that the Solicitation required a detailed description of the firm's experience and a "company profile with related experience of individuals who will be involved . . . ." *Deny* that the Solicitation asked for a description of the automation solution "that would be used to provide efficient operations." Instead, the Solicitation requirement is for a "fully functional automation solution, not a proposed system." Administrative Record, at AR00598.

13. Under the Quality Program sub-factor, the solicitation asks for a detailed description of the offeror's quality control and quality assurance procedures, including food safety, product recall procedures, sanitation, pest management, security safeguards, and back-up plans for food safety issues. The sub-factor also asked for a detailed description of how the offeror works with USDA inspectors and the offeror's inspection procedures. AR00599.

Response:

*Admitted.*

14. Under the Production Capability/Distribution Plan Sub-factor, the solicitation requests detailed information regarding the offeror's "capability to handle the product requirements of the commissary locations that will be supported under the resulting contract," the key concepts of distribution operations, detailed information regarding how and where food is stored between time of receipt and delivery to the store, methods used in delivering produce with multiple temperature requirements and the length of start-up time the offeror will require. AR00599.

Response:

*Admitted.*

15. The solicitation clearly indicated that contract performance would commence 30 days after award. It stated:

> Provide the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer); however the offeror may propose an alternative timeframe for consideration.

AR00599. The solicitation is clear that the offeror may propose an alternative to the 30 days, but it is also clear that the Agency is not required to accord it the same weight as an offer to comply with the Agency's need to start Contract performance within 30 days.

Response:

*Deny* that the Solicitation "clearly indicated" or otherwise that Contract performance would commence thirty calendar days after Contract Award. *Deny* that the Solicitation announced an Agency need to start Contract performance within 30 days or otherwise. *Admit* that the Solicitation provided as is quoted.

16. Within the Past Performance Evaluation factor, Product Delivery and Quality History/Customer Satisfaction sub-factors were all of equal importance in relation to each other while the Business Relations sub-factor was slightly less important. AR005-59. The agency was permitted to use the commercial business references provided by the offeror and additional sources of information such as government agencies. AR-00602.

Response:

*Admitted.*

17. The Evaluation criteria clearly state that "the price evaluation will be based on the offeror's *proposed minimum percentage of patron savings*." AR00558; AR00601 (emphasis added). This proposed percentage of patron savings was to be at least 38%. AR00595. The offeror was to submit pricing as (1) Minimum Percentage of Patron Savings and (2) Unit Prices for a specified period of time, AR00595. The solicitation states:

> The minimum percentage of patron savings is the amount the contractor will save the commissary patron on all core items over the selling price of the same or similar items from comparable commercial locations within the local commuting area and/geographical area within a 20-mile radius of the commissary location [ . . . ] called *Market Basket Pricing*. The percentage of patron savings is calculated by averaging the savings on all core items at each commissary store. The overall percentage of patron savings is the average percentage for all commissary store locations within the group.

AR0595. Unit prices were to be provided to "indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism analysis." AR0595.

<u>Response</u>:

**Protected Information is Enclosed in Square Brackets**

*Deny* that the Solicitation announces that proposed percentage of patron savings alone is to be the basis of the Price Evaluation. Rather, the Solicitation announces that the Price Evaluation is to be based on proposed percentage of patron savings *and on* proposed unit prices. Administrative Record, at AR00602. *Admit* that the Solicitation announces as is quoted.

18. In its Technical Proposal, MPG explains that it is a veteran owned fresh fruit and vegetable distributor that is currently providing DeCA with "a procurement, warehousing, distribution, order processing, and customer service program in Area 1 Eastern Region and Guantanamo Bay, Cuba." AR01680. In its proposal, MPG discusses its recent contracts for DeCA and the improvements it has implemented to DeCA's commissary sales and performance. AR01680. MPG then proposes to provide the same procurement systems as that provided under the Area 1 contract for DeCA. AR01681.

Response:

*Deny* that MPG has more than just one single contract with DeCA. *Admit* the remainder of the Statement of Fact.

19. MPG also provided detailed information regarding its past experience, AR01680-01681, including the resumes of its principal employees, AR01690-1709. All of MPG's principal employees are highly experienced in the produce business.

Response:

*Admit* that MPG that provided information concerning MPG's past performance experiences, including resumes. *Deny* that all the resumes identified are those of principal employees of MPG. *Deny* that all of MPG's principal employees are highly experienced in the produce business. *Admit* that two of the resumes identified by MPG, those of employees of Rexville Produce, Toa Alta, Puerto Rico, evidence that these persons are "highly experienced in the produce business."

20. MPG operates out of 3 multi-temperature distribution centers throughout the Southeast. AR01681. All of its facilities are multi-temperature distribution centers with banana/tomato ripening rooms with packaging and bagging capability. AR01681.

Response:

*Deny* that MPG operates out of three multi-temperature distribution centers or that these three multi-temperature distribution centers are in the Southeast or that these three distribution centers have multi-temperature capability. One of these three multi-temperature distribution centers identified in MPG's Competitive Proposal is that of Rexville Produce, and Rexville Produce's multi-temperature distribution center is in Toa Alta, Puerto Rico and not in the Southeast. The other multi-temperature distribution center identified in MPG's Competitive Proposal belongs to Norfolk Banana, not to MPG.

21. MPG submitted a proposal for Area 3, Groups 1 and 2, and for Area 5, Groups 1 and 2. AR01355. MPG teamed with partners for its proposal, including a teaming partner for Area 5. AR01681-01682, AR01715-01716, AR01721-01722. Because the solicitation did not require separate proposals for Groups within an Area, MPG's Technical Proposal was evaluated for the whole of Area 5, including both Groups 1 and 2. AR01720-01728.

<u>Response</u>:

*Admit* that MPG submitted a Competitive Proposal for Area 3, Groups 1 and 2 and for Area 5, Groups 1 and 2. *Admit* that MPG proposed a teaming partner for Area 5, Group 2. *Deny* that MPG's Competitive Proposal for Area 5 was evaluated for the whole of Area 5 because the Solicitation did not require separate Proposals for Groups within an Area. In fact, the Solicitation provided that:

> A single solicitation containing the four geographical groupings will be issued. *Each group will be independently evaluated* and awarded on an "all or none basis."

Administrative Record, at AR00568, AR00571, AR00572 (Emphasis added). Likewise, the Solicitation provided that "[t]he source selection decision for contract award will be made for each individual group . . . ." Administrative Record, at AR00603.

22. Emerald submitted a proposal for Area 5, Group 1 only. Its Technical Proposal, however, was ranked significantly lower than MPG's and significantly lower than that of another offeror, Pro*Act. The scoring information and price analysis was as follows:

**Protected Information is Enclosed in Square Brackets**

| Company | Technical Capability & Past Performance Scores | Proposed Minimum % of Patron Savings |
|---|---|---|
| MPG | [172] | [41%] |
| Pro*Act | [154] | [43%] |
| Emerald | [142] | [43%] |
| M&S Foods | [121] | [45%] |

AR 01949-01962; AR01968; AR02042.

Response:

*Admitted.*

23. In the debriefing, the agency noted many deficiencies in Emerald's technical proposal. The agency observed that Emerald "failed to provide sufficient information regarding alternate sources of supply in the case of food safety issues"; "failed to provide specific information regarding inspection procedures, shelf life dating procedures, and buying procedures used to ensure that the produce delivered meets the grade

and quality standards required by DeCA to include expiration dates and produce rotation in the warehouse"; and "failed to provide specific information regarding the temperatures used in its storage areas." AR01345.

Response:

*Deny* that these observations of the DeCA Contracting Officer were considered to be Deficiencies. *Admit* that these were specific Weaknesses observed by the DeCA Contracting Officer.

24. In its evaluation of MPG's Production Operation/Distribution Plan Sub-factors from its Technical Proposal, the agency noted:

> MPG's proposal was determined to have a strong production operation and distribution plan and clearly detailed their procedures from receipt of products to delivery to the stores. Also, they sufficiently detail a very [sic] plan of action for maintaining the cold chain to ensure quality produce. MPG detailed various contingency plans to ensure service is not disrupted. MPG maintains an 118,000 square foot facility and has formidable relationship with Nash Finch MDV, one of the largest military distributors on the east coast. Additionally, their teaming partners own and lease privately owner vehicles as needed.

AR02079.

Response:

*Admitted.*

25. The source selection comparative analysis for Area 5, Groups 1 and 2 indicates that MPG is the best value for the agency for Area 5. AR02076-02091. The Decision Summary states:

> The higher technically rated and slightly higher priced proposal submitted by Military Produce Group is the best value to the Government for Area 5, Groups 1 and 2 in comparison with the other proposals considered. Military Produce Group demonstrated their strengths and capabilities to achieve and maintain successful performance in providing fresh fruits and vegetables to the commissaries in Area 5, Groups 1 and 2. The price is considered fair and reasonable on competitive pricing received on this solicitation and in comparison to the government estimate. Therefore it is determined that awarding this contract to Military Produce Group is in the best interests of the United States using trade-off procedures.

AR02093.

Response:

*Admit* that the Contracting Officer concluded, based on the scoring by the Technical Evaluation Board, that Military Produce Group's Competitive Proposal for Area 5, Group 1 was the best value.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

__________________________

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
December 29th, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, December 29th, 2006 a true and complete copy of this Counter-Statement of Facts in Response to Defendant-Intervenor's Statement of Facts was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Leslie Cayer Ohta, Esq.

Electronic Mail: Leslie.Ohta@usdoj.gov

Attorney of record for Defendant,
Defense Commissary Agency.

I also certify, under penalty of perjury, that on Friday, December 29th, 2006 a true and complete copy of this Counter-Statement of Facts in Response to Defendant-Intervenor's Statement of Facts was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Daniel R. Weckstein, Esq.

Electronic Mail: dweckstein@vanblk.com

Attorney of record for Defendant-Intervenor,
Military Produce Group, LLC.

**Protected Information is Enclosed in Square Brackets**