**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| **Defendant,** | ) | |
| **and** | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

**DANIEL R. WECKSTEIN**

**Vandeventer Black, LLP**
**500 World Trade Center**
**101 W. Main Street, Suite 500**
**Norfolk, VA 23510**
**Attorney of record for Defendant-Intervenor,**
**Military Produce Group, LLC**

**OF COUNSEL:**

**WALTER B. MARTIN**
**STEPHANIE M. HIMEL-NELSON**

**Vandeventer Black, LLP**
**500 World Trade Center**
**101 W. Main Street, Suite 500**
**Norfolk, VA 23510**

December 19, 2006

**AGREED UPON REDACTED COPY – MAY BE MADE PUBLIC**

# Table of Contents

**Table of Contents** .......... **2**

**Table of Authorities** .......... **3**

**Questions Involved** .......... **4**

**Statement of Facts** .......... **4**

**Argument** .......... **4**

I. Emerald Produce Lacks Standing to Protest the Award .......... 4

II. The Contracting Officer's Decision was Reasonable and Consistent .......... 5

A. The Cost Realism Analysis was Consistent and Reasonable .......... 7

B. The Evaluation of Production Capabilities/Distribution Plan was Reasonable .......... 11

C. The Contracting Officer's Best Value Determination was Proper .......... 13

D. Emerald Has Not Met the Standard for Injunctive Relief .......... 16

**Conclusion** .......... **16**

**Certificate of Service** .......... **18**

# Table of Authorities

**Statutes**

28 U.S.C. § 1491(b)(4) .................................................................................................. 4

5 U.S.C. § 706(2)(A)...................................................................................................... 4

**Cases**

American Fed'n of Gov't Employees v. United States, 258 F.3d 1294 (Fed. Cir. 2001)............... 5

Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87 (1983)...................... 7

Banknote Corp. of America, Inc., 56 Fed. Cl. 377 (2003)........................................................... 7

Beta Analytics Int'l., Inc. v. United States, 44 Fed. Cl. 131 (1999)......................................... 7, 16

CACI Field Servs., Inc. v. United States, 13 Cl. Ct. 718 (1987), aff'd, 854 F.2d 464 (Fed.Cir.1988)........................................................................................................ 13

CACI, Inc.-Federal v. United States, 719 F.2d 1567 (Fed. Cir. 1983)......................................... 7

Galen Medical Assocs., Inc. v. United States, 56 Fed. Cl. 104 (2003); aff'd, 369 F.3d 1324 (Fed. Cir. 2004)...................................................................................................... 5, 6, 7, 8

Gulf Group, Inc. v. United States, 56 Fed. Cl. 391 (2003)............................................................ 7

Hydro Eng'g, Inc. v. United States, 37 Fed. Cl. 448 (1997)....................................................... 12

Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F. 3d 1324 (Fed. Cir. 2001). ........................................................................................................................ 5, 16

Information Sciences Corp. v. United States, 73 Fed. Cl. 70 (2006)............................................ 7

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29 (1983)............................... 8

Omega World Travel v. United States, 54 Fed. Cl. 570 (2002) ................................................ 6, 7

OTI Am., Inc. v. United States, 68 Fed. Cl. 646 (2005)............................................................... 8

Software Testing Solutions, Inc. v. United States, 58 Fed. Cl. 533 (2003).................................... 7

**Protected Information Redacted**

## Questions Involved

I. Whether Emerald has standing to protest the award of the Contract to MPG.

II. Whether the Agency's decision to award the Contract to MPG was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

## Statement of Facts

MPG refers the Court to its Statement of Facts filed with this Motion and incorporated herein.

## Argument

### I. Emerald Produce Lacks Standing to Protest the Award

As an initial matter, Emerald lacks standing to challenge the award because it is third in line for award and cannot therefore show that it has a direct economic interest in the award. To have standing, a plaintiff must be an "interested party." See 28 U.S.C. § 1491(b)(1)(2006). The Federal Circuit defines "interested party" as "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." American Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1299-1302 (Fed. Cir. 2001); Galen Medical Assocs., Inc. v. United States, 56 Fed. Cl. 104, 108 (2003); aff'd, 369 F.3d 1324 (Fed. Cir. 2004). This standard eliminates protestors that "finish lower than second after evaluation." See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001); Galen Medical Assocs., Inc. v. United States, 56 Fed. Cl. at 108.

Here, Emerald finished third after evaluation. The technical scores and proposed minimum percentage of patron savings for Area 5, Group 1[1] were as follows:

| Company | Technical Capability & Past Performance Scores | Proposed Minimum % of Patron Savings | Proposed Delivered Price[2] |
|---|---|---|---|
| MPG | [ ] | [ ] | [ ] |
| Pro*Act | [ ] | [ ] | [ ] |
| Emerald | [ ] | [ ] | [ ] |
| M&S Foods | [ ] | [ ] | [ ] |

AR01949-01962; AR01968; AR02042. Under the solicitation terms, Technical Capability was significantly more important than Past Performance and, combined, Technical Capability and Past Performance were significantly more important than price. AR00558. Clearly, Pro*Act was next in line for award and Emerald has no standing to protest the award to MPG.

Moreover, while Emerald appears to be protesting the award of the entire Contract number HDEC02-06-D-0014, encompassing Area 5, Groups 1 *and* 2, Emerald only submitted a proposal for Group 1. Emerald therefore has no standing to protest award of the portion of the Contract encompassing Group 2.

## II. The Contracting Officer's Decision was Reasonable and Consistent

The standard of review in a post-award bid protest is narrow and deferential. The Court may only set aside an award if the Agency's actions were arbitrary, capricious, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A) (2006); see also 28 U.S.C. § 1491(b)(4) (2006); see, e.g., Galen Medical Associates v. United States, 56 Fed. Cl. at 108 (2003); Omega

[1] It should be noted that MPG's proposal for Area 5 encompassed both Groups 1 and 2, thus Groups 1 and 2 were evaluated together. Emerald, however, only submitted a proposal for Area 5, Group 1.

[2] The Proposed Delivered Price was not the price evaluated by the Agency. See Argument Part III.A.1. Emerald appears to misunderstand how the price realism and best value trade-off analyses were performed.

World Travel v. United States, 54 Fed. Cl. 570, 574 (2002). The "arbitrary and capricious" standard requires only that the final decision reached by an Agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decision making." Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 105 (1983); see also Software Testing Solutions, Inc. v. United States, 58 Fed. Cl. 533, 538 (2003); Gulf Group, Inc. v. United States, 56 Fed. Cl. 391, 396 (2003). "Only in extremely limited circumstances" will the Court interfere with the government procurement process. See Information Sciences Corp. v. United States, 73 Fed. Cl. 70, 96 (2006); CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983).

The burden is therefore on plaintiff to show that, but for the alleged error in the procurement, it likely would have been awarded the contract. See Galen Medical Assocs., Inc. v. United States, 56 Fed. Cl. at 108; Omega World Travel, 54 Fed. Cl. at 574. A protestor's burden is higher for a negotiated procurement because the contracting officer has broad discretion when engaging in an inherently judgmental process. Galen Medical Assocs., Inc., 56 Fed. Cl. at 108.

Injunctive relief is relatively drastic in nature. Therefore, a plaintiff must demonstrate that its right to such relief is clear. See Banknote Corp. of America, Inc., 56 Fed. Cl. 377, 380-81 (2003); cf. Beta Analytics Int'l., Inc. v. United States, 44 Fed. Cl. 131, 137 n.10 (1999). An injunction generally will not be granted unless the Court first finds the applicant has a probability of success on the merits of its claim, meaning "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Galen Medical Assocs., Inc. v. United States, 56 Fed. Cl. at 108.

The Agency need only provide a "coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a 'heavy burden' of showing that the award

decision had no rational basis." See id. at 1333. An Agency decision lacks a coherent and reasonable explanation only "if the agency... entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43 (1983); see also OTI Am., Inc. v. United States, 68 Fed. Cl. 646, 653 (2005) (applying this test to a bid-protest action).

Here, the Agency's decision was clear, consistent, and well documented. Emerald's assertions to the contrary, MPG is the highly experienced, well-qualified contractor that actually proposed and developed the new commercial based Fresh Fruits and Vegetables ("FF&V") program for DeCA. The Agency did not use any undisclosed evaluation factors. Rather, the Agency evaluated the proposals equally and consistently based on the evaluation factors stated in the solicitation. As the source selection documents clearly indicate, Emerald's Quality Program and Production Capability/Distribution Plans, while meeting minimum Agency requirements, simply were not as detailed or extensive as MPG's plan. As a result, the Agency properly determined that MPG provided the best value for the Contract. Moreover, because Emerald has failed to show that it has a likelihood of succeeding on the merits of this case, it has not shown that it is entitled to injunctive relief.

**A. The Cost Realism Analysis was Consistent and Reasonable**

The Cost Analysis performed by the Contracting Officer was consistent and reasonable. In fact, MPG is far more experienced in the type of contract awarded here than Emerald and Emerald seems to have a basic misunderstanding of how prices were evaluated.

Emerald argues that the Contracting Officer's evaluation must be inconsistent because, although Emerald had the highest Delivered Price and Proposed Adjusted Price, it did not receive the highest evaluation score. Emerald states that the Contracting Officer's price realism analysis found a correlation between lower-priced Competitive Proposals and lower Overall Combined Technical Capability and Past Performance Scores. Although the statement is found in the Administrative Record, it was made as a general observation not a rule. Moreover, Emerald fails to grasp that the price evaluated was not a bottom line number, but a Percentage of Patron Savings. <u>See</u> Discussion <u>infra</u> II.A.1. Even if the bottom line price were relevant, MPG's Proposed Delivered Price of [ ] is similar to other offerors, including Pro*Act's Proposed [ ], the offeror next in line for award. <u>See</u> AR01968. In fact, the Contracting Officer specifically determined that MPG's price "is considered fair and reasonable based on competitive pricing received on this solicitation and in comparison with the government estimate." AR02093. Emerald actually had the highest Proposed Delivered Price of all the offerors at [ ]. The Proposed Delivered Prices were as follows:

| **Company** | **Proposed Delivered Price** |
|---|---|
| Emerald | [ ] |
| Pro*Act | [ ] |
| MPG | [ ] |
| M&S Foods | [ ] |

AR01968.

While the statement that lower prices can correlate to poor performance seems logical, an offeror's price clearly cannot *determine* technical capability. Under Emerald's rationale, it could price its proposal at twice MPG's proposed price and therefore declare itself twice as qualified.

Clearly that would be an absurd result. Rather, MPG's Proposed Delivered Price is squarely within the range of prices proposed by the most competitive offerors. Emerald's Proposed Delivered Price, however, is not.

1. <u>Emerald Misunderstands the Contracting Officer's Price Evaluation</u>.

Moreover, Emerald seems to misunderstand the Agency's price evaluations. Here, the price evaluation was not determined simply by a bottom line dollar amount, but by an evaluation of the proposed minimum percentage of patron savings. AR01966. In its solicitation, the Agency asked for a Delivered Price and added 7% to determine the selling price, called the Proposed Adjusted Price. The Agency then compared the Proposed Adjusted Price to an average of normal retail selling prices, the "Market Basket Price," in a specified area to determine the percentage of savings that patrons of DeCA stores would obtain over retail. AR01966. The percentage of savings provided DeCA with, what it determined, was the best indicator for price comparison and reasonableness for evaluation purposes. AR01966. This *percentage* was the price evaluation factor that DeCA used to determine the best value for the Agency. The total dollar amount of the proposals was irrelevant to the source selection. The proposed percentage of savings for MPG was [ ], [ ] for Pro*Act, and [ ] for Emerald. <u>See</u> table <u>infra</u> Part I, and below. Although the proposed percentage of savings for MPG was slightly lower than Emerald or Pro*Act's, technical capabilities were significantly more important than price. Therefore the Contracting Officer rightly determined that MPG was the best value after comparing MPG's combined technical and past performance score and Proposed Percentage of Patron Savings with Pro*Act and Emerald's far lower scores and similar Proposed Savings Percentages:

| Company | Technical Capability & Past Performance Scores | Proposed Minimum % of Patron Savings |
|---|---|---|
| MPG | [ ] | [ ] |
| Pro*Act | [ ] | [ ] |
| Emerald | [ ] | [ ] |

AR01949-01962; AR01968; AR02042. This determination is exactly the type of cost/technical trade-off that is given great weight by the courts in the review process. While there is no direct correlation between the two, it would not be unreasonable for the Court and Source Selection official to conclude that a 21% difference in the more important technical categories is more than sufficient to justify a best value determination where there is only a 5% price differential.[3]

Finally, even if some problem had existed with the Contracting Officer's analysis of MPG's price, Emerald still would not have been awarded the Contract. Rather, Pro*Act was next in line for award with a higher technical score than Emerald and the same proposed minimum percentage of patron savings as Emerald. Pro*Act could not have lost any reasonable cost/technical trade-off under the Solicitation to Emerald with such scores.

2. Contrary to Emerald's assertions, MPG is highly experienced.

Throughout its brief, Emerald attempts to cast doubt upon MPG's qualifications and experience. However, a simple review of the administrative record reveals that MPG was formed by highly experienced commercial and government produce vendors to "increase the efficiencies" of DeCA's fresh fruits and vegetables business. AR00008. MPG was, in fact, largely responsible for developing the commercial based business plan DeCA is now implementing through this Contract award. See AR00008-AR000077. In May of 2004, MPG submitted a proposal to DeCA and DSC-P with its ideas for increasing efficiency, cutting costs,

and consolidating produce ordering and data and systems management. In December of 2004, DeCA awarded a test Contract to MPG for the new commercial based produce system for January to September of 2005. AR00003. The system worked beautifully. See AR00003-000005, AR00085-00086, AR00095-00102. On September 22, 2005, DeCA awarded competitive Contract # HDEC02-05-D-0013 to Military Produce for 22 stores in Area 1. AR00004. MPG is currently performing that Contract. As the evaluation of MPG's experience indicates, MPG and its teaming partners have 8 years of experience supplying military commissaries and MPG is "well established as a retail distributor dedicated to servicing the military." AR02078. MPG and its principals have almost 50 years of combined experience in the commercial produce business. AR01690-01709. In fact, MPG's principals created the company solely to service military commissaries, to make DeCA more efficient and to make DeCA's operations more in accordance with commercial practices. See AR00008-AR000077.

Emerald, however, did not demonstrate in its proposal that it can adequately perform the Contract at issue here. While Emerald's past performance demonstrates its abilities in delivering produce, its proposal does not indicate that it can assist with orders, increase product sales, or handle emergencies. See AR01064-01083. The Agency also noted many other deficiencies with Emerald's proposal. See Discussion infra Part II.B.2. As can be seen in MPG's initial 2004 proposal to DeCA and DSC-P, MPG is uniquely qualified to perform this Contract, having created the model and performed the test Contract. See id.

**B. The Evaluation of Production Capabilities/Distribution Plan was Reasonable**

1. No undisclosed evaluation factor was used.

Contrary to Emerald's assertions, DeCA did not use an undisclosed evaluation factor to downgrade Emerald. The Agency noted Emerald's request for 60 days start-up time when the

---

[3] Technical difference: [ ] = 21%. Cost difference: [ ] = 5%.

solicitation clearly stated that performance would commence 30 days after contract award. AR00599. However, in order to show entitlement to relief on a claim that an Agency used undisclosed evaluation factors, Emerald must prove that the government evaluated the proposals received on a significantly different basis than announced in the solicitation and that Emerald was prejudiced as a result. See Hydro Eng'g, Inc. v. United States, 37 Fed. Cl. 448, 471 (1997); CACI Field Servs., Inc. v. United States, 13 Cl. Ct. 718, 728 (1987), aff'd, 854 F.2d 464 (Fed.Cir.1988).

The solicitation at issue here clearly indicated that contract performance would commence 30 days after award. It stated:

> Provide the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer; however, the offeror may propose an alternative time frame for consideration.

AR00599. The solicitation is clear that the offeror may propose an alternative to the 30 days, but it also clear that the Agency is not required to accord it the same weight as an offer to comply with the Agency's need to start Contract performance within 30 days. In further discussions, the Agency requested clarification regarding why Emerald needed 60 days. Emerald's need for the additional time to hire 45 new employees and purchase significant amounts of new equipment raised concerns that Emerald's price as proposed might not be feasible. AR01951. Moreover, it was perfectly reasonable for the Agency to determine that a more highly rated offer with a 30 day start-up period was a better value than Emerald's lower rated proposal with a 60 day start-up period.

2. Emerald's technical proposal was deficient in numerous other ways.

The extended start-up time is not by any means the only deficiency noted in Emerald's technical capabilities. Rather, in the debriefing, the Agency noted that Emerald "failed to provide sufficient information regarding alternate sources of supply in the case of food safety issues"; "failed to provide specific information regarding inspection procedures, shelf life dating procedures, and buying procedures used to ensure that the produce delivered meets the grade and quality standards required by DeCA to include expiration dates and produce rotation in the warehouse"; and "failed to provide specific information regarding the temperatures used in storage areas." AR01345. Although the Agency did not use the 30 day start-up period as an undisclosed evaluation factor, even if it had, at worst this is a "harmless error." Emerald cannot show that it would have won the award but for the assessment of its start-up period. Rather, Emerald's numerous other technical deficiencies, particularly when compared to MPG's "Exceptional" and Pro*Act's "Very Good" technical evaluations, would have precluded an award to Emerald.[4]

**C. The Contracting Officer's Best Value Determination was Proper**

The Contracting Officer's best value determination was proper and rationally based. Contrary to Emerald's assertions, the Contracting Officer performed a detailed evaluation of MPG's proposal versus Emerald's and determined that MPG would provide the best value for DeCA. Emerald also asserts that the Agency made a mistake in evaluating MPG's past experience and somehow improperly gave MPG credit for the experience of a non-existent teaming partner for Area 5, Group 1. However, a review of the Administrative Record reveals that Emerald is mistaken.

[4] MPG's Technical Capability score was [ ], Pro*Act's was [ ], and Emerald's was [ ].

1. <u>MPG did properly indicate a teaming partner for Area 5.</u>

Emerald asserts that the Technical Evaluation Board "confused" MPG's proposal for Area 5, Group 2 with that of its proposal for Area 5, Group 1 and that MPG did not indicate a teaming partner for Group 1. Emerald is mistaken. In fact a review of the Administrative Record reveals that Emerald clearly states in its proposal for Area 5 that Emerald has teamed with Rexville Produce. AR01686. MPG's proposal indicates that Rexville Produce will team with MPG for Fort Buchanan in Puerto Rico. AR01686. MPG will support all other bases under Group 1. AR01682-01686. The solicitation did not require separate proposals or evaluations for each group within an area. Therefore, MPG's proposal for Area 5, both Groups 1 and 2 was evaluated as a whole. The Technical Evaluation Board noted this in the direct evaluation of MPG versus Emerald stating "MPG and its teaming partners have 15 years of combined experience and are well established as a retail distributor dedicated to servicing the military." AR02078. This evaluation referred to MPG's proposal for Area 5 in its entirety. If anything, the evaluation improperly gave Emerald credit for a teaming agreement, stating "Emerald *and its teaming partners* have 15 years of experience providing fresh fruits…." AR02078. Emerald did not disclose any teaming agreements in its proposal. Clearly, the evaluation "mistake" to which Emerald refers had no bearing on the Contract award.

2. <u>MPG is highly experienced in supplying produce to military commissaries and in the commercial produce market.</u>

Emerald continues to mislead the Court regarding MPG's experience in the industry, claiming that the Contracting Officer's trade-off analysis could not possibly have been proper because it awarded the Contract to an inexperience MPG. However, as indicated in the proposals and the Administrative Record, MPG is uniquely and well qualified to perform this Contract. <u>See</u> Argument <u>infra</u> Part II.A.2.

3. The Contracting Officer performed a detailed trade-off analysis and properly determined that MPG offered the best value.

Emerald also argues that the Contracting Officer's trade-off analysis was not detailed enough to provide a basis for determining that MPG offered the best value. The Administrative Record, however, reveals a thorough and detailed analysis of all offerors individually, both before and after discussions (AR01962-AR02043), and a comparison and analysis of MPG to every other offeror in the competitive range for Area 5 (AR02076-02091). Only after the conclusion of this detailed analysis does the Decision Summary indicate that the Agency determined that MPG provided the best value, stating:

> The higher technically rated and slightly higher priced proposal submitted by Military Produce Group is the best value to the Government for Area 5, Groups 1 & 2 in comparison with the other proposals considered. Military Produce Group demonstrated their strengths and capabilities to achieve and maintain successful performance in providing fresh fruits and vegetables to the commissaries in Area 5, Groups 1 &2. The price is considered fair and reasonable based on competitive pricing received on this solicitation and in comparison with the government estimate. Therefore, it is determined that awarding this contract to Military Produce Group is in the best interests of the Government using trade-off procedures.

AR02093.[5]

Moreover, no rational trade-off analysis could have awarded the Contract to Emerald. Emerald was simply not next in line for award. Rather, both MPG and Pro*Act received technical evaluation scores significantly higher than Emerald's. While MPG's proposed percentage of patron savings was slightly lower than MPG's, Pro*Act's was identical at [ ]. There was clearly no rational justification of Emerald's short comings that would have warranted an award to Emerald. Emerald's protest does not challenge Pro*Act's higher technical score.

[5] Emerald cites AR01350 as containing the whole of the Contracting Officer's trade-off analysis. That reference, however, is simply to a summary provided for debriefing.

### D. Emerald Has Not Met the Standard for Injunctive Relief

Injunctive relief is relatively drastic in nature. Therefore, a plaintiff must demonstrate that its right to such relief is clear. See Impresa Construzioni v. United States, 238 F.3d 1324, 1332 (2001); Banknote Corp. of America, Inc., 56 Fed. Cl. 377, 380-81 (2003); cf. Beta Analytics Int'l., Inc. v. United States, 44 Fed. Cl. 131, 137 n.10 (1999). An injunction generally will not be granted unless the Court first finds the applicant has a probability of success on the merits of its claim, meaning "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F. 3d at 1332.

Here, the Contracting Officer's decision was patently rationally and reasonably based and Emerald can show no violation of regulation or procedure. Clearly, as detailed above, Emerald has no probability of success on the merits and is therefore not entitled to injunctive relief.

## Conclusion

For all of the reasons set forth in the foregoing Brief in Opposition of Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record, MPG respectfully requests that the Court enter Judgment for the Defendant and Defendant-Intervenor on this Administrative Record.

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

/s/ Daniel R. Weckstein
By:________________________________
Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670

E-mail: dweckstein@vanblk.com

Of counsel

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

**Certificate of Service**

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail and facsimile transmission this 19th day of December, 2006 to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliott Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

/s/ Daniel R. Weckstein
By:________________________________
Of Counsel