**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| **Defendant,** | ) | |
| **and** | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT-INTERVENOR'S COUNTER-STATEMENT OF FACTS IN RESPONSE TO STATEMENT OF FACTS OF PLAINTIFF EMERALD FINEST PRODUCE CO., INC.**

Pursuant to Rules 56.1(b)(1) of the Rules of the United States Court of Federal Claims the Defendant-Intervenor, Military Produce Group, LLC ("MPG"), respectfully submits its Counter-Statement of Facts in response to the Statement of Facts submitted by the Plaintiff, Emerald Coast Finest Produce Co., Inc. ("Emerald Coast").

**<u>COUNTER STATEMENT OF FACTS</u>**

1. Emerald Coast is a Florida corporation and a small business fresh produce distributor that has for over 20 years served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi.

<u>Response:</u>

**Agree.**

2. Defendant is Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia (DeCA). DeCA is a Department of Defense Agency established under 10 U.S.C. § 136(b) that operates military commissary stores formerly run by the Military Components. 32 C.F.R. § 383a.4. DeCA has the authority to enter into and administer Contracts, but this only "in accordance with applicable laws, DoD [Department of Defense] regulations, [and] the FAR [Federal Acquisition Regulation] and the DFARS [Defense Federal Acquisition Regulation Supplement]...." 32 C.F.R. § 383a.7.

Response:

**Agree, except that DeCA was established under 10 U.S.C. § 2481.**

3. Military Produce Group, LLC, 1106 Ingleside Road, Norfolk, Virginia 23502¬5609 (Military Produce Group) is a Virginia limited liability corporation chartered on May 26th, 2004. Military Produce Group was established in 2004 to make sales of fresh fruits and vegetables only to DeCA. Military Produce Group made no such sales in 2004.

Response:

**Agree.**

On September 20th, 2005 Military Produce Group was awarded Contract Number HDEC02-05-D-0013 to supply fresh fruits and vegetables to 20 military commissary stores in Tidewater Virginia, in North Carolina, in South Carolina, at Fort Gordon, Georgia and, as well, at Keflavik, Iceland and at Guantanamo Bay, Cuba. This is Area 1 of DeCA's East Region. Contract Number HDEC02-05-D-0013 is effective for a Base

Term of 24 months and 2 12-month Option Periods. Administrative Record, at AR00186 through AR00213.

Response:

**Agree.**

4. Military commissary stores are operated on Department of Defense installations for the economic benefit of military personnel, their families, and some few other persons granted access to these military commissary stores. Military commissary stores stock and sell grocery food products (e.g., baby foods, canned goods, and soft drinks); nonfood products (e.g., tobacco products, health and beauty aids, and magazines); meat, poultry, and seafood; and fresh produce. 10 U.S.C. § 2484(b). Military commissary stores are operated similar to commercial supermarkets. 10 U.S.C. § 2484(a). Military commissary stores sell food and other merchandise at reduced prices, i.e., items are sold at cost plus a standard surcharge. 10 U.S.C. § 2484(d), (e). Congress allows military commissary store sales at reduced prices, 10 U.S.C. § 2481(a), in order to "enhance the quality of life of members of the uniformed services, retired members, and dependents of such members" and to "support military readiness, recruitment, and retention," 10 U.S.C. § 2481(b).

Response:

**Agree.**

5. Supply of fresh fruits and vegetables to military commissary stores was formerly the responsibility of Defense Supply Center Philadelphia, Philadelphia, Pennsylvania. Defense Supply Center Philadelphia supplied fresh fruits and vegetables to military commissary stores through a system of 4 Defense Subsistence Offices, 10 Produce Buying Offices, and Field Produce Buyers. In a video teleconference on March 15th,

2005 between DeCA and Defense Supply Center Philadelphia, Defense Supply Center Philadelphia explained its plan to reduce the costs and level of direct labor required to acquire fresh fruits and vegetables through this system of Defense Subsistence Offices, Produce Buying Offices, and Field Produce Buyers. DeCA explained its interest in "adopting the best commercial practices, achieving patron savings through lower costs, increasing customer satisfaction, and increasing tonnage and sales." Administrative Record, at AR00004.

Response:

**Agree.**

6. On October 7th, 2005 the Department of Defense authorized the transfer of responsibility for the supply of fresh fruits and vegetables to military commissary stores worldwide from Defense Supply Center Philadelphia to the Resale Contracting Division, DeCA. Transfer was to occur over a period of 12 months, commencing with military commissary stores located in the continental United States, Alaska, and Hawaii, and then continuing to DeCA's Far East and Europe Regions.

Response:

**Agree.**

7. Request for Proposal Number HDEC02-06-R-0005 was issued on March 20th, 2006 and this Acquisition seeks Competitive Proposals for the daily supply of fresh fruits and vegetables to 77 military commissary stores located in the Northeast (Area 3, Groups 1 and 2) and the Southeast (Area 5, Groups 1 and 2) in DeCA's East Region. Administrative Record, at AR00576 through AR00590.

Area 5, Group 1 includes 19 military commissary stores located in the MidSouth (from Little Rock and Barksdale Air Force Bases east through Mississippi and Alabama to western Florida-through Pensacola Naval Air Station to Eglin and Tyndall Air Force Bases). Area 5, Group 2 includes 17 military commissary stores located in the Southeast (from Key West Naval Air Station up through eastern Florida and the State of Georgia- excluding Fort Gordon, Georgia). Administrative Record, at AROO585 through AR00590.

The period of performance for the Contract or Contracts proposed by the Acquisition is a Base Term of 24 months and 2 12-month Option Periods. Administrative Record, at AR00576. The Acquisition is being conducted as a total small business set-aside. Administrative Record, at AR00578.

Response:

**Agree.**

8. In Section 4 of their Business Proposals Offerors are required to offer a Minimum Percentage of Patron Savings of at least 38 percent when comparing DeCA's selling price (including a maximum resale markup of 7 percent) to the selling price of the same or similar items from comparable commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store. This is called "Market Basket Pricing." Administrative Record, at AR00800.

The Acquisition requires pricing on 34 high volume core items currently in season for the pricing week of April 10t, 2006. This pricing is to be applied to the estimated annual quantities set out in the Acquisition at Attachment G, Tab 1. Administrative Record, at AR00839. Prices are to be F.O.B. Destination. Offerors are to set out both

Minimum Percentage of Patron Savings and unit pricing for these estimated annual quantities. Administrative Record, at AR00595.

Response:

**Agree.**

9. The offered Minimum Percentage of Patron Savings is required to be maintained "throughout the life of the contract." Administrative Record, at AR00800. The proposed Contract includes periodic surveillance requirements in order to ensure that the promised Minimum Percentage of Patron Savings is both achieved and maintained:

The contractor shall conduct Market Basket Surveys to compare the commissary's selling price to the selling price from at least 2 commercial operations. The surveys shall be conducted at least once a month at random locations (rotated throughout the group with each location surveyed at least once in a 6-month period) and contain at least 12 core items that are in season and considered main staple items. The surveys shall be at no additional cost to the Government. Multiple surveys may be required in the various geographical areas within the group in order to determine the average percentage of savings within the group. The contractor will provide the results of the pricing surveys, identifying the date when the surveys were conducted, the items surveyed, the comparable store locations checked, and all comparative prices found to the Region Produce Specialist and the Contracting Officer not later than two days from the date of the survey. The Government reserves the right to perform an independent survey to monitor contractor performance or validate contractor surveys. Administrative Record, at AR00815.

Response:

**Agree.**

10. If the promised Minimum Percentage of Patron Savings is not achieved and maintained the proposed Contract requires that military commissary prices for fresh fruits and vegetables are to be reduced, else the Contract may be terminated:

If it is determined that the minimum percentage of patron savings is not maintained on average for all core items for the entire group during a weekly pricing period, or demonstrates a trend of or inconsistent failure to achieve the minimum percentage of patron savings, the Contracting Officer may increase the frequency of the contractor-conducted pricing surveys until further notice with no additional cost to the Government. Failure to achieve or maintain the minimum percentage of patron savings may result in negative input into the contractor past performance history that may affect future contract awards, may be a part of the determination to exercise an option period, and/or may lead to termination of the contract. Administrative Record, at AR00815 through AR00816 (Emphasis added).

Response:

**Agree.**

11. Offerors are required to submit separate Technical Proposals, these in 4 Sections, each Section corresponding to an announced Sub-Factor under the Technical Capability Evaluation Factor: Section 1-Experience, Section 2-Quality Program, Section 3-Production Capability/Distribution Plan, and Section 4-Additional Support/Promotion Plan. Administrative Record, at AR00598 through AR00600.

Response:

**Deny. The solicitation does not require submission of separate Technical Proposals, only that offerors submit proposals in separate volumes. AR00592.**

12. Under the Experience Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

Describe, in detail, your firm's experience with work of similar nature, scope, complexity, and difficulty that must be performed under the resulting contract of this solicitation. Include your firm's experience in buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables to the commercial sector and/or government agencies. Also include in your narrative how many years in this business and describe whether your firm is a producer, distributor or broker. Administrative Record, at AR00598.

Response:

**Agree. However, the Experience Sub-factor also required a company profile with "related experience of individuals who will be involved with all aspects of performance…." AR00598. The Sub-factor also required a detailed description of experience with online or web-based pricing and ordering systems and a description of the system that would be used to provide efficient operations. AR00598.**

13. Under the Production Capability/Distribution Plan Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

Provide the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract

award (or a date as specified by the Contracting Officer; however, the offeror may propose an alternative time frame for consideration.) Administrative Record, at AR00599 (Emphasis added).

Response:

**Agree. However, the Production Capability/Distribution Plan Sub-Factor also required detailed information regarding the offeror's "capability to handle the product requirements of the commissary locations that will be supported under the resulting contract," the key concepts of distribution operations, detailed information regarding how and where food is stored between time of receipt and delivery to the store, and methods used in delivering produce with multiple temperature requirements. AR00599.**

14. In advance of the submission of Business and Technical Proposals, Offerors are to submit a list of at least 6 business references (commercial and/or Government agencies other than DeCA) with which the Offeror has done business, or is doing business with, during the last 3 years that is "similar" to the requirements of the Acquisition and that "demonstrates your firm's ability to perform the proposed effort." Administrative Record, at AR00591 through AR00592. Offerors that have provided produce to DeCA commissaries are to provide the contract/agreement number and a list of these military commissary stores. Administrative Record, at AR00592.

"Teaming Agreements" are defined as those business arrangements where an Offeror will depend "on the products, capital contributions, or expertise [in whole or in part] of another company (or companies)." Teaming Agreements are to be specifically disclosed in the Competitive Proposals. Administrative Record, at AR00593.

Response:

**Agree.**

15. The announced Basis of Award is Best Value, Trade-off. Awards are to be determined by each geographical Grouping, i.e., by the specific Groups for Area 3 and for Area 5, and only one Award is to be made for each Group. Proposals will be considered for Award only where all 34 high volume core items for the proposed Group are priced.

There are 3 Evaluation Factors: Technical Capability, Past Performance, and Price. Announced Sub-Factors under the Past Performance Evaluation Factor are: Product Delivery, Quality History/Customer Satisfaction, and Business Relations. Administrative Record, at A00601.

Response:

**Agree.**

16. The Technical Capability Evaluation Factor is announced to be significantly more important than the Past Performance Evaluation Factor; and the Technical Capability and Past Performance Evaluation Factors, when combined, are announced to be significantly more important than the Price Evaluation Factor. Administrative Record, at A00601. Within the Past Performance Evaluation Factor, the Product Delivery and Quality History/Customer Satisfaction Sub-Factors are equally important, while the Business Relations Sub-Factor is slightly less important. Id.

Response:

**Agree.**

17. This is the announced evaluation of Price for the Base Term of 2 years:

The Government will evaluate each offeror's proposed minimum percentage of patron savings, in addition to evaluating the proposed unit prices for price reasonableness in relation to the total requirements of the solicitation. The proposed unit prices should reflect the application of the minimum percentage of patron savings for the specified week and will indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism assessment.

The Government will calculate a total evaluated price for all high volume core items for the base period and all option years combined for each group as described under the paragraph below entitled "Evaluation of Options." Administrative Record, at AR00602.

Response:

**Agree.**

18. This is the announced evaluation of Price for the 2 12-month Option Periods:

The total evaluated price by group for each offeror's proposal will be calculated by multiplying the total annual estimated price for each proposed group by four (represents the two-year base period and two one-year option periods). Evaluation of options will not obligate the Government to exercise the option(s). Administrative Record, at AR00603.

Response:

**Agree.**

19. The Acquisition announces that the Source Selection Authority is the Contracting Officer and that the Contracting Officer "will use best value, trade-off procedures to

make the final source selection." A separate Selection Decision is to be made by the Contracting Officer for each Group. Awards are to "be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated." Administrative Record, at AR00603.

Response:

**Agree.**

20. The Contracting Officer, the Source Selection Authority, has determined that "[m]arginal differences in technical capability and past performance, as compared to price between offers, will be weighed in determining the best value for the Government." Administrative Record, at AR00557 (Emphasis added).

Response:

**Agree.**

21. As to the Price Evaluation Factor the Source Evaluation Plan provides:

The Government will evaluate each offeror's proposed percentage of patron savings. The proposed unit prices should reflect the application of the proposed minimum percentage of savings for the specified week and will indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism assessment. Administrative Record, at AR00559.

Each offeror must submit a unit price for each high volume core item. If an offeror does not price a high volume core item, an alternate item is not permitted. Proposing an alternate item or not pricing a high volume core item will result in removal from any further consideration for award... Pricing must be FOB Destination for all stores

within a group; this is the delivered price to the commissary store absent of any anticipated markup by the commissary for resale. The unit price multiplied by DeCA's estimated annual quantity will equal the extended dollar amount for each high volume core item. The sum of the extended dollar amounts of the high volume core items will represent the total annual estimated price by group for each offeror. The total estimated price by group for each offeror's proposal will be calculated by multiplying the total annual estimated price for each group by four (represents the two-year base period and two one-year option periods). . . The total estimated price will be used as the estimated award amount. The Contracting Officer will conduct price analysis to determine price reasonableness. Administrative Record, at AR00559 through AR00660.

Response:

**Agree.**

22. This is what the Source Evaluation Plan says about the Selection Decision:

The Government will award one or more contract(s) resulting from this solicitation. Award(s) will be determined by each geographical group. It is possible that one award may be made for all four groups. The Contracting Officer will use best value, trade-off procedures to make the final source se¬lection. The process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal or other than the highest technically rated offer. Award will be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated above.

The face value of the contract will reflect the estimated total price during the base period of performance.... Administrative Record, at AR00563.

Response:

**Agree.**

23. Emerald Coast has submitted a Competitive Proposal only on Area 5, Group 1. Administrative Record, at AR01031, AR01039 through AR01059. In its Technical Proposal Emerald Coast explains that it is a fresh produce distributor that for over 20 years has served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi.

Emerald Coast operates from a 126,000 square foot multi-temperature distribution center in Pensacola, Florida. The distribution center is augmented by a 15,000 square foot refrigerated fruit and vegetable further-processing facility capable of producing 60,000 pounds of packaged goods per day in two shifts. This distribution center services more than 750 food service, retail, military and industrial customers, and deliveries are made with a fleet of 45 refrigerated trucks, these ranging from 16-foot box trucks to 48-foot multi-temperature trailers. Administrative Record, at AR01064.

Response:

**Agree.**

24. In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Emerald Coast explains that it will need 60 calendar days from the notification of award to the start of Contract performance. The Acquisition announces that performance will commence approximately 30 calendar days after notification and that Offerors may "propose an additional timeframe for consideration."

Emerald Coast explains that its daily receiving capacity is 20,000 cases per day and that its daily shipping capacity is 18,000 cases per day. Emerald Coast says that it is operating at about 45 percent of capacity, and that the projected volume of fresh fruits and vegetables for Area 5, Group 1 will take Emerald Coast's capacity utilization up to 80 percent of capacity. Emerald Coast says that it will "need to hire an additional 45 employees to receive, warehouse, select, load and ship that incremental capacity." Administrative Record, at AR01074.

Response:

**Agree.**

25. On May 26'", 2006 Emerald Coast received this discussion question: "Aside from hiring 45 additional employees, provide a timeline that fully explains why Emerald Coast needs 60 days from notification of award to start of contract performance." Administrative Record, at AR01080, AR01083.

Emerald Coast responded as follows:

It will take at least eight new trailers with multi-temperature capabilities and custom side doors with ramps to execute the bid. Lead time for delivery on this equipment is forty-five days and it is not normally available for month, day or trip lease. This is why we need sixty days for start-up. If Emerald Coast is successful in the award of contract, we are fortunate because 12 of the 19 stores are located in the Central Gulf Coast region with 67% of the dollar sales within 180 miles or three hours of our warehouse. This gives us great turn-around and utilization of our trucks with a one-drive driver/helper situation. We will need additional equipment to service these stores.

The turn-around times to service Arnold[,] Barksdale, Ft. Polk, Little Rock and Memphis are in the 18 to 24-hour range and all but Arnold have at least five successive delivery days which dictates two trucks to serve these stores with one coming and one going at all times. This means we will have to purchase eight to ten additional tractors and trailers. Administrative Record, at AR01084, AR01154.

Response:

**Agree.**

26. On August 4th, 2006 Emerald Coast received a request for a Final Proposal Revision. Administrative Record, at AR01294. Emerald Coast responded on August 7th, 2006 by raising its promised Minimum Percentage of Patron Savings to 43 percent. Emerald Coast explains:

1. We conducted our fourth market basket price survey in area retail stores this weekend and continue to find that we were conservative in our original estimate for this contract proposal. These findings are also substantiated by our dealings with Wal-Mart where our account specialist keeps close tabs on their pricing at the 27 stores he sells specialty, seasonal and fill-in items.

2. We were very concerned in our original proposal about how rising fuel and energy cost would affect our operational cost in the execution of this contract. As we continue to study the distribution logistics related to the contract, we find our cost estimates in this area were also conservative. The fact that 67% of the Area 5, Group [ ] commissary stores are within 3 hours of our warehouse and 45% are within an hour and thirty minutes has helped us revise our distribution cost estimates.

Response:

**Agree.**

27. As for its evaluation on the Past Performance Factor Emerald Coast explains that it has no teaming partners. Administrative Record, at AR01037. Emerald Coast provides the names of 2 food services companies and 5 restaurants as past performance business references. Administrative Record, at AR01302 through AR01304. In addition Emerald Coast provides as a past performance reference a subsistence Blanket Purchase Agreement that it holds with Defense Supply Center Philadelphia for fresh fruits and vegetables support to DeCA at Keesler Air Force Base in Mississippi, at Fort Rucker and Maxwell Air Force Base in Alabama, and at Pensacola Naval Air Station and Hurlburt Field and Eglin Air Force Base in Florida. Administrative Record, at AR01305.

Response:

**Agree.**

28. In connection with teaming partners Military Produce Group has submitted a Competitive Proposal on Area 3, Group 1, Administrative Record, at AR01378 through AR01384, and on Area 3, Group 2, Administrative Record, at AR01429 through AR01436.

In connection with a teaming partner Military Produce Group has submitted a Competitive Proposal on Area 5, Group 2. Administrative Record, at AR01495 through AR01497. Military Produce Group has no teaming partner for the Competitive Proposal that Military Produce Group has submitted on Area 5, Group 1. Administrative Record, at AR01681.

Response:

**Agree. However, MPG submitted its proposal for Area 5, Groups 1 and 2 as a single proposal and the Administrative Record indicates that MPG's proposal was evaluated as a single proposal as well. AR02078.**

29. Military Produce Group will support Area 5, Group 1 from a 64,000 square foot multi-temperature distribution center in Birmingham, Alabama. This distribution center is operated by an affiliate of Military Produce Group that is claimed to have supported military commissaries in Area 5, Groups 1 and 2 since 1998. Administrative Record, at AR01681.

Response:

**Agree.**

30. In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Military Produce Group explains that it will need 30 calendar days from the notification of award to the start of Contract performance. The Acquisition had announced that performance would commence approximately 30 calendar days after notification of award and that Offerors might "propose an additional timeframe for consideration." Administrative Record, at AR01723. Military Produce Group received no discussion questions on this response. Administrative Record, at AR01753 through AR01754.

Response:

**Agree.**

31. On August 4th, 2006 Military Produce Group received a request for a Final Proposal Revision. Administrative Record, at AR01822. Military Produce Group responded on August 7th, 2006 that its promised Minimum Percentage of Patron Savings

remained as initially proposed, 41 percent for the Base Term of 24 months and 42 percent for each of the 2 12-month Option Periods. Administrative Record, at AR01806, AR01818, AR01823.

Response:

**Agree.**

32. Military Produce Group serves only DeCA and neither Military Produce Group nor its affiliate in Birmingham, Alabama has commercial customers. At the date of submission of initial Competitive Proposals under Request for Proposal Number HDEC02-06-R-0005 Military Produce Group had been supplying fresh fruits and vegetables to DeCA's Area 1 for little more than 1 year. Thus Military Produce Group furnished past performance references from business from which Military Produce Group purchases supplies and services. Military Produce Group provided no past performance references for its affiliate in Birmingham, Alabama. As for any dealings with DeCA, Military Produce Group provided no contract/agreement numbers for its affiliate in Birmingham, Alabama and no list of military commissary stores to which its affiliate in Birmingham, Alabama has provided produce. Administrative Record, at AR01826 through AR01828.

Response:

**The Administrative Record does not indicate whether any associates of MPG have commercial customers. Agree to remainder of paragraph.**

33. The Contracting Officer has prepared a single "Decision Summary" for the purposes of selecting Offerors for the Awards of the Contract or Contracts proposed by Request for Proposal Number HDEC02-06-R-0005 for the Northeast (Area 3, Groups 1

and 2) and the Southeast (Area 5, Groups 1 and 2). Administrative Record, at AR01962 through AR02100.

Competitive Proposals for Area 3 were submitted by 12 Offerors. Administrative Record, at AR01964. Competitive Proposals for Area 5 were submitted by 8 Offerors. Administrative Record, at AR01965.

Response:

**Agree.**

34. Area 3, Groups 1 and 2 is awarded by the Contracting Officer to Four Seasons Produce, Incorporated, Ephrata, Pennsylvania (Four Seasons). Administrative Record, at AR01962. Four Seasons does not offer the highest Minimum Percentage of Patron Savings for Area 3; the Contracting Officer's Award to Four Seasons for Area 3 is based instead on Four Seasons' higher scores on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor. Administrative Record, at AR02048, AR02052, AR02061 through AR02062, AR02063 through AR02064, AR02070, AR02074, AR02076.

Response:

**Deny. The Administrative Record indicates that the source selection official determined that Four Seasons would provide the best value based on a trade-off between price and technical capabilities, where technical capability and past performance were significantly more important than price. AR02044-02076.**

35. Area 5, Group 2 is awarded by the Contracting Officer to Military Produce Group. Administrative Record, at AR01962. Military Produce Group does not offer the highest Minimum Percentage of Patron Savings for Area 5, Group 2; the Contracting

Officer's Award to Military Produce Group for Area 5, Group 2 is based instead on Military Produce Group's higher scores on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor. Administrative Record, at AR02083 through AR02084, AR02091.

Response:

**Deny. The source selection official determined that MPG offered the best value in a trade-off between price and technical capabilities. The Solicitation indicated that technical capability and past performance were significantly more important than price. MPG's technical capabilities were rated substantially higher than Emerald's, [ ] points higher, while it offered only a slightly lower minimum percentage of patron savings than Emerald. MPG's proposal was therefore determined to be more advantageous to the Agency. AR02076-02091.**

36. The greatest difference in the ratings between the Competitive Proposals of Emerald Coast and of Military Produce Group on the Technical Capability Evaluation Factor occurs on the Production Capability/Distribution Plan Sub-Factor. Administrative Record, at AR02078 through AR02080. There are [ ] points available for this Sub-Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] I points on this Sub-Factor by the Technical Evaluation Board but Emerald Coast is given only [ ] points on this Sub-Factor by the Technical Evaluation Board. Administrative Record, at AR02079.

Response:

**Agree.**

37. The Technical Evaluation Board makes specific comments about the time that Emerald Coast has said that Emerald Coast will need to commence Contract performance:

Offeror states increase in inventory would take his warehouse to 80% capacity but would need to increase staff by 45 people. A personnel increase of this magnitude could negatively impact the viability of this offer. 60 days start up needed-indicates it will take this amount of time to acquire additional personnel, trucks and equipment to meet requirements of solicitation.

Response:

**Agree.**

38. On the Experience Sub-Factor under the Technical Capability Evaluation Factor the Competitive Proposals of Emerald Coast and of Military Produce Group are rated much the same by the Technical Evaluation Board. There are [ ] points available for this Sub-Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board and Emerald Coast is given [ ] points on this Sub-Factor by the Technical Evaluation Board. Administrative Record, at AR02078.

Response:

**Agree.**

39. It is reported by the Technical Evaluation Board in the rating of the Experience Sub-Factor for Area 5, Group 1 that "MPG and its teaming partners have a number of years of combined experience and are well established as a retail distributor dedicated to servicing the military." Administrative Record, at AR02078.

Response:

**Agree.**

40. But the Technical Evaluation Board confabulates the experiences of Military Produce Group's teaming partners on Area 3, Groups 1 and 2 and on Area 5, Group 2 with Military Produce Group's experience on Area 5, Group 1. Military Produce Group alone has little more than one year's experience in "buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables," and this only with DeCA. Military Produce Group has no teaming partner(s) for Area 5, Group 1. Administrative Record, at AR01681.

Response:

**Deny. The Administrative Record indicates that the TEB evaluated MPG's proposal for Area 5, Groups 1 and 2 as a whole and did not perform separate evaluations for each group. AR02078.**

41. On the Past Performance Evaluation Factor the Competitive Proposals of Emerald Coast and of Military Produce Group are again rated much the same. There are [ ] points available for this Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] points on this Factor by the Technical Evaluation Board and Emerald Coast is given [ ] points on this Factor by the Technical Evaluation Board. Administrative Record, at AR02079.

Response:

**Agree.**

42. Emerald Coast is rated by the Technical Evaluation Board on the Past Performance Evaluation Factor only on Emerald Coast's past performances,

Administrative Record, at AR01952 and this is as it should be since Emerald Coast has no teaming partners, Administrative Record, at AR01037.

Response:

**Agree.**

43. Military Produce Group, on the other hand, is again rated by the Technical Evaluation Board on the past performances of Military Produce Group's teaming partners, and not on the past performances of Military Produce Group alone: "MPG and its teaming partners were rated very good to exceptional for each sub-factor by their commercial references and military accounts." Administrative Record, at AR02079.

Response:

**Agree that MPG and its' teaming partners' past performance was evaluated. However, the Administrative Record indicates that the TEB evaluated MPG's proposal for Area 5, Groups 1 and 2 as a whole and did not perform separate evaluations for each group. AR02078.**

44. Again, Military Produce Group has no teaming partner(s) for Area 5, Group 1. Administrative Record, at AR01681. Neither Military Produce Group nor its affiliate in Birmingham, Alabama has "commercial references." Contract/agreement numbers and a list of military commissary stores are provided only for Military Produce Group; none are provided for Military Produce Group's affiliate in Birmingham, Alabama. Administrative Record, at AR01826 through AR01828.

Response:

**Agree. However, the Administrative Record indicates that the TEB evaluated MPG's proposal for Area 5, Groups 1 and 2 as a whole and did not perform separate evaluations for each group. AR02078.**

45. Emerald Coast's Competitive Proposal is higher-priced than Military Produce Group's Competitive Proposal. Emerald Coast's Competitive Proposal is priced at $34,706,336 and Military Produce Group's Competitive Proposals is priced at $28,025,468. Administrative Record, at AR01968. Yet Emerald Coast's Overall Combined Technical Capability and Past Performance Score (142 points) is less than Military Produce Group's Overall Combined Technical Capability and Past Performance Score (172 points). Administrative Record, at AR02079.

Response:

**Agree.**

46. Per the Contracting Officer's price realism determination set out in her single Decision Summary this cannot be. Lower Overall Combined Technical Capability and Past Performance Scores equate to lower-priced Competitive Proposals, not to higher priced Competitive Proposals:

> For the purpose of a *price realism assessment*, the high volume core items were priced to determine that all offerors applied the percentage of patron savings to each line item accurately and were offering prices on the same or similar items.
>
> As a matter of price reasonableness, it was noted that proposals that were lower priced also rated a significantly lower technical score for Technical Capability and Past Performance. Conversely, proposals that were higher priced also rated a significantly higher technical score for Technical Capability and Past Performance. The correlation must be considered that as the score(s) for Technical Capability (that was more important than Past Performance) or Technical Capability and Past Performance (when combined is more important than price) increased, the result would be top quality products and increased prices also. *This was*

*evident in the review of these proposals for price realism and price reasonableness….*

Administrative Record, at AR02091 (Emphasis added).

Response:

**Deny. The first sentence is a legal argument. Agree that the remainder of the paragraph was contained in the decision summary. The decision summary noted that "proposals that were higher priced also rated a significantly higher technical score for Technical Capability and Past Performance." AR02091. However, the "price" referred to is the evaluated price – the Minimum Percentage of Patron Savings not a dollar amount. AR01966.**

47. Thus it must be "evident" from this "correlation" observed by the Contracting Officer in her price realism determination that either: (a) Emerald Coast's Overall Combined Technical Capability and Past Performance Scores are too low, or else (b) Military Produce Group's Overall Combined Technical Capability and Past Performance Scores are too high.

Response:

**Deny. This sentence constitutes argument.**

But the total available numeric score on the Technical Capability Factor and on the Past Performance Evaluation Factor is [ ] points, Administrative Record, at AR¬01949, AR09154; and Military Produce Group's Overall Combined Technical Capability and Past Performance Score is [ ] points. Administrative Record at AR02079.

Response:

**Agree.**

So from this correlation observed by the Contracting Officer in her price realism determination it is evident that Emerald Coast's Overall Combined Technical Capability and Past Performance Scores are indeed too low.

Response:

**Deny. This sentence constitutes argument.**

48. The Contracting Officer's Best Value, Trade-off Selection Decision does not make the comparison of price promised by the Source Evaluation Plan, this a comparison of the Minimum Percentages of Patron Savings proposed by Emerald Coast and by Military Produce Group. Neither does the Contracting Officer's Best Value, Trade-off Selection Decision recognize price as a significant factor:

Military Produce Group submitted a proposal that was evaluated as the highest technically rated proposal and slightly lower minimum percentage of patron savings for the base period and both option years. Therefore, in considering the solicitation's evaluation criteria that Technical Capability is significantly more important than Past Performance and when these two evaluation factors are combined they are significantly more important than Price, it is determined that the higher technically rated proposal, slightly lower minimum percentage of patron savings proposal submitted by Military Produce Group is the better value to the Government than the lower technically rated, slightly higher minimum percentage of patron savings proposal submitted by Emerald Coast Finest Produce. Administrative Record, at AR02080.

Response:

**Deny the first paragraph. The paragraph does not indicate a citation from the Administrative Record supporting the statement the Trade-off decision "does**

**not make the comparison of price promised by the Source Evaluation Plan, this a comparison of the Minimum Percentages of Patron Savings proposed by Emerald Coast and by Military Produce Group." The Administrative Record does not support this paragraph. Agree to the second paragraph.**

49. Contract Number HDEC02-06-D-0014, the Award promised by Request for Proposal Number HDEC02-06-R-0005, is given by the Contracting Officer to Military Produce Group on August 22nd, 2006. Administrative Record, at AR02101 through AR02131. The face value of the Award for Area 5, Group 1 is $56,050,935, and this is the estimated total price during the Base Term of 24 months. Administrative Record, at AR02103.

Response:

**Deny that the RFP was a promise for award. The contract was awarded to MPG after the Agency determined that its proposal offered the best value.**

50. The Contracting Officer conducted the debriefings required by 10 U.S.C. § 4 2305(b)(5) both for Emerald Coast, Administrative Record, at AR01338 through AR¬01352, and for Military Produce Group, Administrative Record, at AR0931 through AR01948.

Response:

**Agree.**

51. The Contracting Officer reports in her debriefing for Emerald Coast that Emerald Coast is assessed a significant Weakness because:

The alternate start-up time offered by Emerald Coast to increase their staff and obtain additional equipment is not conducive with the accelerated start-up plan required by DeCA. Administrative Record, at AR01345.

Response:

**Agree. However, the Contracting Officer also noted many other weaknesses in Emerald's proposal, including noting that Emerald "failed to provide sufficient information regarding alternate sources of supply in the case of food safety issues"; "failed to provide specific information regarding inspection procedures, shelf life dating procedures, and buying procedures used to ensure that the produce delivered meets the grade and quality standards required by DeCA to include expiration dates and produce rotation in the warehouse"; and "failed to provide specific information regarding the temperatures used in storage areas." AR01345.**

52. But Request for Proposal Number HDEC02-06-R-0005 does not say that the suggested 30-day start-up period is required, or that proposing alternate timeframes will in any way be considered a weakness, or disadvantageous. Administrative Record, at AR00599.

Response:

**Agree.**

53. The account in the debriefing of the Contracting Officer's Best Value, Trade-off analysis for her Selection Decision is quite short, and her trade-off analysis lacks any detail or explanation:

Response:

**Deny that the Contracting Officer's analysis lacks detail or explanation. Rather, the debriefing does not contain the whole of the Contracting Officer's analysis. The Administrative Record reveals a thorough and detailed analysis of all offerors individually, both before and after discussions (AR01962-AR02043), and a comparison and analysis of MPG to every other offeror in the competitive range for Area 5 (AR02076-02091).**

The higher rated (Technical Capability and Past Performance) and lower minimum percentage of patron savings (Price) proposal submitted by Military Produce Group LLC (MPG) was determined to be the best value to the Government.

Response:

**Agree.**

54. The account in the debriefing of the Contracting Officer's Best Value, Trade-off analysis for her Selection Decision is again quite short, and her trade-off analysis again lacks any detail or explanation:

Response:

**Deny that the Contracting Officer's analysis lacks detail. The debriefing does not contain the whole of the Contracting Officer's analysis. The Administrative Record reveals a thorough and detailed analysis of all offerors individually, both before and after discussions (AR01962-AR02043), and a comparison and analysis of MPG to every other offeror in the competitive range for Area 5 (AR02076-02091).**

The higher rated (Technical Capability and Past Performance) and lower minimum percentage of patron savings (Price) proposal submitted by Military Produce

Group LLC, was determined to be the best value to the Government. Administrative Record at AR01946.

Response:

**Agree.**

Dated: December 19, 2006

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

/s/ Daniel R. Weckstein
By:______________________________

Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
E-mail: dweckstein@vanblk.com

Of counsel

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

**Certificate of Service**

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail and facsimile transmission this 19th day of December, 2006 to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliot Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

/s/ Daniel R. Weckstein
By:________________________________
Of Counsel