IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT-INTERVENOR'S STATEMENT OF FACTS IN SUPPORT OF DEFENDANT-INTERVENOR'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 56.1(b1) of the Rules of the United States Court of Federal Claims, Defendant-Intervenor, Military Produce Group, LLC, by and through counsel, files its Statement of Facts in Support of Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record.

**Statement of Facts**

1. Military Produce Group LLC ("MPG"), 1106 Ingleside Road, Norfolk, Virginia 23502, is a Virginia limited liability company created specifically to make sales of fresh fruits and vegetables to military commissaries and to make DeCA's produce acquisition more efficient and commercial based. AR00008. MPG's principal operators have more than 8 years of experience supplying fresh produce to military commissaries and nearly 50 years of combined experience in the commercial produce business. AR01690-01709.

2. MPG was awarded the test contract for DeCA's new commercial based produce system after submitting a proposal developing the new system. After performing test Contract Number HDEC02-05-D-0003 from mid-January to mid-September of 2005 (AR00082-00102), MPG was awarded competitive Contract Number HDEC02-05-D-0013 to supply 20 military commissary stores in Area 1 of DeCA's East Region, including the Tidewater region of Virginia; North Carolina; South Carolina; Georgia; Cuba; and Keflavik, Iceland (AR00186-00213). MPG is currently performing that contract.

3. The Agency Defendant is Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia ("DeCA"). DeCA was established as a Department of Defense Agency to operate military commissary stores. Military commissaries are similar to grocery stores, 10 U.S.C. § 2484(a), and sell similar items at a significantly reduced price to military members, 10 U.S.C. § 2484(d). The commissary stores are an important part of the compensation package offered to military members. 10 U.S.C. § 2481(b).

4. The Plaintiff, Emerald Coast Finest Produce Co., Inc. ("Emerald"), is a Florida corporation and fresh produce distributor. Emerald was an unsuccessful offeror for Solicitation HDEC02-06-R-0005 and was rated third in line for award for this Contract. AR01949-01962; AR01968; AR02042.

5. Until recently, DeCA and military commissary stores have acquired produce through the support of Defense Supply Center Philadelphia ("DSC-P"). DSC-P used a multi-layered acquisition system of 4 Defense Subsistence Offices, 10 Produce Buying Offices, and Field Produce Buyers to acquire most of its produce from "terminal markets." Terminal markets are basically wholesale markets where farmers bring produce to sell, but the terminal market method of produce acquisition is generally no longer used in the commercial grocery business. Over

time, most commercial commissaries have begun buying produce directly from farmers, cutting out the middle man and reducing costs. Terminal markets, however, still supply institutional food that is not of the same high quality as produce sold directly to consumers in retail markets. Consequently, DSCP's use of terminal markets to acquire produce for DeCA military commissaries was becoming problematic. AR00095-00102.

6. In May of 2004, Military Produce Group submitted a proposal to DeCA proposing a new, commercial based method for DeCA's fresh fruits and vegetables business. AR00008. MPG proposed a business plan modeled after the commercial sector and eliminating the need for DSCP's involvement and a layer of cost. AR00008. MPG's proposed business model consolidated produce ordering and data and system management, providing DeCA with a dedicated order processing center customized for DeCA's needs. AR00008. MPG's business model also offered DeCA the opportunity to increase savings through volume, long term contracts like those used in the commercial sector. AR00009.

7. On December 16, 2004, DeCA awarded a test contract to MPG to provide produce to 20 sore locations in Georgia, North Carolina, South Carolina, Virginia, and West Virginia. The purpose of the test contract was to test the capabilities of MPG's commercial based business model to provide produce to military commissaries. AR00003. The test was successful and on September 22, 2005, DeCA awarded competitive contract number HDEC02-05-D-0013 to MPG for 22 stores in Area 1. AR00004. MPG is currently performing this contract.

8. On March 20, 2006, DeCA issued solicitation number HDEC02-06-R-0005 for 77 military commissary locations in Areas 3 and 5, in the Eastern portion of the United States. Area 5 (Groups 1 and 2) encompassed the Southeast portion of the United States.[1]

9. The source selection methodology for the solicitation was to be Best Value, Trade-Off. AR00601. "The process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest price proposal or other than the highest technically rated offer." AR00601. Under the terms of the solicitation, "Technical Capability is significantly more important than Past Performance. Technical Capability and Past Performance when combined are significantly more important than Price, as this provides the contracting officer with the broadest discretion in determining the best value for the Government." AR00558.

10. The Evaluation Plan called for a Technical Evaluation Board to assess the technical capabilities and past performance of each offeror in accordance with the solicitation requirements and evaluation criteria in a "written technical consensus document." AR00560. The TEB consisted of a Chairperson and two Commissary Management Specialists who are experts in their fields with regard to the requirements in the solicitation. AR00560. The TEB members also possessed the necessary "institutional knowledge in commissary produce department operations." AR00560.

11. The offerors were required to submit technical proposals covering: (1) Experience; (2) Quality Program; (3) Production Capability/Distribution; and (4) Additional Support/Promotion Plan. AR00598-00600. Under the Evaluation Plan, within the Technical Capability factor, the

[1] By Amendment 0002, dated April 21, 2006, the agency changed the designation for Area 5, Groups 3 and 4 to Area 5, Groups 1 and 2. While MPG's proposal refers to Area 5, Groups 3 and 4, we refer to them per the agency's amendment as Area 5, Groups 1 and 2.

offerors' Experience, Quality Program, and Production Capability/Distribution Plan sub-factors were to be of equal importance, while the Additional Support/Promotion Pan sub-factor was slightly less important. AR00558-00559.

12. Under the Experience Sub-factor, the solicitation asked for a description of past experience with work of a similar nature, scope and complexity, including experience buying, selecting product assortment, pricing, order processing, inventory management, and delivery. AR00598. The solicitation also asked for a company profile with "related experience of individuals who will be involved with all aspects of performance…." AR00598. The solicitation also required a detailed description of experience with online or web-based pricing and ordering systems and a description of the system that would be used to provide efficient operations. AR00598.

13. Under the Quality Program sub-factor, the solicitation asks for a detailed description of the offeror's quality control and quality assurance procedures, including food safety, product recall procedures, sanitation, pest management, security safeguards, and back-up plans for food safety issues. The sub-factor also asked for a detailed description of how the offeror works with USDA inspectors and the offeror's inspection procedures. AR00599.

14. Under the Production Capability/Distribution Plan Sub-factor, the solicitation requests detailed information regarding the offeror's "capability to handle the product requirements of the commissary locations that will be supported under the resulting contract," the key concepts of distribution operations, detailed information regarding how and where food is stored between time of receipt and delivery to the store, methods used in delivering produce with multiple temperature requirements, and the length of start-up time the offeror will require. AR00599.

15. The solicitation clearly indicated that contract performance would commence 30 days after award. It stated:

> Provide the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer; however, the offeror may propose an alternative time frame for consideration.

AR00599. The solicitation is clear that the offeror may propose an alternative to the 30 days, but it also clear that the Agency is not required to accord it the same weight as an offer to comply with the Agency's need to start Contract performance within 30 days.

16. Within the Past Performance Evaluation factor, Product Delivery and Quality History/Customer Satisfaction sub-factors were all of equal importance in relation to each other while the Business Relations sub-factor was slightly less important. AR00559. The agency was permitted to use the commercial business references provided by the offeror and additional sources of information such as government agencies. AR00602.

17. The Evaluation criteria clearly state that "the price evaluation will be based on the offeror's **proposed minimum percentage of patron savings**." AR00558; AR00601 (emphasis added). This proposed percentage of patron savings was to be at least 38%. AR00595. The offeror was to submit pricing as (1) Minimum Percentage of Patron Savings and (2) Unit Prices for a specified period of time. AR00595. The solicitation states:

> The minimum percentage of patron savings is the amount the contractor will save the commissary patron on all core items over the selling price of the same or similar items from comparable commercial operations within the local commuting area and/geographical area within a 20-mile radius of the commissary location […], called <u>**Market Basket Pricing**</u>. The percentage of patron savings is calculated by averaging the savings on all core

**Protected Information Redacted**

> items at each commissary store. The overall percentage of patron savings is the average percentage for all commissary store locations within the group.

AR00595. Unit prices were to be provided to "indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism analysis." AR00595.

18. In its Technical Proposal, MPG explains that it is a veteran owned fresh fruit and vegetable distributor that is currently providing DeCA with "a procurement, warehousing, distribution, order processing, and customer service program in Area 1 Eastern Region (HDEC02-05-R-0007) for Virginia, North Carolina, South Carolina, Georgia, Keflavik, Iceland, and Guantanamo Bay, Cuba." AR01680. In its proposal, MPG discusses its recent contracts for DeCA and the improvements it has implemented to DeCA's commissary sales and performance. AR01680. MPG then proposes to provide the same procurement systems as that provided under the Area 1 contract for DeCA. AR01681.

19. MPG also provided detailed information regarding its past experience, AR01680-01681, including the resumes of its principal employees, AR01690-01709. All of MPG's principal employees are highly experienced in the produce business. See id.

20. MPG operates out of 3 multi-temperature distribution centers throughout the Southeast. AR01681. All of its facilities are multi-temperature distribution centers with banana/tomato ripening rooms with packaging and bagging capability. AR01681.

21. MPG submitted a proposal for Area 3, Groups 1 and 2, and for Area 5, Groups 1 and 2. AR01355. MPG teamed with partners for its proposal, including a teaming partner for Area 5. AR01681-01682, AR01715-01716, AR01721-01722. Because the solicitation did not require

separate proposals for Groups within an Area, MPG's Technical Proposal was evaluated for the whole of Area 5, including both Groups 1 and 2. AR01720-01728.

22. Emerald submitted a proposal for Area 5, Group 1 only. It's Technical Proposal, however, was ranked significantly lower than MPG's and lower than that of another offeror, Pro*Act. The scoring information and price analysis was as follows:

| **Company** | **Technical Capability & Past Performance Scores** | **Proposed Minimum % of Patron Savings** |
|---|---|---|
| MPG | [ ] | [ ] |
| Pro*Act | [ ] | [ ] |
| Emerald | [ ] | [ ] |
| M&S Foods | [ ] | [ ] |

AR01949-01962; AR01968; AR02042.

23. In the debriefing, the agency noted many deficiencies in Emerald's Technical Proposal. The agency observed that Emerald "failed to provide sufficient information regarding alternate sources of supply in the case of food safety issues"; "failed to provide specific information regarding inspection procedures, shelf life dating procedures, and buying procedures used to ensure that the produce delivered meets the grade and quality standards required by DeCA to include expiration dates and produce rotation in the warehouse"; and "failed to provide specific information regarding the temperatures used in storage areas." AR01345.

24. In its evaluation of MPG's Production Operation/Distribution Plan Sub-factors from its Technical Proposal, the agency noted:

> MPG's proposal was determined to have a strong production operation and distribution plan and clearly detailed their procedures from receipt of products to delivery to the stores. Also, they sufficiently detail a very [sic] plan of action for maintaining

> the cold chain to ensure quality products. MPG detailed various contingency plans to ensure service is not disrupted. MPG maintains an 118,000 sq ft. facility and has formidable relationship with Nash Finch MDV, one of the largest military distributors on the east coast. Additionally, their teaming partners own and lease privately owner vehicles as needed.

AR02079.

25. The source selection comparative analysis for Area 5, Groups 1 and 2 indicates that MPG is the best value for the agency for Area 5. AR02076-02091. The Decision Summary states:

> The higher technically rated and slightly higher priced proposal submitted by Military Produce Group is the best value to the Government for Area 5, Groups 1 & 2 in comparison with the other proposals considered. Military Produce Group demonstrated their strengths and capabilities to achieve and maintain successful performance in providing fresh fruits and vegetables to the commissaries in Area 5, Groups 1 & 2. The price is considered fair and reasonable based on competitive pricing received on this solicitation and in comparison with the government estimate. Therefore, it is determined that awarding this contract to Military Produce Group is in the best interests of the Government using trade-off procedures.

AR02093.

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

/s/ Daniel R. Weckstein

By:______________________________
Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
E-mail: dweckstein@vanblk.com

Dated: December 19, 2006

OF COUNSEL

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

## Certificate of Service

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail and facsimile transmission this 19th day of December, 2006 to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliot Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

/s/ Daniel R. Weckstein
By:________________________________
Of Counsel