# In the United States Court of Federal Claims

| | |
|---|---|
| EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED, | |
| Plaintiff, | |
| v. | BID PROTEST<br>No. 06-742C<br>Judge Hewitt |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| MILITARY PRODUCE GROUP, LLC, | |
| Defendant-Intervenor. | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR STAY OF PROCEEDINGS OR REMAND**

Pursuant to RCFC 5.2(b)(2) and 7.2(a) Emerald Coast Finest Produce Company, Incorporated (Emerald Coast), Plaintiff herein, files this Opening Brief in

**Agreed-Upon Redacted Copy —**
**May Be Made Public**

Support of Plaintiff's Opposition to Defendant's Motion for Stay of Proceedings or Remittur.

---

## FACTUAL PRÉCIS

---

### THE COMPETITION RULES

Request for Proposal Number HDEC02-06-R-0005 invites Competitive Proposals for two Areas (Area 3, Northeast and Area 5, Southeast) and for four Groups (Groups 1 and 2 for each Area) in DeCA's East Region. Administrative Record, at AR00576 through AR00590.

The Evaluation Plan for Solicitation Number HDEC02-06-R-0005 explicitly provides:

> Award(s) will *be determined by each geographical group*.

Administrative Record, at AR00563 (Emphasis added).

The Evaluation Plan for Solicitation Number HDEC02-06-R-0005 does not provide that Awards, or the evaluations for Awards, will be by Area, i.e., for Area 3, or for Area 5. Likewise, the Evaluation Plan for Solicitation Number HDEC02-06-R-0005

does not provide that Awards, or the evaluations for Awards, will be for both Areas (Area 3 and Area 5) combined.

The public synopsis for Solicitation Number HDEC02-06-R-0005 provides that:

> A single solicitation containing the four geographical groupings will be issued. *Each group will be independently evaluated* and awarded on an "all or none basis."

Administrative Record, at AR00568, AR00571, AR00572 (Emphasis added). The Small Business Act, 15 U.S.C. § 637(e); the Office of Federal Procurement Policy Act, 41 U.S.C. § 416; and Federal Acquisition Regulation Subpart 5.2 all require that proposed Contract actions be publicized. These public notices are commonly referred to as "synopses."

As promised by both the Evaluation Plan and the public synopsis, Solicitation Number HDEC02-06-R-0005 provides that "[t]he *source selection decision for contract award will be made for each individual group* . . . ." Administrative Record, at AR006-03 (Emphasis added).

## TEAMING AGREEMENTS

Solicitation Number HDEC02-06-R-0005 contains explicit provisions for Teaming Agreements. "Teaming Agreements" are defined in this Solicitation as those business arrangements where an Offeror will depend "on the products, capital contributions, or expertise [in whole, or in part] of another company (or companies)." Teaming Agreements are to be specifically disclosed in the Competitive Proposals. Administrative Record, at AR00593. Federal Acquisition Regulation 9.603 provides that Agencies "will recognize the integrity and validity of contractor team arrangements . . . ."

Emerald Coast has submitted a Competitive Proposal only on Area 5, Group 1. Administrative Record, at AR01031, AR01039 through AR01059. Emerald Coast explains in its Competitive Proposal that Emerald Coast has no teaming partners. Administrative Record, at AR01037.

In connection with teaming partners Military Produce Group has submitted a Competitive Proposal on Area 3, Group 1, Administrative Record, at AR01378

through AR01384, and on Area 3, Group 2, Administrative Record, at AR01429 through AR01436.

In connection with a teaming partner Military Produce Group has submitted a Competitive Proposal on Area 5, Group 2, this for deliveries of fresh fruits and vegetables at Fort Buchanan, Puerto Rico; Military Produce Group's Teaming Agreement for Area 5, Group 2 was specifically disclosed as is required by Solicitation Number HDEC02-06-R-0005. Administrative Record, at AR01495 through AR01497.

Military Produce Group has no teaming partner for the Competitive Proposal which Military Produce Group has submitted on Area 5, Group 1. Administrative Record, at AR01681.

## THE TECHNICAL EVALUATION

The Evaluation Plan provides for a separate assessment by a Technical Evaluation Board of "technical capability and past performance," and this separate assessment is promised to be made "in accordance with the solicitation requirements and evaluation criteria." The Technical Evaluation Board is composed of three mem-

bers. The Evaluation Plan reposes in the Technical Evaluation Board DeCA's promised evaluation of Technical Capability and Past Performance:

> These individuals are subject experts in their respective fields with regard to the requirements included in the solicitation and possess the institutional knowledge in commissary produce department operations. *As the Government's evaluation of technical capability and past performance is a matter of judgment, these individuals are best qualified to evaluate proposals.*

Administrative Record, at AR00560 (Emphasis added).

The Evaluation Plan requires that the Contracting Officer explain to the Technical Evaluation Board "their responsibilities while reviewing the proposals and associated past performance documentation as well as the documentation required from the TEB Chairperson and evaluators at the conclusion of the technical evaluation." Administrative Record, at AR00560.

As the Source Selection Official, it was the Contracting Officer's responsibility to "[e]nsure that proposals are evaluated based solely on the factors and subfactors contained in the solicitation . . . ." Federal Acquisition Regulation 15.303(b)(4).

Initial Competitive Proposals submitted in response to Solicitation Number HDE-C02-06-R-0005 were received at DeCA through May 2nd, 2006. The Technical Eval-

uation Board convened to review these Initial Competitive Proposals, and the Technical Evaluation Board conducted deliberations from May 4th through May 19th, 2006. The Technical Evaluation Board did not score these Initial Competitive Proposals. Rather, the Technical Evaluation Board provided only "initial consensus findings" to the Contracting Officer. Administrative Record, at AR01965.

The Contracting Officer made her Competitive Range determination on May 26th, 2006. Six of eight Initial Competitive Proposals received for Area 5, Groups 1 and 2 she determined to "have the potential of receiving an acceptable technical score if provided an opportunity to respond with the additional information." Administrative Record, at AR01970. Two of the eight Initial Competitive Proposals received for Area 5, Groups 1 and 2 she determined to be materially deficient and these she excluded from the Competitive Range. Administrative Record, at AR01971.

Emerald Coast and Military Produce Group were among those six Offerors whose Initial Competitive Proposals on Area 5 were included within the Competitive Range. Military Produce Group submitted a Competitive Proposal on Area 5, Group 1 and on Area 5, Group 2. Emerald Coast submitted a Competitive Proposal only on Area 5,

Group 1. Two other Offerors likewise submitted Competitive Proposals on Area 5, Group 1 and on Area 5, Group 2. And three of these six Offerors submitted Competitive Proposals only on Area 5, Group 2. Administrative Record, at AR02025 through AR02026.

The Contracting Officer sent discussion letters on May 26th, 2006 and received responses, Revised Competitive Proposals, from all six Offerors on June 2nd, 2006. The Technical Evaluation Board reconvened during the period June 7th through 8th, 2006 this time to provide "final consensus numerical technical scores" for the Emerald Coast and Military Produce Group Revised Competitive Proposals. Administrative Record, at AR01949 through AR01960.

Despite the announcement in the Evaluation Plan, in the public synopsis, and in the Solicitation that "[e]ach group will be independently evaluated" the Technical Evaluation Board made no such distinctions in its comments and its numerical Technical Capability and Past Performance scoring. The Technical Evaluation Board made comments, and assigned numeric scores, for Technical Capability and Past Performance without regard to Area (Area 3 or Area 5) or Group (Group 1 or

Group 2). It turned out, of course, that this was not a problem with Emerald Coast since Emerald Coast had submitted a Competitive Proposal only on Area 5, Group 1. But not so with Military Produce Group!

On each of the four Sub-Factors for the Technical Capability Evaluation Factor, the Technical Evaluation Board conflates their comments and numeric scores for Military Produce Group and its teaming partners on Area 3 (where Military Produce Group had teaming partners) with their comments and numeric scores for Military Produce Group on Area 5, Group 1 (where Military Produce Group had no teaming partners). Administrative Record, at AR01955, AR01957, AR01958, and AR01959.

The Technical Evaluation Board did not thereafter reconvene to review Offeror responses to discussion letters or to review Offeror responses to changes made in Solicitation requirements with Amendment Numbers 0003 issued on July 19th, 2006; or with Amendment Number 0004 issued on July 21st, 2006; or with Amendment Number 0005 issued on July 28th, 2006.

The Contracting Officer made substantive changes in the requirements of Solicitation Number HDEC02-06-R-0005 after June 8th, 2006 and Offerors responded to these substantive changes with substantive modifications, and revisions, to their Competitive Proposals.

On June 8th, 2006 an Offeror on Area 3 provided details in response to questions posed by the Technical Evaluation Board—but these details were never reviewed by the Technical Evaluation Board. Administrative Record, at AR02036.

Amendment 0003 invited Competitive Proposal revisions after substantive changes were made in Solicitation requirements, and these changes included a new requirement, a requirement for produce inspections by the United States Department of Agriculture. Administrative Record, at AR02036 through AR02039.

Amendment 0004 invited Competitive Proposal revisions after the requirement to deliver fresh fruits and vegetables to the commissary at Fort Buchanan, Puerto Rico was eliminated entirely and there was a change in Solicitation requirements for a Web-based computer application to be used by commissaries to order fresh fruits and vegetables. Administrative Record, at AR02039.

Offerors made substantive revisions to their Competitive Proposals as a result of Amendments Number 0003 and 0004—none of these revisions have been evaluated by the Technical Evaluation Board. Since June 8th, 2006 there have been no comments and no numerical scoring, or rescoring, of Revised Competitive Proposals for Technical Capability and Past Performance.

After July 21st, 2006 the Technical Evaluation Board's conflation (for both Areas 3 and 5) of the Technical Evaluation Board's numeric scores for Military Produce Group's Technical Capability and Past Performance was a clear error because now Military Produce Group had no teaming partner for Area 5, Group 1 or for Area 5, Group 2—Military Produce Group's Teaming Agreement for Fort Buchanan, Puerto Rico terminated of its own accord when Amendment Number 0004 was issued. Administrative Record, at AR01496. Automatic termination of Teaming Agreements upon Solicitation cancellation is customary. *See, e.g., Textron, Inc. v. United States and Manitowoc Marine Group/Marinette Marine Corp.*, 74 Fed. Cl. 11, 39 (2006).

THE SOURCE SELECTION DECISION

This Contracting Officer has made her Source Selection Decision by constructing tables which set out a "paired comparative analysis" comparing Offerors she has selected for the Award for each particular Group and Area with each of the other Offerors for that Area and that Group. Administrative Record, at AR02044 through AR02091. For instance for Area 5, Group 1 the Contracting Officer constructed a series of tables comparing the Technical Evaluation Board's Technical Capability and Past Performance numeric scores for Military Produce Group on Area 5, Group 1 with the Technical Evaluation Board's Technical Capability and Past Performance numeric scores for each of the other three Offerors on Area 5, Group 1. Administrative Record, at AR02076 through AR02081.

On the right-hand side of each of these tables the Contracting Officer has pasted-in her sense of the comments by the Technical Evaluation Board for each of the Offerors she is evaluating in this particular table. As an example under the Experience Sub-Factor for the Technical Capability Evaluation Factor on Area 5, Group 1

the Contracting Officer has constructed a column which compares these observations:

> MPG was determined strong in experience procuring a full line of fruit and vegetables and providing the necessary warehousing, distribution, ordering system and customer service programs to commercial and Government customers. MPG and its teaming partners have a number of years of combined experience and are well established as a retail distributor dedicated to servicing the military. Emerald and its teaming partners have 15 years of experience providing fresh fruits and vegetables as a retail distributor [sic] are currently providing produce to commercial stores and the commissaries. MPG and Emerald each received an exceptional technical rating for this sub-factor.

Administrative Record, at AR02078.

The second full sentence in this column is pasted from the Technical Evaluation Board's comments of June 8th, 2006. Administrative Record, at AR01955. The third full sentence in this column is a blend of the Contracting Officer's erroneous suppositions and the Technical Evaluation Board's comments of June 7th, 2006. To its credit, the Technical Evaluation Board was not confused—Emerald Coast had no teaming partners and thus the Technical Evaluation Board commented, correctly, "15 years servicing commissaries." Administrative Record, at AR01950. Yet the column composed by the Contracting Officer reports that this 15 years' experience is

that of Emerald Coast and its teaming partners, when in fact this experience belongs to Emerald Coast alone.

Here is another example, this one under the Product Delivery Sub-Factor for the Past Performance Evaluation Factor on Area 5, Group 1:

> MPG and its teaming partners were rated very good to exceptional for each sub-factor by their commercial references and military accounts. Emerald and its teaming partners were rated very good to exceptional for their commercial customers, MPG received exceptional ratings and Emerald received very good ratings for Past Performance.

Administrative Record, at AR02079.

Here the first full sentence is a concoction of the Contracting Officer—the Technical Evaluation Board's comments of June 8th, 2006 reflect only the Technical Evaluation Board's assessment of Military Produce Group—"MPG past performance files show that customers have been very happy with the service provided by the offeror." Administrative Record, at AR01960. The second full sentence is likewise a concoction of the Contracting Officer, this because the Technical Evaluation Board's comments of June 7th, 2006 reflect only the Technical Evaluation Board's assessment of Emerald Coast—"All past performance surveys indicate very good

satisfaction for all elements of this question, one stated 110% fill rate!" Administrative Record, at AR01952.

For both of these examples the truth is that Emerald Coast has no teaming partner for Area 5, Group 1; that Military Produce Group has no teaming partner for Area 5, Group 1; that Military Produce Group has no commercial accounts or retail business; and that Military Produce Group *alone has little more than one year's experience* in "buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables." Administrative Record, at AR01681.

These tables and columns constructed by the Contracting Officer as her paired comparative analyses for Area 5, Group 1 appear toward the end of the Contracting Officer's 131-page "Decision Summary." And clearly by this point this Contracting Officer has gotten tired, careless, or both because errors other than those errors which result from the Technical Evaluation Board's conflation of the numeric scores for Military Produce Group and its teaming partners on Area 3 (where Military Produce Group had teaming partners) with the numeric scores for Mili-

tary Produce Group on Area 5, Group 1 (where Military Produce Group had no teaming partners) creep in to the Contracting Officer's paired comparative analyses tables for Area 5, Group 1.

Thus it is that under the Production Operation/Distribution Plan Sub-Factor for the Technical Capability Evaluation Factor for Area 5, Group 1 the Contracting Officer includes an observation about Four Seasons (an Offeror on Area 3, not on an Offeror on Area 5): "Four Seasons has provided an outstanding promotional and support plan that will increase customer satisfaction as well as sales." Administrative Record, at AR02069.

The right-hand sides of the paired comparative analysis tables constructed by the Contracting Officer for Area 5, Group 1, the boxes that display this Contracting Officer's sense of the comments by the Technical Evaluation Board, are this Contracting Officer's attempt, as the Source Selection Authority here, at the "independent judgment" of the Source Selection Authority that is required by Federal Acquisition Regulation 15.308.

Although this Contracting Officer not infrequently supplies her own erroneous suppositions and concoctions in place of the comments by the Technical Evaluation Board, she nonetheless does not disturb the Technical Evaluation Board's numerical scoring of Technical Capability and Past Performance, numerical scoring made through June 8th, 2006, well before the substantive changes in Solicitation requirements and well before the substantive modifications, and revisions, to the Competitive Proposals which resulted from these substantive changes in Solicitation requirements.

Ultimately this Contracting Officer supposes that the higher numeric scores on Technical Capability and Past Performance, higher numeric scores which she supposes she has accredited with her own observations as recorded in the boxes of her paired comparative analysis tables, are the Best Value:

> **Military Produce Group** submitted a proposal that was evaluated as the highest technically rated proposal and slightly lower minimum percentage of patron savings for the base period and both option years. Therefore, in considering the solicitation's evaluation criteria that Technical Capability is significantly more important than Past Performance and when these two evaluation factors are combined they are significantly more important than Price, it is determined that the higher technically rated proposal, slightly lower minimum percentage of patron savings proposal submitted by **Military Produce**

**Protected Information Has Been Redacted**

> **Group** is the better value to the Government than the lower technically rated, slightly higher minimum percentage of patron savings proposal submitted by **Emerald Coast Finest Produce**.

Administrative Record, at AR02080.

---

## ARGUMENT

---

### I. Defendant Cannot Advance Good Grounds To Supplement This Administrative Record Before A Determination On The Merits.

Defendant has moved for a two-week stay, else a remand under 28 U.S.C. § 1491(a)(2) and RCFC 56.2, in order that this Contracting Officer may consider "the fact that the commissary for which Military Produce Group, LLC ("MPG") had a teaming agreement, that is, Fort Buchanan, had been eliminated by amendment to the solicitation." Defendant's Motion for Stay of Proceedings or Remand, at p.1.

There are two reasons that this Motion should be denied.

The first of these reasons is that the requirement for delivery of fresh fruits and vegetables to the commissary at Fort Buchanan—a requirement which was eliminated with Amendment Number 0004 issued on July 21st, 2006—was a unique re-

quirement for Area 5, Group 2, whereas this Post-Award Procurement Protest concerns only Area 5, Group 1, *not* Area 5 Group 2.

The second reason that this Motion should be denied is that Defendant has not, and cannot, suggest good grounds why this Administrative Record needs to be supplemented, by way of remand or by a Declaration from this Contracting Officer, before this Post-Award Procurement Protest can be decided by the Court.

There are only a few, limited instances in which an Administrative Record may be supplemented prior to ruling on the merits. These follow:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for failure to take action . . . and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) *quoting Esch v. Yuetter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

Defendant has not, and cannot, identify any of these very limited *Esch* exceptions which require supplementation of this Administrative Record before the Court can make a decision on the merits of this Post-Award Procurement Protest.

During the telephonic status conference on January 16th, 2007 Defendant advanced *Diversified Maintenance Systems, Inc. v. United States and Cadence Contract Services, LLC*, 74 Fed. Cl. 122, *2006 U.S. Claims LEXIS 381, *14-*23* in support of its Motion. But *Diversified Maintenance* is distinguishable, just as is another such Case involving a remand in a Bid Protest, *Y.S.K. Construction Co., Inc. v. United States*, 30 Fed. Cl. 449, 459 (1994).

In both of these Cases, there was a need for a determination by the United States Small Business Administration, an Agency designated by statute as the Agency to make these determinations, before this Court could rule on the merits. In *Diversified Maintenance* the issue to be determined was an Offeror's status *vel non* as a HUBZone small business. *Diversified Maintenance, 2006 U.S. Claims LEXIS 381, *10-*13.* In *Y.S.K. Construction* the issue to be determined was an Offeror's status

*vel non* as an 8(a), 15 U.S.C. § 637(a)(1), small disadvantaged business. *Y.S.K. Construction*, 30 Fed. Cl., at 455-56.

And the supplementation of this Administrative Record which Defendant seeks to obtain by way of remand, 28 U.S.C. § 1491(a)(2) and RCFC 56.2, is a further explanation from this Contracting Officer, not from DeCA itself. This is "out of place," just as the United States Court of Appeals for the Federal Circuit has observed. The Source Selection Decision before this Court is this Contracting Officer's Source Selection Decision, not DeCA's Source Selection Decision. If this Administrative Record is to be supplemented at all, and it should not be supplemented, then this supplementation should only be obtained through a very limited Declaration from this Contracting Officer, a Declaration limited to an explication of this Contracting Officer's reasons for her Award of Area 5, Group 1 to Military Produce Group. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir. 2001).

## II. The Court Should Now Determine The Merits.

The Court must review the Administrative Record of this Contracting Officer's Source Selection Decision under the standards of the Administrative Procedure Act, 5 U.S.C. § 706, 28 U.S.C. § 1491(b)(4), and not under a new Administrative Record made in this Court.

The Supreme Court has repeatedly emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). And the United States Court of Appeals for the District of Columbia Circuit has carefully explained that tribunals must confine their review of Agency action to the contemporaneous Administrative Record lest these tribunals undertake an impermissible *de novo* review:

> The Department, on the other hand, invokes the familiar rule that judicial review of agency action is normally to be confined to the administrative record.[165] That principle exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny. . . .

*Esch*, 876 F.2d, at 991.

The Court has paid particular heed to this less frequently-regarded point of the *Esch* decision where, as here, it is the merits of the substantive decision reached by the Agency, and not the procedural validity of Agency action, that is the issue. *Robert K. Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000) (*Esch* exceptions "are based upon necessity, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review").

Is it necessary here to obtain a further explication from this Contracting Officer before this Court can effectively review her Award of Area 5, Group 1 to Military Produce Group? No, it is not.

Now before the Court is this Contracting Officer's woefully inept attempt at the independent judgment that is required by Federal Acquisition Regulation 15.308 to support a Source Selection Decision. This attempt is set out in the boxes of her paired comparative analysis tables.

And what do these boxes show? For the box on the right-side of her comparative analysis table for the Experience Sub-Factor under the Technical Capability Evaluation Factor on Area 5, Group 1 we see that this Contracting Officer supposes

that Emerald Coast has teaming partners when in fact Emerald Coast does not have teaming partners.

For the box on the right-side of this Contracting Officer's comparative analysis table for the Product Delivery Sub-Factor under the Past Performance Evaluation Factor on Area 5, Group 1 we learn that this Contracting Officer supposes, erroneously, that Military Produce Group and Emerald Coast have teaming partners for Area 5, Group 1 when the fact, of course, is that neither Military Produce Group nor Emerald Coast has a teaming partner for Area 5, Group 1.

And for the box on the right-hand side of this Contracting Officer's comparative analysis for the Production Operation/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor for Area 5, Group 1 we see that this Contracting Officer cannot distinguish between the Competitive Proposal of an Offeror on Area 3, Four Seasons, and the Competitive Proposals of Military Produce Group and Emerald Coast on Area 5, Group 1—Four Seasons was not an Offeror on Area 5, either for Group 1 or for Group 2.

The law is that this independent judgment of the Source Selection Authority must be both *informed* and *reasonable*. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed. Cl. 421, 427 (2002), *on remand from Impresa*, 238 F.3d, at 1324. This Contracting Officer's independent judgment now before the Court is neither of these.

The only reason to supplement an Administrative Record is if lack of such supplementation would preclude effective judicial review. *Impresa*, 238 F.3d, at 1338 ("a court may nonetheless order the agency to provide explanation is such an explanation is *required* for meaningful judicial review") (Emphasis added).

The problem here is not the *lack* of an explanation from this Contracting Officer. Instead Defendant's problem is that this Contracting Officer's *explanation* is neither informed nor reasonable.

Emerald Coast has put a fatal rent in the hull of this Source Selection Decision, and Emerald Coast has done this with the *existing* Administrative Record.

Emerald Coast has demonstrated: (1) that the Technical Evaluation Board's evaluation of Technical Capability and Past Performance is, at best, incomplete be-

cause the Technical Evaluation Board has not considered Offeror responses to discussion letters or Offeror responses to changes made in the Solicitation after June 8th, 2006; (2) that the Technical Evaluation Board's evaluation of Technical Capability and Past Performance improperly and unlawfully conflates the Technical Evaluation Board's comments and numeric scores for Military Produce Group and its teaming partners on Area 3 (where Military Produce Group had teaming partners) with the Technical Evaluation Board's comments and numeric scores for Military Produce Group on Area 5, Group 1 (where Military Produce Group had no teaming partners); and (3) this Contracting Officer's supposed independent judgment on these Technical Evaluation Board comments and numeric scores is uninformed—this Contracting Officer adopts non-existent facts to support her judgment—and is unreasonable—this Contracting Officer has considered in her deliberations on Area 5, Group 1 a Competitive Proposal on Area 3 only.

Defendant's Motion is an attempt to stop the flooding in the hull of this Source Selection Decision by supplementing the existing, contemporaneous Administra-

tive Record. Such supplementation is improper—this Source Selection Decision, just like RMS *Titanic*, must now continue to the bottom.

## CONCLUSION

The Administrative Record demonstrates that this Contracting Officer's Source Selection Decision is without a rational basis and that this Source Selection Decision obviously violates 10 U.S.C. § 2305(b)(1) (Agencies "shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation"). Emerald Coast and DeCA have both here received the expedited trial on the Administrative Record which is mandated by 28 U.S.C. § 1491(b)(3). *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Further proceedings on the merits are neither required nor necessary.

The Court should now grant Emerald Coast's Motion for Judgment on the Administrative Record. Doing so, the Court should remand this matter to DeCA with direction: (1) to appoint a successor Contracting Officer, one who can properly guide the Technical Evaluation Board as is required by Federal Acquisition Regula-

tion 15.303(b)(4); (2) to obtain the Technical Evaluation Board's re-evaluation of Technical Capability and Past Performance for the Emerald Coast and Military Produce Group revised Competitive Proposals, but this time only on Area 5, Group 1, and this time on the Emerald Coast and Military Produce Group Competitive Proposals as revised in response to discussion letters or to changes made in the Solicitation after June 8th, 2006; and (3) to obtain a new Source Selection Decision, this one that (a) sets forth the selection rationale with clarity, and is justifiable on that basis, and (b) is rational and properly founded on the law and on the factors set out in the Solicitation. *See, e.g., Overstreet Electric Company, Inc. v. United States*, 47 Fed. Cl. 728, 745 (2000).

Finally, Emerald Coast suggests that the Court should order DeCA's compliance with this Court's remand no later than February 9th, 2007. The public interest served by enjoining DeCA, and the continuing irreparable injury to Emerald Coast if DeCA is not enjoined, including, but not limited to, the absence of an adequate remedy at law for Emerald Coast, mandates this short time period for compliance. *See, e.g.*,

*Delbert Wheeler Construction, Inc. v. United States*, 39 Fed. Cl. 239, 251 (1997), *aff'd*, 155 F.3d 566 (Fed. Cir. 1998).

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
January 18th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Thursday, January 18th, 2007 a true and complete copy of this Opening Brief in Opposition to Defendant's Motion for Stay of Proceedings or Remand was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Leslie Cayer Ohta, Esq.

Electronic Mail: Leslie.Ohta@usdoj.gov

Attorney of record for Defendant,
Defense Commissary Agency.

I also certify, under penalty of perjury, that on Thursday, January 18th, 2007 a true and complete copy of this Opening Brief in Opposition to Defendant's Motion for Stay of Proceedings or Remand was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Daniel R. Weckstein, Esq.

Electronic Mail: dweckstein@vanblk.com

Attorney of record for Defendant-Intervenor,
Military Produce Group, LLC.

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

**Protected Information Has Been Redacted**