# In the United States Court of Federal Claims

No. 06-742 C

(E-Filed under seal: January 26, 2007)

(E-Filed for publication: February 22, 2007)

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE CO. INC., Plaintiff, | ) | Post-Award Bid Protest; Remand to Agency to Conduct Evaluation in Accordance with the Solicitation. |
| v. | ) | |
| THE UNITED STATES, Defendant, | ) | |
| and | ) | |
| MILITARY PRODUCE GROUP, LLC, Defendant-Intervenor. | ) | |

Cyrus E. Phillips, IV, Washington, DC, for plaintiff.

Leslie Ohta, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Elliot Clark, Assistant General Counsel, Defense Commissary Agency, Fort Lee, VA, of counsel.

Daniel Weckstein, Norfolk, VA, for defendant-intervenor, Walter B. Martin and Stephanie M. Himel-Nelson, Norfolk, VA, of counsel.

ORDER

HEWITT, Judge

This is a post-award bid protest filed by Emerald Coast Finest Produce Company, Incorporated (Emerald Coast), a fresh produce distributor that serves military facilities, Plaintiff's Statement of Facts (Facts) 2,[1] challenging an award to Military Produce Group, LLC (Military Produce Group) under a solicitation issued by the United States, acting through the Defense Commissary Agency of the Department of Defense, Resale Contracting Division (DeCA), id. at 2-3. The parties filed cross-motions for judgment on the administrative record in accordance with Rule 52.1[2] of the Court of Federal Claims (RCFC). Plaintiff's Motion for Judgment on the Administrative Record, Nov. 24, 2006; Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Cross Motion for Judgment upon the Administrative Record, Dec. 15, 2006. On January 16, 2007, defendant filed a motion for stay of proceedings or remand. For the following reasons, defendant's motion is GRANTED-IN-PART and otherwise DENIED. The court REMANDS the case to DeCA, which shall cause to occur an evaluation by the Technical Evaluation Board (TEB) and a decision by the Source Selection Authority (SSA) on the plaintiff's and defendant-intervenor's proposals in accordance with the terms of the solicitation. In order to minimize the opportunity for further error, the court directs that the proposals of Emerald Coast and Military Produce Group be re-evaluated only with respect to Area 5, Group 1.

## I. Background

DeCA operates military commissary stores "on Department of Defense installations for the economic benefit of military personnel, their families, and . . . other persons granted access to these . . . stores." Facts 3. The stores stock and sell a wide variety of grocery food products and non-food products, such as health and beauty aids. Id. at 3-4. Military commissary stores sell their products at reduced prices by selling them at cost plus a standard surcharge. Id. at 4. Congress allows these stores to sell at reduced prices in order to "enhance the quality of life of members and the uniformed services, retired members, and dependents of such members" and to "support military readiness, recruitment, and retention." 10 U.S.C. § 2481(a)-(b) (2000).

---

[1]Facts relied on in this opinion and cited to a statement of facts or other filings of only one of the parties do not appear to be in dispute.

[2]Although the parties cite to Rule of the United States Court of Federal Claims (RCFC) 56.1, that rule was abrogated and succeeded by RCFC 52.1 on June 20, 2006. RCFC 56.1, Rules Committee Notes (2006).

DeCA issued Request for Proposal Number HDEC02-06-R-0005 (the RFP) on March 20, 2006, seeking competitive proposals for the daily supply of fresh fruits and vegetables to seventy-seven military commissary stores located in the northeast and southeast of DeCA's East Region.[3] Facts 5-6. With regard to Area 5, Group 1, eight offerors submitted proposals. See Administrative Record (AR) 01970. The TEB reviewed the submissions, and the SSA determined that six of the eight fell into the competitive range. See id. Emerald Coast and Military Produce Group were two of those six, and they were given an opportunity to respond to the TEB's concerns to their initial proposals and to revise and re-submit their proposals. Id. The TEB then evaluated the revised proposals and assigned a numeric score to each based upon technical capability and past performance. See AR 02026. The SSA received these scores and based her selection decision upon them. See AR 00561.

During the time period in between the TEB's evaluation of the proposals and the SSA's selection decision, DeCA issued Amendment 0004 to the RFP. AR 00723; Defendant's Motion for Stay of Proceedings or Remand, Jan. 16, 2007, (Def.'s Mot. or Motion) 1. Amendment 004 deleted Fort Buchanan, Puerto Rico as a delivery location for the distributors. AR 000723. Neither the TEB nor the SSA took Amendment 004 into account when evaluating Military Produce Group's technical capability and past experience. Def.'s Mot. 1.

On August 22, 2006, the SSA awarded the contract for Area 5, Group 1 to Military Produce Group because she determined that Military Produce Group's proposal provided the best value to the government. AR 02080; AR 02101. In the SSA's statement, she specifically compares Military Produce Group to Emerald Coast in a cost/technical trade-off analysis. See AR 02078-80. The SSA stated:

> **Military Produce Group** submitted a proposal that was evaluated as the highest technically rated proposal and slightly lower minimum percentage of patron savings for the base period and both option years. Therefore, in considering the solicitation's evaluation criteria that [t]echnical [c]apability is significantly more important than [p]ast [p]erformance[,] and when those two evaluation factors are combined they are significantly more important than [p]rice, it is determined that the higher technically rated proposal, slightly lower minimum percentage of

---

[3]The Defense Commissary Agency of the Department of Defense, Resale Contracting Division (DeCA) divides the regions it serves into "Areas" and "Groups." Facts 6. The regions that are at issue in this case is Area 5, Group 1, which includes military commissary stores located in the mid-South, and Area 5, Group 2, which includes military commissary stores located in the Southeast. Id.

> patron savings proposal submitted by **Military Produce Group** is the better value to the [g]overnment than the lower technically rated, slightly higher minimum percentage of patron savings proposal submitted by **Emerald Coast Finest Produce**.

AR 02080.

On November 1, 2006, plaintiff filed its Post-Award Procurement Protest Complaint (complaint or compl.). On January 16, 2007, defendant filed its Motion. Pursuant to the court's order dated January 17, 2007, defendant filed its Memorandum in Support of Motion for Stay of Proceedings or Remand (Def.'s Memo.), and plaintiff filed its Opening Brief in Support of Plaintiff's Opposition to Defendant's Motion for Stay of Proceedings or Remand (Pl.'s Opp. or Opposition) and Response Brief in Support of Plaintiff's Opposition to Defendant's Motion for Stay of Proceedings or Remand (Pl.'s Resp.). Defendant-Intervenor also filed an Opening Brief Regarding Defendant's Motion to Stay Proceedings (Def.-Int. Br. or Brief). An oral argument on defendant's Motion was held at the United States Court of Federal Claims on January 23, 2007.

## II. Discussion

### A. Bid Protest Standards of Review

The Tucker Act, as amended by the Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b) (2004), confers jurisdiction on this court

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

The court reviews a bid protest action under the standard set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (2004). NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). The APA provides that an agency's decision is to be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). See also Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir.

2001) (Impresa); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). "[T]he court implements this APA standard by applying the standard as previously interpreted by the district court[] in [Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970)]."[4] Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004).

The Federal Circuit has stated that, under the APA standard applied in Scanwell, and now under the ADRA, "'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. (quoting Impresa, 238 F.3d at 1332). When challenging a procurement on the ground of a regulatory violation, the protester "must show a clear and prejudicial violation of [the] applicable statutes or regulations." Id. (quoting Impresa, 238 F.3d at 1333). The protester must also "show that there was a 'substantial chance' [that] it would have received the contract award absent the alleged error." Id. (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)). Therefore, "an agency's procurement decisions will be upheld unless shown to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Process Control Techs. v. United States, 53 Fed. Cl. 71, 75 (2002) (quoting 5 U.S.C. § 706).

B. Standing

Standing to bring a protest as an "interested party" under the ADRA is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract." Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). The Federal Circuit has defined "interested party" further as that which has "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (Info. Tech.). "The term 'interested party' excludes those who did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for the award." Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 232 (2006) (citing Impressa, 238 F.3d at 1334).

The court determines that, as an offeror whose proposal was considered by the contracting officer for the challenged award and who, as far as appears in the record, AR 02080, was the offeror against whose proposal Military Produce Group's proposal

---

[4]In Scanwell, the circuit court upheld the district court's review of government procurement decisions under the APA. See Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859, 874-75 (D.C. Cir. 1970).

prevailed in the SSA's final best value analysis, Emerald Coast is a protester whose direct economic interest was affected by the contract award to Military Produce Group. Emerald Coast, therefore, has standing to bring this action as an interested party.

C. Defendant's Motion for Stay of Proceedings or Remand

1. Legal Standards

The court has the authority to grant a remand of a case to another body at the request of a party or on its own motion. The Tucker Act, which provides jurisdiction to this court generally, also grants the court the power to remand: "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. 1491(a)(2). RCFC 52.2 reiterates the court's authority to remand: "[a]t the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official with such direction as may be deemed proper and just." RCFC 52.2(a)(1).

When adjudicating a motion for judgment on the administrative record, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). However, in limited circumstances, a court may grant a party's request to supplement the administrative record. See Esch v. Yuetter, 876 F.2d 976, 991 (D.C. Cir. 1989). Those circumstances are the following:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Id. "The Esch exceptions to the general rule against extra-record evidence are based upon necessity, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review." Murakami v. United States, 46 Fed. Cl. 731, 735 (2000).

To prevail in a bid protest, the plaintiff must "show not only that significant errors occurred in the procurement process, but also that the errors were prejudicial." Advanced Data Concepts, Inc., 216 F.3d at 1057. In order to demonstrate that the errors were prejudicial, the plaintiff must show that, if defendant had made no errors, "there was a reasonable likelihood that [it] would have been awarded the contract." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

The applicable standard of review for a post-award bid protest is provided by the APA, 5 U.S.C. § 706 (2004). Section 706 directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of review under this standard "is a narrow one" because the "reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974) (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)). "The court is not empowered to substitute its judgement for that of the agency." Id.

2. The Parties' Arguments

On January 16, 2007, while briefing on cross-motions for judgment on the Administrative Record was underway, defendant filed a motion, requesting that the court stay the proceedings or grant a remand to the contracting officer. See generally Def.'s Mot. Defendant made such a request "for the purpose of allowing the Source Selection Authority ('SSA') the opportunity to address one of the issues raised by plaintiff." Id. at 1. That issue was plaintiff's allegation that "the SSA failed to take into account the fact that the commissary for which Military Produce Group . . . had a teaming arrangement, that is, Fort Buchanan had been eliminated by amendment to the solicitation." Id. Defendant stated that, "[g]iven that the amendment was issued after the Technical Evaluation Board ('TEB') rated the offerors, and before the SSA made her decision regarding the award, the SSA may have failed to properly consider the impact of the amendment in evaluating [Military Produce Group's] technical capability and past experience." Id. The court held a telephonic status conference with the parties on January 16, 2007 to discuss defendant's motion. In its order dated January 17, 2007, the court directed the parties to file opening and responsive briefs in support of their positions regarding defendant's motion.

Defendant admits that the evaluation process that ultimately awarded Military Produce Group the bid for Area 5, Group 1 was flawed. Defendant states in its briefing that the contracting officer "in connection with her evaluation of a number of sub-factors,

referred to [Military Produce Group] and its teaming partners[] when[,] in fact[,] [Military Produce Group] did not have any teaming partners." Def.'s Memo. 4. Defendant claims that "this was a harmless error," id. at 2, and states that it does not concede that the contracting officer's decision lacked a rational basis, id. at 4. After oral argument, the court understood the government to have conceded that the evaluation by both the TEB and by the SSA was erroneous and that plaintiff is entitled to have the error on evaluation corrected. See generally Transcript of Oral Argument Emerald Coast Finest Produce Co., Inc., v. United States, No. 06-742 C (Fed. Cl. argued Jan. 23, 2007) (Trans.). Defendant also urges the court not to enter judgment in favor of plaintiff on the basis of this error, claiming that plaintiff has not carried its burden of proof to demonstrate that it was prejudiced by defendant's error. Def.'s Memo. 6-7.

Plaintiff argues that the court should enter judgment in favor of it and remand the matter to DeCA with the instruction to appoint a different contracting officer, to obtain a new evaluation from the TEB, and to obtain a new source selection decision. Pl.'s Opp. 27-28. Plaintiff believes that defendant's motion should be denied because "[d]efendant has not, and cannot, suggest good grounds why this Administrative Record needs to be supplemented, by way of remand or by a [d]eclaration from this [c]ontracting [o]fficer, before this [p]ost-[a]ward [p]rocurement [p]rotest can be decided by the [c]ourt." Id. at 19. Plaintiff states that if the AR is to be supplemented at all, "then this supplementation should only be obtained through a very limited [d]eclaration from this [c]ontracting [o]fficer [that is] limited to an explication of this [c]ontracting [o]fficer's reasons for her [a]ward of Area 5, Group 1 to Military Produce Group." Id. at 21 (citing Impresa, 238 F.3d at 1339).

3. The TEB's Evaluation Process

Defendant admits that the contracting officer did not take Amendment 0004, which removed Fort Buchanan, Puerto Rico from its list of delivery locations, see AR 00723, into consideration when determining that Military Produce Group offered the government the best value, Def.'s Memo. 1, 2. Defendant "acknowledges that the [contracting officer], in connection with her evaluation of a number of sub-factors, referred to [Military Produce Group] and its teaming partners, when[,] in fact[, Military Produce Group] did not have any teaming partners." Id. at 4.

However, defendant's briefing appears to make this admission only because of Amendment 0004. Defendant does not appear to acknowledge that, had Amendment 0004 not existed, the TEB still would have, nevertheless, evaluated Military Produce Group as if it had a teaming arrangement for Area 5, Group 1, despite the fact that that particular teaming arrangement in its proposal applied only to Area 5, Group 2.

Defendant's error, therefore, is not only that the contracting officer did not take Amendment 0004 into account, but also that the evaluation process did not follow the terms set forth by the solicitation.

According to the solicitation, a source selection decision for contract award was to be made for each individual Group within each Area. Under the heading "Source Selection Decision," the solicitation states:

> The source selection decision for contract award will be made for each individual [G]roup and award will be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the [g]overnment considering the evaluation factors as stated.

AR 00603 (emphasis added). The Source Selection Plan that accompanied the solicitation, AR 00557-63, stated that "[a]ward(s) will be determined by each geographical [G]roup," id. at 00563 (emphasis added).

In its evaluation process, however, the TEB did not, at least with respect to Military Produce Group, follow the terms of the solicitation and evaluate each proposal with respect to each geographical Group within each Area. See AR 01965, 01970-07; Defendant-Intervenor's Statement of Facts in Support of Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record, Dec. 19, 2006, 7-8. Rather, the TEB apparently evaluated an offeror's proposal for an entire Area: Military Produce Group was evaluated as an offeror for Area 5 generally. Id. Separate evaluations were not conducted for Group 1 and Group 2 within Area 5, even though Military Produce Group's teaming arrangement was only applicable to Group 2 within Area 5. Id.

Thus, the evaluations, as conducted by the TEB, are flawed. The TEB should have evaluated Military Produce Group's proposal for Area 5, Group 1 separately from Area 5, Group 2 because the resources it offered to perform Group 1 (no teaming arrangement) and Group 2 (with teaming arrangement) were significantly different. It is irrational to make an award for a Group within an Area based on an evaluation of a significantly different offer for another Group within the Area. The TEB failed to follow the solicitation's terms.

4. Remedy

Because the evaluation procedure employed by the TEB was inconsistent with the solicitation, the current award for Area 5, Group 1 to Military Produce Group cannot stand. The question now arises whether the court should remand the case to the

contracting officer, as defendant requests, enter judgment in plaintiff's favor, as plaintiff's requests, or order another alternative.

The court has the authority to remand to an administrative or executive body under both the Tucker Act and RCFC 52.2. See 28 U.S.C. § 1491(a)(2); RCFC 52.2(a)(1). The Court of Federal Claims recently exercised that authority in a case involving defendant's admission of error. See Diversified Maint. Sys., Inc. v. United States, 74 Fed. Cl. 122 (2006) (DMS). DMS concerned an unsuccessful bidder for a construction and maintenance contract entered by the United States Department of the Army (Army) who claimed that the winning bid came from an ineligible party. DMS, 74 Fed. Cl. at 122-23. The defendant filed a motion requesting a remand because it confessed error in determining the successful bidder's eligibility. Id. at 123. Finding that "the situation at hand is not one of those rare circumstances where a remand would be inappropriate," the court remanded the case to the agency to determine plaintiff's protest regarding the successful bidder. Id. at 127.

Unlike the defendant's mistake in DMS, however, the court finds in this case that defendant's errors in this evaluation process render the decision irrational. That finding, however, does not support judgment in plaintiff's favor. In order to prevail in a bid protest, the plaintiff must prove both that significant errors occurred in the procurement process and that the errors were prejudicial. See Advanced Data Concepts, Inc., 216 F.3d at 1057; Data Gen. Corp., 78 F.3d at 1562. As defendant asserts in its memorandum, plaintiff "must demonstrate that the [g]overnment's actions actually prejudiced Emerald Coast in the procurement process by proving that there was a substantial chance it would have received the contract award but for the error." Def.'s Memo. 7. Plaintiff does not make any argument in its briefing regarding whether or not defendant's errors were prejudicial. Pl.'s Opp. passim; Pl.'s Resp. passim.

Given the information that is before the court at this juncture, the court cannot determine whether or not plaintiff had a substantial chance of winning the contract award. The TEB's failure to evaluate the offerors' proposals with respect to Area 5 on a Group by Group basis, so that the evaluation could rationally be used to support an award by the SSA on an individual Group basis, as the solicitation contemplated, taints the offerors' scores in such a way that it is impossible to determine which proposal offered the best value to the government and/or how Emerald Coast's proposal and Military Produce Group's proposal ranked in relation to one another. This circumstance, while not a circumstance that could support a judgment for plaintiff at this juncture, certainly should not, as defendant-intervenor suggests, Trans. 16:21-17:22 (Weckstein), support dismissal, especially where, as here, the uncertainty is a direct result of defendant's erroneous evaluation.

## III. Conclusion

For the foregoing reasons, defendant's Motion is GRANTED-IN-PART and otherwise DENIED. The court REMANDS the case to DeCA, which shall cause to occur an evaluation by the TEB and a decision by the SSA on plaintiff's and defendant-intervenor's proposals in accordance with the terms of the solicitation. See RCFC 52.2(a). In order to minimize the opportunity for further error, the court directs that such evaluation pursuant to this remand shall be limited to Area 5, Group 1. DeCA shall file the Administrative Record of Remanded Proceedings on or before Thursday, February 22, 2007. Except for activities related to the remand, proceedings in this case shall be stayed up to and including February 22, 2007. On Monday, February 26, 2007 at 2:00 p.m. EST, the court will hold a telephonic status conference with the parties to discuss further proceedings. A Sprint operator will initiate the call.[5]

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge

[5]This Order is filed under seal. If any party believes that this Order contains protected material that should be redacted before publication, that party shall, by motion to be filed on or before February 7, 2007, request the court that such protected material be redacted. The motion shall indicate the specific protected material as to which redaction is requested and, with respect to each such proposed redaction, the reason(s) for the request. Note added February 22, 2007: no requests for redaction having been received, the foregoing opinion is to be published.