# In the United States Court of Federal Claims

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED, | ) | |
| Plaintiff, | ) | |
| v. | ) | BID PROTEST<br>No. 06-742C<br>Judge Hewitt |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| MILITARY PRODUCE GROUP, LLC, | ) | |
| Defendant-Intervenor. | ) | |

AMENDED AND RESTATED
POST-AWARD PROCUREMENT PROTEST COMPLAINT

Plaintiff, Emerald Coast Finest Produce Company, Incorporated, 257 Amber Street, Pensacola, Florida 32503-2208 (Emerald Coast), a Florida corporation and a small business fresh produce distributor serving military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida,

**Agreed-Upon Redacted Copy —
May Be Made Public**

Alabama, and Mississippi for over 20 years, as and for its Amended and Restated Post-Award Procurement Protest Complaint against the Defendant, the United States, alleges as follows:

## INTRODUCTION

1. This is a Post-award Procurement Protest, a Civil Action alleging clear and prejudicial violations of Regulation and Statute in connection with a Federal Agency Acquisition, Request for Proposal Number HDEC02-06-R-0005, a Solicitation for Competitive Proposals which promises an Award, a single indefinite-delivery, requirements-type Contract for a base period of 24 months with 2 twelve-month option periods, a Federal Agency Acquisition over which this Court has jurisdiction under 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1491(b)(1).

The Solicitation is issued by Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia (DeCA). The proposed Contract requires daily deliveries of fresh fruits and vegetables to 19 military commissary stores in Alabama, Arkansas, Florida, Louisiana, Mississippi and Tennessee (Area 5, Group 1) of DeCA's East Region.

## Nature of the Action

2. Emerald Coast here challenges the Award of Contract Number HDEC02-06-D-0014 to Military Produce Group LLC, Norfolk, Virginia (Military Produce Group) on August 25th, 2006. This Award was made on the basis of supposed "best value" because Military Produce Group did not offer the highest percentage of patron savings (Military Produce Group offered only 41 percent while Emerald Coast offered 43 percent).

3. This Civil Action is brought to obtain a Declaration that the Award of the Contract proposed by the Solicitation to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because Defendant has improperly evaluated and rated the Competitive Proposals submitted by Military Produce Group and by Emerald Coast.

This Civil Action seeks further an Award of the bid preparation and proposal costs incurred by Emerald Coast, this under 28 U.S.C. § 1491(b)(2).

4. Emerald Coast, a responsible contractor and a small business and an actual Offeror whose Competitive Proposal was in a position to receive Award of the proposed

Contract, is an appropriate "interested party" under 28 U.S.C. § 1491(b)(1), and Emerald Coast has a direct economic interest in the outcome of this Post-Award Procurement Protest. *Impreza Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001). Emerald Coast is a proper party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B)(ii), i.e., Emerald Coast is a private party and a corporation which at the time this Post-Award Procurement Protest is filed has not more than 500 employees and whose net worth does not exceed $7,000,000.

DeCA's violations of procurement Regulation and Statute have had a direct and prejudicial effect on Emerald Coast. Emerald Coast has been denied a proper evaluation of its Competitive Proposal, Emerald Coast has been denied a proper "best value" determination, and Emerald Coast has not received a reasoned judgment that can support this Award to Military Produce Group. Ultimately, Emerald Coast is being unfairly denied the opportunity to compete for the Award of the proposed Contract.

PARTIES

5. DeCA is a Department of Defense Agency established under 10 U.S.C. § 136(b) that operates military commissary stores formerly run by the Military Components. 32 C.F.R. § 383a.4. DeCA has the authority to enter into and administer Contracts, but this only "in accordance with applicable laws, DoD [Department of Defense] regulations, [and] the FAR [Federal Acquisition Regulation] and the DFARS [Defense Federal Acquisition Regulation Supplement]. . . ." 32 C.F.R. § 383a.7. DeCA is an "agency" just as that term is defined in 28 U.S.C. § 451, and thus DeCA is also a "Federal agency" as is required by 28 U.S.C. § 1491(b)(1). *Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99, 103 (1998).

6. Military Produce Group, LLC, 1106 Ingleside Road, Norfolk, Virginia 23502-5609 (Military Produce Group) is a Virginia limited liability corporation chartered on May 26th, 2004. Military Produce Group was established in 2004 to make sales of fresh fruits and vegetables only to DeCA. Military Produce Group made no such sales in 2004.

On September 20th, 2005 Military Produce Group was awarded Contract Number HDEC02-05-D-0013 to supply fresh fruits and vegetables to 20 military commissary stores in Tidewater Virginia, in North Carolina, in South Carolina, at Fort Gordon, Georgia and, as well, at Keflavik, Iceland and at Guantanamo Bay, Cuba. This is Area 1 of DeCA's East Region. Contract Number HDEC02-05-D-0013 is effective for a Base Term of 24 months and 2 12-month Option Periods. Administrative Record, at AR00186 through AR00213. Military Produce Group now had sales.

THE ACQUISITION

7. Request for Proposal Number HDEC02-06-R-0005 was issued on March 20th, 2006 and this Acquisition seeks Competitive Proposals for the daily supply of fresh fruits and vegetables to 77 military commissary stores located in the Northeast (Area 3, Groups 1 and 2) and the Southeast (Area 5, Groups 1 and 2) in DeCA's East Region. Administrative Record, at AR00576 through AR00590.

Area 5, Group 1 includes 19 military commissary stores located in the Mid-South (from Little Rock and Barksdale Air Force Bases east through Mississippi and

Alabama to western Florida—through Pensacola Naval Air Station to Eglin and Tyndall Air Force Bases). Administrative Record, at AR00585 through AR00590.

The period of performance for the Contract or Contracts proposed by the Acquisition is a Base Term of 24 months and 2 12-month Option Periods. Administrative Record, at AR00576. The Acquisition is being conducted as a total small business set-aside. Administrative Record, at AR00578.

DETAILED REQUIREMENTS

8. In Section 4 of their Business Proposals Offerors are required to offer a Minimum Percentage of Patron Savings of at least 38 percent when comparing DeCA's selling price (including a maximum resale markup of 7 percent) to the selling price of the same or similar items from comparable commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store. This is called "Market Basket Pricing." Administrative Record, at AR00800.

The Acquisition requires pricing on 34 high volume core items currently in season for the pricing week of April 10th, 2006. This pricing is to be applied to the esti-

mated annual quantities set out in the Acquisition at Attachment G, Tab 1. Administrative Record, at AR00839. Prices are to be F.O.B. Destination. Offerors are to set out both Minimum Percentage of Patron Savings and unit pricing for these estimated annual quantities. Administrative Record, at AR00595.

9. The offered Minimum Percentage of Patron Savings is required to be maintained "throughout the life of the contract." Administrative Record, at AR00800. The proposed Contract includes periodic surveillance requirements in order to ensure that the promised Minimum Percentage of Patron Savings is both achieved and maintained. Administrative Record, at AR00815.

10. If the promised Minimum Percentage of Patron Savings is not achieved and maintained the proposed Contract requires that military commissary prices for fresh fruits and vegetables are to be reduced, else the Contract may be terminated. Administrative Record, at AR00815 through AR00816.

11. The proposed Contract requires inspection and certification by a United States Department of Agriculture (USDA) inspector at an Offeror's distribution facility before regularly scheduled deliveries to the commissaries in Area 5, Group 1.

USDA inspection and certification at the Contractor's distribution facility is required by Paragraph A.(2) of Defendant's Technical Data Sheet dated July 2006. Administrative Record, at AR00714. Defendant's Technical Data Sheet dated July 2006 was incorporated into the Solicitation and proposed Contract with Amendment Number 0005 dated July 27th, 2006. Administrative Record, at AR00690 through AR00722. In a letter of July 28th, 2006 which accompanied the Distribution of Amendment Number 0005 to the Offerors, Defendant has explained this requirement for USDA inspection and certification at the Contractor's distribution facility:

> Ensuring the DeCA commissary locations receive the grade specifications as stated in the solicitation and ultimately that our customers receive the best quality possible is of utmost importance. USDA inspections of products (fresh produce and/or cut products) identified for delivery to the commissaries provides those assurances. USDA inspections also provide an objective method of tracking of products that is beneficial to both the Government and the Contractor. This requirement applies to the primary contractor and any teaming partner or supplier that provides products directly to the commissaries.

Administrative Record, at pages AR01238, AR01814.

The proposed Contract sets out the weekly schedule of required deliveries. In some cases, e.g. Eglin Air Force Base, deliveries are required each day of each week. In most cases, deliveries are required during the normal work week, Monday through Friday. And in a few cases, deliveries are required only on certain days of the work week. Administrative Record, at AR00720.

There is an exception to the requirement of USDA inspection and certification at the Contractor's distribution facility before deliveries to the commissaries and this is for "Emergency/Out-of-Cycle" orders. These "Emergency/Out-of-Cycle" orders are "exempt from the USDA inspection requirement if they are not inspected as a normal course of business." Administrative Record, at AR00706-707.

12. Offerors are required to submit separate Technical Proposals, these in 4 Sections, each Section corresponding to an announced Sub-Factor under the Technical Capability Evaluation Factor: Section 1—Experience, Section 2—Quality Program, Section 3—Production Capability/Distribution Plan, and Section 4—Additional Support/Promotion Plan. Administrative Record, at AR00694 through AR00702.

13. Under the Experience Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Describe, in detail**, your firm's experience with work of similar nature, scope, complexity, and difficulty that must be performed under the resulting contract of this solicitation. Include your firm's experience in buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables to the commercial sector and/or government agencies. Also include in your narrative how many years in this business and describe whether your firm is a producer, distributor or broker.

Administrative Record, at AR00700.

14. Under the Quality Program Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Describe, in detail**, the methodology used in your quality control program that ensures the stability of the products in order to deliver produce of the highest quality and freshness. Include how your firm works with USDA inspectors to ensure that the product is inspected, received, stored, staged, and shipped correctly.

Administrative Record, at A00700.

15. Under the Production Capability/Distribution Plan Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Provide** the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer; *however, the offeror may propose an alternative time frame for consideration*.

Administrative Record, at AR00701 (Emphasis added).

16. "Teaming Agreements" are defined as those business arrangements where an Offeror will depend "on the products, capital contributions, or expertise [in whole, or in part] of another company (or companies)." Teaming Agreements are to be specifically disclosed in the Competitive Proposals. Administrative Record, at AR-00694. Offerors are to "substantiate the stability of [any] teaming arrangement." Administrative Record, at AR00696.

THE PROMISED EVALUATION

17. The announced Basis of Award is Best Value, Trade-off. Awards are to be determined by each geographical Grouping, i.e., by the specific Groups for Area 3 and for Area 5, and only one Award is to be made for each Group. Proposals will be con-

sidered for Award only where all 34 high volume core items for the proposed Group are priced.

There are 3 Evaluation Factors: Technical Capability, Past Performance, and Price. Announced Sub-Factors under the Past Performance Evaluation Factor are: Product Delivery, Quality History/Customer Satisfaction, and Business Relations. Administrative Record, at A00703.

18. The Technical Capability Evaluation Factor is announced to be significantly more important than the Past Performance Evaluation Factor; and the Technical Capability and Past Performance Evaluation Factors, when combined, are announced to be significantly more important than the Price Evaluation Factor. Administrative Record, at A00703. Within the Past Performance Evaluation Factor, the Product Delivery and Quality History/Customer Satisfaction Sub-Factors are equally important, while the Business Relations Sub-Factor is slightly less important. *Id.*

19. The Acquisition announces that the Source Selection Authority is the Contracting Officer and that the Contracting Officer "will use best value, trade-off procedures to make the final source selection." A separate Selection Decision is to be made by the

Contracting Officer for each Group. Awards are to "be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated." Administrative Record, at AR-00705.

THE SOURCE EVALUATION PLAN

20. The Evaluation Plan for Solicitation Number HDEC02-06-R-0005 explicitly provides:

> Award(s) will *be determined by each geographical group*.

Administrative Record, at AR00563 (Emphasis added).

The Evaluation Plan for Solicitation Number HDEC02-06-R-0005 does not provide that awards, or the evaluations for awards, will be by Area, i.e., for Area 3, or for Area 5.

21. The synopsis for Solicitation Number HDEC02-06-R-0005 provides that:

> A single solicitation containing the four geographical groupings will be issued. *Each group will be independently evaluated* and awarded on an "all or none basis."

Administrative Record, at AR00568, AR00571, AR00572 (Emphasis added).

**Protected Information Has Been Redacted**

EMERALD COAST'S COMPETITIVE PROPOSAL

22. Emerald Coast has submitted a Competitive Proposal only on Area 5, Group 1. Administrative Record, at AR01031, AR01039 through AR01059. In its Technical Proposal Emerald Coast explains that it is a fresh produce distributor that for over 20 years has served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi.

Emerald Coast operates from a 126,000 square foot multi-temperature distribution center in Pensacola, Florida. The distribution center is augmented by a 15,000 square foot refrigerated fruit and vegetable further-processing facility capable of producing 60,000 pounds of packaged goods per day in two shifts. This distribution center services more than 750 food service, retail, military and industrial customers, and deliveries are made with a fleet of 45 refrigerated trucks, these ranging from 16-foot box trucks to 48-foot multi-temperature trailers. Administrative Record, at AR01064.

23. In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Emerald Coast explains that it will need 60 calendar days from the notification of

award to the start of Contract performance. The Acquisition announces that performance will commence approximately 30 calendar days after notification and that Offerors *may* "propose an additional timeframe for consideration."

Emerald Coast explains that its daily receiving capacity is 20,000 cases per day and that its daily shipping capacity is 18,000 cases per day. Emerald Coast says that it is operating at about 45 percent of capacity, and that the projected volume of fresh fruits and vegetables for Area 5, Group 1 will take Emerald Coast's capacity utilization up to 80 percent of capacity. Emerald Coast says that it will "need to hire an additional 45 employees to receive, warehouse, select, load and ship that incremental capacity." Administrative Record, at AR01074.

24. On May 26th, 2006 Emerald Coast received this discussion question: "Aside from hiring 45 additional employees, provide a timeline that fully explains why Emerald Coast needs 60 days from notification of award to start of contract performance." Administrative Record, at AR01080, AR01083.

Emerald Coast responded as follows:

> It will take at least eight new trailers with multi-temperature capabilities and custom side doors with ramps to execute the bid. Lead time for delivery

**Protected Information Has Been Redacted**

> on this equipment is forty-five days and it is not normally available for month, day or trip lease. This is why we need sixty days for start-up. If Emerald Coast is successful in the award of contract, we are fortunate because 12 of the 19 stores are located in the Central Gulf Coast region with 67% of the dollar sales within 180 miles or three hours of our warehouse. This gives us great turn-around and utilization of our trucks with a one-drive driver/helper situation. We will need additional equipment to service these stores.
>
> The turn-around times to service Arnold[,] Barksdale, Ft. Polk, Little Rock and Memphis are in the 18 to 24-hour range and all but Arnold have at least five successive delivery days which dictates two trucks to serve these stores with one coming and one going at all times. This means we will have to purchase eight to ten additional tractors and trailers.

Administrative Record, at AR01084, AR01154.

25. On August 4th, 2006 Emerald Coast received a request for a Final Proposal Revision. Administrative Record, at AR01294. Emerald Coast responded on August 7th, 2006 by raising its promised Minimum Percentage of Patron Savings to 43 percent. Emerald Coast explains:

> 1. We conducted our fourth market basket price survey in area retail stores this weekend and continue to find that we were conservative in our original estimate for this contract proposal. These findings are also substantiated by our dealings with Wal-Mart where our account specialist keeps close tabs on their pricing at the 27 stores he sells specialty, seasonal and fill-in items.
>
> 2. We were very concerned in our original proposal about how rising fuel and energy cost would affect our operational cost in the execution of this

**Protected Information Has Been Redacted**

> contract. As we continue to study the distribution logistics related to the contract, we find our cost estimates in this area were also conservative. The fact that 67% of the Area 5, Group [1] commissary stores are within 3 hours of our warehouse and 45% are within an hour and thirty minutes has helped us revise our distribution cost estimates.

Administrative Record, at AR01295.

26. As for its evaluation Emerald Coast explains that it has no teaming partners. Administrative Record, at AR01037, AR02209. Emerald Coast provides the names of 2 food services companies and 5 restaurants as past performance business references. Administrative Record, at AR01302 through AR01304. In addition Emerald Coast provides as a past performance reference a subsistence Blanket Purchase Agreement that it holds with Defense Supply Center Philadelphia for fresh fruits and vegetables support to DeCA at Keesler Air Force Base in Mississippi, at Fort Rucker and Maxwell Air Force Base in Alabama, and at Pensacola Naval Air Station and Hurlburt Field and Eglin Air Force Base in Florida. Administrative Record, at AR01305.

## MILITARY PRODUCE GROUP'S COMPETITIVE PROPOSAL

27. In connection with teaming partners Military Produce Group has submitted a Competitive Proposal on Area 3, Group 1, Administrative Record, at AR01378 through AR01384, and on Area 3, Group 2, Administrative Record, at AR01429 through AR01436.

In connection with a teaming partner Military Produce Group has submitted a Competitive Proposal on Area 5, Group 2. Administrative Record, at AR01495 through AR01497. Military Produce Group has no teaming partner for the Competitive Proposal that Military Produce Group has submitted on Area 5, Group 1. Administrative Record, at AR01681, AR02209.

28. Military Produce Group will support Area 5, Group 1 from a 64,000 square foot multi-temperature distribution center in Birmingham, Alabama. This distribution center is operated by an affiliate of Military Produce Group that is claimed to have supported military commissaries in Area 5, Groups 1 and 2 since 1998. Administrative Record, at AR01681.

Military Produce Group explains that from its facility in Birmingham, Alabama Military Produce Group will support the commissaries in Area 5, Group 1 with a fleet of 11 refrigerated tractor-trailers. Administrative Record, at AR01681, AR01727.

29. In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Military Produce Group explains that it will need 30 calendar days from the notification of award to the start of Contract performance. The Acquisition had announced that performance would commence *approximately* 30 calendar days after notification of award and that Offerors might "propose an additional timeframe for consideration." Administrative Record, at AR01723. Military Produce Group received no discussion questions on this response. Administrative Record, at AR017-53 through AR01754.

30. On August 4th, 2006 Military Produce Group received a request for a Final Proposal Revision. Administrative Record, at AR01822. Military Produce Group responded on August 7th, 2006 that its promised Minimum Percentage of Patron Savings remained as initially proposed, 41 percent for the Base Term of 24 months

and 42 percent for each of the 2 12-month Option Periods. Administrative Record, at AR01806, AR01818, AR01823.

31. Military Produce Group serves only DeCA and neither Military Produce Group nor its affiliate in Birmingham, Alabama has commercial customers. At the date of submission of initial Competitive Proposals under Request for Proposal Number HDEC02-06-R-0005 Military Produce Group had been supplying fresh fruits and vegetables to DeCA's Area 1 for little more than 1 year. Thus Military Produce Group furnished past performance references from business from which Military Produce Group purchases supplies and services. Military Produce Group provided no past performance references for its affiliate in Birmingham, Alabama. As for any dealings with DeCA, Military Produce Group provided no contract/agreement numbers for its affiliate in Birmingham, Alabama and no list of military commissary stores to which its affiliate in Birmingham, Alabama has provided produce. Administrative Record, at AR01826 through AR01828.

## The Award to Military Produce Group

### The Decision Summary Document/Technical Evaluation Board Re-Assessment

32. The Contracting Officer has prepared a Decision Summary Document for her selection of Military Produce Group for Award of the Contract proposed by Request for Proposal Number HDEC02-06-R-0005 for the Southeast (Area 5, Group 1). Administrative Record, at AR02210 through AR02213.

Likewise the Technical Evaluation Board has prepared a re-assessment, and re-scoring of the Competitive Proposals of Military Produce Group and of Emerald Coast. Administrative Record, at AR02215 through AR02226.

### Experience Sub-Factor

33. Military Produce Group has no teaming partners for Area 5, Group 1. Nonetheless, the Technical Evaluation Board has evaluated Military Produce Group on the Experience Sub-Factor as if Military Produce Group had teaming partners:

> MPG along with MDV/Nash Finch, MidSouth, Hampton Roads and Norfolk Banana have many years of combined experience in purchasing, warehousing and distributing service to a variety of DeCA Commissaries.

Administrative Record, at AR02216.

**Protected Information Has Been Redacted**

And Military Produce Group has carefully and clearly explained that it will service Area 5, Group 1 from its distribution facility in Birmingham, Alabama. MDV/Nash Finch, Hampton Roads, and Norfolk Banana are located in Norfolk, Virginia, many miles from Birmingham Alabama.

The Contracting Officer has adopted the Technical Evaluation Board's scoring of the Military Produce Group Competitive Proposal on the Experience Sub-Factor, and this without question. The Contracting Officer likewise ignores Military Produce Group's commitment to use a distribution facility in Birmingham, Alabama, not in Norfolk, Virginia:

> Additionally, MPG can exclusively utilize sister companies, Hampton Roads Produce (HRP) and Norfolk Banana Distributors (NBD) for produce along with other sub-contractors to procure a full line of fruit and vegetables and providing the necessary warehousing, distribution, ordering system and customer service department to their commercial and Government customers.

Administrative Record, at AR02210. Hampton Roads Produce and Norfolk Banana Distributors operate only from Norfolk, Virginia, not from Birmingham, Alabama.

<u>QUALITY PROGRAM SUB-FACTOR</u>

34. The Technical Evaluation Board has evaluated and scored Military Produce Group's Competitive Proposal on the Quality Program Sub-Factor as if Military Produce Group will always obtain USDA inspection and certification before making regularly-scheduled deliveries to commissaries:

> MPG has a USDA Inspection Office within their warehouse. They inspect shipments as they arrive and before they send to MPG's customers. All product from MPG will be inspected by the USDA.

Administrative Record, at AR02217.

The Contracting Officer has adopted the Technical Evaluation Board's scoring of the Military Produce Group Competitive Proposal on the Quality Program Sub-Factor, and this likewise without question. Administrative Record, at AR02211. The Contracting Officer rationalizes the significantly lower score for the Emerald Coast Competitive Proposal on the Quality Program Sub-Factor based on the absence of on-site USDA inspectors at Emerald Coast:

> Emerald also appears to rely heavily on their owned trained QA personnel and did not utilize USDA inspectors on-site. This created concern for quality because while the company trained QA personnel may use USDA guidelines there were

**Protected Information Has Been Redacted**

> not sufficient details provided to determine how frequently the training is updated.

Administrative Record, at AR02211.

PRODUCTION CAPABILITY/DISTRIBUTION PLAN SUB-FACTOR

35. The greatest difference in the ratings between the Competitive Proposals of Emerald Coast and of Military Produce Group on the Technical Capability Evaluation Factor occurs on the Production Capability/Distribution Plan Sub-Factor. Administrative Record, at AR02210 through AR02213. There are [ ] points available for this Sub-Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board but Emerald Coast is given only [ ] points on this Sub-Factor by the Technical Evaluation Board. Administrative Record, at AR02211.

36. The Technical Evaluation Board makes specific comments about the time that Emerald Coast has said that Emerald Coast will need to commence Contract performance:

> Offeror states increase in inventory would take his warehouse to 80% capacity but would need to increase staff by 45 people it is the opinion of the board that

> a personnel increase of this magnitude could negatively impact the viability of this offer.
>
> 60 days start up needed—response dated May 29, 2006 indicates it will take at least this amount of time to acquire additional personnel, trucks and equipment to meet requirements of solicitation.

Administrative Record, at AR02224.

37. In her Decision Summary Document the Contracting Officer supposes that the difference between the 30 days requested for start-up by Military Produce Group and the 60 days requested for start-up by Emerald Coast results simply from a business decision by Emerald Coast:

> It is apparent that Emerald made a business decision to wait until notification of contract award before they would invest in the resources and equipment needed to perform this contract. This raised concerns with Emerald's proposal for this sub-factor because if unforeseen delays prevented the acquisition of the necessary people or trucks, the commissaries may be adversely affected and DeCA would have to find alternate sources to supply commissaries until Emerald was fully capable of providing to all the commissaries. Further, Emerald is utilizing its 40 trucks for their current business which would only stretch their capability to deliver product to the stores until the 8 to 10 new trucks for the additional business were acquired.

Administrative Record, at AR02212.

The Contracting Officer ignores Emerald Coast's Competitive Proposal, a Competitive Proposal which explains that Emerald Coast is operating at about 45 percent of capacity. AR01074.

And there has been no analysis by the Technical Evaluation Board, or by the Contracting Officer, just how it is that the commissaries in Area 5, Group 1 can be supported by 11 refrigerated tractor-trailers operating from Birmingham, Alabama while these same commissaries, at least in the judgment of Emerald Coast, will require not less than 53 truck-trailers operating from Pensacola, Florida in order to be supported as required by Solicitation Number HDEC02-06-R-0005.

MILITARY PRODUCE GROUP'S CONTRACT PERFORMANCE

38. From the date of Award of Contract Number HDEC02-06-D-0014 and at least through February 2007 Military Produce Group has performed using undisclosed teaming partners, and these undisclosed teaming partners have made routine and direct deliveries to commissaries, routine and direct deliveries made not from Military Produce Group's Birmingham, Alabama distribution facility, but instead from the facilities of these undisclosed teaming partners.

39. These routine and direct deliveries to commissaries made by undisclosed teaming partners on behalf of Military Produce Group have been made without first obtaining USDA inspection and certification. Likewise these routine and direct deliveries to commissaries made by undisclosed teaming partners on behalf of Military Produce Group have been made on normal operating days, and not as "Emergency/Out-of-Cycle" orders.

## FIRST CLAIM FOR RELIEF

40. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 39. hereinabove as if fully set forth herein.

41. The Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because: (1) it is based on an evaluation and scoring on the Experience Sub-Factor that assumes that Military Produce Group has teaming partners, when in fact Military Produce Group did not offer to perform with teaming partners; and (2) it is based on an evaluation and scoring on the Experience Sub-Factor which ignores

Military Produce Group's commitment to use a distribution facility in Birmingham, Alabama, not in Norfolk, Virginia.

SECOND CLAIM FOR RELIEF

42. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 39. hereinabove as if fully set forth herein.

43. The Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because: (1) it is based on an evaluation and scoring of Military Produce Group's Competitive Proposal on the Quality Program Sub-Factor which assumes that "all product from MPG will be inspected by the USDA" when in fact deliveries are made on behalf of Military Produce Group by undisclosed teaming partners, and these deliveries: (a) are not made from Military Produce Group's Birmingham, Alabama distribution facility; and (b) have not been inspected and certified by the USDA; and (2) because the Contracting Officer has rationalized the significantly lower score for the Emerald Coast Competitive Proposal on the Quality Program Sub-Factor based on the absence of on-site USDA inspectors at Emerald Coast, and this even though Mili-

tary Produce Group is making regular and routine deliveries to commissaries, deliveries which were required to have been inspected and certified by the USDA, yet these deliveries have not been so inspected and certified.

THIRD CLAIM FOR RELIEF

44. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 39. hereinabove as if fully set forth herein.

45. The Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because: (1) it is based on an evaluation and scoring of Military Produce Group's Competitive Proposal on the Production Capability/Distribution Plan Sub-Factor which assumes that Military Produce Group can satisfy Contract requirements from its Birmingham, Alabama distribution facility by using only a fleet of 11 refrigerated tractor-trailers, when in fact Military Produce Group is using undisclosed teaming partners to make deliveries directly to commissaries, and these deliveries are not being made from Military Produce Group's Birmingham, Alabama distribution facility; and (2) it is based on an evaluation and scoring of Military Produce Group's Com-

**Protected Information Has Been Redacted**

petitive Proposal on the Production Capability/Distribution Plan Sub-Factor by the Contracting Officer which does not account for the excess capacity available at Emerald Coast.

FOURTH CLAIM FOR RELIEF

46. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 39. hereinabove as if fully set forth herein.

47. The Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because there has been no analysis by the Technical Evaluation Board, or by the Contracting Officer, just how it is that the commissaries in Area 5, Group 1 can be supported by 11 refrigerated tractor-trailers operating from Birmingham, Alabama while these same commissaries, at least in the judgment of Emerald Coast, will require not less than 53 truck-trailers operating from Pensacola, Florida in order to be supported as required by Solicitation Number HDEC02-06-R-0005.

FIFTH CLAIM FOR RELIEF

48. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 39. hereinabove as if fully set forth herein.

49. The Contract proposed by Solicitation Number HDEC02-06-R-0005 that has been awarded to Military Produce Group violates 10 U.S.C. § 2305(b)(1) because this Award is not made to the Competitive Proposal "most advantageous to the United States" considering *only* "the factors included in the solicitation."

SIXTH CLAIM FOR RELIEF

50. Emerald Coast herewith incorporates and re-alleges paragraphs numbers 1. through 39. hereinabove as if fully set forth herein.

51. Through DeCA's indifference after Contract Award to (a) Military Produce Group's failure to deliver to commissaries only from Military Produce Group's Birmingham, Alabama distribution facility; and (b) to Military Produce Group's failure to regularly deliver to commissaries during normal business hours only produce which has been inspected and certified by the USDA, DeCA has failed to obtain the full and open competition required by 10 U.S.C. § 2304(a)(1)(A), this because DeCA

has tainted the process by which the Contract was awarded. *Planning Research Corp. v. United States*, 971 F.2d 736, 740-41 (Fed. Cir. 1992).

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Emerald Coast respectfully requests the Court to grant Judgment for Emerald Coast in this Civil Action, and to Order the following relief:

1. a Declaration that the Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because Defendant has improperly evaluated and rated the Competitive Proposals submitted by Military Produce Group and by Emerald Coast; and

2. a Declaration that the Award of Contract Number HDEC02-06-D-0014 to Military Produce Group lacks a rational basis and is unreasonable or irrational, and thus arbitrary and capricious because Defendant has failed to obtain the full and open competition required by 10 U.S.C. § 2304(a)(1)(A); and

3. an Award of the bid preparation and proposal costs incurred by Emerald Coast, this under 28 U.S.C. § 1491(b)(2); and

4. such further and other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

_________________________
Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
March 9th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Emerald Coast Finest Produce Company, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, March 9th, 2007 a true and complete copy of this Amended and Restated Post-Award Protest Complaint was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Leslie Cayer Ohta, Esq.

Electronic Mail: Leslie.Ohta@usdoj.gov

Attorney of record for Defendant,
Defense Commissary Agency.

I also certify, under penalty of perjury, that on Friday, March 9th, 2007 a true and complete copy of this Amended and Restated Post-Award Protest Complaint was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Daniel R. Weckstein, Esq.

Electronic Mail: dweckstein@vanblk.com

Attorney of record for Defendant-Intervenor,
Military Produce Group, LLC.

**Protected Information Has Been Redacted**