IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE CO., INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-742C<br>(Judge Emily Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MILITARY PRODUCE GROUP, LLC, | ) | |
| Defendant-Intervenor. | ) | |

DECLARATION OF SHEILA S. NORFUS IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND OPPOSITION TO AMEND THE COMPLAINT

1. I am the contracting officer, and the source selection authority, for the procurement of the services being provided by Military Produce Group LLC ("MPG") under the contact that is the subject of this bid protest brought by Emerald Coast Finest Produce,Co., Inc. ("Emerald Coast").

2. Emerald Coast, in its proposed amended complaint, alleges that my rating of MPG's proposal on the Quality Program Sub-Factor was based upon my assumption that all product from MPG would be inspected by the USDA.

3. Emerald Coast also alleges, in its proposed amended complaint, that MPG is not in compliance with the contract because deliveries have been made upon behalf of MPG that have not been certified by the USDA.

4. Emerald Coast asserts that after the award of the contract to MPG, I have ignored MPG's failure to regularly deliver to commissaries during normal business

hours only produce which has been inspected and certified by the USDA.

5. Emerald Coast's asset is wholly lacking in merit for the following reasons:

A. DeCA amended the Technical Data Sheet for Produce ("TDS") attachment to the solicitation with Amendment 0005. Amendment 0005 requires USDA inspections for all products to be delivered to the commissaries. AR000714.

B. There are, however, exceptions to the requirement for USDA inspections on shipments delivered to the commissaries. Amendment 0005 incorporates FAR 52.212-4, Contract Terms and Conditions – Commercial Items (3)(e) that states, "If out-of-cycle or emergency orders are USDA inspected as a normal course of business, then they are not excepted from the USDA inspection requirement of the TDS. However, out-of-cycle or emergency orders are exempt from the USDA inspection requirement if they are not inspected as a normal course of business."

C. Under the Order Quantity Shortages section of the solicitation, and the resulting contract, the contractor must accept out-of-cycle and emergency orders, and to have a sufficient number of alternate sources of supply to insure that out-of-cycle and emergency orders are promptly filled. AR00604-05

D. The subject solicitation, and the resulting contract, provides that out of cycle and emergency orders do not have to comply with the requirements to have the produce USDA inspected.

6. I have reviewed the four declarations provided by Emerald Coast as attachments to its motion to supplement the administrative record, including the declarations and invoices from Adams Produce Companies, Crestview Produce, Emerald, Florida Produce, and East Coast Fruit Company.

7. There is no indication in these declarations as to whether the orders for the supplies provided were processed as emergency or out of cycle orders and not part of the normal day-to-day support.

8. During the startup and/or transition period of any contract, there are often out-of-cycle and emergency orders for a number of reasons; such as the commissary failing to order sufficient quantity and therefore requiring additional product the same day.

9. I have reviewed the documents provided by Emerald Coast in support of its motion. My review disclosed the following:

A. The documents s demonstrate that MPG arranged for the deliveries reflected in the documents as either out-of-cycle or emergency orders.

B. MPG acted in compliance with the contract when it arranged for the orders to be delivered to the commissaries directly rather than to MPG's warehouse.

C. MPG satisfied the requirement for additional or replacement produce for the store with minimal disruption to commissary operations.

D. The orders in question either sporadically occurred during peak times at the commissaries, such as military pay days, or near holiday periods.

E. MPG's performance record indicates that from October 1, 2006, through February 28, 2007, out-of-cycle and emergency orders represented less than one percent of MPG's total sales.

F. Attached to my declaration is a spreadsheet for MPG's performance from October 1, 2006, through February 28, 2007, that demonstrates the following: of the 19 stores in Group 1, MPG fulfilled 100% of the orders for four stores, over 99% for 12 stores, and over 97% for three stores, for an average fill rate of 99.25%.

10. Emerald Coast also alleges, in its proposed amended complaint, that deliveries are made upon behalf of Military Produce Group by undisclosed "teaming partners.

11 The term "teaming partner" and the term "supplier" have different meanings.

A. A supplier has an agreement, either written or verbal, with the offeror to provide its products to a designated delivery point in exchange for payment. The Government views this type of arrangement as proprietary between the offeror and its suppliers and has no interest in the identities of these suppliers. There was no requirement in the solicitation for offerors to disclose the identity of their suppliers.

B. A contractor's teaming partner, as defined in the solicitation, is important because the success of the offeror will depend on the products, capital contributions, or expertise, in whole or in part, of another company to successfully complete the terms of any contract resulting from the solicitation. AR00593. Neither MPG nor Emerald Coast had a teaming partners for Area 5, Group

12. The companies identified in MPG's proposal, such as Norfolk Banana Distributors, Hampton Roads Produce, and MDV, were backup sources of supply or for transportation. They were not identified as teaming partners in MPG's proposal, and were not treated as such by me in my evaluation.

13. Emerald Coast alleges, in its proposed amended complaint, that deliveries are made upon behalf of MPG that are not made from MPG's Birmingham, Alabama distribution facility.

14. Emerald Coast also alleges that my rating of MPG's proposal on the Production Capability/Distribution Plan Sub-Factor was based upon my assumption that MPG could satisfy the contract requirements from its Birmingham, Alabama, distribution facility by

using only a fleet of 11 refrigerated tractor-trailers.

15. Emerald Coast asserts that after the award of the contract to MPG, I have ignored MPG's failure to deliver to commissaries only from MPG's Birmingham, Alabama distribution facility.

16. This statement is false for the following reason: The subject solicitation does not restrict the number of facilities or locations that an offeror may submit in their proposal. MPG, in its proposal, under the sub-factor experience, stated as follows: "In performing this contract MPG will operate our of three (3) multi-temperature distribution centers; Norfolk, Virginia, a 44,000 square foot facility with 1,800 pallet spaces, Birmingham, Alabama, a 64,000 square foot facility with 1,400 pallet spaces, and Rexville Produce with a 70,000 square foot facility with 1,530 pallet spaces. AR01681

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 19, 2007.

Sheila S. Norfus
Contracting Officer