**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

**DANIEL R. WECKSTEIN**

**Vandeventer Black, LLP**
**500 World Trade Center**
**101 W. Main Street, Suite 500**
**Norfolk, VA 23510**
**Attorney of record for Defendant-Intervenor,**
**Military Produce Group, LLC**

**OF COUNSEL:**

**WALTER B. MARTIN**
**STEPHANIE M. HIMEL-NELSON**

**Vandeventer Black, LLP**
**500 World Trade Center**
**101 W. Main Street, Suite 500**
**Norfolk, VA 23510**

March 30, 2007

**AGREED UPON REDACTED COPY – MAY BE MADE PUBLIC**

Pursuant to the Court's Order of February 26, 2007, Intervenor Military Produce Group, LLC ("MPG"), by counsel, sets forth its opposition to Plaintiff Emerald Coast Finest Produce Co., Inc's ("Emerald") Motion to Supplement the Administrative Record and states as follows:

Since Emerald filed its original protest, it has constantly revised its protest allegations. Many of Emerald's original allegations were based upon a failure to thoroughly review the Solicitation requirements or the Administrative Record and Emerald chose not to pursue them. Left with little to protest, Emerald is now apparently attempting to protest MPG's post-award performance of the Contract and contorts the Solicitation requirements, the Source Selection Decision, and its own Contract proposal to allege that Emerald's proposal was improperly scored.

To bolster its attempt to delve into post-award contract performance issues, Emerald moves to supplement the Administrative Record with four declarations. These declarations purportedly detail "repeated instances" where MPG has used "teaming partners" to deliver fresh fruits and vegetables to Commissaries without inspection and certification by a USDA inspector at MPG's facility. Emerald's allegations are baseless and misleading to the Court, but they also clearly address only post-award performance issues. MPG's contract performance is irrelevant to the contract award at issue here. Moreover, Emerald does not meet the criteria necessary for proper supplementation of the record. Emerald's Motion to Supplement the Administrative Record should therefore be denied.

## I. Emerald's Proposed Supplement Addresses Only Post-Award Conduct

Emerald cites Planning Research Corp. v. United States, 971 F.2d 736, 742-43 (1992), for the proposition that the Court may consider post-award conduct in the bid protest context. However, Planning Research, and the remaining cases cited by Emerald, involved key employee

"bait and switch" allegations not applicable to the case at hand. Planning Research, involved a government computer maintenance contract. The solicitation required the submission of resumes for 19 key and 82 non-key personnel who were to be committed to staffing the contract for the first year. Id. at 737. When the awardee proposed to staff the project with the incumbent's employees, the government informed it that the staffing plan was a serious weakness in its bid. Id. at 738. The awardee then proposed to staff the project with the resumes of 100 individuals it submitted. After receiving the award, the contractor made numerous substitutions to its staff, including 42 people not included in its proposal. Id. at 739. The GSA Board of Contract Appeals found, and the Federal Circuit affirmed, that the awardee had pulled a "bait and switch" by materially misrepresenting its staffing to the government. Id.

Clearly, this is not a key employee "bait and switch" situation. MPG proposed to directly deliver [_____] % of DeCA's produce needs and to handle changed, out-of-cycle, and emergency orders through alternate sources if necessary. MPG has met and exceeded its goal and is performing the Contract as it proposed. The only "bait and switch" before this Court, is Emerald's constant revision of its protest allegations.

## II. Emerald's Allegations of Contract Performance Problems are Baseless and Misleading to the Court

Emerald argues that the documents with which it purports to supplement the Administrative Record indicate that MPG has been using undisclosed teaming partners to fulfill its contractual obligations and to circumvent the USDA inspection requirement. Emerald also argues that MPG could only perform the Contract as it proposed by utilizing these purported teaming partners. However, a close look at the terms of the Solicitation and at the relevant facts reveals that Emerald and its counsel are, at best, misleading the Court.

**A. Emerald is Not Utilizing Undisclosed Teaming Partners**

Under the terms of the Solicitation, changes to orders, emergency, and out-of-cycle deliveries are permitted to be shipped through alternate sources when the contractor is not given the usual order lead time. AR00605. This happens frequently when a Commissary manager is inexperienced, underestimates the amount of produce needed, or during heavy volume times such as Thanksgiving and Christmas. See Exhibit 1. Offerors were required to describe their contingency plans for handling changes, emergency, and out-of-cycle orders in their proposals. AR00605; AR00599 ("Describe, in detail, how your firm handles interruptions in the distribution channel, such as changes to orders placed, out-of-cycle orders, and/or emergency orders"). MPG expressly addressed this in its proposal, stating that its goal was "to ship [_____] % of DeCA's FF&V product through our distribution centers." AR01720. Emerald, on the other hand, only cursorily addressed changed, emergency, and out-of-cycle orders, a shortcoming that was noted by the TEB. AR02212 ("There was a brief and limited overview given to describe the product rotation, emergency contingency plans for mechanical equipment or disruption in their supply chain, and handling out-of-cycle orders.")

As is clearly shown by the attached sales data in the accompanying affidavit, MPG has met and exceeded its proposed goal. See Exhibit 1 (Attached). The attached data show that [_____] percent of all deliveries have passed through MPG's facilities and been delivered directly by MPG. Id. All sales passing through MPG's facilities are inspected and certified by USDA inspectors. Id. MPG has utilized the temporary services of other vendors only when necessary for changed, out of stock, emergency, or out-of-cycle orders by Commissaries. This is permitted and contemplated by the Contract. The Solicitation states:

> **EMERGENCY/OUT OF CYCLE/CHANGE ORDERS:**
> Occasionally, commissary ordering personnel may need to correct

> orders already placed, place emergency orders or out-of-cycle orders at which time the contractor may not be given the benefit of the full order lead time, i.e. 24 hours. The contractor is expected to accept these orders in accordance with FAR Clause 52.216-21(e). Emergency and out of cycle orders may require an additional delivery. Produce and quantity changes to the produce orders already placed shall be accepted provided the change is made prior to shipment. **If the contractor does not have the quantity on-hand for the additional quantity, emergency quantity, or out-of-cycle quantity, then the contractor is responsible for making every effort to procure the produce from their alternate sources of supply for delivery to the commissary store.**

AR00605 (emphasis added). MPG has handled changed, emergency, and out-of-cycle deliveries through alternate sources for less than [__] % of all sales. See Exhibit 1. Emerald's attempt to paint MPG as an irresponsible contractor is clearly without basis and is misleading to this Court.[1]

Moreover, the alternate sources used for emergency and out-of-cycle deliveries are clearly not MPG teaming partners. Under the Solicitation, a "teaming arrangement" is specifically described: "[a] contractor teaming arrangement is when the offeror submitting a proposal will depend on the products, capital contributions, or expertise [in whole, or in part] of another company (or companies) to successfully complete the terms of any contract resulting from this solicitation." AR00593. Using alternate vendors to make changed, emergency, or out-of-cycle deliveries amounting to [____] % of all MPG Contract sales cannot be considered a "teaming arrangement" by any stretch of the imagination. Clearly, MPG's use of alternate delivery sources for changed, emergency and out-of-cycle orders, as contemplated by the Contract, is not improper.

### B. MPG is Performing the Contract as Proposed

[1] We note that Emerald's counsel is no doubt attempting to be a zealous advocate for his client. However, that does not give him the right to mislead the Court. Moreover, Mr. Phillips' comments to trade publications regarding this bid protest and the hearing and teleconferences with this Court are misleading and damaging to MPG's business reputation.

Next, Emerald attempts to attack the Contracting Officer's decision to downgrade Emerald's scoring based on its business decision to delay investment in the personnel, trucks, and equipment necessary to perform the Contract until after award. Emerald Motion at 3-4. Emerald insinuates that MPG is only capable of performing its Contract with a fleet of 11 tractor-trailers, because it has been allowed to circumvent the contract requirements. Emerald Motion at 4. However, Emerald, in its own proposal, stated that while it currently employed a fleet of 40 trucks and trailers, it would require 8-10 *additional* vehicles to support the new business if awarded the contract. While MPG proposed to use the fleet of 11 refrigerated tractor trailers specifically to support the Contract award, Emerald proposed only *8-10 trucks and trailers* to support the same award. The Technical Evaluation Board noted this. AR02212. The TEB also observed that Emerald's failure to obtain the equipment and additional 45 people Emerald would need to perform the award was a drawback to Emerald's proposal: "[i]t is apparent that Emerald made a business decision to wait until notification of contract award before they would invest in the resources and equipment needed to perform this contract." AR02212. Implying that MPG can only perform the Contract if it "cheats" is disingenuous.[2] MPG already had the equipment and personnel necessary to perform the Contract in place at the time of contract award and it is currently performing in full compliance with the Contract terms.

## III. Emerald Does Not Meet the Criteria for Supplementing the Record

As this Court reiterated in its February 22, 2007, Order, the record may be supplemented:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the

[2] Again, performance of a contract is not a valid basis for a bid protest.

> decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch v. Yuetter, 876 F.2d 976, 991 (D.C. Cir. 1989). "The Esch exceptions to the general rule against extra-record evidence are based upon necessity, rather than convenience, and should be triggered only where omission of extra-record evidence precludes effective judicial review." Murakami v. United States, 46 Fed. Cl. 731, 735 (2000). Here, Emerald has made no attempt to demonstrate that the affidavits it puts forth are necessary for a determination on the existing Administrative Record. In fact, Emerald cannot demonstrate necessity for the documents because they are related to purported performance issues, which are not proper grounds for a bid protest allegation and were not part of the protest when the Administrative Record was compiled.

## Conclusion

For all of the reasons set forth in the foregoing Opposition to Plaintiff's Motion to Supplement the Administrative Record, MPG respectfully requests that the Court deny Plaintiff's Motion to Supplement and award MPG its costs and attorney's fees incurred in responding to Emerald's Motion. In the alternative, if the Court permits Emerald to supplement the Administrative Record, MPG asks that the Court also supplement the Administrative Record with MPG's Exhibit 1, attached to this Opposition, and with such other documentation as MPG may timely submit to the Court following a decision on Emerald's motion.

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

By: /s/ Daniel R. Weckstein
Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
E-mail: dweckstein@vanblk.com

Of counsel

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

**Certificate of Service**

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail the 30th day of March, 2007 to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliott Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

By: /s/ Daniel R. Weckstein
Of Counsel