IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-742C |
| | ) | (Judge Emily Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MILITARY PRODUCE GROUP, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

DEFENDANT'S REVISED STATEMENT OF FACTS

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits its Statement of Facts in support of our motion for judgement upon the administrative record.

1. Emerald Coast Finest Produce Company, Incorporated ("Emerald Coast"), is a Florida corporation and a small business fresh produce distributor serving military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi. AR01064.

2. The Defense Commissary Agency ("DeCA") is a Department of Defense Agency established under 10 U.S.C. § 136(b) that operates military commissary stores formerly run by the Military Components. 32 C.F.R. § 383a.4. DeCA has the authority to enter into and

**AGREED UPON REDACTIONS**

administer Contracts, but this only "in accordance with applicable laws, DoD [Department of Defense] regulations, [and] the FAR [Federal Acquisition Regulation] and the DFARS [Defense Federal Acquisition Regulation Supplement]...." 32 C.F.R. § 383a.7. DeCA is an "agency" as that term is defined in 28 U.S.C. § 451, and thus DeCA is also a "Federal agency" as is required by 28 U.S.C. § 1491(b) (1). Hewlett-Packard Co. v. United States, 41 Fed. Cl. 99, 103 (1998).

3. Military Produce Group, LLC ("MPG") is a Virginia limited liability corporation chartered on May 26, 2004. MPG was established in 2004 to make sales of fresh fruits and vegetables only to DeCA. MPG made no such sales in 2004. AR02166.

4. On September 20, 2005, MPG was awarded Contract Number HDEC02-05-D-0013 to supply fresh fruits and vegetables to 20 military commissary stores in Virginia, North Carolina, South Carolina, Georgia and, as well, at Keflavik, Iceland and at Guantanamo Bay, Cuba. AR00186 - AR00188. This is Area 1 of DeCA's East Region. AR0188. The contract has a Base Term of 24 months and two 12-month Option Periods. AR00186 - AR00213.

5. Request for Proposal ("RFP") Number HDEC02-06-R-0005 was issued on March 20, 2006. AR00565 - AR00573. The RFP sought proposals for the daily supply of fresh fruits and vegetables to 77 military commissary stores located in the Northeast (Area 3, Groups 1 and 2) and the Southeast (Area 5, Groups 1 and 2) in DeCA's East Region. AR00576 - AR00590.

6. Area 5, Group 1 (formerly Area 5, Group 3) includes 19 military commissary stores located in the Mid-South (from Little Rock and Barksdale Air Force Bases east through Mississippi and Alabama to western Florida-through Pensacola Naval Air Station to Eglin and Tyndall Air Force Bases). AR00585 - AR00590. The period of performance was a Base Term of 24 months and two 12-month Option Periods. AR00576. The RFP was conducted as a total

small business set-aside. AR00578. Contract performance was to start 30 days after contract award. AR 00585.

7. In Section 4 of the Business Proposals, offerors were required to offer a Minimum Percentage of Patron Savings of at least 38 percent when comparing DeCA's selling price (including a maximum resale markup of 7 percent) to the selling price of the same or similar items from comparable commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store. AR00595. This is called "Market Basket Pricing." AR00800. The RFP required pricing on 34 high volume core items currently in season for the pricing week of April 10, 2006. AR00595. This pricing was to be applied to the estimated annual quantities set out in the RFP at Attachment G, Tab 1. AR00839. Prices were to be F.O.B. Destination. AR00595. Offerors were to set out both Minimum Percentage of Patron Savings and unit pricing for these estimated annual quantities. Id.

8. The offered Minimum Percentage of Patron Savings is required to be maintained "throughout the life of the contract." AR00800. The proposed Contract includes periodic surveillance requirements in order to ensure that the promised Minimum Percentage of Patron Savings is both achieved and maintained. AR00815.

9. In the case where the promised Minimum Percentage of Patron Savings were not achieved and maintained, the RFP provided that if the contract prices for fresh fruits and vegetables were not reduced, the contract could terminated. AR00815 - AR00816.

10. The RFP required inspection and certification by a United States Department of Agriculture ("USDA") inspector at the awardee's distribution facility before regularly scheduled

deliveries to the commissaries in Area 5, Group 1. AR 00714. USDA inspection and certification at the awardee's distribution facility is required by paragraph A.(2) of DeCA's Technical Data Sheet dated July 2006. AR00714. The July 2006 Technical Data Sheet was incorporated into the RFP by amendment number 0005 dated July 27, 2006. AR00690 - AR00722.

11. In a letter dated July 28, 2006, which accompanied the amendment 0005, DeCA explained this requirement for USDA inspection and certification at the contractor's distribution facility as follows:

> Ensuring the DeCA commissary locations receive the grade specifications as stated in the solicitation and ultimately that our customers receive the best quality possible is of utmost importance. USDA inspections of products (fresh produce and/or cut products) identified for delivery to the commissaries provides those assurances. USDA inspections also provide an objective method of tracking of products that is beneficial to both the Government and the Contractor. This requirement applies to the primary contractor and any teaming partner or supplier that provides products directly to the commissaries.

AR01238, AR01814.

12. The RFP required a weekly schedule of required deliveries. AR00720. In some cases, deliveries were required each day of each week. Id. In most cases, deliveries are required during the normal work week, Monday through Friday. Id. And in a few cases, deliveries are required only on certain days of the work week. Id.

13. There is an exception to the requirement of USDA inspection and certification at the contractor's distribution facility prior to deliveries to the commissaries for "Emergency/Out-of-Cycle" orders. Emergency and out-of-cycle orders are "exempt from the

USDA inspection requirement if they are not inspected as a normal course of business." AR00706 - AR00707.

14. Offerors were required to submit proposals in separate volumes. AR00592. The four sections in the volume for the Technical Proposals corresponded to the Sub-Factor under the Technical Capability Evaluation Factor: Section 1-Experience, Section 2-Quality Program, Section 3-Production Capability/Distribution Plan, and Section 4-Additional Support/Promotion Plan. AR00694 - AR00702.

15. Under the Experience Sub-Factor for the Technical Capability Evaluation Factor, the RFP stated:

> Describe, in detail, your firm's experience with work of similar nature, scope, complexity, and difficulty that must be performed under the resulting contract of this solicitation. Include your firm's experience in buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables to the commercial sector and/or government agencies. Also include in your narrative how many years in this business and describe whether your firm is a producer, distributor or broker.

AR00700.

The Experience Sub-factor also required a company profile with "related experience of individuals who will be involved with all aspects of performance . . ." AR00598. The Sub-factor also required a detailed description of experience with online or web-based pricing and ordering systems and a description of the system that would be used to provide efficient operations. AR00598.

16. Under the Quality Program Sub-Factor for the Technical Capability Evaluation Factor, the RFP provided as follows:

> Describe, in detail, the methodology used in your quality control

> program that ensures the stability of the products in order to deliver produce of the highest quality and freshness. Include how your firm works with USDA inspectors to ensure that the product is inspected, received, stored, staged, and shipped correctly.

AR00700.

The Quality Program Sub-Factor also required a detailed description of the offeror's quality control and quality assurance procedures, including food safety, product recall procedures, sanitation, pest management, security safeguards, and back-up plans for food safety issues. AR00599.

17. Under the Production Capability/Distribution Plan Sub-Factor for the Technical Capability Evaluation Factor, the RFP provided as follows:

> Provide the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer; however, the offeror may propose an alternative time frame for consideration.

AR00701.

In addition, the RFP specified that contract performance was to start 30 days after contract award HDECO2-06-R-0005. AR 00585.

The Production Capability/Distribution Plan Sub-Factor also required detailed information regarding the offeror's "capability to handle the product requirements of the commissary locations that will be supported under the resulting contract," the key concepts of distribution operations, detailed information regarding how and where food is stored between time of receipt and delivery to the store, and methods used in delivering produce with multiple

temperature requirements. AR00599.

18. "Teaming Agreements" are defined as those business arrangements where an offeror will depend "on the products, capital contributions, or expertise [in whole, or in part] of another company (or companies)." Teaming Agreements are to be specifically disclosed in the Competitive Proposals. AR00694. Offerors are to "substantiate the stability of [any] teaming arrangement." AR00696.

19. The RFP provided that the basis of award would be a Best Value, Trade-off. AR00703. Awards were to be made for each geographical Grouping, that is, by the specific Groups for Area 3 and for Area 5, with only one award being made for each Group. AR00568. Proposals were to be considered for award only where all 34 high volume core items for the proposed Group were priced.

20. The RFP provided for three evaluation factors: Technical Capability, Past Performance, and Price. Sub-factors under the Past Performance Evaluation Factor are were Product Delivery, Quality History/Customer Satisfaction, and Business Relations. AR00703.

21. The RFP provided that the Technical Capability Evaluation Factor was significantly more important than the Past Performance Evaluation Factor; and the Technical Capability and Past Performance Evaluation Factors, when combined, were significantly more important than the Price Evaluation Factor. A00703. Within the Past Performance Evaluation Factor, the Product Delivery and Quality History/Customer Satisfaction Sub-Factors were equally important, while the Business Relations Sub-Factor was slightly less important. Id.

22. The RFP provided that the Source Selection Authority ("SSA") was the contracting officer ("CO"), and that the CO would "use best value, trade-off procedures to make the final

source selection." A separate Selection Decision was to be made by the CO for each Group. Awards were to "be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated." AR00705.

23. The RFP provided that awards would be determined by each geographical group, not by Area. AR00563. Offerors were not required to submit separate proposals for each geographical group contained within an Area.

24. The synopsis for the RFP provided that a single solicitation containing the four geographical groupings would be issued. AR00565-AR00573. Each group would be independently evaluated and awarded on an "all or none basis." AR00568, AR00571, AR00572.

25. Emerald Coast submitted a proposal only for Area 5, Group 1 (formerly Area 5, Group 3). AR01031, AR01039 - AR01059. In its Technical Proposal, Emerald Coast stated that it had been a fresh produce distributor that for over 20 years, and had served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi. AR01064. Emerald Coast stated that it operates from a 126,000 square foot multi-temperature distribution center in Pensacola, Florida, and that the distribution center is augmented by a 15,000 square foot refrigerated fruit and vegetable further-processing facility capable of producing 60,000 pounds of packaged goods per day in two shifts. Id. This distribution center services more than 750 food service, retail, military and industrial customers, and deliveries are made with a fleet of 45 refrigerated trucks, these ranging from 16-foot box trucks to 48-foot multi-temperature trailers. Id.

[

].

26. In its initial proposal regarding the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor, Emerald Coast stated that it would need [] calendar days from notification of award to the start of contract performance. AR01074. The RFP, however, provided that performance should commence approximately 30 calendar days after notification of award, although offerors could "propose an additional timeframe for consideration." AR00565 - AR00573.

Emerald Coast stated in its proposal that its receiving capacity was 20,000 cases per day, and that its shipping capacity was 18,000 cases per day. AR01074. Emerald Coast also stated that it was operating at about 45 percent of capacity, and that the projected volume of fresh fruits and vegetables for Area 5, Group 1 would take Emerald Coast's capacity utilization up to 80 percent. Id. Emerald Coast stated that it would "need to hire an additional 45 employees to receive, warehouse, select, load and ship that incremental capacity." Id.

27. On May 26, 2006, Emerald Coast was asked the following question: "Aside from hiring 45 additional employees, provide a timeline that fully explains why Emerald Coast needs 60 days from notification of award to start of contract performance." AR01080, AR01083.

Emerald Coast responded as follows:

[

].

AR01084, AR01154.

Emerald Coast's response [ ] the question that was asked. As indicated in the revised Addendum to Decision Summary Document (Area 5: Group 1 only) (Corrected Version), the agency was [ ] because it was apparent from Emerald Coast's response that it would not invest in the personnel and equipment needed to meet the requirements of the RFP until after it was notified that it had been awarded the contract. AR02212. The agency noted that unforeseen delays, or the non-availability of resources and/or equipment could jeopardize Emerald Coast's ability to fully perform, resulting in a negative impact upon the commissaries. Id.

28. On July 28th, 2006, DeCA issued Amendment Number 0005, adding the requirement for inspection and certification by a USDA inspector. AR01237, AR01246. DeCA asked offerors "to determine how the amendment would affect their proposed prices (the percentage of patron savings). AR01239.

29. In a letter dated July 31, 2006, Emerald Coast stated as follows:

[

].

AR01240.

Emerald Coast, in response to DeCA's May 26, 2006 discussion letter, relied heavily upon its own trained quality control personnel, [ ]. AR01152. Emerald Coast [ ]. Id.

Emerald Coast, in its July 31, 2006 response to DeCA's July 28, 2006 discussion letter, stated [ ]. AR01240. Emerald Coast also adjusted their minimum percentage of patron savings to [ ] percent to cover the increased cost of the USDA inspections. Id. The agency considered Emerald Coast's response as [ ], and as not adequately indicating when or [ ]. AR02211. Also, because Emerald Coast [ ]. Id.

30. On August 4, 2006, Emerald Coast received a request for a Final Proposal Revision. AR01294. Emerald Coast responded on August 7, 2006, increasing its Minimum Percentage of Patron Savings to [ ] percent. Emerald Coast stated as follows:

> 1. We conducted our fourth market basket price survey in area retail stores this weekend and continue to find that we were conservative in our original estimate for this contract proposal. These findings are also substantiated by our dealings with Wal-Mart where our account specialist keeps close tabs on their pricing at the [ ] stores he sells specialty, seasonal and fill-in items.
>
> 2. We were very concerned in our original proposal about how rising fuel and energy cost would affect our operational cost in the execution of this contract. As we continue to study the distribution logistics related to the contract, we find our cost estimates in this area were also conservative. The fact that [ ] of the Area 5, Group [ ] commissary stores are within [ ] hours of our warehouse and [ ] are within an hour and thirty minutes has helped us revise

our distribution cost estimates.

AR01295.

31. Emerald Coast stated that it had no teaming partners. AR01037, AR02209. Emerald Coast provided the names of two food services companies and five restaurants as past performance business references. AR01302 - AR01304. In addition Emerald Coast provided as a past performance reference a subsistence Blanket Purchase Agreement that it held with the Defense Supply Center Philadelphia for fresh fruits and vegetables support to DeCA at Keesler Air Force Base in Mississippi, at Fort Rucker and Maxwell Air Force Base in Alabama, and at Pensacola Naval Air Station and Hurlburt Field and Eglin Air Force Base in Florida. AR01305.

32. MPG has submitted a proposal for Area 3, Group 1, AR01378 - AR01384, and for Area 3, Group 2. AR01429 - AR01436. MPG also submitted a proposal on Area 5, Group 2, that utilized teaming partners. AR01495 - AR01497. MPG had no teaming partners for its proposal for Area 5, Group 1. AR01681, AR02209.

33. MPG stated that it would support Area 5, Group 1, from a 64,000 square foot multi-temperature distribution center in Birmingham, Alabama. AR01681. MPG stated that its facility in Birmingham, Alabama, would will support the commissaries in Area 5, Group I, with a fleet of 11 refrigerated tractor-trailers. AR01681, AR01727.

The operator of MPG's distribution center had extensive military commissary support experience and was not an affiliate of MPG. AR01681. MPG's proposal provided a great deal of information regarding all of its distribution centers and its contingency plans to ensure that all commissaries receive fresh fruits and vegetables. AR01720-28.

34. In response to a discussion question, MPG explains precisely how it works with

USDA inspectors:

> MPG has a full time (40 hours weekly) USDA inspector located at its facility to inspect all in-bound FF&V product (local and field purchases). MPG's quality assurance inspectors work along side the USDA inspector daily on all receipt inspection. Before shipment of product to the commissaries MPG's quality assurance inspectors inspect all inventoried product and all products being pulled for shipment.

AR01762 - AR01763.

MPG also stated that “[c]ompany quality assurance inspectors work daily with the USDA inspectors on receipt inspection for on the job training. AR01758.

Additional pertinent information was provided:

> - USDA inspectors available and used on a daily basis for product receipt inspection and other product inspection as needed.
>
> - Designated separate inspection areas for the USDA and quality assurance inspectors to perform inspections.

Id.

35. In its initial Competitive Proposal, under the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor, MPG explains that it would need 30 calendar days from the notification of award to the start of contract performance. The RFP provided that performance would commence approximately 30 calendar days after notification of award and that offerors could "propose an additional timeframe for consideration." AR01723. MPG received no discussion questions regarding its response. AR01753 - AR01754.

36. In its August 1, 2006 response to the change contained in Amendment Number 0005 to the RFP, MPG did not change its proposed Minimum Percentage of Patron Savings. MPG explained that its proposal already contained costs for USDA inspections. AR01818.

37. On August 4, 2006, MPG received a request for a Final Proposal Revision. AR01822. MPG responded on August 7, 2006, that its Minimum Percentage of Patron Savings remained, as initially proposed, at 41 percent for the Base Term of 24 months and [ ] percent for each of the two 12-month Option Periods. AR01806, AR01818, AR01823.

38. At the time it submitted its proposal, MPG has been in business for two and a half years. AR02210, and had successfully provided the same services as called for under the RFP. Emerald Coast's contention that the MPG's Birmingham facility is an affiliate is incorrect. MPG's facility in Birmingham, Alabama ,was to be used for this requirement. AR02211. MPG never stated that it was an affiliate or teaming partner. AR01355 - AR01948.

39. The Technical Evaluation Board ("TEB") prepared a re-assessment, and re-scoring of the proposals submitted by MPG and of Emerald Coast. AR02215 - AR02226.

40. There were [ ] points available for the Experience Sub-Factor on the Technical Capability Evaluation Factor. AR01949, AR01954. Both MPG and Emerald Coast were awarded [] points on this Sub-Factor by the TEB. AR02210.

41. The TEB did not evaluate MPG as if it teaming partners for Area 5, Group 1. The TEB stated as follows:

> MPG along with MDV/Nash Finch, MidSouth, Hampton Roads and Norfolk Banana have many years of combined experience in purchasing, warehousing and distributing service to a variety of DeCA Commissaries.

AR02216.

The TEB simply noted that the operator of MPG's distribution facility had extensive experience distributing to a variety of DeCA commissaries. Moreover, in its evaluation, the TEB noted that MPG has "the necessary company-owned fleet of trucks at their Birmingham (11

refrigerated trucks/trailers) distribution centers to deliver the produce and the ability to utilize tractors from Norfolk (25 refrigerated trucks/trailers) and MDV/Nash Finch, Penske Truck Leasing, Mid-South Produce Company, Atlantic Transportation Services or Alabama Food Trailer Company providing back up resources if needed." AR02211-12. In contrast, Emerald Coast's failure to provide detailed back-up and contingency plans was considered a weakness in its proposal. AR02212.

42. MPG stated that it would service Area 5, Group 1, from its distribution facility in Birmingham, Alabama. MPG also noted that MDV/Nash Finch, Hampton Roads, and Norfolk Banana are located in Norfolk, Virginia, many miles from Birmingham Alabama. MPG's proposal provided a great deal of information regarding all of its distribution centers and its contingency plans to ensure that all commissaries receive fresh fruits and vegetables. AR01720 - AR01728. MPG's detailed contingency plans and alternate supply sources were clearly seen as advantageous to DeCA. Emerald Coast's failure to provide the same detailed contingency plans was considered a weakness in its proposal. AR02212.

43. The contracting officer selected MPG for award of the contract proposed under the RFP for Area -5, Group 1. AR02210 - AR02213.

44. The CO, based upon her review of MPG's proposal, agreed with the TEB's scoring of MPG's proposal on the Experience Sub-Factor. The CO noted that:

> Additionally, MPG can exclusively utilize sister companies, Hampton Roads Produce (HRP) and Norfolk Banana Distributors (NBD) for produce along with other sub-contractors to procure a full line of fruit and vegetables and providing the necessary warehousing, distribution, ordering system and customer service department to their commercial and Government customers.

AR02210.

There is no indication in the administrative record that the CO ignored any information in MPG's proposal. Rather, MPG provided a great deal of information regarding all of its distribution centers, and its contingency plans to ensure that all commissaries receive fresh fruits and vegetables. AR01720-28. MPG's close relationship with its warehouse operators and related companies was clearly seen as advantageous to DeCA. AR02211 - AR02212.

MPG did not state in its proposal that it would use the facility in Birmingham exclusively. AR01355 - AR01948. Moreover, there was no requirement in the RFP that an offeror support stores from one facility. AR00565 - AR00573. MPG stated in its proposal that it could use either facility. AR01681, AR01720.

For example, MPG stated as follows:

> - In performing this contract MPG will operate out of three (3) multi-temperature distribution centers; Norfolk, Virginia a 44,000 square foot facility with 1,800 pallet spaces, Birmingham, Alabama a 64,000 square foot facility with 1,400 pallet spaces and … AR01681.
>
> - Military Produce Group will operate out of the following facilities: Military Produce Group Distribution Center, Norfolk, Virginia; Military Produce Group Distribution Center, Birmingham, Alabama.

AR01720.

MPG stated that it would procure its fresh fruit and vegetables from a number of suppliers, including Hampton Roads Produce and Norfolk Banana Distributors, AR02210, and that MPG had the distribution capabilities to deliver the products to any of the stores covered by the RFP. AR01720.

45. There were [ ] points available for the Quality Program Sub-Factor on the Technical Capability Evaluation Factor. AR01949, AR01954. MPG was awarded [ ] points on this

Sub-Factor by the TEB; Emerald Coast was awarded [ ] points on this Sub-Factor. AR02211.

46. The TEB evaluated and scored MPG's proposal on the Quality Program Sub-Factor understanding that the contract requires that MPG obtain USDA inspection and certification before making regularly-scheduled deliveries to commissaries. The TEB noted as follows:

> MPG has a USDA Inspection Office within their warehouse. They inspect shipments as they arrive and before they send to MPG's customers. All product from MPG will be inspected by the USDA.

AR02217.

47. Contrary to Emerald Coast's assertion, the TEB did not "ignore" Emerald's response regarding 60 hours weekly available for USDA inspections. Emerald Coast's initial response to DeCA's discussion letter, dated May 26, 2006, (received on June 2, 2007), relied heavily upon its own trained QA personnel. Emerald Coast stated that Emerald Coast did not utilize USDA inspectors on site. AR01155. Emerald's response dated July 31, 2006, to DeCA's discussion letter dated July 28, 2006, stated that Emerald Coast was only prepared to engage the necessary USDA inspectors as required by the RFP. Emerald Coast's response was not a definitive commitment, and did not indicate when or how these inspectors would be brought on board. It was the SSA determination that Emerald Coast did not then have USDA inspectors on site, and Emerald Coast's response created concern about quality. AR02211.

48. The CO, based upon her review of MPG's proposal, agreed with the TEB's scoring of the MPG's proposal on the Quality Program Sub-Factor. AR02211. The CO specifically noted that Emerald Coast's lower score was based in part upon the fact that Emerald Coast did not have on-site USDA inspectors. The CO noted that:

> [

]

AR02211.

[

].

AR02211.

The TEB also noted:

[

].

AR02211.

49. [

].

AR01949, AR01954. MPG was awarded [ ] points on this Sub-Factor by the TEB, while Emerald Coast is awarded [ ] points. AR02211.

50. The TEB specifically noted the time that Emerald Coast stated it needed before it could commence contract performance:

[

].

AR02224.

Emerald Coast stated, regarding its proposed [ ] day start-up period, sates, that it would "take at least eight new trailers with multi-temperature capabilities and custom side doors with ramps to execute the bid. Lead time for delivery on this equipment is forty-five days and is not normally available for month, day or trip lease. This is why we need [ ] days for start-up." AR01154.

51. The CO found that the difference between the [ ] days requested for start-up by MPG and the [ ] days requested for start-up by Emerald Coast was due to a business decision by Emerald Coast:

[

].

AR02212.

[

]. AR00585.

52. The CO did not ignore Emerald Coast's representation in its proposal that it was operating at about [ ] percent of capacity. AR01074. The CO expressed concern based upon Emerald Coast's statement that award of the contract would take the warehouse to [ ] percent capacity, and that it could not start until it obtained both additional employees and equipment. The capacity at which Emerald Coast was then operating was not relevant.

53. In its proposal, Emerald Coast only indicated that was then operating [ ] truck-trailers, and that those [ ] trucks were used to service more than 750 customers. AR01064. Further, Emerald Coast did not indicate how many of its trucks it intended to employ in servicing the DeCA contract, or how many would be required other than to indicated that it would need to purchase eight tractor-trailers to perform the contract. AR01154.

54. On the Past Performance Evaluation Factor MPG was awarded a score of [ ] points and Emerald Coast was awarded a score of [ ] points. AR02213. MPG, however, had been performing the same work as called for under the RFP for the past 2 ½ years, while Emerald Coast has not had the same type of experience in servicing commissaries.

55. Overall on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor MPG was awarded [ ] points, and Emerald Coast was awarded [ ] points. AR02213. Except for [] point, this [ ] point difference is accounted for by the [ ] point difference in the scores on the Technical Capability Evaluation Factor-[ ] points for MPG and [ ] points for Emerald Coast. AR02213.

56. Of the [ ] point difference in scores on the Technical Capability Evaluation Factor, [ ]

points come from the difference in scores on the Production Capability/Distribution Plan Sub-Factor- [ ] points for MPG and [ ] points for Emerald Coast-and [ ] points come from the difference in scores on the Quality Program Sub-Factor---[ ] points for MPG and [ ] points for Emerald Coast. AR02211.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

<u>OF COUNSEL</u>:

ELLIOT CLARK
Assistant General Counsel
Defense Commissary Agency
1300 E Ave
Fort Lee, VA 23801-1800

Dated: July 11, 2007