**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT-INTERVENOR'S REVISED STATEMENT OF FACTS IN SUPPORT OF DEFENDANT-INTERVENOR'S REVISED CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 56.1(b1) of the Rules of the United States Court of Federal Claims, Defendant-Intervenor, Military Produce Group, LLC, by and through counsel, files its Revised Statement of Facts in Support of Defendant-Intervenor's Revised Cross-Motion for Judgment on the Administrative Record.

**Revised Statement of Facts**

1. Military Produce Group LLC ("MPG"), 1106 Ingleside Road, Norfolk, Virginia 23502, is a Virginia limited liability company created specifically to make sales of fresh fruits and vegetables to military commissaries and to make DeCA's produce acquisition more efficient and utilize commercial based methodologies. AR00008. MPG's principal operators have more than 8 years of experience supplying fresh produce to military commissaries and nearly 50 years of combined experience in the commercial produce business. AR01690-01709.

2. MPG was awarded the test contract for DeCA's new commercial based produce system after submitting a proposal with the new system. After performing test Contract Number HDEC02-05-D-0003 from mid-January to mid-September of 2005 (AR00082-00102), MPG was awarded competitive Contract Number HDEC02-05-D-0013 to supply 20 military commissary stores in Area 1 of DeCA's East Region, including the Tidewater region of Virginia; North Carolina; South Carolina; Georgia; Cuba; and Keflavik, Iceland (AR00186-00213). MPG is currently performing that contract.

3. The Agency Defendant is Headquarters, Defense Commissary Agency, Resale Contracting Division, Fort Lee, Virginia ("DeCA"). DeCA was established as a Department of Defense Agency to operate military commissary stores. Military commissaries are similar to grocery stores, 10 U.S.C. § 2484(a), and sell similar items at a significantly reduced price to military members, 10 U.S.C. § 2484(d). The commissary stores are an important part of the compensation package offered to military members. 10 U.S.C. § 2481(b).

4. The Plaintiff, Emerald Coast Finest Produce Co., Inc. ("Emerald"), is a Florida corporation and fresh produce distributor. Emerald was an unsuccessful offeror for Solicitation HDEC02-06-R-0005 and was probably third in line for award for this Contract. AR01949-01962; AR01968; AR02042.

5. Until recently, DeCA and military commissary stores have acquired produce through the support of Defense Supply Center Philadelphia ("DSC-P"). DSC-P used a multi-layered acquisition system of 4 Defense Subsistence Offices, 10 Produce Buying Offices, and Field Produce Buyers to acquire most of its produce from "terminal markets." Terminal markets are basically wholesale markets where farmers bring produce to sell, but the terminal market method of produce acquisition is generally no longer used in the commercial grocery business. Over

time, most commercial commissaries have begun buying produce directly from farmers, cutting out the middle man and reducing costs. Terminal markets, however, still supply institutional food that is not of the same high quality as produce sold directly to consumers in retail markets. Consequently, DSCP's use of terminal markets to acquire produce for DeCA military commissaries was becoming problematic. AR00095-00102.

6. On December 16, 2004, DeCA awarded a test contract to MPG to provide produce to 20 sore locations in Georgia, North Carolina, South Carolina, Virginia, and West Virginia. The purpose of the test contract was to test the capabilities of MPG's commercial based business model to provide produce to military commissaries. AR00003. The test was successful and on September 22, 2005, DeCA awarded competitive contract number HDEC02-05-D-0013 to MPG for 22 stores in Area 1. AR00004. MPG is currently performing this contract.

7. On March 20, 2006, DeCA issued solicitation number HDEC02-06-R-0005 for 77 military commissary locations in Areas 3 and 5, in the Eastern portion of the United States. Area 5 (Groups 1 and 2) encompassed the Southeast portion of the United States.[1]

8. The source selection methodology for the solicitation was to be Best Value, Trade-Off. AR00601. "The process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest price proposal or other than the highest technically rated offer." AR00601. Under the terms of the solicitation, "Technical Capability is significantly more important than Past Performance. Technical Capability and Past Performance when combined are significantly more important than Price, as this provides the contracting

[1] By Amendment 0002, dated April 21, 2006, the agency changed the designation for Area 5, Groups 3 and 4 to Area 5, Groups 1 and 2. While MPG's proposal refers to Area 5, Groups 3 and 4, we refer to them per the agency's amendment as Area 5, Groups 1 and 2.

officer with the broadest discretion in determining the best value for the Government." AR00558.

9. The Evaluation Plan called for a Technical Evaluation Board to assess the technical capabilities and past performance of each offeror in accordance with the solicitation requirements and evaluation criteria in a "written technical consensus document." AR00560. The TEB consisted of a Chairperson and two Commissary Management Specialists who are experts in their fields with regard to the requirements in the solicitation. AR00560. The TEB members also possessed the necessary "institutional knowledge in commissary produce department operations." AR00560.

10. The offerors were required to submit technical proposals covering: (1) Experience; (2) Quality Program; (3) Production Capability/Distribution; and (4) Additional Support/Promotion Plan. AR00598-00600. Under the Evaluation Plan, within the Technical Capability factor, the offerors' Experience, Quality Program, and Production Capability/Distribution Plan sub-factors were to be of equal importance, while the Additional Support/Promotion Pan sub-factor was slightly less important. AR00558-00559.

11. Under the Experience Sub-factor, the solicitation asked for a description of past experience with work of a similar nature, scope and complexity, including experience buying, selecting product assortment, pricing, order processing, inventory management, and delivery. AR00598. The solicitation also asked for a company profile with "related experience of individuals who will be involved with all aspects of performance…." AR00598. The solicitation also required a detailed description of experience with online or web-based pricing and ordering systems and a description of the system that would be used to provide efficient operations. AR00598.

12. Under the Quality Program sub-factor, the solicitation asks for a detailed description of the offeror's quality control and quality assurance procedures, including food safety, product recall procedures, sanitation, pest management, security safeguards, and back-up plans for food safety issues. The sub-factor also asked for a detailed description of how the offeror works with USDA inspectors and the offeror's inspection procedures. AR00599.

13. Under the Production Capability/Distribution Plan Sub-factor, the solicitation requests detailed information regarding the offeror's "capability to handle the product requirements of the commissary locations that will be supported under the resulting contract," the key concepts of distribution operations, detailed information regarding how and where food is stored between time of receipt and delivery to the store, methods used in delivering produce with multiple temperature requirements, and the length of start-up time the offeror will require. AR00599.

14. The solicitation clearly indicated that contract performance would commence 30 days after award. It stated:

> Provide the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer); however, the offeror may propose an alternative time frame for consideration.

AR00599. The solicitation is clear that the offeror may propose an alternative to the 30 days, but it also clear that the Agency is not required to accord it the same weight as an offer to comply with the Agency's need to start Contract performance within 30 days.

15. Within the Past Performance Evaluation factor, Product Delivery and Quality History/Customer Satisfaction sub-factors were all of equal importance in relation to each other while the Business Relations sub-factor was slightly less important. AR00559. The agency was

permitted to use the commercial business references provided by the offeror and additional sources of information such as government agencies. AR00602.

16. The Evaluation criteria clearly state that "the price evaluation will be based on the offeror's proposed minimum percentage of patron savings." AR00558; AR00601. This proposed percentage of patron savings was to be at least 38%. AR00595. The offeror was to submit pricing as (1) Minimum Percentage of Patron Savings and (2) Unit Prices for a specified period of time. AR00595. The solicitation states:

> The minimum percentage of patron savings is the amount the contractor will save the commissary patron on all core items over the selling price of the same or similar items from comparable commercial operations within the local commuting area and/geographical area within a 20-mile radius of the commissary location […], called **Market Basket Pricing**. The percentage of patron savings is calculated by averaging the savings on all core items at each commissary store. The overall percentage of patron savings is the average percentage for all commissary store locations within the group.

AR00595. Unit prices were to be provided to "indicate an understanding of the percentage of patron savings application, in addition to providing the government with the opportunity to perform a price realism analysis." AR00595.

17. In its Technical Proposal, MPG explains that it is a veteran owned fresh fruit and vegetable distributor that is currently providing DeCA with "a procurement, warehousing, distribution, order processing, and customer service program in Area 1 Eastern Region (HDEC02-05-R-0007) for Virginia, North Carolina, South Carolina, Georgia, Keflavik, Iceland, and Guantanamo Bay, Cuba." AR01680. In its proposal, MPG discusses its recent contracts for DeCA and the improvements it has implemented to DeCA's commissary sales and performance. AR01680. MPG then proposes to provide the same procurement systems as that provided under the Area 1 contract for DeCA. AR01681.

18. MPG also provided detailed information regarding its past experience, AR01680-01681, including the resumes of its principal employees, AR01690-01709. All of MPG's principal employees are highly experienced in the produce business. See id.

19. MPG operates out of 3 multi-temperature distribution centers throughout the Southeast. AR01681. All of its facilities are multi-temperature distribution centers with banana/tomato ripening rooms with packaging and bagging capability. AR01681.

20. MPG submitted a proposal for Area 3, Groups 1 and 2, and for Area 5, Groups 1 and 2. AR01355. MPG teamed with partners for its proposal, including a teaming partner for Area 5. AR01681-01682, AR01715-01716, AR01721-01722. Because the solicitation did not require separate proposals for Groups within an Area, MPG's Technical Proposal was evaluated for the whole of Area 5, including both Groups 1 and 2. AR01720-01728.

21. During the re-evaluation, MPG's proposal was evaluated for only Area 5 Group 1. AR02210.

22. Emerald submitted a proposal for Area 5, Group 1 only. It's Technical Proposal, however, was ranked significantly lower than MPG's and lower than that of another offeror, Pro*Act in the initial evaluation. The initial scoring information and price analysis was as follows:

| Company | Technical Capability & Past Performance Scores | Proposed Minimum % of Patron Savings |
|---|---|---|
| MPG | [ ] | [ ] |
| Pro*Act | [ ] | [ ] |
| Emerald | [ ] | [ ] |
| M&S Foods | [ ] | [ ] |

AR01949-01962; AR01968; AR02042.

23. After re-evaluation, MPG's and Emerald's scores are as follows:

| Company | Technical Capability & Past Performance Scores | Proposed Minimum % of Patron Savings |
|---|---|---|
| MPG | [ ] | [ ] |
| Emerald | [ ] | [ ] |

AR02209-26.

24. The scores following re-evaluation of the Technical Proposals are as follows:

| Company | Experience | Quality Program | Production Operation/ Distribution Plan | Additional Support/ Promotion Plan | Total Technical Capability Score |
|---|---|---|---|---|---|
| MPG | [ ] | [ ] | [ ] | [ ] | **[ ]** |
| Emerald | [ ] | [ ] | [ ] | [ ] | **[ ]** |

AR02210-26.

25. In its most recent evaluation, the TEB indicated concern regarding the lack of detail supplied in Emerald Coast's technical proposal overall with respect to its Quality Program:

> Emerald provided adequate details regarding food safety concerns but the inspection of products and quality issues indicates a

> reliance on their Receiving Manager without providing information about any backups or other personnel that would be available in this person's absence or could otherwise lead to disruption in distribution to the commissaries.

AR02211. The TEB also noted:

> Limited specific details of procedures in place made it difficult to assess Emerald's Quality Program as more than satisfactory. […] Emerald's Quality Program is established and appears to be adequate for the requirements however more specific details regarding their procedures utilized would have given a clearer/better viewpoint of their program's capacity.

AR02211.

26. In contrast, in its re-evaluation of MPG's proposal, the TEB noted that MPG's proposal provided specific details regarding its Quality Program and "was determined to have a very strong program […] [

] […] MPG fully explained their product recall process that was excellent… There were sufficient details provided that there are backup personnel to minimize any disruption in distribution to the stores." AR02211.

27. In re-evaluating Emerald's Production Capabilities/Distribution plan, the Agency again noted a lack of detail:

> While Emerald states how much produce passes through their facilities[,] little detail was provided to provide better insight of their suppliers, what type of agreements they have with them or what time frame. There was a brief and limited overview given to describe the product rotation, emergency contingency plans for mechanical equipment or disruption in their supply chain, and handling out-of-cycle orders. Additional details regarding their procedures would have provided a clearer/better demonstration of their capability for this sub-factor.

AR02212. Emerald received [ ] out of [ ] points for the Production Capabilities/Distribution plan sub-factor.

28. In contrast, MPG received [ ] points for the Production Capabilities/Distribution plan sub-factor. The TEB noted that MPG:

> [
>
> ]

AR02211-12. The TEB also noted that MPG has:

> [
>
> ]

AR02212.

29. In its proposal, Emerald proposed a 60 day start-up period. AR1074. In further discussions, the Agency requested clarification regarding why Emerald needed 60 days. Emerald's need for the additional time to hire 45 new employees and purchase significant amounts of new equipment raised concerns with the TEB. It noted that the 60 day start-up

> […] raised concerns with Emerald's proposal for this sub-factor because if unforeseen delays prevented the acquisition of the necessary additional people or trucks, the commissaries may be adversely affected and DeCA would have to find alternate source [sic] to supply commissaries. […] Emerald's proposal provided a general overview of their production/distribution capability. It is likely they could perform the contract if awarded the contract but

> only after an extended startup period – assuming no unexpected delays. MPG's proposal provided a more detailed approach to demonstrate their production/distribution capabilities for contract performance that could be implemented within the required timeframe if awarded the contract. As such, MPG received a very good rating for this sub-factor and Emerald received a satisfactory rating for this sub-factor.

AR02212.

30. The Source Selection Decision indicates that MPG is the best value for the agency for Area 5. AR02214. The Decision Summary states:

> In comparing MPG and Emerald proposals, MPG submitted a proposal that was evaluated as significantly higher technically with a somewhat lower minimum percentage of patron savings than Emerald['s] proposal that was evaluated as significantly lower technically with a somewhat higher minimum percentage of patron savings. Therefore in considering the solicitation's evaluation criteria that Technical Capability is significantly more important that Past Performance and when these two evaluation factors are combined they are significantly more important than Price, it was determined that the significantly higher technically rated proposal and somewhat lower percentage savings proposal submitted by MPG is the better value to the Government than the significantly lower technically rated and somewhat higher percentage savings proposal submitted by Emerald.

AR02214.

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

By:__________/s/______________________

Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
E-mail: dweckstein@vanblk.com

Dated: June 25, 2007

OF COUNSEL

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

**Protected Information has been Redacted**

**Certificate of Service**

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail transmission this 25th day of June, 2007 to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliot Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

By:__________/s/________________________
Daniel R. Weckstein