**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

# DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S REVISED STATEMENT OF FACTS

**DANIEL R. WECKSTEIN**

**Vandeventer Black, LLP**
**500 World Trade Center**
**101 W. Main Street, Suite 500**
**Norfolk, VA 23510**
**Attorney of record for Defendant-Intervenor,**
**Military Produce Group, LLC**

**OF COUNSEL:**

**WALTER B. MARTIN**
**STEPHANIE M. HIMEL-NELSON**

**Vandeventer Black, LLP**
**500 World Trade Center**
**101 W. Main Street, Suite 500**
**Norfolk, VA 23510**

June 25, 2007

**AGREED UPON REDACTED COPY – MAY BE MADE PUBLIC**

## RESPONSE TO REVISED STATEMENT OF FACTS

Pursuant to Rule 56.1(b)(1) of the Rules of the United States Court of Federal Claims the Defendant-Intervenor, Military Produce Group, LLC ("MPG"), respectfully submits its Response to the Revised Statement of Facts submitted by the Plaintiff, Emerald Coast Finest Produce Co., Inc. ("Emerald Coast").

1. Emerald Coast Finest Produce Company, Incorporated, 257 Amber Street, Pensacola, Florida 32503-2208 (Emerald Coast), is a Florida corporation and a small business fresh produce distributor serving military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi for over 20 years.

Response:

**Agree.**

2. Defense Commissary Agency (DeCA) is a Department of Defense Agency established under 10 U.S.C. § 136(b) that operates military commissary stores formerly run by the Military Components. 32 C.F.R. § 383a.4. DeCA has the authority to enter into and administer Contracts, but this only "in accordance with applicable laws, DoD [Department of Defense] regulations, [and] the FAR [Federal Acquisition Regulation] and the DFARS [Defense Federal Acquisition Regulation Supplement]...." 32 C.F.R. § 383a.7. DeCA is an "agency" just as that term is defined in 28 U.S.C. § 451, and thus DeCA is also a "Federal agency" as is required by 28 U.S.C. § 1491(b) (1). *Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99, 103 (1998).

Response:

**Agree.**

**Protected Information has been Redacted**

3. Military Produce Group, LLC, 1106 Ingleside Road, Norfolk, Virginia 23502-5609 (Military Produce Group) is a Virginia limited liability corporation chartered on May 26th, 2004. Military Produce Group was established in 2004 to make sales of fresh fruits and vegetables only to DeCA. Military Produce Group made no such sales in 2004.

Response:

**Agree.**

4. On September 20th, 2005 Military Produce Group was awarded Contract Number HDEC02-05-D-0013 to supply fresh fruits and vegetables to 20 military commissary stores in Tidewater Virginia, in North Carolina, in South Carolina, at Fort Gordon, Georgia and, as well, at Keflavik, Iceland and at Guantanamo Bay, Cuba. This is Area 1 of DeCA's East Region. Contract Number HDEC02-05-D-0013 is effective for a Base Term of 24 months and 2 12-month Option Periods. Administrative Record, at AR00186 through AR00213. Military Produce Group now had sales.

Response:

**Agree.**

5. Request for Proposal Number HDEC02-06-R-0005 was issued on March 20th, 2006 and this Acquisition seeks Competitive Proposals for the daily supply of fresh fruits and vegetables to 77 military commissary stores located in the Northeast (Area 3, Groups 1 and 2) and the Southeast (Area 5, Groups 1 and 2) in DeCA's East Region. Administrative Record, at AR00576 through AR00590.

Response:

**Agree.**

6. Area 5, Group 1 (formerly Area 5, Group 3) includes 19 military commissary stores located in the Mid-South (from Little Rock and Barksdale Air Force Bases east through Mississippi and Alabama to western Florida-through Pensacola Naval Air Station to Eglin and Tyndall Air Force Bases). Administrative Record, at AR00585 through AR00590. The period of performance for the Contract or Contracts proposed by the Acquisition is a Base Term of 24 months and 2 12-month Option Periods. Administrative Record, at AR00576. The Acquisition is being conducted as a total small business set-aside. Administrative Record, at AR00578.

Response:

**Agree.**

7. In Section 4 of their Business Proposals Offerors are required to offer a Minimum Percentage of Patron Savings of at least 38 percent when comparing DeCA's selling price (including a maximum resale markup of 7 percent) to the selling price of the same or similar items from comparable commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store. This is called "Market Basket Pricing." Administrative Record, at AR00800. The Acquisition requires pricing on 34 high volume core items currently in season for the pricing week of April 10th, 2006. This pricing is to be applied to the estimated annual quantities set out in the Acquisition at Attachment G, Tab 1. Administrative Record, at AR00839. Prices are to be F.O.B. Destination. Offerors are to set out both Minimum Percentage of Patron Savings and unit pricing for these estimated annual quantities. Administrative Record, at AR00595.

Response:

**Agree.**

8. The offered Minimum Percentage of Patron Savings is required to be maintained "throughout the life of the contract." Administrative Record, at AR00800. The proposed Contract includes periodic surveillance requirements in order to ensure that the promised Minimum Percentage of Patron Savings is both achieved and maintained. Administrative Record, at AR00815.

Response:

**Agree.**

9. If the promised Minimum Percentage of Patron Savings is not achieved and maintained the proposed Contract requires that military commissary prices for fresh fruits and vegetables are to be reduced, else the Contract may be terminated. Administrative Record, at AR00815 through AR00816.

Response:

**Agree.**

10. The proposed Contract requires inspection and certification by a United States Department of Agriculture (USDA) inspector at an Offeror's distribution facility before regularly scheduled deliveries to the commissaries in Area 5, Group 1. USDA inspection and certification at the Contractor's distribution facility is required by Paragraph A.(2) of DeCA's Technical Data Sheet dated July 2006. Administrative Record, at AR00714. DeCA's Technical Data Sheet dated July 2006 was incorporated into the Solicitation and proposed Contract with Amendment Number 0005 dated July 27th, 2006. Administrative Record, at AR00690 through AR00722.

Response:

**Agree.**

11. In a letter of July 28th, 2006 which accompanied the Distribution of Amendment Number 0005 to the Offerors, DeCA has explained this requirement for USDA inspection and certification at the Contractor's distribution facility:

> Ensuring the DeCA commissary locations receive the grade specifications as stated in the solicitation and ultimately that our customers receive the best quality possible is of utmost importance. USDA inspections of products (fresh produce and/or cut products) identified for delivery to the commissaries provides those assurances. USDA inspections also provide an objective method of tracking of products that is beneficial to both the Government and the Contractor. This requirement applies to the primary contractor and any teaming partner or supplier that provides products directly to the commissaries.

Administrative Record, at pages AR01238, AR01814.

Response:

**Agree.**

12. The proposed Contract sets out the weekly schedule of required deliveries. In some cases, e.g. Eglin Air Force Base, deliveries are required each day of each week. In most cases, deliveries are required during the normal work week, Monday through Friday. And in a few cases, deliveries are required only on certain days of the work week. Administrative Record, at AR00720.

Response:

**Agree.**

13. There is an exception to the requirement of USDA inspection and certification at the Contractor's distribution facility before deliveries to the commissaries and this is for "Emergency/Out-of-Cycle" orders. These "Emergency/Out-of-Cycle" orders are "exempt from the USDA inspection requirement if they are not inspected as a normal course of business." Administrative Record, at AR00706-707.

**Protected Information has been Redacted**

Response:

**Agree.**

14. Offerors are required to submit separate Technical Proposals, these in 4 Sections, each Section corresponding to an announced Sub-Factor under the Technical Capability Evaluation Factor: Section 1-Experience, Section 2-Quality Program, Section 3-Production Capability/Distribution Plan, and Section 4-Additional Support/Promotion Plan. Administrative Record, at AR00694 through AR00702.

Response:

**Deny. The solicitation does not require submission of separate Technical Proposals, only that offerors submit proposals in separate volumes. AR00592.**

15. Under the Experience Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Describe, in detail,** your firm's experience with work of similar nature, scope, complexity, and difficulty that must be performed under the resulting contract of this solicitation. Include your firm's experience in buying, selecting product assortment, pricing, order processing, inventory management, and delivering fresh fruits and vegetables to the commercial sector and/or government agencies. Also include in your narrative how many years in this business and describe whether your firm is a producer, distributor or broker.

Administrative Record, at AR00700.

Response:

**Agree. However, the Experience Sub-factor also required a company profile with "related experience of individuals who will be involved with all aspects of performance…." AR00598. The Sub-factor also required a detailed description of experience with online or web-based pricing and ordering systems and a description of the system that would be used to provide efficient operations. AR00598.**

16. Under the Quality Program Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Describe, in detail**, the methodology used in your quality control program that ensures the stability of the products in order to deliver produce of the highest quality and freshness. Include how your firm works with USDA inspectors to ensure that the product is inspected, received, stored, staged, and shipped correctly.

Administrative Record, at A00700.

Response:

**Agree. However, the Quality Program Sub-Factor also asks for a detailed description of the offeror's quality control and quality assurance procedures, including food safety, product recall procedures, sanitation, pest management, security safeguards, and back-up plans for food safety issues. AR00599.**

17. Under the Production Capability/Distribution Plan Sub-Factor for the Technical Capability Evaluation Factor, the Acquisition announces:

> **Provide** the length of time that your firm will need from notification of award to the start of contract performance, if your firm's proposal is determined to be the best value to the Government for contract award. The period of performance as stated in this solicitation will commence approximately 30 calendar days after notification of contract award (or a date as specified by the Contracting Officer; *however, the offeror may propose an alternative time frame for consideration.*

Administrative Record, at AR00701 (Emphasis added).

Response:

**Agree. However, the Production Capability/Distribution Plan Sub-Factor also required detailed information regarding the offeror's "capability to handle the product requirements of the commissary locations that will be supported under the resulting contract," the key concepts of distribution operations, detailed information regarding how and where food is stored between time of receipt and delivery to the store, and methods**

**used in delivering produce with multiple temperature requirements. AR00599.**

18. "Teaming Agreements" are defined as those business arrangements where an Offeror will depend "on the products, capital contributions, or expertise [in whole, or in part] of another company (or companies)." Teaming Agreements are to be specifically disclosed in the Competitive Proposals. Administrative Record, at AR00694. Offerors are to "substantiate the stability of [any] teaming arrangement." Administrative Record, at AR00696.

Response:

**Agree.**

19. The announced Basis of Award is Best Value, Trade-off. Awards are to be determined by each geographical Grouping, i.e., by the specific Groups for Area 3 and for Area 5, and only one Award is to be made for each Group. Proposals will be considered for Award only where all 34 high volume core items for the proposed Group are priced.

Response:

**Agree.**

20. There are 3 Evaluation Factors: Technical Capability, Past Performance, and Price. Announced Sub-Factors under the Past Performance Evaluation Factor are: Product Delivery, Quality History/Customer Satisfaction, and Business Relations. Administrative Record, at A00703.

Response:

**Agree.**

21. The Technical Capability Evaluation Factor is announced to be significantly more important than the Past Performance Evaluation Factor; and the Technical Capability and Past Performance Evaluation Factors, when combined, are announced to be significantly more

important than the Price Evaluation Factor. Administrative Record, at A00703. Within the Past Performance Evaluation Factor, the Product Delivery and Quality History/Customer Satisfaction Sub-Factors are equally important, while the Business Relations Sub-Factor is slightly less important. *Id.*

Response:

**Agree.**

22. The Acquisition announces that the Source Selection Authority is the Contracting Officer and that the Contracting Officer "will use best value, trade-off procedures to make the final source selection." A separate Selection Decision is to be made by the Contracting Officer for each Group. Awards are to "be made to the responsible offeror whose offer conforming to the solicitation will provide the best value to the Government considering the evaluation factors as stated." Administrative Record, at AR00705.

Response:

**Agree.**

23. The Evaluation Plan for Solicitation Number HDEC02-06-R-0005 explicitly provides:

Award(s) will *be determined by each geographical group*.

Administrative Record, at AR00563 (Emphasis added). The Evaluation Plan for Solicitation Number HDEC02-06-R-0005 does not provide that awards, or the evaluations for awards, will be by Area, i.e., for Area 3, or for Area 5.

Response:

**Agree. However, offerors are not required to submit separate proposals for each geographical group contained within an Area.**

24. The synopsis for Solicitation Number HDEC02-06-R-0005 provides that:

> A Single solicitation containing the four geographical groupings will be issued. *Each group will be independently evaluated and awarded on an "all or none basis."*

Administrative Record, at AR00568, AR00571, AR00572 (Emphasis added).

Response:

**Agree.**

25. Emerald Coast has submitted a Competitive Proposal only on Area 5, Group 1 (formerly Area 5, Group 3). Administrative Record, at AR01031, AR01039 through AR01059. In its Technical Proposal Emerald Coast explains that it is a fresh produce distributor that for over 20 years has served military commissary stores, troop issue, restaurants, grocery stores, prisons, schools, and health care facilities in Florida, Alabama, and Mississippi. Emerald Coast operates from a 126,000 square foot multi-temperature distribution center in Pensacola, Florida. The distribution center is augmented by a 15,000 square foot refrigerated fruit and vegetable further-processing facility capable of producing 60,000 pounds of packaged goods per day in two shifts. This distribution center services more than 750 food service, retail, military and industrial customers, and deliveries are made with a fleet of 45 refrigerated trucks, these ranging from 16-foot box trucks to 48-foot multi-temperature trailers. Administrative Record, at AR 01064.

Response:

**Agree.**

26. In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Emerald Coast explains that it will need 60 calendar days from the notification of award to the start of Contract performance. The Acquisition announces that performance will commence approximately 30 calendar days after notification and that Offerors *may* "propose an additional

**Protected Information has been Redacted**

timeframe for consideration." Emerald Coast explains that its daily receiving capacity is 20,000 cases per day and that its daily shipping capacity is 18,000 cases per day. Emerald Coast says that it is operating at about 45 percent of capacity, and that the projected volume of fresh fruits and vegetables for Area 5, Group 1 will take Emerald Coast's capacity utilization up to 80 percent of capacity. Emerald Coast says that it will "need to hire an additional 45 employees to receive, warehouse, select, load and ship that incremental capacity." Administrative Record, at AR01074.

Response:

**Agree.**

27. On May 26th, 2006 Emerald Coast received this discussion question: "Aside from hiring 45 additional employees, provide a timeline that fully explains why Emerald Coast needs 60 days from notification of award to start of contract performance." Administrative Record, at AR01080, AR01083. Emerald Coast responded as follows:

> It will take at least eight new trailers with multi-temperature capabilities and custom side doors with ramps to execute the bid. Lead time for delivery on this equipment is forty-five days and it is not normally available for month, day or trip lease. This is why we need sixty days for start-up. If Emerald Coast is successful in the award of contract, we are fortunate because 12 of the 19 stores are located in the Central Gulf Coast region with 67% of the dollar sales within 180 miles or three hours of our warehouse. This gives us great turn-around and utilization of our trucks with a one-drive driver/helper situation. We will need additional equipment to service these stores.
>
> The turn-around times to service Arnold[,] Barksdale, Ft. Polk, Little Rock and Memphis are in the 18 to 24-hour range and all but Arnold have at least five successive delivery days which dictates two trucks to serve these stores with one coming and one going at all times. This means we will have to purchase eight to ten additional tractors and trailers.

Administrative Record, at AR01084, AR01154.

Response:

**Agree that this was Emerald's response as indicated in the Administrative Record.**

**Protected Information has been Redacted**

28. On July 28th, 2006 DeCA distributed to the Offerors Amendment Number 0005 adding the requirement for inspection and certification by a USDA inspector. DeCA asked Offerors "to determine how this will affect your proposed price (the percentage of patron savings) in order to make any changes as necessary." Administrative Record, at AR01239.

Response:

**Agree.**

29. Emerald Coast responded on July 31st, 2006 by returning a signed copy of Amendment Number 0005 together with a letter. In the letter Emerald Coast explains:

> Emerald Coast is prepared to engage the necessary USDA inspectors domiciled at our Pensacola, Florida warehouse to execute the contract. With approximately 100 orders and 50,000 cases per week shipping to 19 locations in Area 5, Group 3, we estimate it will take 60 hours to inspect, grade, mark and do necessary paperwork for this volume.

Administrative Record, at AR01240.

Response:

**Agree that this was Emerald's response as indicated in the Administrative Record.**

30. On August 4th, 2006 Emerald Coast received a request for a Final Proposal Revision. Administrative Record, at AR01294. Emerald Coast responded on August 7th, 2006 by raising its promised Minimum Percentage of Patron Savings to 43 percent. Emerald Coast explains:

> 1. We conducted our fourth market basket price survey in area retail stores this weekend and continue to find that we were conservative in our original estimate for this contract proposal. These findings are also substantiated by our dealings with Wal-Mart where our account specialist keeps close tabs on their pricing at the 27 stores he sells specialty, seasonal and fill-in items.
>
> 2. We were very concerned in our original proposal about how rising fuel and energy cost would affect our operational cost in the execution of this contract. As we continue to study the distribution logistics related to the contract, we find

**Protected Information has been Redacted**

> our cost estimates in this area were also conservative. The fact that 67% of the Area 5, Group [ 1 ] commissary stores are within 3 hours of our warehouse and 45% are within an hour and thirty minutes has helped us revise our distribution cost estimates.

Administrative Record, at AR01295.

Response:

**Agree that Emerald said this as indicated in the Administrative Record.**

31. As for its evaluation Emerald Coast explains that it has no teaming partners. Administrative Record, at AR01037, AR02209. Emerald Coast provides the names of 2 food services companies and 5 restaurants as past performance business references. Administrative Record, at AR01302 through AR01304. In addition Emerald Coast provides as a past performance reference a subsistence Blanket Purchase Agreement that it holds with Defense Supply Center Philadelphia for fresh fruits and vegetables support to DeCA at Keesler Air Force Base in Mississippi, at Fort Rucker and Maxwell Air Force Base in Alabama, and at Pensacola Naval Air Station and Hurlburt Field and Eglin Air Force Base in Florida. Administrative Record, at AR01305.

Response:

**Agree.**

32. In connection with teaming partners Military Produce Group has submitted a Competitive Proposal on Area 3, Group 1, Administrative Record, at AR01378 through AR01384, and on Area 3, Group 2, Administrative Record, at AR01429 through AR01436. In connection with a teaming partner Military Produce Group has submitted a Competitive Proposal on Area 5, Group 2. Administrative Record, at AR01495 through AR01497. Military Produce Group has no teaming partner for the Competitive Proposal that Military Produce Group has submitted on Area 5, Group 1. Administrative Record, at AR01681, AR02209.

**Protected Information has been Redacted**

Response:

**Agree.**

33. Military Produce Group will support Area 5, Group 1 from a 64,000 square foot multi-temperature distribution center in Birmingham, Alabama. This distribution center is operated by an affiliate of Military Produce Group that is claimed to have supported military commissaries in Area 5, Groups I and 2 since 1998. Administrative Record, at AR01681. Military Produce Group explains that from its facility in Birmingham, Alabama Military Produce Group will support the commissaries in Area 5, Group I with a fleet of 11 refrigerated tractor-trailers. Administrative Record, at AR01681, AR01727.

Response:

**Agree. The operator of MPG's distribution center *does* have extensive military commissary support experience and is not an "affiliate." AR01681. Additionally, MPG's proposal provided a great deal of information regarding all of its distribution centers and its contingency plans to ensure that all commissaries receive fresh fruits and vegetables. AR01720-28. This was a weakness in Emerald's proposal. AR02212.**

34. In response to a discussion question, Military Produce Group explains just how it works with USDA inspectors:

> **MPG** has a full time (40 hours weekly) USDA inspector located at its facility to inspect all in-bound FF&V product (local and field purchases). MPG's quality assurance inspectors work along side the USDA inspector daily on all receipt inspection. Before shipment of product to the commissaries MPG's quality assurance inspectors inspect all inventoried product and all products being pulled for shipment.

Administrative Record, at AR01762 through AR01763. Elsewhere Military Produce Group explains:

> Company quality assurance inspectors work daily with the USDA inspectors on receipt inspection for on the job training.

Administrative Record, at ARO 1758.

<u>Response:</u>

**Agree.**

35. In its initial Competitive Proposal, and this on the Production Capability/Distribution Plan Sub-Factor under the Technical Capability Evaluation Factor Military Produce Group explains that it will need 30 calendar days from the notification of award to the start of Contract performance. The Acquisition had announced that performance would commence *approximately* 30 calendar days after notification of award and that Offerors might "propose an additional timeframe for consideration." Administrative Record, at AR01723. Military Produce Group received no discussion questions on this response. Administrative Record, at AR017-53 through ARO 1754.

<u>Response:</u>

**Agree.**

36. Military Produce Group responded on August 1st, 2006 to the change imposed by DeCA in Amendment Number 0005. Military Produce Group did not change its proposed Minimum Percentage of Patron Savings. Military Produce Group explained:

> **Military Produce Group's** proposal for HDEC02-R-0005 had USDA inspection already included in its original proposal.

Administrative Record, at ARO 1818.

<u>Response:</u>

**Agree.**

**Protected Information has been Redacted**

37. On August 4th, 2006 Military Produce Group received a request for a Final Proposal Revision. Administrative Record, at AR01822. Military Produce Group responded on August 7th, 2006 that its promised Minimum Percentage of Patron Savings remained as initially proposed, 41 percent for the Base Term of 24 months and 42 percent for each of the 2 12-month Option Periods. Administrative Record, at ARO1806, AR01818, ARO 1823.

Response:

**Agree.**

38. Military Produce Group serves only DeCA and neither Military Produce Group nor its affiliate in Birmingham, Alabama has commercial customers. At the date of submission of initial *Competitive Proposals* under Request for Proposal Number HDEC02-06-R-0005 Military Produce Group had been supplying fresh fruits and vegetables to DeCA's Area 1 for little more than 1 year. Thus Military Produce Group furnished past performance references from business from which Military Produce Group purchases supplies and services. Military Produce Group provided no past performance references for its affiliate in Birmingham, Alabama. As for any dealings with DeCA, Military Produce Group provided no contract/agreement numbers for its affiliate in Birmingham, Alabama and no list of military commissary stores to which its affiliate in Birmingham, Alabama has provided produce. Administrative Record, at ARO 1826 through ARO 1828.

Response:

**The Administrative Record does not indicate whether any associates of MPG have commercial customers. Additionally, the operator of MPG's distribution center is not an "affiliate." Agree to remainder of paragraph.**

39. The Contracting Officer has prepared a Decision Summary Document for her selection of Military Produce Group for Award of the Contract proposed by Request for Proposal Number HDEC02-06-R-0005 for the Southeast (Area -5, Group 1). Administrative Record, at AR02210 through AR02213.

Response:

**Agree.**

40. Likewise the Technical Evaluation Board has prepared a re-assessment, and re-scoring of the Competitive Proposals of Military Produce Group and of Emerald Coast. Administrative Record, at AR02215 through AR02226.

Response:

**Agree.**

41. There are [ ] points available for the Experience Sub-Factor on the Technical Capability Evaluation Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board and Emerald Coast is likewise given [ ] points on this Sub-Factor by the Technical Evaluation Board. Administrative Record, at AR02210.

Response:

**Agree.**

42. Military Produce Group has no teaming partners for Area 5, Group 1. Nonetheless, the Technical Evaluation Board has evaluated Military Produce Group on the Experience Sub-Factor as if Military Produce Group had teaming partners:

> MPG along with MDV/Nash Finch, MidSouth, Hampton Roads and Norfolk Banana have many years of combined experience in purchasing, warehousing and distributing service to a variety of DeCA Commissaries.

Administrative Record, at AR02216.

Response:

**Denied. There is no indication that that MPG is evaluated as if it had teaming partners. Rather, DeCA simply notes that the operator of its distribution facility has extensive experience distributing to a variety of DeCA commissaries. Moreover, in its evaluation, the TEB noted that MPG has "the necessary company-owned fleet of trucks at their Birmingham (11 refirgerated trucks/trailers) distribution centers to deliver the produce and the ability to utilize tractors from Norfolk (25 refrigerated trucks/trailers) and MDV/Nash Finch, Penske Truck Leasing, Mid-South Produce Company, Atlantic Transportation Services or Alabama Food Trailer Company providing back up resources if needed." AR02211-12. In contrast, Emerald's failure to provide detailed back-up and contingency plans was considered a weakness in its proposal. AR02212.**

43. And Military Produce Group has carefully and clearly explained that it will service Area 5, Group 1 from its distribution facility in Birmingham, Alabama. MDV/Nash Finch, Hampton Roads, and Norfolk Banana are located in Norfolk, Virginia, many miles from Birmingham Alabama.

Response:

**Agree. However, MPG's proposal provided a great deal of information regarding all of its distribution centers and its contingency plans to ensure that all commissaries receive fresh fruits and vegetables. AR01720-28. MPG's detailed contingency plans and alternate supply sources were clearly seen as advantageous to DeCA. Emerald's failure to provide the same detailed contingency plans was considered a weakness in its proposal. AR02212.**

44. The Contracting Officer has adopted the Technical Evaluation Board's scoring of the Military Produce Group Competitive Proposal on the Experience Sub-Factor, and this without question. The Contracting Officer likewise ignores Military Produce Group's commitment to use a distribution facility in Birmingham, Alabama, not in Norfolk, Virginia:

> Additionally, MPG can exclusively utilize sister companies, Hampton Roads Produce (HRP) and Norfolk Banana Distributors (NBD) for produce along with other sub-contractors to procure a full line of fruit and vegetables and providing the necessary warehousing, distribution, ordering system and customer service department to their commercial and Government customers.

Administrative Record, at AR02210. Hampton Roads Produce and Norfolk Banana Distributors operate only from Norfolk, Virginia, not from Birmingham, Alabama.

Response:

**Denied. There is no indication in the Administrative Record that the Contracting Officer ignored any information in MPG's proposal. Rather, MPG provides a great deal of information regarding all of its distribution centers and its contingency plans to ensure that all commissaries receive fresh fruits and vegetables. AR01720-28. MPG's close relationship with its warehouse operators and related companies was clearly seen as advantageous to DeCA.**

45. There are [ ] points available for the Quality Program Sub-Factor on the Technical Capability Evaluation Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board but Emerald Coast is given only [ ] points on this Sub-Factor by the Technical Evaluation Board. Administrative Record, at AR02211.

Response:

**Agree.**

**Protected Information has been Redacted**

46. The Technical Evaluation Board has evaluated and scored Military Produce Group's Competitive Proposal on the Quality Program Sub-Factor recognizing that the proposed Contract requires that Military Produce Group will obtain USDA inspection and certification before making regularly-scheduled deliveries to commissaries:

> MPG has a USDA Inspection Office within their warehouse. They inspect shipments as they arrive and before they send to MPG's customers. All product from MPG will be inspected by the USDA.

Administrative Record, at AR02217.

<u>Response:</u>

**Agree.**

47. The Technical Evaluation Board ignores Emerald Coast's letter of July 31st, 2006 offering USDA inspectors on-site at its Pensacola, Florida distribution facility 60 hours weekly and Amendment Number 0005 adding the requirement for inspection and certification by a USDA inspector:

> *Response dated May 29, 2006 mentions USDA training for one quality control manager and the availability of USDA grading manual, it is the opinion of the board that regular use of USDA inspections would be better.*

Administrative Record, at AR02223.

<u>Response:</u>

**Agree only as to the content of the letter as indicated in the Administrative Record. MPG has no information available that indicates that the TEB "ignored" Emerald's cited letter so we must deny the same pending strict proof of Emerald's allegation.**

48. The Contracting Officer has adopted the Technical Evaluation Board's scoring of the Military Produce Group Competitive Proposal on the Quality Program Sub-Factor, and this likewise without question. Administrative Record, at AR02211. The Contracting Officer

**Protected Information has been Redacted**

rationalizes the significantly lower score for the Emerald Coast Competitive Proposal on the Quality Program Sub-Factor based on the absence of on-site USDA inspectors at Emerald Coast:

> Emerald also appears to rely heavily on their owned trained QA personnel and did not utilize USDA inspectors on-site. This created concern for quality because while the company trained QA personnel may use USDA guidelines there were not sufficient details provided to determine how frequently the training is updated.

Administrative Record, at AR02211.

Response:

**Agree that the Contracting Officer did not question the TEB's position regarding Emerald's change to its proposal regarding on-site USDA inspection. However, the TEB also indicates concern regarding the lack of detail supplied in Emerald Coast's technical proposal overall with respect to its Quality Program:**

> **Emerald provided adequate details regarding food safety concerns but the inspection of products and quality issues indicates a reliance on their Receiving Manager without providing information about any backups or other personnel that would be available in this person's absence or could otherwise lead to disruption in distribution to the commissaries.**

**AR02211. The TEB also noted:**

> **Limited specific details of procedures in place made it difficult to assess Emerald's Quality Program as more than satisfactory. […] Emerald's Quality Program is established and appears to be adequate for the requirements however more specific details regarding their procedures utilized would have given a clearer/better viewpoint of their program's capacity.**

**AR02211.**

49. The greatest difference in the ratings between the Competitive Proposals of Emerald Coast and of Military Produce Group on the Technical Capability Evaluation Factor occurs on the Production Capability/Distribution Plan Sub-Factor. Administrative Record, at

AR02210 through AR02213. There are [ ] points available for this Sub-Factor. Administrative Record, at AR01949, AR01954. Military Produce Group is given [ ] points on this Sub-Factor by the Technical Evaluation Board but Emerald Coast is given only [ ] points on this Sub-Factor by the Technical Evaluation Board. Administrative Record, at AR02211.

Response:

**Agree.**

50. The Technical Evaluation Board makes specific comments about the time that Emerald Coast has said that Emerald Coast will need to commence Contract performance:

> Offeror states increase in inventory would take his warehouse to 80% capacity but would need to increase staff by 45 people it is the opinion of the board that a personnel increase of this magnitude could negatively impact the viability of this offer.
>
> 60 days start up needed-response dated May 29, 2006 indicates it will take at least this amount of time to acquire additional personnel, trucks and equipment to meet requirements of solicitation.

Administrative Record, at AR02224.

Response:

**Agree. Emerald's own response to DeCA's concerns about the risk of a 60 day start-up supports the TEB's comments. Emerald's letter regarding its proposed 60 day start-up period sates, "It will take at least eight new trailers with multi-temperature capabilities and custom side doors with ramps to execute the bid. Lead time for delivery on this equipment is forty-five days and is not normally available for month, day or trip lease. This is why we need sixty days for start-up." AR01154.**

51. In her Decision Summary Document the Contracting Officer supposes that the difference between the 30 days requested for start-up by Military Produce Group and the 60 days

requested for start-up by Emerald Coast results simply from a business decision by Emerald Coast:

> It is apparent that Emerald made a business decision to wait until notification of contract award before they would invest in the resources and equipment needed to perform this contract. This raised concerns with Emerald's proposal for this sub-factor because if unforeseen delays prevented the acquisition of the necessary people or trucks, the commissaries may be adversely affected and DeCA would have to find alternate sources to supply commissaries until Emerald was fully capable of providing to all the commissaries. Further, Emerald is utilizing its 40 trucks for their current business which would only stretch their capability to deliver product to the stores until the 8 to 10 new trucks for the additional business were acquired.

Administrative Record, at AR02212.

Response:

**Agree.**

52. The Contracting Officer ignores Emerald Coast's Competitive Proposal, a Competitive Proposal which explains that Emerald Coast is operating at about 45 percent of capacity. AR01074.

Response:

**Denied. There is no indication that the Contracting Officer has ignored this information. Rather, the Contracting Officer expressed concern based on Emerald's own information that award of this contract would take the warehouse to 80% capacity and that it could not start until it obtained both additional employees and equipment. The capacity at which Emerald is currently operating is irrelevant.**

53. And there *has been no* analysis by the Technical Evaluation Board, or by the Contracting Officer, just how it is that the commissaries in Area 5, Group 1 can be supported by 11 refrigerated tractor-trailers operating from Birmingham, Alabama while these same commissaries, at least in the judgment of Emerald Coast, will require not less than 53 truck-

**Protected Information has been Redacted**

trailers operating from Pensacola, Florida in order to be supported as required by Solicitation Number HDEC02-06-R-0005.

Response:

**Denied. In its proposal, Emerald only indicates that it is *currently* operating 45 truck-trailers and that those 45 trucks are used to service more than 750 customers. AR01064. Emerald does not indicate how many of its trucks it intended to employ in servicing the DeCA contract, or how many would be required. Emerald later indicated that it would need to purchase eight trailers to perform the contract. AR01154.**

54. On the Past Performance Evaluation Factor Military Produce Group is given a score of [ ] points and Emerald Coast is given a score of [ ] points. Administrative Record, at AR02213.

Response:

**Agree.**

55. Overall on the Technical Capability Evaluation Factor and on the Past Performance Evaluation Factor Military Produce Group is given [ ] points and Emerald Coast is given [ ] points. Administrative Record, at AR02213. Save for [ ] point, this [ ] point difference is accounted *for by* the [ ] point difference in the scores on the Technical Capability Evaluation Factor-[ ] points for Military Produce Group and [ ] points for Emerald Coast. *Id.*

Response:

**Agree.**

56. And of the [ ] point difference in scores on the Technical Capability Evaluation Factor, [ ] points come from the difference in scores on the Production Capability/Distribution Plan Sub-Factor- [ ] points for Military Produce Group and [ ] points for Emerald Coast-and [

] points come from the difference in scores on the Quality Program Sub-Factor---[ ] points for Military Produce Group and [ ] points for Emerald Coast. Administrative Record, at AR02211.

Response:

**Agree.**

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

By:__________/s/________________________

Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
E-mail: dweckstein@vanblk.com

Of counsel

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

**Protected Information has been Redacted**

**Certificate of Service**

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail transmission this 25th day of June, 2007 to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliott Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

By:_________/s/_________________________
Daniel R. Weckstein

**Protected Information has been Redacted**