# ATTACHMENT 5

# BUSINESS ASSETS PURCHASE AGREEMENT

THIS AGREEMENT made and entered into as of the 2nd day of June, 2007, by and between ADAMS BROTHERS PRODUCE COMPANY, INC., a corporation organized under the laws of the State of Delaware (hereinafter referred to as "Buyer"), EMERALD COAST FINEST PRODUCE COMPANY, INC., a corporation organized under the laws of the State of Florida (hereinafter referred to as "Seller"), and PRESTON THOMPSON, and CONNIE THOMPSON, both of whom are individual residents of the State of Florida and the shareholders of Seller ("Shareholders"), as follows:

WITNESSETH

WHEREAS, Seller is in the business of owning and operating a produce business in Pensacola, Florida, ("Emerald Coast Finest Produce"), and:

WHEREAS, Seller and Shareholders desire to sell to Buyer, and Buyer desires to buy from Seller, all of the assets used and/or usable by Seller in Emerald Coast Finest Produce, except for those assets specifically listed on Exhibit A; and

WHEREAS, both Buyer and Seller further desire to enter into this written agreement setting forth all warranties, covenants and conditions in connection with the purchase and sale of the aforesaid assets;

NOW, THEREFORE, for and in consideration of the mutually dependent covenants and agreements contained herein, Buyer and Seller agree as follows:

1. **Definitions**. As used herein, the following terms shall have the following meanings:

1.1 **Accounts Receivable**: "Accounts Receivable" shall mean the accounts receivable of Seller as shown by its books and records of account, as of the Closing Date.

1.2 **Business**: "Business" shall mean the business currently being conducted by Seller with the Business Assets and all activities related to these endeavors.

1.3 **Business Assets**: "Business Assets" shall mean the Contracts, Goodwill, Inventory, Leases, and Personal Property (all as hereinafter defined), and shall include any intangibles of Seller, which are to be sold to Buyer hereunder.

1.4 **Contracts**: "Contracts" shall mean the contracts and agreements listed on the attached Schedule 1.4.

1.5 **Goodwill**: "Goodwill" shall mean the goodwill that Seller has developed and gained in connection with the operation of Emerald Coast Finest Produce.

1.6 **Inventory**: "Inventory" shall mean the saleable in-date inventory of Seller's produce at Closing to be taken by a person or persons selected by Seller and Buyer, between now and the Closing Date, and to be attached hereto as Schedule 1.6.

1.7 **Leases**: "Leases" shall mean the leases listed on the attached Schedule 1.7.



EXHIBIT
B"

1.8 **Licenses and Permits**: "Licenses and Permits" shall mean the licenses, permits, or other authorizations (and all of Seller's prepaid obligations thereunder) issued to Seller by any federal, state, local, or other governmental authority, or issued to Seller by parties other than federal, state, local, or other governments, all as listed on the attached Schedule 1.8.

1.9 **Liabilities**: "Liabilities" shall mean the liabilities listed on the attached Schedule 1.9.

1.10 **Personal Property**: "Personal Property" shall mean all of the telephones, supplies, materials, tools, machinery, equipment, furniture, fixtures and other personal property of Seller, including, without limitation, the property listed on Schedule 1.10, and all of the personal property acquired by Seller in the ordinary course of business between the date of this Agreement and the Closing, except for those assets specifically listed on Exhibit A.

1.11 **Real Estate Lease and Purchase Agreement**: "Real Estate Lease and Purchase Agreement" shall mean a lease from Seller to Buyer for the premises out of which Seller operates its business (the "Real Estate") and an agreement for Buyer to purchase and Seller to sell said premises at the conclusion of the lease term, all in the form attached hereto as Exhibit B.

2. **Purchase and Sale of Business Assets**. Subject to the conditions and terms set forth herein, on the Closing Date at closing, Buyer will purchase from Seller, and Seller will sell, assign, transfer, convey, and set over unto Buyer all of the assets used and/or usable by Seller in the operation of its Business and owned by Seller at the Closing Date (except for those assets specifically listed on Exhibit A) which assets constitute the Business Assets including, without limitation, the following:

2.1 **Contracts**: all of Seller's rights under the Contracts, by Assignment of Contracts in a form acceptable to Buyer.

2.2 **Goodwill**: the Goodwill of Seller by Bill or Bills of Sale in form acceptable to Buyer.

2.3 **Inventory**: full and absolute title to the Inventory by Bill or Bills of Sale in a form acceptable to Buyer.

2.4 **Leases**: all of Seller's rights under the Leases, by Assignment of Leases in a form acceptable to Buyer.

2.5 **Licenses and Permits**: all of Seller's rights under the Licenses and Permits, to the extent assignable, by Assignment of Licenses and Permits in a form acceptable to Buyer.

2.6 **Personal Property**: full and absolute title to the Personal Property by Bill or Bills of Sale in a form acceptable to Buyer, including, without limitation, the above-ground storage tanks of Seller.

3. **Purchase Price: Terms of Payment**

3.1 **Consideration**. As consideration for the Business Assets transferred to Buyer hereunder, Buyer shall pay Seller $1,020,000, plus the value of the Inventory as reflected in the books and records of Seller at Closing (the "Consideration"). An amount equal to the said value of the Inventory shall be paid within 30 days of Closing. The $1,020,000 balance of the Consideration shall

be paid as follows: (i) $20,000 in cash at Closing; (ii) $450,000 in cash payable promptly upon the release of the existing liens on the Business Assets held by Beach Community Bank, the Bank of Pensacola, Textron Financial Corporation and Regions Bank (the "Asset Liens") and (iii) $550,000 through a promissory note, the terms of which are described in Section 3.2 (the "Promissory Note"). In the event any of the Asset Liens are not released within 30 days of Closing, Buyer shall have the right to pay the amounts due to those lienholders directly on behalf of Seller and to reduce, by the amount paid by Buyer to said lienholders on behalf of Seller: first, the amount of cash due to Seller under this Section 3.1; second, if necessary, any rent due to Seller under the Real Estate Lease and Purchase Agreement; third, if necessary, the balance due on the Promissory Note; and fourth, if necessary, any other obligation owed by Buyer to Seller. Also, in the event Seller has not, prior to the time the $450,000 cash payment is due to the made to Seller, paid to Navistar Financial Corporation the monthly payments currently in arrears on that debt, over and above the $412,000 of the current note due to Navistar, Buyer will have the right to pay directly to Navistar Financial Corporation for the benefit of Seller the payments still in arrears and to reduce the payments due from Buyer to Seller in the same manner set forth in the preceding sentence.

3.2 **Promissory Note.** The Promissory Note in the amount of $550,000 to be issued at closing shall be payable, based on a 10-year amortization schedule, in equal monthly installments of principal and interest with interest at 6%, beginning on July 1, 2007 with the entire remaining balance of principal and interest due at the end of the third year, and shall be in the form attached hereto as Exhibit C.

3.3 **Allocation of Purchase Price.** Buyer and Seller agree that the Purchase Price and the liabilities of the Company will be allocated to the assets of the Company for all purposes including tax and financial accounting as shown on Schedule 3.33 attached hereto. The parties will file all income tax returns (including amended tax returns and claims for refund) and information reports in a manner consistent with such values.

3.4 **Liabilities.** Buyer is assuming no liabilities of Seller or Shareholder other than the Liabilities on Schedule 1.9.

4. Closing. The closing (the "Closing") shall take place on May 31, 2007 (the "Closing Date"), at a mutually agreeable location. At the Closing, to the extent the parties have not previously delivered the following items, Seller and Buyer shall deliver the following items to each other:

4.1 **Seller's and Shareholder's Closing Items:** Seller and Shareholder shall deliver to Buyer:

(a) Executed Assignment of Contracts.

(b) Executed Bill of Sale for Inventory.

(c) Executed Assignments of Leases.

(d) Executed Bill or Bills of Sale for the Personal Property.

(e) Where necessary, written consents to the Assignments of the Leases hereafter referred to in Section 7.4 "Conditions to Buyer's Obligations".

(f) Where necessary, written consents to the Assignments of Contracts hereafter referred to in Section 7.5 "Conditions to Buyer's Obligations".

(g) Where necessary, written consents to the Assignments of Licenses and Permits hereafter referred to in Section 7.6 "Conditions to Buyer's Obligations".

(h) The Seller's Certificate hereafter referred to in Section 7.8 "Conditions to Buyer's Obligations".

(i) The certified copy of Shareholders' and Directors' resolutions hereafter referred to in Section 7.9 "Conditions to Buyer's Obligations".

(j) The books and records hereafter referred to in Section 7.10 "Conditions to Buyer's Obligations".

(k) Executed Real Estate Lease and Purchase Agreement.

4.2 **Buyer's Closing Items**: Buyer shall deliver to Seller:

(a) The Promissory Note.

(b) Executed Real Estate Lease and Purchase Agreement for the real property out of which Emerald Coast Finest Produce currently operates on mutually satisfactory terms.

5. **Warranties of Seller and Shareholder**. Seller and Shareholders represent and warrant, without reservation, jointly and severally, such representations and warranties to continue to and survive the Closing Date, as follows:

5.1 **Organization and Good Standing**. Seller is a corporation duly organized and in good standing under the laws of the State of Florida, and is in good standing in and duly qualified to do business in and under the laws of all other states in which the nature of its business requires that the Seller be so qualified and in good standing.

5.2 **Authorization**. Seller is legally authorized to execute and perform its obligations under this Agreement, and the execution of this Agreement and the performance of Seller's obligations hereunder have been duly authorized by Seller's Shareholders and Board of Directors, and no further authorization is necessary; and there are no provisions of any law, federal, state, or local, or of Seller's certificate of incorporation or bylaws, nor is Seller a party to any existing contracts or agreements whatsoever, which could in any way bar or impede Seller from executing this Agreement and performing its obligations hereunder.

5.3 **Financial Information**. Sellers have delivered to Buyer the following financial statements: unaudited balance sheet of the Company as of December 31, 2006 (the "Balance Sheet"). Such Balance Sheet is correct and complete in all material respects, are consistent with the books and records of the Seller and fairly present the financial condition of the Seller as of December 31, 2006 in accordance with GAAP, applied on a consistent basis. The information provided by Seller to Buyer as to revenues of Seller as set forth on Schedule 5.3 is correct and accurate.

5.4 **Ownership of Assets and Absence of Liabilities**. The Seller is the owner of and possesses good title to all the Business Assets being purchased and the Real Estate. Seller

does not have knowledge of any fact or facts which would require Seller to set up any reserve in respect of any obligations or liabilities.

5.5 **Title to Personal Property.** Seller has good and marketable title to all of the Personal Property, free and clear of all liens, encumbrances and claims, and the Personal Property is all of the personal property used by the Seller in the conduct of the Business as currently conducted (except the liens held by Beach Community Bank, the Bank of Pensacola, Regions Bank, Textron Financial Corporation and Navistar Financial Corporation, as previously disclosed to Buyer), and the Personal Property is, and will be at the Closing Date, in good working condition, and fit for the purpose of conducting the Business. The liens held by Beach Community Bank, the Bank of Pensacola, Regions Bank and Textron Financial Corporation will be caused by Seller to be satisfied and released within 30 days of Closing at Seller's expense.

5.6 **Payment of Taxes.** Seller has paid or adequately provided for any and all taxes, license fees, and other charges levied, assessed, or imposed upon, or which could result in a claim or lien upon, any of the Business Assets on the real estate.

5.7 **Absence of Litigation.** There are no suits, governmental proceedings, or litigation pending, or threatened against Seller which might materially affect the financial condition of Seller or the Business Assets or the Business; and no strike is pending or threatened against Seller by its employees or any labor union claiming or seeking to represent such employees, which would materially affect the Business Assets or the Business.

5.8 **Absence of Undisclosed Binding Contracts.** Buyer will not, by reason of the transfer of the Business Assets hereunder, become obligated under, liable under, or in any way responsible for any obligations or liabilities of Seller under any contract except the Leases and Contracts or except as otherwise specified herein unless Buyer should desire by written documents separate herefrom to become obligated or liable under such agreements.

5.9 **Absence of Binding Labor or Employment Agreements.** There are no written contracts of employment or of any other nature between Seller and any labor union or similar organization, corporate officer or employee or employees which would be binding upon Buyer after the acquisition by Buyer of the Business Assets hereunder, or which would result in claims (including without limitation claims for vacation pay or sick pay) or liens against Buyer, the Business Assets or the Business; and all oral contracts of employment are terminable on not more than thirty days' notice.

5.10 **Absence of Binding Fringe Benefit Programs.** Seller has no pension, bonus, profit sharing, health insurance, retirement or similar plans for officers and/or employees which plan or plans would in any manner become binding upon Buyer by reason of Buyer's acquisition of the Business Assets hereunder, or result in claims or liens against the Business or the Business Assets.

5.11 **Adequacy of Insurance.** All of the Business Assets are and will be adequately insured against fire and other casualty to the Closing Date, and valid policies therefor are and will be outstanding and fully in force, and the premiums thereon will be paid prior to the Closing Date.

5.12 **Validity of Leases.** The Leases are valid and binding under applicable law; are in full force and effect, and are not in default; will not as of the Closing Date be assigned by Seller to another, whether by pledge to secure indebtedness or otherwise; and are all of the leases used by the Seller in the conduct of the Business as currently conducted.

5.13 **Inventory**. Seller has good and marketable title to the Inventory free and clear of all liens, encumbrances and claims. The Inventory consists of items of a quality and quantity usable and saleable in the ordinary course of the Business, and the values of obsolete items and items below standard quality have been written down on its books of account to realizable market value, or adequate reserves have been provided therefor.

5.14 **Licenses and Permits; Compliance with Law.** As of the date hereof, the conduct of the Business is, and as of the Closing Date, it shall be, in full compliance with any and all federal, state, local, and other laws, statutes and ordinances, and regulations thereunder, and orders, pronouncements, regulations or other rules of any federal, state, local, or other governmental authorities to which federal, state, local, or other law grants the power to regulate or direct the conduct of the Business, including, without limitation, any and all federal, state and local environmental laws, regulations, permits or other requirements.

5.15 **No Infringement of Patents, Copyrights, etc.** Seller has not infringed and is not infringing upon any patent, trade name, trademark, copyright, trade secret or other right of similar nature belonging to any other person, and Seller has not engaged and is not engaging in any form of unfair competition. The Seller owns or holds adequate licenses or rights to use all trademarks, trade names, copyrighted material, patents and other intangible personal property required for the conduct of its Business as operated by it, and such use does not conflict with any rights of others. Seller has never received a notice of infringement or other complaint that its operations traverse or infringe the rights of others under patents, trade secrets, trademarks, trade names, or copyrights or other similar rights.

5.16 **Conduct to Closing Date**. Between December 31, 2006 and the Closing Date, Seller has:

(a) Conducted the Business in the regular and ordinary course consistent with past practices, and to the extent consistent with the Business, use all reasonable efforts to preserve intact the present business organization;

(b) Maintained the books, accounts and records in the regular manner consistent with past practices;

(c) Not sold, leased or otherwise disposed of any of the Business Assets, except in the ordinary course of business;

(d) Not granted any increase in the compensation payable to any of its officers or employees or any substantial increase in any bonus, insurance, pension or other employee benefit plan, payment or arrangement made to, for or with any such officers or employees, except in the ordinary course of business and consistent with prior practices;

(e) Not created, assumed or incurred any mortgage, lien, pledge or other encumbrance of any kind in respect of the Business Assets;

(f) Not entered into any agreement that is material to Seller or the Business, except in the ordinary course of business;

(g) Not distributed or transferred any of the assets of the Business except in the ordinary course of business.