# ATTACHMENT 6

(h) Used its best efforts to preserve its business organization intact and maintained its relationships with suppliers, customers, lessees, creditors, employees, and others having business relations with it.

5.17 **Disclosure.** Seller has, in connection with the sale of the Business Assets to Buyer, disclosed to Buyer all of the material information concerning the Business Assets and the Liabilities being acquired and has not failed to disclose any information concerning such which, if known to Buyer, would materially adversely affect the decisions of Buyer with respect to this transaction.

5.18 **Condition of Assets.** Each of the tangible Business Assets is in good operating condition, normal wear and tear excepted, and repair and maintenance thereof has been performed on a current basis and in accordance with generally accepted industry standards.

5.19 **Environmental Matters.** All operations conducted by the Seller have been and are in compliance with all federal, state, and local statutes, rules, regulations, ordinances, permits, licenses, and authorizations relating to environmental compliance and control. No asbestos, asbestos containing material, or other hazardous or toxic wastes or substances are or have been located on the property used by Seller in its operations.

5.20 **ERISA Compliance.** Seller has not incurred any "accumulated funding deficiency" within the meaning of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), any liability to the Pension Benefit Guaranty Corporation established under ERISA in connection with any employee benefit plan on any tax or penalty in respect of a transaction prohibited under ERISA or under Section 4975 of the Internal Revenue Code. There has been no "reportable event" with respect to any such plan as such term is defined in Section 4043 of ERISA or any notification by such corporation of any intent to institute proceedings to terminate any such plan. The Seller does not participate in, and it does not have any obligation to contribute to or any withdrawal liability with respect to, any "multiemployer plan" as such term is defined in Section 4001 of ERISA and has not received notice of the reorganization of any such plan.

5.21 **Additional Documents.** From time to time, at Buyer's request and expense (whether at or after the Closing Date, and without further consideration), Seller shall take such other action as Buyer reasonably may request to convey and transfer more effectively to Buyer the Business Assets to be sold to Buyer hereunder, and Seller hereby agrees to assist Buyer at Buyer's expense in collecting or obtaining access to such property.

5.22 **Survival of Warranties.** The foregoing representations and warranties are made by Seller and Shareholder with the knowledge and expectation that the Buyer is placing complete reliance thereon, and such representations and warranties shall continue to be true and correct up to and as of the Closing Date, and shall survive the Closing Date.

6. **Warranties of Buyer.** Buyer warrants and represents as follows:

6.1 **Organization and Good Standing.** Buyer is a corporation duly organized and in good standing under the laws of the State of Alabama and is in good standing in and duly qualified to do business in and under the laws of the State of Florida.

6.2 **Authorization.** Buyer is legally authorized to execute and perform its obligations under this Agreement, and the execution of this Agreement and the performance of Buyer's

obligations hereunder have been duly authorized by Buyer's Board of Directors, and no further authorization is necessary.

6.3 **Survival of Warranties.** The foregoing representations and warranties are made by the Buyer with the knowledge and expectation that the Seller is placing complete reliance thereon, and such representations and warranties shall continue to be true and correct up to and as of the Closing Date, and shall survive the Closing Date.

7. **Conditions to Buyer's Obligations**. The obligations of Buyer to this Agreement are, at the option of Buyer, subject to the following conditions, which conditions Seller hereby covenants to use its best efforts to fulfill (or where applicable to aid Buyer to fulfill):

7.1 **Truth of Seller's Warranties at Closing.** There shall not have been any material breach of the representations or warranties of Seller contained in this Agreement, and such representations and warranties shall continue to be true on Closing Date.

7.2 **Seller's Performance of Covenants.** Seller shall have performed and complied with all covenants required by this Agreement to be performed by Seller.

7.3 **Absence of Material Changes.** The Business and Business Assets shall not have been materially and adversely affected as a result of any event or transaction occurring from December 31, 2006 to the Closing Date; and there shall not have been from December 31, 2006 to the Closing Date any damage, destruction, or loss (whether or not covered by insurance) to or of the Business Assets, or labor or other trouble materially and adversely affecting the Business or Business Assets.

7.4 **Consents to Assignments of Leases.** Wherever necessary, consents to the assignments of the Leases hereunder from Seller to Buyer shall have been obtained by Seller in writing and furnished to Buyer.

7.5 **Consents to Assignments of Contracts.** Wherever necessary, consents to the assignments of the Contracts hereunder from Seller to Buyer shall have been obtained by Seller in writing and furnished to Buyer.

7.6 **Consents to Assignments of Licenses and Permits.** Wherever necessary, consents to the assignments of Licenses and Permits hereunder from Seller to Buyer shall have been obtained by Seller in writing and furnished to Buyer.

7.7 **Availability of Licenses, etc.** On or before the Closing Date, Buyer shall not have discovered that any license, permit, or other authorization required from any person, corporation, partnership, trust or other entity, or required under federal, state or local law for the conduct by Buyer of the Business as currently being conducted by the Seller, cannot be obtained by the Buyer.

7.8 **Seller's Certificate.** At Closing, Buyer shall have received from Seller a Certificate in form acceptable to Buyer signed by the President and Secretary of Seller to the effect that Seller's representations or warranties set forth herein continue to be true at the Closing Date, and that Seller has conducted the Business in the manner required by Section 5.16 "Conduct to Closing" up to the Closing Date.

7.9 **Copy of Seller's Shareholders' Directors' Resolutions.** On or before the Closing Date, Buyer shall have received from Seller a copy of resolutions of the Shareholders and the Board of Directors of Seller, in form acceptable to Buyer, certified by Seller's Secretary or Assistant Secretary, authorizing the transactions set forth in this Agreement.

7.10 **Receipt of Books and Records.** On or before the Closing Date, Buyer shall have received from Seller all of Seller's books and records pertaining to the Business and the Business Assets transferred hereunder.

7.11 **Real Estate.** The delivery of the Real Estate Lease and Purchase Agreement in executed form.

8. **Conditions to Seller's Obligations.** The obligations of Seller under this Agreement are, at the option of Seller, subject to the following conditions, which conditions Buyer hereby covenants to use its best efforts to fulfill, or where applicable to aid Seller to fulfill:

8.1 **Truth of Buyer's Warranties at Closing.** There shall not have been any material breach of the representations or warranties of Buyer contained in this Agreement, and such representations and warranties shall continue to be true on Closing Date.

8.2 **Buyer's Performance of Covenants.** Buyer shall have performed and complied with all covenants required by this Agreement to be performed by Buyer.

8.3 **Promissory Note.** The delivery of the Promissory Note in executed form.

8.4 **Real Estate.** The delivery of the Real Estate Lease and Purchase Agreement in executed form.

9. **Covenant Not To Compete.** For a period of 3 years after the Closing Date, neither Seller nor any Shareholder shall, directly or indirectly, within the city limits of Pensacola, Florida and a radius of 90 miles from said city limits in all directions, engage in any business (whether as owner, partner, lender, shareholder or employee, consultant, advisor or in any other manner whatsoever) which either (i) competes with the Buyer for the business of any customers of Seller with which Seller has conducted business at any time during the prior 12 months prior to Closing Date or (ii) is an existing or potential institutional wholesale produce customer of Seller or Buyer; provided, however, the provisions of this noncompete agreement shall cease to be applicable if Buyer defaults at any time in its obligations under this Agreement. Seller has the right to continue servicing current customer base, in the manner that business is conducted at the time of this agreement, of is Mobile operation. In the event a court of law in any jurisdiction should find the territorial limits or the time period of this covenant not to compete to be excessive or unlawful, Seller and Shareholder agree to abide by any reduction of such territorial limits or time period as the court may in its wisdom decree. Buyer shall be entitled to assign its rights and obligations under this covenant not to compete, and the covenant not to compete shall be binding upon and inure to the benefit and be enforceable by any successor or assigns of the parties. If Seller or Shareholder violates the restrictions set out in this covenant not to compete, the period during which this covenant not to compete shall apply shall be extended one (1) day for each day in which a violation occurs, and if suit is brought to enforce this covenant not to compete, and Buyer establishes one or more violations by Seller or Shareholder, Buyer shall be entitled to an injunction restraining Seller and Shareholder from further violations for a period of five (5) years as to all of the Shareholders from the date of the final decree less only such number of days that Seller and Shareholder have not violated this covenant not to compete. The purpose of this

provision is to prevent Seller and Shareholder from profiting from its/his own wrong if it/he violates this covenant not to compete.

10. Breach of Covenants, Warranties or Representations; Indemnification.

10.1 **Indemnification.** In the event that any covenant of any party in this Agreement or any document delivered pursuant to this Agreement shall be breached, or any representation or warranty made by any party in this Agreement or in any document delivered pursuant to this Agreement shall have been incorrect when made or when repeated at Closing, the breaching party or parties, jointly and severally, shall indemnify the other parties and hold them harmless in an amount equal to the loss, damage, and expense (including all reasonable attorney fees of such other parties) directly or indirectly attributable to such breach of covenant or such incorrect warranty or representation. Buyer may offset any liability of Seller or any Shareholder to Buyer arising under this Section 10 against any amounts owed by Buyer to Seller or any Shareholder pursuant to this Agreement, the Promissory Note, the Real Estate Lease and Purchase Agreement or any other agreement between Buyer and Seller or any Shareholder.

10.2 **Notice of Claim and Election to Participate.** Buyer will give the Seller or Shareholders prompt written notice of discovery of any breach of covenant or incorrect warranty or representation as to which the Seller or any Shareholder is alleged to be obligated to indemnify Buyer. Buyer, Seller, and Shareholders shall have the responsibility of contesting, defending, litigating, or settling any claim, including taxes, by any party other than the Buyer made against the Seller or Shareholders ("Third Party Claim") in respect of which such breach of covenant or incorrect representation or warranty is claimed. Seller and Shareholders shall have the right to be represented by counsel at their own expense in any such contest, defense, litigation, or settlement, but Buyer shall not be liable for any expense or legal fees incurred by Seller or Shareholders in any such participation. Each party shall have the exclusive right, in their discretion exercised in good faith and upon the advice of counsel, to settle any such Third Party Claim, either before or after the initiation of litigation, at such time and upon such terms as they would deem fair and reasonable if the loss resulting therefrom were to be paid by such party, provided that prior to any such settlement, written notice of their intention to settle shall be given to each other party.

10.3 **Claim by the Buyer.** If the claim in question involves a claim by the Buyer alleging that it is entitled to indemnification pursuant to this Agreement, then in the event the Seller or any Shareholder does not elect, within 30 days of the receipt of the original notice thereof, to contest such claim by written notice to the Buyer, then the Buyer shall be entitled to indemnity pursuant to the terms of this Agreement. If the Seller or any Shareholder elects to contest such claim by written notice to the Buyer, then the Buyer will be entitled to indemnity hereunder upon the final determination of such contest. All amounts payable pursuant to this Section 10 shall be determined taking into account any applicable insurance recoveries.

11. Employee Matters. Buyer shall not be obligated to employ any of the employees of Seller. As of the Closing Date, Seller will terminate the employment of those persons whom Buyer wishes to hire. Seller shall provide to Buyer at Closing such documents and other information relating to the termination of the employment of such employees as Buyer may request. Buyer shall employ all such persons as employees-at-will. Seller shall take whatever steps are necessary to pay or fund completely or reserve completely for any accrued benefits, where applicable, or vested accrued benefits for which Seller or any other person might have any liability whatsoever arising from any salary, wage, benefit, bonus, vacation pay, sick leave, insurance, employment tax or similar liability of Seller to any employee or other person (including, without limitation, any liability under employment contracts with Seller or any benefit or pension plan of Seller) allocable to services performed prior to the Closing

Date. Seller acknowledges that the purpose and intent of this covenant is to assure that Buyer shall have no liability whatsoever at any time with respect to any of Seller's employees or similar persons.

12. **Accounts Receivable and Accounts Payable.** It is agreed and understood that Buyer is not purchasing the Accounts Receivable and will not be responsible for collecting the Accounts Receivable and that Buyer is not assuming responsibility for the payment of any of Seller's accounts payable.

13. **Governing Law**. This Agreement shall be governed by the laws of the State of ~~Alabama~~. FLORIDA.

14. **Taxes**. Any state or local sales or use taxes, or other taxes, if any, which may be payable by reason of the transfer of the Business Assets provided for in this Agreement shall be borne by Seller.

15. **Telephone**. The Seller shall authorize Buyer to use the telephone numbers presently used at the Business, and will sign such letters or other documents as may be necessary to submit to the telephone company for this purpose.

16. **Brokers**. There are no fees or commissions whatsoever due to any brokers whatsoever by reason of the execution or performance of this Agreement by Buyer and Seller.

17. **Assignability**. Except as otherwise provided in this Agreement, neither Seller nor Buyer shall be entitled to assign its rights and obligations under this Agreement, unless Seller or Buyer shall have first obtained the written consent of Buyer or Seller, as the case may be, to such assignment.

18. **Notices**. Any and all notices sent pursuant to the terms of this Agreement shall be sent registered or certified mail, addressed as follows:

| | |
|---|---|
| TO THE SELLER: | Emerald Coast Finest Produce<br>3500 Dewey Rose Lane<br>Pensacola, Florida 32533 |
| TO THE SHAREHOLDERS: | Preston Thompson.<br>3500 Dewey Rose Lane<br>Pensacola, Florida 32533 |
| | Connie Thompson.<br>3500 Dewey Rose Lane<br>Pensacola, Florida 32533 |
| TO THE BUYER: | Adams Brothers Produce Company, Inc.<br>300 Union Hill Drive<br>Suite 300<br>Birmingham, Alabama 35209<br>Attention: Scott Grinstead |
| With a copy to: | Sirote & Permutt, P.C.<br>2311 Highland Avenue South |