IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-742C |
| | ) | (Judge Emily Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MILITARY PRODUCE GROUP, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

DECLARATION OF TODD LESTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLAIM OF CONTINUING CAPACITY TO SUE OR BE SUED

1. My name is Todd Kevin Lester.

2. I am a Director in the Disputes and Investigations practice with Navigant Consulting, Inc. (Navigant Consulting). Navigant Consulting is a management and business consulting firm that specializes in providing various accounting, financial and economic consulting services to clients and client companies, including providing assistance in resolving business problems and disputes, many of which involve parties in litigation.

3. I have over nineteen years of general finance, accounting and consulting experience in providing dispute analysis and various forms of consulting services to clients and client companies. Prior to joining Navigant Consulting, I spent seven years in the financial advisory services and corporate finance practices of a then "Big 5" public accounting firm providing similar consulting services. I have an undergraduate degree in

Finance and International Business from the University of Texas. I also have a Master of Business Administration degree (MBA) from the University of Texas. I am a Certified Fraud Examiner and a candidate for accreditation with the American Society of Appraisers in the Business and Intangible Asset valuation discipline.

4. During the past nineteen years I have worked on numerous complex litigation matters that have required extensive accounting, financial and/or economic analysis. I have been retained on numerous engagements to perform financial due diligence and/or business valuations and calculations. In the area of dispute analysis and investigations, I have provided assistance on matters involving such issues as breach of contract, breach of fiduciary duty, business interruption, business failure, fraud and forensic investigations, and professional liability, among others.

5. Navigant Consulting has been retained by counsel for the Government to provide consulting services related to the bid protest filed by Emerald Coast Finest Produce Company, Inc. (Emerald Coast).

6. I have been asked to provide this declaration to respond to the allegation made by Emerald Coast that it retained its right to pursue this lawsuit subsequent to the sale of its assets to Adams Brothers Produce Company, Inc. (Adams Brothers) as of June 2, 2007.

7. I have reviewed and evaluated the Business Assets Purchase Agreement by and between Emerald Coast and Adams Brothers dated of June 2, 2007 (purchase agreement). In addition, I have requested additional information from Emerald Coasts' books and records relevant to the purchase agreement.

To date, it is my understanding that Emerald Coast has not produced any information responsive to my request.

8. As such, my observations and opinions are based primarily upon my review of the purchase agreement, and upon my more than nineteen years of experience evaluating financial, accounting and economic transactions, including performing financial due diligence and business valuations and calculations.

9. I have reviewed the purchase agreement between Emerald Coast and Adams Brothers in relation to Emerald Coast's claim for continuing capacity to sue the United States pursuant in its bid protest. Emerald Coast contends that the lawsuit, while an asset of the business, was excluded under the asset purchase agreement pursuant to the list of excluded assets in Exhibit A, more specifically as a part of "accounts receivable."

10. The purchase agreement included the sale of "all of the assets used and/or usable by Seller in the operation of its Business and owned by Seller at the Closing Date (except for those assets specifically listed on Exhibit A)." As such, it would appear that unless specifically excluded, everything else was included to the extent it existed as of the closing date. The closing date, as defined in the purchase agreement, was May 31, 2007. The bid protest was filed on November 1, 2006, and therefore would have been included in the sale of the assets owned by Emerald Coast, unless specifically excluded.

11. As referenced, certain assets were excluded from the sale (as listed in Exhibit A, Excluded Assets) including vehicles, cash, accounts receivable, and a computer with certain software and files. "Accounts receivable" was further defined in the purchase agreement as the "accounts receivable of the Seller as shown by its books

and records of account, as of the Closing Date."

12. Emerald Coast, in its Memorandum in Support of Claim of Continuing Capacity to Sue or Be Sued, does not dispute that it considers the lawsuit to be an asset, only that the lawsuit was excluded from the purchase agreement as an "accounts receivable."

13. However, while the lawsuit may possibly have economic value to Emerald Coast, it is not an accounts receivable by definition and, under Generally Accepted Accounting Principles (GAAP), would not have been listed in Emerald Coast's financial statements.

14. Lawsuits are appropriately classified as "contingent assets." Where an "asset" is defined in part as a "probable future economic benefit," a contingent asset is a condition, situation, or set of circumstances involving uncertainty as to possible gain, where the uncertainty will ultimately be resolved at some point in the future. The fact than an item is a contingent asset means it defies precise quantification. Under GAAP, contingent assets are not recognizable on a company's financial statements until the asset is realized and the value of the asset can be reasonably estimated.

15. Accounts receivable, in contrast, are a type of current assets, which are assets that are reasonably expected to be realized in cash within one year of the date of the financial statements. Accounts receivable are generally described as amounts due from customers for goods or services provided in the normal course of business. Emerald Coast's bid protest lawsuit would not be classified as accounts receivable, that is, funds due from customers for goods or services provided. In addition, given the contingent nature of lawsuits, they also do not qualify as current assets because there is

no reasonable expectation they will result in cash to the business within one year.

16. As warranted by Emerald Coast in the purchase agreement, its financial statements, as of December 31, 2006, were prepared in accordance with GAAP. As such, since the outcome of a lawsuit cannot be measured with certainty, under GAAP accounting, the lawsuit would not be recordable until that uncertainty no longer exists. Contingent assets may be disclosed in the footnotes to the financial statements, but there is no requirement to do so.

17. Emerald Coast did not provide in support of its Memorandum either financial statements or a listing of its accounts receivable as of the closing date of the sale. There is, therefore, no evidence to support Emerald Coast's contention that the lawsuit was, or should have been, considered as an "accounts receivable," and therefore excluded from the purchase agreement. By definition, a lawsuit is not an accounts receivable, and if Emerald Coast's financial statements were prepared in accordance with GAAP, as warranted, the lawsuit would not even have been included in the financial statements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26, 2007.

Todd Kevin Lester