**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EMERALD COAST FINEST PRODUCE CO., INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-742C** |
| | ) | **(Judge Emily C. Hewitt)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MILITARY PRODUCE GROUP, LLC** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT-INTERVENOR'S RESPONSE TO EMERALD'S MEMORANDUM IN SUPPORT OF CLAIM OF CONTINUING CAPACITY TO SUE**

Defendant-Intervenor, Military Produce Group, LLC, by counsel, for its response to Emerald Coast Finest Produce Co., Inc.'s Memorandum In Support of Claim of Continuing Capacity to Sue or Be Sued, states as follows:

## INTRODUCTION

In a teleconference with the Court and all Parties, Emerald brought to the attention of the Court, the fact that the protestor has sold all of its assets to another company. Pursuant to the Court's Order, Emerald then submitted a Memorandum in Support of its claim that Emerald has the continuing capacity to maintain this suit against the government despite its asset sale. In support of its arguments, Emerald attaches a Blue Book Services Report, and an affidavit by Preston Thomas of Emerald. The affidavit includes a "factual" summary by Mr. Thomas and a copy of the Business Assets Purchase Agreement by which the Emerald Assets were sold.

## ARGUMENT

Emerald's sole argument in support of its capacity to sue is that Emerald retained the rights to its "Accounts Receivable" under the Purchase Agreement and that its unliquidated claim against the Government for attorney's fees and bid preparation costs is an "Accounts Receivable." However, regardless of whether Emerald retained this suit as an "asset" under the Purchase Agreement, Emerald no longer has standing to pursue this protest. Moreover, even if Emerald still has standing simply to recover bid preparation costs and attorney's fees, Emerald has not shown that it specifically retained the right to maintain this suit as an "asset" under the Purchase Agreement.

### I. Emerald No Longer Has Standing

As an initial matter, Emerald now lacks standing to challenge the award because it is unable to perform the contract, having sold its assets, and cannot therefore show that it has a direct economic interest in the award. To have standing, a plaintiff must be an "interested party." See 28 U.S.C. § 1491(b)(1)(2006). The Federal Circuit defines "interested party" as "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." American Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1299-1302 (Fed. Cir. 2001); Galen Medical Assocs., Inc. v. United States, 56 Fed. Cl. 104, 108 (2003); aff'd, 369 F.3d 1324 (Fed. Cir. 2004). Moreover, to be an "interested party" the bidder must show that it has a substantial chance of securing the award if successful in its protest. Information Technology & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("If [the protestor] were successful, the award would be set aside, and [the protestor] might secure it.").

While Emerald cites several cases in support of its argument that it still maintains standing, these cases are inapposite. See Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32 (2005); Space Exploration Technologies Corp. v. United States, 68 Fed. Cl. 1 (2005); United Payors & United Providers Health Services, Inc. v. United States, 55 Fed. Cl. 323 (2002). None of the cases cited by Emerald concern a protestor that has lost its ability to perform the contract at issue if successful in its protest. In Space Exploration, the protestor did not have standing because it did not intend to compete for the contract at issue and could not perform the contract at issue. 68 Fed. Cl. 1. The protestor was not an "actual or prospective bidder." Rather in that case, the court noted that the protestor's window for becoming an interested party closed with the deadline for submission of proposals. Id. at 5. Similarly, in United Payors and Lion Raisins, the issue was simply whether or not the protests were moot after partial or complete termination of the solicitations at issue.

Here, this issue is not one of mootness. The solicitation has not been withdrawn and Emerald, up until now, has been arguing that it is ready and able to perform the Fresh Fruits and Vegetables Contract. Now, with the sale of its assets, Emerald is no longer capable of performing the Contract. Moreover, Emerald is also legally and contractually prohibited from performing the Contract:

> **Covenant Not To Compete.** For a period of 3 years after the Closing Date, neither Seller nor any Shareholder shall, directly or indirectly, within the city limits of Pensacola, Florida and a radius of 90 miles from said city limits in all directions, engage in any business (whether as owner, partner, lender, shareholder or employee, consultant, advisor or in any other manner whatsoever) which either (i) competes with the Buyer for the business of any customers of Seller with which Seller has conducted business at any time during the prior 12 months prior to Closing Date or (ii) is an existing or potential institutional wholesale produce customer of Seller or Buyer; provided, however, the provisions of this

> noncompete agreement shall cease to be applicable if Buyer defaults at any time in its obligations under this Agreement…..

Business Asset Purchase Agreement ¶ 9. Emerald cannot be an interested party because it can no longer perform the Contract if successful in its protest.

## II. Emerald has not Shown that it Retains the Right to Maintain this Suit

Emerald argues that its suit for bid preparation costs and attorney's fees in its bid protest is an unliquidated claim retained by Emerald during the asset sale as an "accounts receivable." However, it is *not* customary accounting practice for unliquidated claims to be treated as "accounts receivable." Moreover, the Purchase Agreement does not specifically list lawsuits as an "accounts receivable" or specifically exclude this lawsuit from the rest of the assets sold.

### A. Unliquidated Claims are not Accounts Receivable

Unliquidated claims are not generally considered "accounts receivable." Under Generally Accepted Accounting Principles, "accounts receivable" is defined as "a claim that is payable in cash and that is in exchange for the services or goods provided by the company." Steven M. Bragg, The Ultimate Accountants' Reference § 16.2 (Adapted from Chapter 2 of the GAAP Implementation Guide). Accounts receivable "should only contain transactions for which there is a clear, short-term expectation of cash receipt from a customer." See id. Law suits are generally classified as "contingencies," because of their uncertainty, and should not be listed on a company's books as a gain or asset unless and until it materializes. See, e.g., Johnson Bank v. George Korbakes & Co., LLP, 472 F.3d 439, 441-42 (7th Circ. 2006) (citing SEC v. Yuen, No. CV 03-4376 MRP (PlAX), at *9 (C.D. Cal. Mar. 16, 2006); Financial Accounting Standards Board, Statement of Financial Accounting Standards No. 5, ¶ 17, pp. 7-8 (1975); Jan R. Williams & Joseph V. Carcello, Miller GAAP Guide § 9.02 (2004).) (discussing "gain contingencies" and "accounts receivable," generally); see also, Sadler v. Pure Oil Co., 173 S.E. 640 (S.C. 1934) (The

court held that the claim for damages for an alleged breach of contract could not be considered an account receivable, and that it remained an asset of the corporation, not being within the reservation of such accounts.). Accordingly, we cannot assume, as Emerald asserts, that the Court of Federal Claims suit was retained as a typical "Accounts Receivable" under the Asset Purchase Agreement.

**B. The Business Assets Purchase Agreement Does Not Reserve MPG's Claim in This Suit**

The Business Assets Purchase Agreement does not specifically exclude MPG's bid protest claim from the asset sale. The implication is that the any unliquidated claim MPG may have was *not* excluded from the sale.

The Business Assets Purchase Agreement contains the following relevant clauses:

> WHEREAS, Seller and Shareholders desire to sell to Buyer, and Buyer desires to by from Seller **all of the assets** used or usable by Seller in Emerald Coast Fines Produce **except for those assets specifically listed** on Exhibit A; and
>
> 1. Definitions As used herein the following terms shall have the following meanings.
>
> **1.1 Accounts Receivable "Accounts Receivable" shall mean the accounts receivable of Seller as shown by its books and records of account as of the Closing Date.**
>
> […]
>
> 2. Purchase and Sale of Business Assets Subject to the conditions and terms set forth herein, on the Closing Date at closing, Buyer will purchase from Seller, and Seller will sell, assign, transfer, convey, and set over unto Buyer, all of the assets used and or usable by Seller in the operation of the Business and owned by Seller at the Closing Date (**except for those assets specifically listed on Exhibit A**) which assets constitute the Business Assets including without limitation the following: [categories of assets listed: contracts, goodwill, inventory, leases, licenses and permits and personal property].

> […]
>
> 12. Accounts Receivable and Accounts Payable. It is agreed and understood that Buyer is not purchasing the Accounts Receivable and will not be responsible for collecting the Accounts Receivable and that Buyer is not assuming responsibility for the payment of any of Seller's accounts payable.

Business Assets Purchase Agreement (Exhibit B to Attachment 2 of Emerald's Motion) (emphasis added). Exhibit A to the Purchase Agreement lists excluded assets as follows:

1. The Real Estate (subject to separate purchase agreement)
2. The following vehicles:
   a.
   b.
   c.
3. Cash
4. Accounts receivable
5. One computer server, to be mutually agreed upon, which has on it a copy of the Seller's software and files.

The Purchase Agreement does *not* specifically list Emerald's suit against the Government as an asset. Rather, Emerald attempts to fit the lawsuit into the "accounts receivable" definition but fails to provide its "books and records of account as of the Closing Date." The "books and records" are further defined in § 7.10 of the Purchase Agreement, Receipt of Books and Records, as follows: "On or before the Closing Date, Buyer shall have received from Seller all of Seller's books and records pertaining to the Business and the Business Assets transferred hereunder." Presumably the term "books and records" refers to "books of account," which are defined by Black's Law Dictionary as "Records of original entry maintained in the usual course of business by a shopkeeper, trader, or other businessperson." (2004). Emerald has not produced copies of its books and records documenting the bid protest claim as an "accounts receivable." Presumably these records would show whether Emerald indeed did treat this lawsuit as an "accounts receivable."

It should also be noted that neither the affidavit from Mr. Thomas nor the attached summary indicate whether it was Emerald's practice to treat unliquidated claims such as this bid protest as "accounts receivable." Emerald's failure to produce such documentation in response to the Court's Order should result in an adverse inference that the books and records will not, in fact, support Emerald's position. See generally Goldberger Foods, Inc. V. United States, 23 Cl. Ct. 295, 308 (1991) ("a party's failure to bring forth evidence within [its] control, or to explain such omission, warrants an inference that the evidence, if proffered, would be unfavorable to his cause....").

Moreover, under the doctrine of *expressio unis est exclusio alterius*, the inclusion of a specific list of items to be excluded from the asset sale necessarily dictates that those items *not* specifically listed were included in the sale. See, e.g., Gay v. Singletary, 700 So.2d 1220 (Fla. 1997). Any contingent recovery from Emerald's bid protest was not an accounts receivable and is not included on the list of assets excluded from the sale. The Court should therefore assume that the Court of Federal Claims suit was included in the asset sale absent proof to the contrary.

Finally, MPG notes that Exhibit A to Attachment 2, the Thomas Affidavit, is a "factual" summary unrelated to the issue at hand. The Summary is not signed and, although we assume the factual summary pertains to Emerald, the document does not refer to Emerald by name, but as "we." This summary should not be admitted into evidence and should not be considered by the Court.

## CONCLUSION

Emerald has not shown neither that it still has standing to maintain this suit against the Government nor that it retained the right to maintain this suit as part of the Business Asset

Purchase Agreement. In fact, review of the Purchase Agreement indicates no such intent.

Accordingly, MPG asks that Emerald's bid protest be dismissed.

**Dated: September 26, 2007**

Respectfully Submitted,

MILITARY PRODUCE GROUP, LLC

/s/ Daniel R. Weckstein
By:________________________________

Daniel R. Weckstein (Va. State Bar No. 17741)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
E-mail: dweckstein@vanblk.com

Of counsel

Walter B. Martin (Va. State Bar No. 4214)
Stephanie M. Himel-Nelson (Va. State Bar No. 46966)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA 23510-1699
(757) 446-8600
Facsimile: (757) 446-8670
Email : wmartin@vanblk.com
shimelnelson@vanblk.com

## Certificate of Service

I hereby certify that a true copy of the foregoing pleading was sent by E-Mail this September 26, 2007, to counsel herein as follows:

Cyrus E. Phillips, IV, counsel for Emerald Coast, at lawyer@procurement-lawyer.com

Leslie Ohta, Esquire, counsel for Defense Commissary Agency, at Leslie.Ohta@usdoj.gov

Elliot Clark, Esquire, Assistant General Counsel for Defense Commissary Agency at Elliot.clark@deca.mil

/s/ Daniel R. Weckstein
By:________________________________
Of Counsel

S:\DATA\WP\DWECKSTEIN\Military Produce Group\Pleadings\Response to Capacity Motion FINAL.doc