# In the United States Court of Federal Claims

No. 06-742 C

(E-Filed: November 26, 2007)

| | | |
|---|---|---|
| EMERALD COAST FINEST PRODUCE CO. INC., Plaintiff, | ) | Post-Award Bid Protest; Capacity to Sue or Be Sued |
| v. | ) | |
| THE UNITED STATES, Defendant, | ) | |
| and | ) | |
| MILITARY PRODUCE GROUP, LLC, Defendant-Intervenor. | ) | |

Cyrus E. Phillips, IV, Washington, DC, for plaintiff.

Leslie Ohta, with whom were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Elliot Clark, Assistant General Counsel, Defense Commissary Agency, Fort Lee, VA, of counsel.

Daniel R. Weckstein, Norfolk, VA, for defendant-intervenor. Walter B. Martin and Stephanie M. Himel-Nelson, Norfolk, VA, of counsel.

ORDER

Before the court are plaintiff's Memorandum in Support of Claim of Continuing Capacity to Sue or Be Sued (Pl.'s Memo or plaintiff's Memo); defendant's Memorandum in Support of Defendant's Opposition to Plaintiff's Memorandum in Support of Claim of

Continuing Capacity to Sue or Be Sued (Def.'s Memo or defendant's Memo); Defendant-Intervenor's Response to Emerald's Memorandum in Support of Claim of Continuing Capacity to Sue (Def.-Int.'s Resp. or defendant-intervenor's Response); and plaintiff's Reply to Oppositions to Memorandum in Support of Claim of Continuing Capacity to Sue or Be Sued (Pl.'s Reply or plaintiff's Reply). For the following reasons, the court finds that the legal issues in the case are MOOT and DISMISSES the case.

I. Background

This is a post-award bid protest filed by Emerald Coast Finest Produce Company, Incorporated (Emerald Coast), a fresh produce distributor that serves military facilities, plaintiff's Statement of Facts (Pl.'s Facts) 2,[1] challenging an award to Military Produce Group, LLC (Military Produce Group) under Request for Proposal Number HDEC02-06-R-0005 (Solicitation) issued by the United States, id. at 5-6, acting through the Defense Commissary Agency of the Department of Defense, Resale Contracting Division (DeCA), id. at 2.

DeCA operates military commissary stores "on Department of Defense installations for the economic benefit of military personnel, their families, and . . . other persons granted access to these . . . stores." Pl.'s Facts 3. The stores stock and sell a wide variety of grocery food products and non-food products, such as health and beauty aids. Id. at 3-4. Military commissary stores sell their products at reduced prices by selling them at cost plus a standard surcharge. Id. at 4. Congress allows these stores to sell at reduced prices, 10 U.S.C. § 2481(a), in order to "enhance the quality of life of members of the uniformed services, retired members, and dependents of such members, and to support military readiness, recruitment, and retention," id. at § 2481(b).

DeCA issued the Solicitation on March 20, 2006, seeking competitive proposals for the daily supply of fresh fruits and vegetables to seventy-seven military commissary stores located in the north and south of DeCA's East Region. Pl.'s Facts 5-6. Those who offered proposals to DeCA were required "to offer a [m]inimum [p]ercentage of [p]atron [s]avings of at least" thirty-eight percent "when comparing DeCA's selling price . . . to the selling price of the same or similar items from comparable commercial supermarkets within the local commuting area and/or the geographical area within a 25-mile radius of a military commissary store." Id. at 6-7. The Solicitation required that the offered minimum percentage of patron savings be maintained throughout the life of the contract.

---

[1]Facts relied on in this opinion and cited to a statement of facts or other filings of only one of the parties do not appear to be in dispute. Plaintiff's Statement of Facts (Pl.'s Facts) was filed on November 24, 2006 in connection with proceedings prior to remand.

Id. at 7. If the minimum percentage of patron savings was not achieved and maintained, the Solicitation required that the military commissary prices for fresh fruits and vegetables be reduced; otherwise, the contract could be terminated. Id. at 8.

Emerald Coast and Military Produce Group, among other competitors, submitted proposals for Area 5, Group 1 in response to the Solicitation issued by DeCA. Pl.'s Facts 15, 19. The CO, working from the evaluations submitted by the TEB, awarded the contract for Area 5, Group 1 to Military Produce Group because it "submitted a proposal that was evaluated as the highest technically rated proposal and slightly lower minimum percentage of patron savings for the base period and both option years." Administrative Record (AR) 2080. Although Military Produce Group offered a lower minimum percentage of patron savings than Emerald Coast and the other two final offerors, see id. at 2078, 2080, 2083, the CO determined that

> in considering the solicitation's evaluation criteria that [t]echnical [c]apability is significantly more important than [p]ast [p]erformance[,] and when these two evaluation factors are combined they are significantly more important than [p]rice, it is determined that the higher technically rated proposal, slightly lower minimum percentage of patron savings proposal submitted by Military Produce Group is the better value to the [g]overnment.

Id. at 2080.

On November 1, 2006, plaintiff filed its Post-Award Procurement Protest Complaint (complaint or Compl.). Plaintiff asserted that DeCA's award of the contract to supply fresh fruits and vegetables to Area 5, Groups 1 and 2 to Military Produce Group was unlawful because it was arbitrary and capricious. Compl. 3.

Pursuant to the court's Order of November 3, 2006, defendant filed its certified Administrative Record (AR) on November 17, 2006. See Order of Nov. 3, 2006; Rule 52.1(a) of the Rules of the Court of Federal Claims (RCFC); Defendant's Notice of Filing of Administrative Record. Military Produce Group, defendant-intervenor, filed its Motion to Intervene of Awardee, Military Produce Group, LLC (Mot. to Intervene) on November 14, 2006. See Mot. to Intervene 1. The court granted Military Produce Group's motion to intervene on November 21, 2006. See Order of Nov. 21, 2006.

On November 24, 2006, plaintiff filed a Motion for Judgment on the Administrative Record, and defendant and defendant-intervenor filed their responses and cross motions on December 15, 2006 and December 19, 2006, respectively. See

Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Cross-Motion for Judgment on the Administrative Record; Defendant-Intervenor's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record. Plaintiff filed its reply and response on December 29, 2006. See Plaintiff's Brief in Response to Cross-Motions and in Reply to Responses to Plaintiff's Motion for Judgment on the Administrative Record. On January 16, 2007, defendant filed Defendant's Motion for Stay of Proceedings or Remand. The court held an oral argument on the motions on January 23, 2007. See Transcript of Oral Argument held Jan. 23, 2007. In its subsequent order, the court held that the TEB made an error when evaluating the offerors' proposals because it credited Military Produce Group for having teaming arrangements for Area 5, Group 1 when, in fact, Military Produce Group had no such teaming arrangement. Emerald Coast Finest Produce Co. v. United States (Emerald I), 75 Fed. Cl. 549, 555 (2007). The court remanded the case to DeCA and directed that the TEB and CO re-evaluate and re-select the winning bid for Area 5, Group 1 only.[2] Id. at 556. The order directed DeCA to file the documents generated by the remanded proceedings with the court on or before February 22, 2007. Id.

On February 22, 2007, defendant filed with the court the re-evaluations by the TEB of the proposals submitted by Emerald Coast and Military Produce Group and the decision by the CO. See Defendant's Second Notice of Filing of Administrative Record 1-2. As with the initial evaluation, the proposals were judged for technical capability, past performance, and proposed minimum percentage of patron savings. AR 2210-13. (Patron savings are sometimes referred to as "price" in the evaluation materials. See AR 2080-2214.) The TEB evaluation afforded Military Produce Group a combined score of 169, which exceeded the score given to Emerald Coast by twenty-six points. Id. at 2213. The TEB also found that Military Produce Group offered a proposed minimum percentage of patron savings that was somewhat lower than that proposed by Emerald Coast. Id. The CO based her selection upon the TEB's evaluation and awarded the contract to Military Produce Group. Id. at 2214. Specifically, the CO found:

> in considering the solicitation's evaluation criteria that Technical Capability is significantly more important than Past Performance and when these two evaluation factors are combined they are significantly more important than Price, it was

---

[2]DeCA divides the regions it serves into "Areas" and "Groups." The region that is at issue in this case is Area 5, Group 1, which includes military commissary stores located in the mid-South. Pl.'s Facts 6. The "mid-South" spans Little Rock and Barksdale Air Force Bases east through Mississippi and Alabama to western Florida, including Pensacola Naval Air Station and Eglin and Tyndall Air Force Bases. Id.

> determined that the significantly higher technically rated proposal and somewhat lower percentage savings proposal submitted by [Military Produce Group] is the better value to the Government than the significantly lower technically rated and somewhat higher percentage savings proposal submitted by Emerald.

Id.

At a telephonic status conference on February 26, 2007, plaintiff stated that it had identified materials that it believed should be included within the administrative record and, if so included, would support the filing of an amended complaint. Further to discussion with the parties, the court ordered briefing on plaintiff's proposed supplements to the administrative record and motion to amend its complaint. Order of Feb. 26, 2007 1. For reasons of efficiency, it was anticipated that the court would issue its opinion on plaintiff's motion to supplement and motion to amend before the parties addressed the results of the remand. After reviewing the parties' filings in connection with plaintiff's motions, the court denied plaintiff's motions to amend its complaint and to supplement the AR. Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 452 (2007). The court held a telephonic status conference with the parties on May 29, 2007 to discuss further proceedings. Plaintiff stated that it intended to move forward on its outstanding claims from its complaint. The court ordered a new briefing schedule for the parties to file their revised motions for judgment on the AR. Plaintiff filed its Revised Motion for Judgment on the Administrative Record (Pl.'s Rev. Mot.) on June 8, 2007, Pl.'s Rev. Mot. 1; defendant filed its Opposition to Plaintiff's Revised Motion for Judgment on the Administrative Record and Defendant's Cross-Motion for Judgment on the Administrative Record (Def.'s Opp.) on July 11, 2007, Def.'s Opp. 1; defendant-intervenor filed its Opposition to Plaintiff's Revised Motion for Judgment on the Administrative Record and Revised Cross-Motion for Judgment on the Administrative Record (Def.-Int.'s Opp.) on June 25, 2007, Def.-Int.'s Opp. 1; plaintiff filed its Brief in Response to Oppositions and Cross-Motions for Judgment on the Administrative Record (Pl.'s Resp.) on July 23, 2007, Pl.'s Resp. 1; defendant filed its Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Judgment Upon the Administrative Record (Def.'s Reply) on August 7, 2007, Def.'s Reply 1; and defendant-intervenor filed its Reply to Plaintiff's Opposition to Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record (Def.-Int.'s Reply) on August 13, 2007, Def.-Int.'s Reply 1. The court held oral argument on the revised motions on August 28, 2007. See Transcript of Oral Argument held Aug. 28, 2007 (Tr. or Transcript). At oral argument, plaintiff stated that the relief it then sought was not an injunction that would be effective immediately but one that would terminate the term of the contract awarded by the Solicitation in the summer of 2008 and re-open the competition to all offerors. Id. at 30:21-31:6.

On September 6, 2007, the parties called the court to inform the court that Emerald Coast had sold its assets to another company.[3] Order of September 7, 2007. The parties disagreed on whether Emerald Coast, having sold its assets, was a party that could continue to pursue this bid protest. The court ordered briefing from the parties on this issue. Id. Plaintiff filed its Memo on September 11, 2007, Pl.'s Memo 1; defendant and defendant-intervenor filed their respective responses on September 26, 2007, Def.'s Memo 1; Def.-Int.'s Resp. 1; and plaintiff filed its Reply on October 11, 2007, Pl.'s Reply 1. Further, during that same telephone call, plaintiff withdrew its request for injunctive relief. Order of September 7, 2007. Plaintiff now seeks only monetary relief in the form of bid preparation costs and attorney's fees. Id.

## II. Discussion

### A. Standing

The Administrative Disputes Resolution Act (ADRA), contained in section 1491 of Title 28 of the United States Code, grants the United States Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. 28 U.S.C. § 1491(b)(1) (emphasis added). Standing is a jurisdictional requirement. Media Techs. Licensing, LLC. v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003) ("Because standing is jurisdictional, lack of standing precludes a ruling on the merits."). In particular, standing to bring a protest as an "interested party" under the ADRA is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). The Federal Circuit has further defined "interested party" as a party that has "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Info. Tech. & Applications Corp. v. United States (Info. Tech.), 316 F.3d 1312, 1319 (Fed. Cir. 2003). "The term 'interested parties' excludes those who did not submit proposals,

---

[3]Plaintiff, defendant, and defendant-intervenor each stated during the phone call that they knew that Emerald Coast had sold its assets by the time of the oral argument held on August 28, 2007. It is unclear to the court why none of the parties brought this issue to the court's attention at that time. Whatever the reason for it, the parties' omission to mention the sale resulted in inefficiency in resolving the case. It frustrated efforts of the court to administer proceedings under the Rules of the Court of Federal Claims (RCFC) "to secure the just, speedy, and inexpensive determination of every action." RCFC 1.

bidders who withdrew from a solicitation, and offerors who were not competitively ranked for the award." Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 232 (2006) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001)).

Defendant-Intervenor argues that plaintiff no longer has standing to pursue this bid protest. Def.-Int.'s Resp. 2-4. Defendant-Intervenor states that plaintiff "now lacks standing to challenge the award because it is unable to perform the contract, having sold its assets, and cannot therefore show that it has a direct economic interest in the award." Id. at 2. Further, Defendant-Intervenor argues that plaintiff "is also legally and contractually prohibited from performing the [c]ontract" resulting from the Solicitation because of a "Covenant Not to Compete" contained in the Business Assets Purchase Agreement (Purchase Agreement) between plaintiff and the buyer of its operating assets, Adams Brothers Produce Company, Inc. (Adams Brothers). Id. at 3; Pl.'s Memo 2.

Plaintiff responds that, although Emerald Coast can no longer compete for a successor contract issued by DeCA, "other relief for Emerald Coast remains available in this [c]ourt." Pl.'s Reply 2. Specifically, plaintiff states that Emerald Coast is entitled to recovery of its proposal costs and an award of its costs and attorney fees. Id.

"[S]tanding is a threshold jurisdictional issue," Meyers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002), and is determined at the time of filing a bid protest, see F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1480 (Fed. Cir. 1983) (holding that "jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties"); Dean Forwarding Co. v. United States, 2 Cl. Ct. 559, 564 n.9 (1983) (noting that a reduction in the amount recoverable on a claim below the jurisdictional amount does not oust jurisdiction, nor is diversity jurisdiction ousted by a change in domicile). In a previous opinion issued in this case, the court found that plaintiff did have standing because plaintiff was an offeror for the challenged contract whose direct economic interest was affected by the contract award to defendant-intervenor. Emerald I, 75 Fed. Cl. at 553. Because plaintiff had standing when it filed this bid protest, id., the court finds that, regardless of whether plaintiff can perform the contract at this time, plaintiff does indeed have standing to continue its bid protest. Although a plaintiff withdraws its request for injunctive relief, it still "may recover the costs of preparing its unsuccessful proposal if it can establish that the [g]overnment's consideration of the proposals submitted was arbitrary or capricious." E.W. Bliss Co. v. United States, 77 F.3d 445, 447 (Fed. Cir. 1996); see also Gentex Corp. v. United States, 58 Fed. Cl. 634, 656 (2003) (holding that "a losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the [g]overnment's consideration of the proposal

submitted was arbitrary or capricious or in violation of applicable statute or regulation."); PGBA, LLC v. United States, 60 Fed. Cl. 196, 222 (2004) (same). Now before the court is the separate question of whether plaintiff's transaction with Adams Brothers terminated its right to maintain this lawsuit.

B. Whether Plaintiff Retains the Right to Maintain This Lawsuit

Plaintiff argues that Emerald Coast retains the right to maintain this lawsuit because, it argues, by selling its operating assets to another company it did not relinquish its capacity to sue or be sued. Pl.'s Memo 2. The court does not understand the issue to be plaintiff's capacity - in general - to sue or be sued. The issue is whether it has any remaining interest in this lawsuit.

Plaintiff points to the Purchase Agreement, the instrument by which Emerald Coast disposed of its operating assets, and claims that it "expressly exempts from the assets sold the accounts receivable of Emerald Coast." Id. Plaintiff argues that, under Florida state law, the law under which "Emerald Coast is a continuing corporation established and existing," id., "accounts receivable are a species of a chose in action," id.[4], and that a "chose in action" "is 'an intangible personal property right recognized and protected by the law,'" id. (citation omitted). Plaintiff states that Emerald Coast has two "choses in action": "potential recovery of Emerald Coast's proposal costs . . . [and] potential award of Emerald Coast's costs and attorney fees." Id. at 3. Plaintiff asserts that, because these alleged "choses in action remain before the [c]ourt, . . . this meets the 'case or controversy' requirement" of article III, section 2, clause 1 of the United States Constitution. Id.

The Purchase Agreement contains the following clause to effect the sale of Emerald Coast's assets to Adams Brothers:

> Seller and Shareholders desire to sell to Buyer, and Buyer desires to buy from Seller, all of the assets used and/or usable by Seller in Emerald Coast Finest Produce, except for those assets specifically listed on Exhibit A.

Purchase Agreement, Docket No. 86, filed Sept. 14, 2007, 1. Exhibit A to the Purchase Agreement lists the assets excluded from the sale, which includes "[a]ccounts receivable." Id. at 14. The Purchase Agreement defines "accounts receivable" as "the accounts receivable of Seller as shown by its books and records of account, as of the

---

[4]Black's Law Dictionary defines "chose in action" as "[t]he right to bring an action to recover a debt, money, or thing." Black's Law Dictionary 258 (8th ed. 2004).

Closing Date." Id. at 1. Emerald Coast warrants in the Purchase Agreement that its financial statements are governed by Generally Accepted Accounting Principles (GAAP). Id. at 4. The Purchase Agreement provides that it is governed by the laws of the state of Florida. Id. at 11. The court notes that the form which the parties employed in preparing the Purchase Agreement provides that it is governed by Alabama law but that the signatories of the Purchase Agreement manually crossed out "Alabama" and replaced it with "Florida." Id. The court reads this deliberate change from otherwise boiler-plate language as evidencing the specific intent by the signatories that the Purchase Agreement be governed by Florida law, particularly in the absence of any question of authenticity of that hand-written change.

Because Emerald Coast and Adams Brothers agreed in the Purchase Agreement that Florida law governs that document, see Purchase Agreement 11, the court reviews the Purchase Agreement through the lens of the laws of Florida. Florida corporate law allows a corporation to sell its assets:

> A corporation may sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property (with or without the good will), otherwise than in the usual and regular course of business, on the terms and conditions and for the consideration determined by the corporation's board of directors, if the board of directors proposes and its shareholders of record approve the proposed transaction.

Fla. Stat. § 607.1202(1) (2007). The asset sales "may include some or all of the corporate assets, and the transferred assets may include tangibles such as machinery and intangibles such as accounts receivable." Corporate Express Office Prods. v. Phillips, 847 So. 2d 406, 412 (Fla. 2003). "In an asset purchase, the liabilities and responsibilities of each party would be set forth in the parties' agreement." Id.

Plaintiff provides no authority to support its claim that a lawsuit is an account receivable under Florida law (or the law of any other jurisdiction), and the court is aware of none. The court assumes that no case law exists on this particular issue because the concept that a lawsuit would be defined as an account receivable in a company's financial statements is generally inconsistent with GAAP.

"Originally, GAAP referred to accounting policies and procedures that were widely used in practice." Jan R.Williams & Joseph V. Carcello, GAAP Guide Level A: Restatement and Analysis of Current FASB Standards xii (2007) (GAAP Guide). However, "[a]s standard-setting bodies and professional organizations became more involved in establishing required or preferred practices, the term came to refer more to the

pronouncements issued by particular accounting bodies." Id. Several different series of authoritative literature exist today, and the Independent Auditor's Report "established what is commonly referred to as the GAAP hierarchy." Id. The resource listed at the top of the GAAP hierarchy are the Statements of Financial Accounting Standards (FAS) of the Financial Accounting Standards Board (FASB). Id. at xiii.

The FAS do not directly address the treatment of a lawsuit within a company's financial statements in which that company itself is the plaintiff. Rather, the FAS address scenarios in which the company, as the defendant party, faces pending litigation or the threat of a suit. This discussion of lawsuits, which is the only mention of litigation within the FAS, occurs in the chapter entitled "Accounting for Contingencies." FASB, Original Pronouncements As Amended 2007/2008 Edition: Accounting Standards as of June 1, 2007, vol. I (2007) (FASB, Original Pronouncements) FAS5-3, FAS5-8-FAS5-9; see also GAAP Guide at 9.06. The FASB defines a contingency "as an existing condition, situation, or set of circumstances involving uncertainty as to possible gain . . . or loss." FASB, Original Pronouncements FAS5-2 (footnote omitted). Statement of Financial Accounting Standards No. 5 lists "[p]ending or threatened litigation" as an example of a loss contingency, id. at FAS5-3, and it discusses the factors to be considered "in determining whether accrual and/or disclosure is required with respect to pending or threatened litigation and actual or possible claims and assessments," id. at FAS5-8. Thus, the FAS view a lawsuit as a contingency.

The question now before the court is whether an account receivable is a contingency. The Penguin Dictionary of Accounting defines "receivables," as in "accounts receivable," as "[t]he U[.]S[.] expression for amounts of money due to a business from customers." The Penguin Dictionary of Accounting 243 (1st ed. 2002). Barron's Dictionary of Accounting Terms defines "receivables" as "claims held against customers and others for money, goods, or services. Barron's Dictionary of Accounting Terms 365 (3d ed. 2000). In Accounting Principles, a textbook on accounting rules, the authors define "accounts receivable" as "amounts owed to the entity by its customers." Robert N. Anthony & James S. Reece, Accounting Principles 34 (5th ed. 1983) (emphasis added). Accounts receivables are categorized as a form of "current assets," which "include cash and other assets that are reasonably expected to be realized in cash or sold or consumed during the normal operating cycle of the entity or within one year, whichever is longer." Id. A contingency, on the other hand, "is an occurrence that might arise in the future." Id. at 186 (emphasis added). Because an account receivable is a current asset that is expected to be realized within one year and a contingency is an occurrence that may never be realized, an account receivable is not a contingency.

Emerald Coast warranted in the Purchase Agreement that its financial statements "are consistent with the books and records of [Emerald Coast] and fairly present the financial condition of [Emerald Coast] as of December 31, 2006 in accordance with GAAP, applied on a consistent basis." Purchase Agreement 4. The court finds that it is inconsistent with GAAP to consider a lawsuit to be an account receivable. Unlike a sold good or a provided service, a lawsuit does not carry with it the expectation of payment to the company within one year. A lawsuit is contingent in that, depending on its outcome, it could present an asset or a liability to the company.[5]

Further, by not providing any evidence or citing any case law to support its view that a lawsuit is an account receivable, plaintiff failed to meet its burden of proof. Plaintiff did not provide the court with financial statements or a listing of Emerald Coast's accounts receivable as of the closing date of the sale of its assets to Adams Brothers. Without evidence to the contrary, the court must understand the Purchase Agreement to cover the sale of all of Emerald Coast's assets to Adams Brothers except for the five items listed in Exhibit A that were not to be included in the asset sale. See Purchase Agreement 14. This lawsuit was not one of those items to be excluded. Id. Thus, the court determines that, by not specifically listing this lawsuit as an item to be excluded from the asset sale, the Purchase Agreement in fact included this lawsuit in the sale of Emerald Coast's assets to Adams Brothers.

Accordingly, the court finds that plaintiff's bid protest against defendant and defendant-intervenor is not an account receivable that was excluded from Emerald Coast's sale of assets in the Purchase Agreement. See Purchase Agreement 14. Because the lawsuit was not excluded from Emerald Coast's sale of assets, the court finds that

---

[5]Defendant included in its Memo a declaration by Todd Kevin Lester, a director at Navigant Consulting, Inc. with nineteen years of accounting experience, which supports the court's view of the treatment by the Generally Accepted Accounting Principles (GAAP) of a lawsuit in a company's financial statements. Def.'s Memo, Attach. 2 ¶¶ 1-3, 13-16. Mr. Lester declares that "[l]awsuits are appropriately classified as 'contingent assets,'" meaning that a lawsuit is a "condition, situation, or set of circumstances involving uncertainty as to possible gain, where the uncertainty will ultimately be resolved at some point in the future." Id. at ¶ 14. He further states that, under GAAP, "contingent assets are not recognizable on a company's financial statements until the asset is realized and the value of the asset can be reasonably estimated." Id. In contrast, accounts receivable "are a type of current assets, which are assets that are reasonably expected to be realized in cash within one year of the date of the financial statements" and "are generally described as amounts due from customers for goods or services provided in the normal course of business." Id. at ¶ 15.

Emerald Coast relinquished its rights to this lawsuit when it sold its assets to Adams Brothers. Emerald Coast can no longer pursue this bid protest.

## III. Conclusion

For the foregoing reasons, the Clerk of the Court shall enter judgment DISMISSING plaintiff's bid protest complaint. No costs.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge